IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| CHI-CHI'S, INC., et al., | : | Case No. 03-13063 |
| | : | (Jointly Administered) |
| Debtors. | : | |
| | : | Adv. Pro. No. 05-52726 |
| SYSCO CORPORATION and | : | |
| THE SYGMA NETWORK, INC., | : | |
| | : | |
| Appellants, | : | Civil Action No. 06-169-KAJ |
| | : | |
| v. | : | |
| | : | |
| CHI-CHI'S, INC., | : | |
| | : | |
| Appellee. | : | |

**OPENING BRIEF OF SYSCO CORPORATION AND THE SYGMA NETWORK, INC. IN SUPPORT OF THEIR APPEAL OF THE BANKRUPTCY COURT'S JANUARY 18, 2006 ORDER FINDING THAT RULE 41 DOES NOT BAR FURTHER PROCEEDINGS AGAINST SYSCO CORPORATION AND THE SYGMA NETWORK, INC.**

May 26, 2006

Jeffrey R. Waxman (DE No. 4159)
Cozen O'Connor
1201 North Market Street, Suite 1400
Wilmington, DE 19801
Telephone: (302) 295-2000
Facsimile: (302) 295-2013
-- and --
Philip G. Kircher
Aaron Krauss
Cozen O'Connor
1900 Market Street
Philadelphia, PA 19103-3508
Telephone: (215) 665-4181
Facsimile: (215) 701-2381

*Attorneys for Sysco Corporation and
The SYGMA Network, Inc.*

# TABLE OF AUTHORITIES

Page

## CASES

*Catalfano v. Higgins*,
  55 Del. 470, 188 A.2d 357 (Del. 1962) ..........................................................................6, 7

*Chi-Chi's, Inc. v. Sysco Corporation and The SYGMA Network, Inc.*,
  338 B.R. 618 (Bankr. D. Del. 2006) ..........................................................................4, 5, 8

*Chovan v. Wheeling-Pittsburgh Steel Corp.*,
  373 A.2d 136 (Pa. Commw. Ct. 1977) ...............................................................................9

*Cooter & Gell v. Hartmarx Corp.*,
  496 U.S. 384 (1990)............................................................................................................4

*Funkhouser v. Chi-Chi's, Inc.*,
  2005 WL 2545300 (W.D. Pa. October 7, 2005) ............................................................3, 8

*Government Employees Insurance Co. v. Winsett*,
  153 S.W.3d 862 (Ky. Ct. App. 2004) ................................................................................6

*Iowa Electric Light and Power Co. v. Mobile Aerial Towers, Inc.*,
  723 F.2d 50 (8th Cir. 1983) ...............................................................................................6

*John Hancock Mutual Life Insurance Co. v. Olick*,
  151 F.3d 132 (3d Cir. 1998).................................................................................................4

*KFC Corp. v. Darsam Corp.*,
  543 F. Supp. 222 (W.D. Ky 1982).......................................................................................6

*Kelly v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  985 F.2d 1067 (11th Cir. 1993), *cert. denied*, 510 U.S. 1011 (1993)..................................4

*Kozyra v. Allen*,
  973 F.2d 1110 (3d Cir. 1992)..............................................................................................6

*Lake at Las Vegas Investors Group, Inc. v. Pacific Malibu Development Corp.*,
  933 F.2d 724 (9th Cir. 1991), *cert. denied*, 503 U.S. 920 (1992)....................................5, 7

*Levitt v. Simco Sales Service of Pennsylvania*,
  50 Del. 557, 135 A.2d 910 (Del. Super. Ct. 1957) .............................................................6

*Louisville & N.R. Co. v. Mack Manufacturing Co.*,
  269 S.W.2d 707 (Ky. 1954).............................................................................................6, 7

*Malone Freight Lines, Inc. v. Johnson Motor Lines, Inc.*,
    52 Del. 286, 156 A.2d 788 (Del. Super. Ct. 1959) .............................................................6

*Manning v. South Carolina Department of Highway and Public Transportation*,
    914 F.2d 44 (4th Cir. 1990) ................................................................................................8

*Mells v. Billops*,
    482 A.2d 759 (Del. Super. Ct. 1984) ..................................................................................6

*Miller v. Forth Worth Distributing Co.*,
    781 F.2d 494 (5th Cir. 1986) ...............................................................................................4

*Poloron Prods., Inc. v. Lybrand Ross Bros. & Montgomery*, 66 F.R.D. 610, 614
    (S.D.N.Y. 1975), *rev'd on other grounds*, 534 F.2d 1012 (2d Cir. 1975) ..........................7

*Schapiro v. Schapiro*,
    1995 WL 550636 (E.D. Pa. 1995) ......................................................................................4

*Spokane County v. Specialty Automobile and Truck Painting*,
    103 P.3d 792 (Wash. 2004)..................................................................................................5

*United States v. Aetna Casualty & Surety Co.*,
    338 U.S. 366 (1949)..............................................................................................................7

*Wealth v. Renal*,
    49 Del. 285, 114 A.2d 807 (Del. Super. Ct. 1955) .............................................................6

*Works v. Winkle*,
    234 S.W.2d 312 (Ky. 1950)..................................................................................................7

*In re Y&A Group Sec. Litigation*,
    38 F.3d 380 (8th Cir. 1994) ................................................................................................4

## RULES

Fed. R. Civ. P. 41(a)(1)......................................................................................................4

## TABLE OF CONTENTS

Page

I.      FACTUAL BACKGROUND. ........................................................................................... 1

II.     PROCEDURAL BACKGROUND. ................................................................................ 3

III.    ARGUMENT. .................................................................................................................... 4

IV.     CONCLUSION. ............................................................................................................... 10

.

## MISCELLANEOUS

1A C.J.S. Actions § 226.......................................................................................................................6

1A C.J.S. Actions § 248.......................................................................................................................7

Federal Practice & Procedure § 2368 ...............................................................................................4

Insurance Claims and Disputes 4th § 10:9.........................................................................................8

*Restatement (Second) of Conflict of Laws § 187* ..............................................................................6

.

.

Sysco Corporation and The SYGMA Network, Inc. (collectively "SYGMA") were sued in the bankruptcy court on two separate occasions. Both suits were brought in the name of Chi-Chi's, Inc. Both suits made the same allegations, and sought the same relief. Both suits were voluntarily dismissed by notice under Rule 41. When Chi-Chi's filed a third suit against SYGMA, again making the same allegations, and seeking the same relief, SYGMA asked the Bankruptcy Court to enjoin the third suit, since it was barred by Rule 41. The Bankruptcy Court refused to do so, since the first and third suits were filed by Chi-Chi's bankruptcy estate, while the second suit was filed by a subrogating insurance company acting in Chi-Chi's name. The Bankruptcy Court's decision was based on its belief that, despite the identical language in the first two complaints, Chi-Chi's sought different damages than its subrogating insurer. Since such a holding is not supported by the complaints, and would violate the rule against splitting causes of action, the Bankruptcy Court should be reversed, and all further proceedings against SYGMA should be enjoined.

## I.    FACTUAL BACKGROUND.

Prior to its bankruptcy, Chi-Chi's operated a chain of Mexican themed restaurants. SYGMA is a company that (among other things) warehouses and distributes food and other supplies to restaurants that do not want to operate their own warehouses and trucking fleets. Since Chi-Chi's did not want to purchase warehouses and a fleet of trucks, it entered into a Distribution Agreement with SYGMA. This Distribution Agreement, which spans more than 125 pages, was attached to the various complaints filed against SYGMA. *See* D.I. 4 at Exhibit A(4); D.I. 4 at Exhibit C(4). The Distribution Agreement is integrated, *see* Distribution Agreement at paragraph XXI, on page 38, and provides for the application of Kentucky law. *See* Distribution Agreement at paragraph XX, on pages 37-38.

Under the Distribution Agreement, Chi-Chi's was entitled to select the vendors who would supply the various products that SYGMA would deliver to Chi-Chi's. *See* Distribution Agreement at paragraph II.A., on page 2. Chi-Chi's exercised this right, and instructed SYGMA to obtain and deliver all produce from Castellini Company, LLC.[1]  Since it would be manifestly unfair to impose liability on SYGMA if the vendor selected by Chi-Chi's supplied bad food, Chi-Chi's and SYGMA agreed that SYGMA would only be held liable for its own direct negligence. *See* Distribution Agreement at paragraph IX, on page 31.  Conversely, Chi-Chi's and SYGMA agreed that *Chi-Chi's* would indemnify SYSCO for all claims arising out of items ordered at Chi-Chi's request, unless (of course) such claims arose out of SYGMA's negligence. *See* Distribution Agreement at paragraph VIII, on page 31.

In addition to obtaining indemnification from Chi-Chi's, SYGMA also obtained a contractual promise of indemnification from Castellini, the supplier selected by Chi-Chi's. Copies of Castellini's contractual agreement to indemnify SYGMA have also been attached to the various complaints filed against SYGMA. *See* D.I. 4 at Exhibit A(3); D.I. 4 at Exhibit C(3).

Chi-Chi's filed for bankruptcy on October 8, 2003.  Following Chi-Chi's bankruptcy filing, over 650 people in Western Pennsylvania became ill with Hepatitis A.  It has been alleged in various complaints that these illnesses resulted from eating green onions at the Chi-Chi's located in the Beaver Valley Mall in Monaco, Pennsylvania.  Chi-Chi's insurers, including intervener Empire Indemnity Insurance Company, proceeded to settle hundreds of claims brought by people who got sick.

---

[1] Chi-Chi's has repeatedly admitted that it directed SYGMA to obtain all produce, including the green onions that are at issue in this litigation, from Castellini. *See, e.g.,* D.I. 4 at Exhibit A ¶¶ 19-20; D.I. 4 at Exhibit C ¶¶ 18-19; D.I. 4 at Exhibit E ¶¶ 10-11.

2

## II.     PROCEDURAL BACKGROUND.

Chi-Chi's first sued SYGMA on July 20, 2004. *See* D.I. 4 at Exhibit A. Chi-Chi's dismissed its first lawsuit against SYGMA by Rule 41 Notice on November 12, 2004. *See* D.I. 4 at Exhibit B.

Four days after Chi-Chi's filed its Rule 41 Notice of Dismissal, Empire re-filed the same suit in Chi-Chi's name. *See* D.I. 4 at Exhibit C. With the exception of the first two footnotes and the third paragraph (all of which said that Empire was a subrogating insurer proceeding in Chi-Chi's name), the allegations in the second suit against SYGMA were virtually identical to the allegations in the first suit. *Compare* D.I. 4 at Exhibit A *with* D.I. 4 at Exhibit C. Like the first suit, the second suit was dismissed as to SYGMA by a Rule 41 Notice. *Compare* D.I. 4 at Exhibit B *with* D.I. 4 at Exhibit D. This second dismissal occurred on December 7, 2004. *See* D.I. 4 at Exhibit D.

On September 8, 2005, Chi-Chi's filed a third suit against SYGMA. *See* D.l. 4 at Exhibit E.[2] This third action was an arbitration, filed pursuant to the arbitration clause in the

---

[2] Numerous other lawsuits were filed between the second and third actions against SYGMA. Following the two Rule 41 dismissals against SYGMA, Chi-Chi's filed suit against Castellini in the Central District of California. *See Chi-Chi's, Inc. v. Castellini Company, LLC*, C.D. Cal. 2:04-cv-9539. On May 30, 2005, Judge Schiavelli, who was hearing that case, decided to abstain. *See* D.I. 16 at Exhibit 10. Chi-Chi's then filed third party claims against Castellini in a case pending in the Western District of Pennsylvania. *See Funkhouser v. Chi-Chi's*, W.D. Pa. 2:05-cv-638. On October 7, 2005, Judge McVerry dismissed Chi-Chi's claims because the adversary complaint Empire had filed in Chi-Chi's name was still pending as to Castellini in the Delaware Bankruptcy Court. *See Funkhouser v. Chi-Chi's, Inc.*, 2005 WL 2545300 at *1-*2 (W.D. Pa. October 7, 2005). After the dismissal in *Funkhouser*, and after Chi-Chi's filed its arbitration claim against SYGMA, Chi-Chi's, along with all three of its subrogating insurers, filed claims against Castellini in California State Court. *See Scottsdale Insurance Co. v. Castellini Company, LLC*, Ventura County Case Number CIV236710, *consolidated with* Case Numbers CIV236719, CIV237044 and CIV237810. In April of 2006, nearly six months after their suits were filed in California State Court, two of Chi-Chi's subrogating insurers attempted to name SYGMA as a "Doc defendant." SYGMA has demurred, and moved to quash these claims.

•

Distribution Agreement. *See* Distribution Agreement at paragraph XIX.B, on page 37. Again,

the allegations in the third suit were virtually identical to the allegations in the first and second

suits. *Compare* D.I. 4 at Exhibit B *with* D.I. 4 at Exhibit D *and* D.I. 4 at Exhibit E. For the

Court's convenience, a chart comparing the allegations in the three complaints that have been

filed against SYGMA is attached to this brief.

## III.   ARGUMENT.

Rule 41 provides as follows:

(a) Voluntary Dismissal: Effect Thereof: (1) By Plaintiff; by
Stipulation. . . . An action may be dismissed by the plaintiff
without order of court (i) by filing a notice of dismissal at any time
before service by the adverse party of an answer or of a motion for
summary judgment, whichever first occurs, or (ii) by filing a
stipulation of dismissal signed by all parties who have appeared in
the action. Unless otherwise stated in the notice of dismissal or
stipulation, the dismissal is without prejudice, except that *a notice
of dismissal operates as an adjudication upon the merits when filed
by a plaintiff who has once dismissed in any court of the United
States or of any state an action based on or including the same
claim.*

Fed. R. Civ. P. 41(a)(1) (emphasis added).

In the words of one Judge, "This Rule leaves little to the imagination." *Schapiro*

*v. Schapiro*, 1995 WL 550636 at *2 (E.D. Pa. 1995). Based on the "two dismissal" language of

Rule 41, the Bankruptcy Court should have enjoined further litigation if it found that Chi-Chi's

and its subrogating insurer constituted the same "plaintiff" for purposes of that Rule.[3] *See, e.g.,*

*Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 394 (1990); **Federal Practice & Procedure** §

•

---

[3] There is no dispute that, if the Court finds that the "two dismissal" bar of Rule 41 applies, the
Court can protect its jurisdiction, and the efficacy of its judgments, by enjoining the arbitration.
*See Chi-Chi's, Inc. v. Sysco Corporation and The SYGMA Network, Inc.*, 338 B.R. 618, 622
(Bankr. D. Del. 2006). *See also John Hancock Mut. Life Ins. Co. v. Olick*, 151 F.3d 132, 138-39
(3d Cir. 1998); *In re Y&A Group Sec. Litig.*, 38 F.3d 380, 382 (8th Cir. 1994); *Kelly v. Merrill
Lynch, Pierce, Fenner & Smith, Inc.*, 985 F.2d 1067, 1068-70 (11th Cir. 1993), *cert. denied*, 510
U.S. 1011 (1993); *Miller v. Forth Worth Distributing Co.*, 781 F.2d 494, 499 (5th Cir. 1986).

4

2368. Such an injunction would be proper regardless of the motives underlying the two

dismissals. *See Lake at Las Vegas Investors Group, Inc. v. Pacific Malibu Development Corp.*,

933 F.2d 724, 727 (9th Cir. 1991), *cert. denied*, 503 U.S. 920 (1992); *Spokane County v.*

*Specialty Auto and Truck Painting*, 103 P.3d 792, 796 (Wash. 2004).[4] Since the Bankruptcy

Court found that Chi-Chi's and its subrogating insurer were "separate real parties as required by

the two dismissal rule," *Chi-Chi's, Inc. v. Sysco Corporation and The SYGMA Network, Inc.*,

338 B.R. 618, 623 (Bankr. D. Del. 2006), it held that Rule 41 did not apply.

      The Bankruptcy Court reached its conclusion because it believed that Chi-Chi's

and its subrogating insurers had sought different damages. *See Chi-Chi's, Inc.*, 338 B.R. 618,

623-24. Such a belief is not supported by a review of the complaints. On the contrary, a review

of the complaints demonstrates that Chi-Chi's and its subrogating insurer sought precisely the

same damages each time they sued. *Compare* D.I. 4 at Exhibit B *with* D.I. 4 at Exhibit D *and*

D.I. 4 at Exhibit E; *see also* the Chart attached as Exhibit A.

      The fact that Chi-Chi's and its subrogating insurer sought the same damages each

time they sued is not surprising. This is because Delaware (like Kentucky, whose law governs

---

[4] To the extent the Bankruptcy Court believed that the discussions between the parties preceding
the Rule 41 notices were the equivalent of a stipulation to dismiss, and that those discussions
therefore rendered the "two dismissal rule" inapplicable, the Bankruptcy Court erred. *See Chi-
Chi's, Inc. v. Sysco Corporation and The SYGMA Network, Inc.*, 338 B.R. 618, 624 (Bankr. D.
Del. 2006). Rule 41 explicitly states that a dismissal can be effectuated by either a notice or a
stipulation, and that a second dismissal by notice is with prejudice. Chi-Chi's knew the
difference between dismissing by notice and by stipulation. Indeed, Chi-Chi's dismissed its
claims against Castellini by stipulation. *See* D.I. 16 at Exhibit 5. Having filed a stipulation as to
Castellini, and a notice as to SYGMA, Chi-Chi's cannot now claim that it did not realize that it
could have protected its interests by preconditioning a dismissal on a stipulation with SYGMA.
*See* D.I. 16 at Exhibit 4 and Exhibit 5. It is perhaps for this reason that Chi-Chi's has admitted
that both it and its subrogating insurer dismissed SYGMA voluntarily. *See* Chi-Chi's May 16,
2006 declaration at ¶ 5, a copy of which is attached as Exhibit D.

the Distribution Agreement)[5] prohibits an insurer and an insured from splitting a cause of action. *See Malone Freight Lines, Inc. v. Johnson Motor Lines, Inc.*, 52 Del. 286, 292-94, 156 A.2d 788, 792-93 (Del. Super. Ct. 1959); *Levitt v. Simco Sales Service of Pennsylvania*, 50 Del. 557, 559-61, 135 A.2d 910, 911-12 (Del. Super. Ct. 1957); *Louisville & N.R. Co. v. Mack Manufacturing Co.*, 269 S.W.2d 707, 709-10 (Ky. 1954). *See also Catalfano v. Higgins*, 55 Del. 470, 472, 188 A.2d 357, 358 (Del. 1962); *Mells v. Billops*, 482 A.2d 759, 761 (Del. Super. Ct. 1984); *Wealth v. Renal*, 49 Del. 285, 287-88, 114 A.2d 807, 809 (Del. Super. Ct. 1955); *Kozyra v. Allen*, 973 F.2d 1110, 1112-13 (3d Cir. 1992); *Iowa Electric Light and Power Co. v. Mobile Aerial Towers, Inc.*, 723 F.2d 50, 53 (8th Cir. 1983) ("Iowa Electric's attempt to assert its subrogation claim separately from the injured employees' claim is an attempt to split a cause of action, a principle long recognized by the Iowa Supreme Court as improper."). "The rule against splitting a cause of action is intended to prevent multiple actions on the same cause of action, and to protect defendants against fragmented litigation and the possibility of conflicting outcomes." 1A C.J.S. Actions § 226.

"Obviously, this rule is for the benefit of the defendant, in order that he may not be subjected to a multiplicity of actions arising out of the same cause." *Louisville*, 269 S.W.2d at 709; *see also Levitt*, 50 Del. at 561, 135 A.2d at 912. The courts therefore require all claims for property damage arising out of a single transaction or occurrence to be brought in a single lawsuit. *See Government Employees Ins. Co. v. Winsett*, 153 S.W.3d 862, 864 (Ky. Ct. App. 2004) ("We begin with the observation that a subrogee's claim is strictly derivative of its

---

[5] A choice of law clause such as the one contained in paragraph XX of the Distribution Agreement is enforceable. *See KFC Corp. v. Darsam Corp.*, 543 F. Supp. 222, 223 (W.D. Ky 1982); *Restatement (Second) of Conflict of Laws* § 187. SYGMA notes that Castellini, who was supplying all of the produce distributed under the Distribution Agreement, is headquartered in Wilder, Kentucky. Similarly, Chi-Chi's was headquartered in Louisville, KY.

6

subrogor *with no right to independently maintain a cause of action as long as the insured is pursuing the claim.*") (emphasis supplied); *see also Louisville*, 269 S.W.2d at 710 (a defendant can require an insured and an insurer to bring a single action together). To the extent the insured and the subrogating insurer both have an interest in the claim, they will divide the proceeds at the end of the case. *See Catalfano*, 55 Del. at 473, 188 A.2d at 358; *Louisville*, 269 S.W.2d at 709; *Works v. Winkle*, 234 S.W.2d 312, 316 (Ky. 1950). *See also United States v. Aetna Casualty & Surety Co.*, 338 U.S. 366, 381 (1949) ("in cases of partial subrogation [] both insured and insurer 'own' portions of the substantive right").

"Since a subrogee derives his or her right to recovery from the injured party, the prohibition against splitting a cause of action is no less binding where the interest of a subrogee are involved." 1A C.J.S. Actions § 248. As a result, "the rule against splitting a cause of action is violated where both an insurer, which has paid a portion of a loss under its insurance policy and is subrogating to the insured's rights, and the insured, who has not fully recovered for the loss, pursue separate actions against the tortfeasor who is [allegedly] responsible for the loss." 1A C.J.S. Actions § 248.

In *Poloron Prods., Inc. v. Lybrand Ross Bros. & Montgomery*, 66 F.R.D. 610, 614 (S.D.N.Y. 1975), *rev'd on other grounds,* 534 F.2d 1012 (2d Cir. 1975), the Court considered whether Rule 41 barred a third suit where the first lawsuit was filed by the party with a 75% interest in the claim, and a second lawsuit was filed by the party with the 25% interest in the claim. *See Poloron*, 66 F.R.D. at 614. The *Poloron* Court held that the two dismissal rule applied, and further suits were barred. *See Poloron*, 66 F.R.D. at 614. The same result should obtain in this case, where suits were filed, and then dismissed by Rule 41 notice, by an insured and an insurer who both had interests in the same claim. *Cf. Lake at Las Vegas*, 933 F.2d at 728

•

(defendants that are "substantially the same" can take advantage of the "two dismissal rule" even

if different defendants were sued in each case); *Manning v. South Carolina Department of*

*Highway and Public Transportation*, 914 F.2d 44, 48 (4th Cir. 1990) (defendants and their privies

can take advantage of the "two dismissal rule").

      A determination that Chi-Chi's and its subrogating insurer were the same plaintiff

for Rule 41 purposes would also comport with Judge McVerry's decision in *Funkhouser v. Chi-*

*Chi's, Inc.*, 2005 WL 2545300 (W.D. Pa. October 7, 2005). In *Funkhouser*,

> Chi-Chi's argue[d] that although the Delaware bankruptcy action
> has been brought in the name of "Chi-Chi's," that claim was
> brought by one of the Company's insurance companies whereas
> the instant case was brought by the attorneys retained directly by
> Chi-Chi's. Therefore, according to this argument, the parties in the
> two actions are not identical.

*Funkhouser*, 2005 WL 2545300 at *1. Judge McVerry rejected this argument, finding that the

lawsuit filed "directly" by Chi-Chi's and the lawsuit filed in Chi-Chi's name by Chi-Chi's

subrogating insurer asserted the "same rights," based upon the "same facts," and sought the

"same relief." *See Funkhouser*, 2005 WL 2545300 at *2.[6] Judge McVerry's conclusion that

Chi-Chi's and its subrogating insurers had sought the same relief was well supported, since "the

courts are in agreement that, absent a statute to the contrary, the insured is otherwise entitled to

bring a lawsuit, both on his or her own behalf and on behalf of the insurer, against the [alleged]

wrongdoer for the insured's entire loss." 2 Insurance Claims and Disputes 4th § 10:9. *See also*

•

---

[6] The Bankruptcy Court refused to follow *Funkhouser* because the Bankruptcy Court thought
*Funkhouser* "did not make a determination as to the real party in interest in each action." *Chi-Chi's*, 338 B.R. at 626. SYGMA respectfully suggests that the *Funkhouser* Court's holding that
Chi-Chi's and its subrogating insurer had asserted the "same rights," based upon the "same
facts," and sought the "same relief," *see Funkhouser*, 2005 WL 2545300 at *2, is sufficient for
the application of Rule 41. While SYGMA acknowledges the differences between Rule 41 and
the first filed rule, SYGMA submits that the underlying policy – protecting a defendant against
multiple lawsuits – is the same.

*Chovan v. Wheeling-Pittsburgh Steel Corp.*, 373 A.2d 136, 139 n.3 (Pa. Commw. Ct. 1977) ("an employer may assert a subrogation claim on the behalf of its insurance carrier").

SYGMA notes that this case, with its convoluted procedural posture, is precisely the sort of morass the rule against splitting causes of action is designed to avoid. Since Chi-Chi's and its subrogating insurers cannot agree on how (or where) to proceed, two of Chi-Chi's subrogating insurers – Scottsdale Insurance Company and Federal Insurance Company – asked the California State Court to enjoin Chi-Chi's from proceeding with the arbitration. In their briefs, those subrogating insurers admitted that "Because the rule against splitting a cause of action *requires* insured and insurer to bring one action together, Chi-Chi's unilateral decision to pursue arbitration in Pennsylvania under Kentucky law *requires* Scottsdale to intervene in the arbitration or risk being barred from pursuing any of the defendants submitting to arbitration, including SYSCO." Scottsdale and Federal's February 28, 2006 brief at 3, a copy of which is attached as Exhibit B (emphasis supplied).

Not only did Chi-Chi's subrogating insurers admit that they were required to join with Chi-Chi's in bringing one suit, they also admitted that "the rule against splitting a cause of action forbids an insurer and insured to proceed independently." *See* Scottsdale and Federal's April 7, 2006 brief at 8, a copy of which is attached as Exhibit C. Indeed, Eldon Edson, counsel for Scottsdale, admitted that Chi-Chi's and its subrogating insurers were bringing the same claim when he swore that "Chi-Chi's unilateral decision to pursue private arbitration effectively compels Scottsdale to arbitrate its subrogation claims." *See* Edson's Declaration in Support of Scottsdale and Federal's April 7, 2006 brief at ¶ 8, a copy of which is attached as Exhibit C. The Court should therefore hold that Chi-Chi's and its subrogating insurers are one party for Rule 41 purposes.

## IV.    CONCLUSION.

Although Chi-Chi's and its subrogating insurers each have an interest in the

claims arising out of the hepatitis A outbreak, they cannot bring separate claims.  Instead, Chi-

Chi's and its subrogating insurers are required to bring the claim together.  They did so on two

prior occasions.  Rule 41 precludes them from doing so a third time.  SYGMA therefore requests

that this Court reverse the Bankruptcy Court, and enjoin further proceedings against SYGMA

under Rule 41.

Respectfully submitted,

Dated: May 26, 2006                              COZEN O'CONNOR

By:        _____
                  Mark E. Felger (DE No. 3919)
                  Jeffrey R. Waxman (DE No. 4159)
                  1201 North Market Street, Suite 1400
                  Wilmington, DE  19801
                  Telephone:  (302) 295-2000
                  Facsimile:  (302) 295-2013
                              -- and --
                  Philip G. Kircher
                  Aaron Krauss
                  1900 Market Street
                  Philadelphia, PA  19103-3508
                  Telephone:  (215) 665-4181
                  Facsimile:  (215) 701-2381

                  *Attorneys for Sysco Corporation and*
                  *The SYGMA Network, Inc.*

# EXHIBIT A

# CHART OF THE ALLEGATIONS IN THE THREE COMPLAINTS FILED AGAINST SYGMA

| THE FIRST COMPLAINT | THE SECOND COMPLAINT | THE THIRD COMPLAINT |
|---|---|---|
| *Chi-Chi's, Inc. v. Castellini Co., LLC, Sysco Corp, & The SYGMA Network, Inc., Arb. Pro. No. 04-54170*<br><br>**July 20, 2004** | *Chi-Chi's, Inc. v. Castellini Co., LLC, Sysco Corp, & The SYGMA Network, Inc., Arb. Pro. No. 04-57064*<br><br>**November 16, 2004** | *Chi-Chi's, Inc. v. Sysco Corporation and The SYGMA Network, Inc., Arbitration before Thomas Rutter*<br><br>**September 8, 2005** |
| In addition, Chi-Chi's has received more than 300 claims, has been named as a defendant in numerous lawsuits, and anticipates being subjected to future claims and lawsuits, seeking damages from Chi-Chi's as a result of bodily injury and death allegedly caused by human consumption of Hepatitis A-contaminated green onions at the Beaver Valley Chi-Chi's ("the bodily injury actions"). As a result, Chi-Chi's has incurred and continues to incur, additional expenses, including but not limited to payment of claims, attorney's fees, and other litigation costs and expenses. (¶ 14) | As a direct and proximate result of the outbreak, Chi-Chi's has received more than 650 claims, has been named as a defendant in numerous lawsuits, and anticipates being subjected to future claims and lawsuits, seeking damages from Chi-Chi's as a result of bodily injury and death allegedly caused by human consumption of Hepatitis A-contaminated green onions at the Beaver Valley Chi-Chi's ("the bodily injury actions"). As a result, Chi-Chi's has incurred and continues to incur, additional expenses, including but not limited to payment of claims, attorney's fees, and other litigation costs and expenses. (¶ 13) | In addition, Chi-Chi's has received more than 300 claims, has been named as a defendant in numerous lawsuits, and may be subjected to future claims and lawsuits, seeking damages from Chi-Chi's as a result of bodily injury and death allegedly caused by human consumption of Hepatitis A-contaminated green onions at the Beaver Valley Chi-Chi's ("the bodily injury actions"). As a result, Chi-Chi's has incurred and continues to incur, additional expenses, including but not limited to payment of claims, attorney's fees, and other litigation costs and expenses. (¶ 8) |
| Plaintiff Chi-Chi's has received more than 300 claims, has been named as a defendant in numerous lawsuits, and anticipates being subjected to future claims and lawsuits, seeking damages from Chi-Chi's as a result of bodily | Chi-Chi's has received more than hundreds of claims, has been named as a defendant in numerous lawsuits, and anticipates being subjected to future claims and lawsuits, seeking damages from Chi-Chi's as a result of bodily | Claimant Chi-Chi's has received more than 300 claims, has been named as a defendant in numerous lawsuits, and may be subjected to future claims and lawsuits, seeking damages from Chi-Chi's as a result of bodily injury and |

| | | |
|---|---|---|
| injury and death allegedly resulting from Hepatitis A in relation to consumption of green onions at the Beaver Valley Chi-Chi's. (¶ 61)<br><br>To the extent plaintiffs in the bodily injury actions have suffered damages, such damages were caused, entirely or in part, by defendants herein, and each of them. (¶ 62)<br><br>By reason of the foregoing, to the extent plaintiff Chi-Chi's incurs any expenses, fees, costs or attorneys fees in the defense of bodily injury claims relating to the consumption of Hepatitis A-contaminated green onions, or enters into a settlement in any such claim or action, plaintiff is entitled to judgment against defendants, and each of them, for all or part of any such sums incurred by reason of said judgment or settlement and for expenses of investigation, attorney's fees, court costs and other fees incurred in the defense of those claims. (¶ 63)<br><br>Plaintiff Chi-Chi's has received more than 300 claims, has been named as a defendant in numerous lawsuits, and anticipates being subjected to future claims and lawsuits, seeking damages from Chi-Chi's as a result of bodily injury and death allegedly resulting from | injury and death allegedly resulting from Hepatitis A in relation to consumption of green onions at the Beaver Valley Chi-Chi's. (¶ 59)<br><br>To the extent plaintiffs in the bodily injury actions have suffered damages, such damages were caused, entirely or in part, by defendants herein, and each of them. (¶ 60)<br><br>By reason of the foregoing, to the extent plaintiff Chi-Chi's incurs any expenses, fees, costs or attorneys fees in the defense of bodily injury claims relating to the consumption of Hepatitis A-contaminated green onions, or enters into a settlement in any such claim or action, plaintiff is entitled to judgment against defendants for all or part of any such sums incurred by reason of said judgment or settlement and for expenses of investigation, attorney's fees, court costs and other fees incurred in the defense of those claims. (¶ 61)<br><br>Chi-Chi's has received hundreds of claims, has been named as a defendant in numerous lawsuits, and anticipates being subjected to future claims and lawsuits, seeking damages from Chi-Chi's as a result of bodily injury and death allegedly resulting from Hepatitis A in | death allegedly resulting from Hepatitis A in relation to consumption of green onions at the Beaver Valley Chi-Chi's. (¶ 44)<br><br>To the extent claimants in the bodily injury claims or actions have suffered damages, such damages were caused, entirely or in part, by respondents herein. (¶ 45)<br><br>By reason of the foregoing, to the extent claimant Chi-Chi's has incurred or incurs any future expenses, fees, costs or attorneys fees in the defense of bodily injury claims relating to the consumption of Hepatitis A-contaminated green onions, or has entered or does enter into a settlement in any such claim or action, claimant is entitled to judgment against respondents Sysco and Sygma for all or part of any such sums incurred by reason of such judgment or settlement and for expenses of investigation, attorney's fees, arbitration costs and other fees incurred in the defense of those claims. (¶ 46)<br><br>Claimant Chi-Chi's has received more than 300 claims, has been named as a defendant in numerous lawsuits, and may be subjected to future claims and lawsuits, seeking damages from Chi-Chi's as a result of bodily injury and death allegedly resulting from Hepatitis |

| | | |
|---|---|---|
| Hepatitis A in relation to consumption of green onions at the Beaver Valley Chi-Chi's. (¶ 66) | relation to consumption of green onions at the Beaver Valley Chi-Chi's. (¶ 64) | A in relation to consumption of green onions at the Beaver Valley Chi-Chi's. (¶ 49) |
| To the extent plaintiff Chi-Chi's is legally responsible for any of the damages claimed in bodily injury actions, and assuming plaintiff is not entitled to total indemnity for all such sums which plaintiff may be required to pay, plaintiff would be only partially responsible for the alleged injuries, damages and other detriment allegedly suffered or sustained by the bodily injury claimants. (¶ 67) | To the extent Chi-Chi's is legally responsible for any of the damages claimed in bodily injury actions, and assuming Chi-Chi's is not entitled to total indemnity for all such sums which Chi-Chi's may be required to pay, Chi-Chi's would be only partially responsible for the alleged injuries, damages and other detriment allegedly suffered or sustained by the bodily injury claimants. (¶ 65) | To the extent claimant Chi-Chi's is legally responsible for any of the damages claimed in bodily injury actions, and assuming claimant is not entitled to total indemnity for all such sums which claimant may be required to pay, claimant would be only partially responsible for the alleged injuries, damages and other detriment allegedly suffered or sustained by the bodily injury claimants. (¶ 50) |
| Any loss, injury, damages or detriment allegedly suffered or sustained by the bodily injury claimants was directly and proximately caused and contributed to by the primary, active and direct responsibility of each of the defendants herein. (¶ 68) | Any loss, injury, damages or detriment allegedly suffered or sustained by the bodily injury claimants was directly and proximately caused and contributed to by the primary, active and direct responsibility of each of the defendants herein. (¶ 66) | Any loss, injury, damages or detriment allegedly suffered or sustained by the bodily injury claimants was directly and proximately caused and contributed to by the primary, active and direct responsibility of respondents herein. (¶ 51) |
| Any damages or other detriment allegedly suffered or sustained by the bodily injury plaintiffs should therefore be apportioned among plaintiff and defendants herein on the basis of their respective percentage of fault, if any, in contributing to such damage or detriment. (¶ 69) | Any damages or other detriment allegedly suffered or sustained by the bodily injury plaintiffs should therefore be apportioned among the defendants herein on the basis of their respective percentage of fault, if any, in contributing to such damage or detriment. (¶ 67) | Any damages or other detriment allegedly suffered or sustained by the bodily injury plaintiffs should therefore be apportioned among claimant and respondents herein on the basis of their respective percentage of fault, if any, in contributing to such damage or detriment. (¶ 52) |
| Based on the foregoing, defendants, and | Based on the foregoing, defendants have | Based on the foregoing, respondents |

| | | |
|---|---|---|
| each of them, have a duty to contribute to and indemnify plaintiff Chi-Chi's for any recovery any bodily injury plaintiff may realize as against plaintiff Chi-Chi's in excess of that part of the damages directly proportionate to plaintiff Chi-Chi's percentage of fault, if any. (¶ 70)<br><br>WHEREFORE, plaintiff CHI-CHI'S, INC. prays for judgment against defendants CASTELLINI COMPANY, SYSCO CORPORATION, and SYGMA NETWORK, INC. as follows:<br>1. For past and future general, incidental and consequential damages in a sum not yet fully ascertained and according to proof at trial;<br>2. For attorneys' fees and costs;<br>3. For pre- and post-judgment interest;<br>4. For indemnity;<br>5. For contribution;<br>6. For costs of suit; and<br>7. For such other and further relief as the Court may deem just.<br>(*ad damnum* clause) | a duty to contribute to and indemnify Chi-Chi's for any recovery any bodily injury plaintiff may realize as against Chi-Chi's in excess of that part of the damages directly proportionate to Chi-Chi's percentage of fault, if any. (¶ 68)<br><br>WHEREFORE, Chi-Chi's prays for judgment against defendants Castellini Company, Sysco Corporation, and Sygma Network, Inc. as follows:<br>1. For past and future general, incidental and consequential damages in a sum not yet fully ascertained and according to proof at trial;<br>2. For attorneys' fees and costs;<br>3. For pre- and post-judgment interest;<br>4. For indemnity;<br>5. For contribution;<br>6. For costs of suit; and<br>7. For such other and further relief as the Court may deem just.<br>(*ad damnum* clause) | Sysco and Sygma have a duty to contribute to and indemnify claimant Chi-Chi's for any recovery any bodily injury plaintiff may realize as against claimant Chi-Chi's in excess of that part of the damages directly proportionate to claimant Chi-Chi's percentage of fault, if any. (¶ 53)<br><br>WHEREFORE, claimant CHI-CHI'S, INC. prays for judgment against respondents SYSCO CORPORATION and SYGMA NETWORK, INC. as follows:<br>1. For past and future general, incidental and consequential damages in a sum not yet fully ascertained and according to proof at arbitration;<br>2. For attorneys' fees and costs;<br>3. For pre- and post-judgment interest;<br>4. For indemnity;<br>5. For contribution;<br>6. For costs of suit; and<br>7. For such other and further relief as the Arbitrator may deem just.<br>(*ad damnum* clause) |

# EXHIBIT B

02/28/2006 16:21 FAX                                              ☎036/075

1   SHERYL W. LEICHENGER (SBN 161688)
    ELDON S. EDSON (SBN 168869)
2   TAM T. GLUNT (SBN 225235)
    SELMAN BREITMAN LLP
3   11766 Wilshire Boulevard, Sixth Floor
    Los Angeles, CA  90025
4   Telephone: (310) 445-0800
    Facsimile:  (310) 473-2525
5
    Attorneys for Plaintiff
6   SCOTTSDALE INSURANCE COMPANY

7   STEPHEN D. LUCAS (SBN 074726)
    PATRICIA JO CUSTER (SBN 128703)
8   LUCAS & HAVERKAMP
    A Professional Corporation
9   Attorneys at Law
    3636 Nobel Drive, Suite 200
10  San Diego, California 92122
    Telephone:   (858) 535-4000
11  Facsimile:    (858) 535-4001

12  Attorneys for Plaintiff
    FEDERAL INSURANCE COMPANY
13

14             SUPERIOR COURT OF CALIFORNIA

15                 COUNTY OF VENTURA

16

17  SCOTTSDALE INSURANCE COMPANY,       CASE NO.  CIV236710 (Master File)

18            Plaintiff,                NOTICE OF MOTION AND MOTION FOR
                                        PRELIMINARY INJUNCTIONS;
19       v.                             MEMORANDUM OF POINTS AND
                                        AUTHORITIES; DECLARATION OF
20  CASTELLINI COMPANY LLC,             ELDON S. EDSON
    BOSKOVICH FARMS, INC., APIO, INC.,
21  APIO FRESH, LLC, NEWSTAR FRESH
    FOODS, LLC and DOES 1 through 100,  Date   :   March 1, 2006
22                                      Time   :   8:30 a.m.
            Defendants.                 Dept.  :   43
23                                      Judge  :   Honorable Ken W. Riley

24                                      Complaint Filed   :    October 12, 2005

25

26

27

28

302254.1 380.18932
                                        i

1
2  TO THE HONORABLE COURT, ALL PARTIES HEREIN, AND TO THEIR
3  ATTORNEYS OF RECORD:
4       PLEASE TAKE NOTICE that on _____ at _____ a.m. in Dept. 43 of the
5  above-entitled court, located at 800 South Victoria Avenue, Ventura, CA 93009, plaintiff
6  Scottsdale Insurance Company ("Scottsdale"), by and through its attorneys of record,
7  hereby moves for a preliminary injunction against Chi-Chi's, Inc. ("Chi-Chi's"), enjoining
8  Chi-Chi's and its employees, agents, and persons acting with it or on its behalf, from
9  continuing to pursue arbitration against SYSCO Corporation ("SYSCO") in Pennsylvania.
10      This motion is made pursuant to the provisions of Code of Civil Procedure section
11 527 on the grounds that:
12      1) as a result of the rule prohibiting splitting a cause of action, allowing Chi-Chi's to
13 continue pursuing arbitration against SYSCO in Pennsylvania under Kentucky law
14 ("Arbitration") effectively compels Scottsdale to arbitrate its subrogation claims against
15 SYSCO, even though Scottsdale is not a party to an arbitration agreement with SYSCO;
16      2) Scottsdale will suffer irreparable injury if Chi-Chi's is not enjoined from
17 pursuing arbitration against SYSCO in Pennsylvania because Scottsdale would be forced
18 to forfeit its right to have its subrogation claims decided by a California jury or risk being
19 precluded from seeking any recovery against any defendant submitting to arbitration with
20 Chi-Chi's; and
21      3) taking into account the evidence presently available, there is a strong probability
22 that Scottsdale will prevail on the merits.
23
24
25
26
27
28

Selman Breitman LLP
ATTORNEYS AT LAW

ii
NOTICE OF SCOTTSDALE'S MOTION FOR PRELIMINARY INJUNCTION

302254.1  390.18932

1

2    This motion for preliminary injunction is based upon the accompanying

3    Memorandum of Points and Authorities, the Declaration of Eldon S. Edson, all

4    documents contained in the court's file, and upon such other arguments as may be

5    presented at the time of the hearing on this matter.

6

7    DATED: February 28, 2006          SELMAN BREITMAN LLP

8

9                                      By:_____

10                                        SHERYL W. LEICHENGER
                                          ELDON S. EDSON
                                          TAM T. GLUNT
11                                     Attorneys for Plaintiff
                                       SCOTTSDALE INSURANCE COMPANY

12

13   DATED: February 28, 2006          LUCAS & HAVERKAMP

14

15                                     By:_____

16                                        STEPHEN LUCAS
                                          PATRICIA JO CUSTER
                                       Attorneys for Plaintiff
17                                     FEDERAL INSURANCE COMPANY

18

19

20

21

22

23

24

25

26

27

28

                                          iii

NOTICE OF SCOTTSDALE'S MOTION FOR PRELIMINARY INJUNCTION

502254.1 380.18932

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

It has now come to light that Chi-Chi's, in utter disregard of (1) the potential adverse impact on the subrogation rights of Scottsdale and Chi-Chi's other insurance carriers, Federal Insurance Company ("Federal") and Empire Indemnity Company ("Empire") (collectively, "The Insurers"), and (2) the forced forfeiture of The Insurers' right to trial by jury, intends to pursue arbitration against SYSCO, one of many in the chain of distribution of the Hepatitis A-contaminated green onions. As Scottsdale is not a signatory to the arbitration agreement between Chi-Chi's and SYSCO, permitting Chi-Chi's to continue to pursue arbitration against SYSCO would unfairly deprive Scottsdale of its right to a jury trial against the named defendants and improperly force Scottsdale to arbitrate its subrogation claims. For these reasons, a preliminary injunction should issue against Chi-Chi's, enjoining Chi-Chi's and its employees, agents, and persons acting with it or on its behalf, from continuing to pursue arbitration against SYSCO in Pennsylvania..

### II.    STATEMENT OF FACTS

This subrogation action arises out of a Hepatitis A outbreak in western Pennsylvania ("the Outbreak"), the alleged source of which was human consumption of Hepatitis A-contaminated green onions that were served raw to Chi-Chi's customers. Each of SYSCO and defendants Castellini, Boskovich Farms, Inc., Apio, Inc., Apio Fresh LLC, and Newstar Fresh Foods, LLC, having been within the chain of distribution, was a source of the Hepatitis A-contaminated green onions provided to Chi-Chi's.

Scottsdale together with Federal Insurance Company ("Federal") and Empire Indemnity Company ("Empire"), Chi-Chi's other insurance carriers, (collectively, "The Insurers") have paid settlements totaling approximately $35 million to resolve claims made against Chi-Chi's by its customers.

On September 23, 2005, Chi-Chi's counsel met with counsel for The Insurers to discuss the potential advantages and disadvantages of the various possible venues for each party's respective actions against Castellini. As a result of the September 23, 2005

Selman Breitman LLP
ATTORNEYS AT LAW

302254.1 380.18932

1

**NOTICE OF SCOTTSDALE'S MOTION FOR PRELIMINARY INJUNCTION**

1    meeting, counsel for Chi-Chi's represented to The Insurers that the parties' respective

2    actions should be filed in Ventura County, California. However, unbeknownst to The

3    Insurers, Chi-Chi's had apparently already reached an agreement to arbitrate with SYSCO

4    as of August 31, 2005 and had apparently filed its demand for arbitration with the

5    American Arbitration Association on or about September 8, 2005. Edson Decl., Exhibits

6    A and B, respectively. At no time during the September 23, 2005 meeting did Chi-Chi's

7    counsel inform the Insurers that Chi-Chi's had already made a decision to pursue SYSCO

8    in private arbitration. Once The Insurers were made aware of Chi-Chi's demand for

9    arbitration and questioned Chi-Chi's about its intentions regarding arbitration, Chi-Chi's

10   led The Insurers to believe that any arbitration proceeding would likely be stayed by either

11   SYSCO or Chi-Chi's.

12        On Tuesday, February 14, 2006, the Pennsylvania arbitrator set a motion cut-off

13   date of March 10, 2006 for all motions to intervene in the Pennsylvania Arbitration.

14   Additionally, during a February 14, 2006 telephone conference with the Pennsylvania

15   arbitrator, Castellini, through counsel, represented that Castellini was considering whether

16   it would intervene in the Pennsylvania arbitration.

17   III.   **SCOTTSDALE WILL BE IRREPARABLY HARMED BY BEING**

18          **EFFECTIVELY COMPELLED TO ARBITRATE ITS SUBROGATION**

19          **CLAIMS IN PENNSYLVANIA UNLESS CHI-CHI'S IS ENJOINED FROM**

20          **PURSUING ARBITRATION AGAINST SYSCO.**

21        Where the insured has only partially been compensated for a loss, both the insurer

22   and insured have an interest in the right of action against the responsible party, i.e., the

23   insurer has the right to the amount paid to the insured and the insured has the right to the

24   balance of the loss. *Hodge v. Kirkpatrick Develop., Inc.* (2005) 130 Cal.App.4th 540, 551.

25   The insurer who has compensated its insured for a loss has the burden of protecting its

26   subrogation rights. See *Allstate Ins. Co. v. Mel Rapton, Inc.* (2000) 77 Cal.App.4th 901,

27   913. In partial subrogation cases, a suit by either the insurer or insured alone would violate

28   the rule against "splitting" a cause of action because both have an interest in the claim.

*Selman Breitman LLP*
*ATTORNEYS AT LAW*

1    *Hodge v. Kirkpatrick Develop., Inc., supra,* 130 Cal.App.4th at p. 551.

2            In this case, Scottsdale and the other insurers paid settlements in excess of $30

3    million to resolve claims made against Chi-Chi's by its customers. As Chi-Chi's claims

4    that it suffered millions more in alleged "business" losses, Scottsdale and the other insurers

5    are only partially subrogated to Chi-Chi's. Consequently, any suit maintained by either the

6    insurer or insured alone would violate the rule against "splitting" a cause of action.

7            On or about September 8, 2005, Chi-Chi's commenced private arbitration against

8    SYSCO in Pennsylvania without Scottsdale's knowledge or consent. Despite leading

9    Scottsdale to believe that Chi-Chi's agreed that Ventura, California was the proper venue

10    for the filing of the now consolidated actions against Castellini and the other defendants,

11    Chi-Chi's had already taken steps to pursue SYSCO in private arbitration in Pennsylvania.

12            Because the rule against splitting a cause of action requires insured and insurer to

13    bring one action together, Chi-Chi's unilateral decision to pursue arbitration in

14    Pennsylvania under Kentucky law requires Scottsdale to intervene in the arbitration or risk

15    being barred from pursuing any of the defendants submitting to arbitration, including

16    SYSCO. Therefore, even though Scottsdale never contracted for arbitration, Chi-Chi's

17    unilateral decision to pursue private arbitration effectively compels Scottsdale to arbitrate

18    its subrogation claims.

19    **IV.    AS AN INSURER IS NOT BOUND BY ITS INSURED'S AGREEMENT TO**

20    **        ARBITRATE, SCOTTSDALE SHOULD NOT BE COMPELLED TO**

21    **        ARBITRATE AGAINST SYSCO.**

22            The right to arbitration is contractual. *Fontana Teachers Assn. v. Fontana Unified*

23    *School Dist.* (1988) 201 Cal.App.3d 1517, 1521; Code Civ. Proc., § 1281.2. A party

24    cannot be compelled to submit a dispute to arbitration unless he has agreed in writing to do

25    so. *Berman v. Renart Sportswear Corp.* (1963) 222 Cal.App.2d 385, 388. While

26    arbitration is a favored method of resolving disputes, the policy favoring arbitration does

27    not overcome the necessity for a contract to arbitrate (*Victoria v. Superior Court* (1985) 40

28    Cal.3d 734, 738-739) and does not extend to those who are not parties to such an

**NOTICE OF SCOTTSDALE'S MOTION FOR PRELIMINARY INJUNCTION**

Selman Breitman LLP
ATTORNEYS AT LAW

1    agreement (*Rhodes v. California Hospital Medical Center* (1978) 76 Cal.App.3d 606,

2    609).

3              There are six exceptions to the general rule that a nonsignatory may neither compel

4    arbitration nor be compelled to arbitrate: (1) where there is sufficient identity of parties; (2)

5    where one has acted as an agent for a signatory; (3) where one is estopped because he has

6    voluntarily joined an arbitration proceeding; (4) where an individual partner is bound by

7    his partnership's agreement; (5) where the person urging enforcement can show he is a

8    third party beneficiary of the arbitration agreement; or (6) where a construction contract or

9    subcontract incorporates an arbitration procedure found in a related contract. *Benasra v.*

10   *Marciano* (2001) 92 Cal.App.4th 987, 990-992.

11             However, status as a subrogated insurer of a signatory insured does not constitute an

12   exception to the general rule because there is insufficient identity of parties as between the

13   insurer and its insured.  See *Valley Casework, Inc. v. Comfort Construction, Inc.* (1999) 76

14   Cal.App.4th 1013, 1021-1022.

15             Significantly, Scottsdale is not a signatory to the arbitration agreement between

16   SYSCO and Chi-Chi's.  Additionally, none of the exceptions to the general rule applies

17   here.  Even though Scottsdale is subrogated to Chi-Chi's, there lacks a sufficient identity of

18   parties between Chi-Chi's and Scottsdale such that Scottsdale should not be bound by the

19   arbitration agreement.  See *Valley Casework, Inc. v. Comfort Construction, Inc.* (1999) 76

20   Cal.App.4th at pp. 1021-1022 (holding that status as a subrogated insurer of a signatory

21   insured does not constitute an exception to the general rule because there is insufficient

22   identity of parties as between the insurer and its insured).  Additionally, Scottsdale is

23   neither Chi-Chi's agent with respect to the contract between SYSCO and Chi-Chi's nor an

24   intended third-party beneficiary of such contract (i.e., Scottsdale has not attempted to gain

25   any personal benefit from Chi-Chi's contract with SYSCO).  Furthermore, Scottsdale has

26   not voluntarily joined the Pennsylvania arbitration proceeding and this action does not

27   involve a construction contract.  Thus, the public policy favoring arbitration does not

28   overcome the fact that Scottsdale is not a party to the arbitration agreement.

Selman Breitman LLP
ATTORNEYS AT LAW

4

NOTICE OF SCOTTSDALE'S MOTION FOR PRELIMINARY INJUNCTION

1      As nonparties to an arbitration agreement cannot be compelled to arbitrate a dispute

2  that they have not agreed to resolve by arbitration (*County of Contra Costa v. Kaiser*

3  *Foundation Health Plan, Inc.* (1996) 47 Cal. App. 4th 237, 245), Scottsdale should not be

4  compelled to arbitrate its claims against SYSCO or Castellini in Pennsylvania under

5  Kentucky law.

6  **V.**    **BECAUSE SCOTTSDALE CANNOT BE COMPELLED TO ARBITRATE**

7        **ITS SUBROGATION CLAIMS, CHI-CHI'S MUST BE ENJOINED FROM**

8        **PURSUING THE PENDING ARBITRATION AGAINST SYSCO.**

9      California courts have approved injunctive relief to prevent threatened arbitration

10  where grounds exist which would defeat a petition to compel arbitration. *N.A.M.E.S. v.*

11  *Singer* (1979) 90 Cal.App.3d 653; *Windsor Mills, Inc. v. Collins & Aikman Corp.* (1972)

12  25 Cal.App.3d 987 (*Windsor Mills*); *California State Council of Carpenters v. Superior*

13  *Court* (1970) 11 Cal.App.3d 144, 156. Indeed, preliminarily enjoining defendant from

14  continuing to prosecute arbitration proceedings in another state is appropriate where

15  plaintiff never agreed to arbitrate its claims in the first instance. *Windsor Mills, supra,* 25

16  Cal.App.3d at p. 991.

17      In *Windsor Mills,* plaintiff carpet manufacturer contracted with defendant yarn

18  manufacturer to supply yarn until a dispute arose as to its quality. *Id.* at p. 989. As a result

19  of the dispute, defendant filed a demand for arbitration in New York with the American

20  Arbitration Association. *Id.* at p. 990. Subsequently plaintiff filed suit in California

21  alleging defects in the yarn, and sought to enjoin the pending arbitration. *Ibid.* Finding

22  that there was no agreement by plaintiff to arbitrate, the trial court issued an order granting

23  a preliminary injunction enjoining defendant from prosecuting arbitration proceedings

24  during the pendency of plaintiff's action. *Id.* at p. 991. The appellate court affirmed the

25  trial court judgment, reasoning that a written agreement to arbitrate was legally required.

26  *Id.* at p. 996.

27      In the case at bar, Scottsdale is subrogated to Chi-Chi's. As shown above,

28  Scottsdale is not a signatory to the arbitration agreement and thus cannot be forced to

*Selman Breitman LLP*
*ATTORNEYS AT LAW*

1   arbitrate its claims against SYSCO. Because a strong basis exists which would defeat a

2   petition to compel arbitration, a preliminary injunction enjoining Chi-Chi's from

3   prosecuting arbitration proceedings should issue.

4   VI.  **AS ALLOWING CHI-CHI'S TO CONTINUE PURSUING ARBITRATION**

5        **WOULD RESULT IN SCOTTSDALE'S FORFEITURE OF ITS RIGHT TO**

6        **A JURY TRIAL, AN INJUNCTION SHOULD ISSUE.**

7            Traditionally, when deciding whether or not to issue a preliminary injunction, trial

8   courts evaluate two interrelated factors. *Cohen v. Board of Supervisors* (1985) 40 Cal.3d

9   277, 286. The first is the likelihood that the plaintiff will prevail on the merits at trial.

10  *Ibid.* The second is the interim harm that the plaintiff is likely to sustain if the injunction

11  were denied, compared to the harm that the defendant is likely to suffer if the preliminary

12  injunction were issued. *Ibid.*

13          Although the trial court has broad discretion to grant or deny a request for a

14  preliminary injunction, it has "no discretion to act capriciously." *Gosney v. State of*

15  *California* (1970) 10 Cal.App.3d 921, 924. The court must exercise its discretion "in favor

16  of the party most likely to be injured." *Ibid.*; *Riviello v. Journeymen Barbers etc. Union*

17  (1948) 88 Cal.App.2d 499, 510. If the denial of an injunction would result in great harm to

18  the plaintiff, and the defendants would suffer little harm if it were granted, then it is an

19  abuse of discretion to deny the preliminary injunction. *Riviello v. Journeymen Barbers etc.*

20  *Union, supra,* 88 Cal.App.2d at p. 510; *Ellis v. American Federation of Labor* (1941) 48

21  Cal.App.2d 440, 446; see also *Isert v. Riecks* (1925) 195 Cal. 569, 576.

22          "[The] right to select a judicial forum, vis-a-vis arbitration, is a "'substantial right,'"

23  not lightly to be deemed waived." *Lawrence v. Walzer & Gabrielson* (1989) 207

24  Cal.App.3d 1501, 1507-1508. By agreeing to arbitration, a valuable right is forfeited.

25  *Ibid.*

26          The first factor in the court's analysis (i.e., interim harm) weighs strongly in favor of

27  issuing the requested injunction. The interim harm to Scottsdale from allowing Chi-Chi's

28  to continue its pursuit of arbitration is substantially greater than the harm, if any, suffered

Selman Breitman LLP
ATTORNEYS AT LAW

502254.1 380.18932

6

1    by either Chi-Chi's or Castellini as a result of the requested injunction. That is, as required

2    by the rule against splitting a cause of action, if Chi-Chi's is permitted to continue pursuing

3    arbitration against SYSCO, Scottsdale will be forced to arbitrate its subrogation claims or

4    potentially lose its rights to pursue any defendant that intervenes, even though Scottsdale

5    never agreed to arbitrate its subrogation claims. There is no adequate legal remedy for

6    Scottsdale's forced forfeiture of its right to a jury trial. On the other hand, if Chi-Chi's is

7    enjoined from pursuing arbitration, Chi-Chi's may dismiss its arbitration complaint without

8    prejudice or continue the arbitration to a date after which the trial in this action has been

9    completed. Additionally, both Chi-Chi's and Scottsdale have commenced suit in the

10   Superior Court of California against Castellini and other defendants, none of which are

11   parties to the arbitration agreement between Chi-Chi's and SYSCO. As a result, all claims

12   arising out of the Hepatitis A-contaminated green onions can be resolved in the present

13   action. Furthermore, allowing both the Pennsylvania arbitration and this action to proceed

14   concurrently risks inconsistent rulings. Moreover, as Scottsdale is in privity with Chi-

15   Chi's, the factual findings made in the Pennsylvania arbitration, including the amount of

16   damages suffered by Chi-Chi's, Scottsdale's insured, pose the risk that unfavorable findings

17   against Chi-Chi's may be used against Scottsdale and Chi-Chi's's other insurers.

18        Likewise, the second factor in the court's analysis (i.e., probability of success on the

19   merits) weighs firmly in favor of issuing the requested injunction. The Insurers have

20   alleged a cause of action for express warranty and implied warranty of fitness for a

21   particular purpose. As the Center for Disease Control reports demonstrate that the

22   employees of Chi-Chi's were not the source of the Hepatitis A contamination and it cannot

23   be reasonably disputed that the Hepatitis A-contaminated green onions were provided by

24   SYSCO and Castellini, The Insurers will most likely prevail on their warranty claims. As

25   such, Scottsdale has a reasonable probability of success on the merits.

26   / / /

27   / / /

28   / / ∧

*(left margin, vertical text)* Selman Breitman LLP   ATTORNEYS AT LAW

302254.1 380.18932

NOTICE OF SCOTTSDALE'S MOTION FOR PRELIMINARY INJUNCTION

VII.   **CONCLUSION**

Based upon the foregoing reasons, Scottsdale respectfully requests the court issue a preliminary injunction, enjoining Chi-Chi's from pursuing SYSCO in arbitration in Pennsylvania as allowing the arbitration to go forward will result in irreparable harm to Scottsdale, and grant such further relief the court deems necessary and proper.

DATED: February 28, 2006            SELMAN BREITMAN LLP

By: _____
        SHERYL W. LEICHENGER
        ELDON S. EDSON
        TAM T. GLUNT
    Attorneys for Plaintiff
    SCOTTSDALE INSURANCE COMPANY

DATED: February 28, 2006            LUCAS & HAVERKAMP

By: _____
        STEPHEN LUCAS
        PATRICIA JO CUSTER
    Attorneys for Plaintiff
    FEDERAL INSURANCE COMPANY

Selman Breitman LLP
ATTORNEYS AT LAW

302254.1 380.18932

NOTICE OF SCOTTSDALE'S MOTION FOR PRELIMINARY INJUNCTION

# DECLARATION OF ELDON S. EDSON

I, ELDON S. EDSON, declare and state as follows:

1.    I am an attorney at law, duly licensed to practice before the courts of the State of California. I am a partner in the law firm of Selman Breitman LLP, attorneys of record for plaintiff Scottsdale Insurance Company ("Scottsdale").

2.    The facts set forth herein are known to me personally, and if called upon to testify, I could and would competently testify thereto. I make this declaration in support of Scottsdale's Motion for Preliminary Injunction.

3.    The instant consolidated action arises out of a Hepatitis A outbreak in western Pennsylvania ("the Outbreak"), the alleged source of which was human consumption of Hepatitis A-contaminated green onions that were served raw to Chi-Chi's customers.

4.    Each of SYSCO and defendants Castellini Company LLC, Boskovich Farms, Inc., Apio, Inc., Apio Fresh LLC, and Newstar Fresh Foods, LLC, having been within the chain of distribution, is alleged to have been a source of the Hepatitis A-contaminated green onions provided to Chi-Chi's.

5.    Scottsdale has paid settlements totaling approximately $15 million to resolve claims made against Chi-Chi's by its customers.

6.    On September 23, 2005, The Insurers' counsel met with Chi-Chi's counsel to discuss the potential advantages and disadvantages of the various possible venues for each party's respective actions against Castellini.

7.    As a result of the September 23, 2005 meeting, counsel for Chi-Chi's represented to The Insurers that the parties' respective actions should be filed in Ventura County, California.

8.    At the time of the September 23, 2005 meeting, Scottsdale was unaware that Chi-Chi's had reached an agreement to arbitrate with SYSCO as of August 31, 2005. Attached hereto as exhibit "A" is a true and correct copy of the stipulation regarding

Selman Breitman LLP
ATTORNEYS AT LAW

9

02/28/2006 16:30 FAX                                                        ⌀048/075

1   arbitration. At no time during the September 23, 2005 meeting did counsel for Chi-Chi's

2   inform Scottsdale that Chi-Chi's had already made a decision to pursue SYSCO in private

3   arbitration.

4       9.      Additionally, at the time of the September 23, 2005 meeting, Scottsdale was

5   unaware that Chi-Chi's had already filed its demand for arbitration with the American

6   Arbitration Association. Attached hereto as exhibit "B" is a true and correct copy of the

7   Arbitration Claim filed by Chi-Chi's.

8       10.     Once Scottsdale was made aware of Chi-Chi's demand for arbitration and

9   questioned Chi-Chi's about its intentions regarding arbitration, Chi-Chi's led Scottsdale to

10  believe that any arbitration proceeding would likely be stayed by either SYSCO or Chi-

11  Chi's.

12      11.     Although Scottsdale communicated to Chi-Chi's its objections to Chi-Chi's

13  decision to pursue arbitration, Chi-Chi's insists upon pursuing arbitration in Pennsylvania

14  against SYSCO, one of many in the chain of distribution of the Hepatitis A-contaminated

15  green onions.

16      12.     Scottsdale never entered into an arbitration agreement with SYSCO.

17      13.     On January 27, 2006, Scottsdale was first informed by counsel for Chi-Chi's

18  that a preliminary hearing in the Pennsylvania Arbitration proceeding would be held on

19  February 9, 2006.

20      14.     On Thursday, February 9, 2006, Scottsdale was informed by counsel for Chi-

21  Chi's that the Pennsylvania arbitrator had set a cut-off date of Monday, February 13, 2006

22  for any motion to intervene in such arbitration.

23      15.     On February 14, 2006, the Pennsylvania arbitrator extended the motion cut-

24  off date to March 10, 2006.

25  ///

26  ///

27  ///

28  ///

302254.1 380.18932

NOTICE OF SCOTTSDALE'S MOTION FOR PRELIMINARY INJUNCTION

1       I declare under penalty of perjury under the laws of the State of California that the

2    foregoing is true and correct.

3       Executed on February 28, 2006, at Los Angeles, California.

4

5

6                               ELDON S. EDSON

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Selman Breitman LLP
ATTORNEYS AT LAW

302254.1  380.18932

11

**NOTICE OF SCOTTSDALE'S MOTION FOR PRELIMINARY INJUNCTION**

02/28/2006 16:31 FAX

☑050/075

**EXHIBIT A**

ADR OPTIONS

ARBITRATION NO. _____

| | | STIPULATION AND ORDER |
|---|---|---|
| CHI-CHI'S, INC., | ) | |
| Claimant | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SYSCO CORPORATION; and SYGMA | ) | |
| NETWORK, INC. | ) | |
| Respondents. | ) | |

Claimant Chi-Chi's, Inc. ("Chi-Chi's") and Respondents Sysco Corporation and Sygma

Network, Inc. (collectively "Sysco"), by and through their respective counsel, stipulate as

follows:

WHEREAS claimant Chi-Chi's has commenced a contractual, binding arbitration

proceeding against Sysco; and

WHEREAS Sysco contends that Chi-Chi's arbitration proceeding is barred by the "two

dismissal rule" of Federal Rule of Civil Procedure 41(a)(1); and

WHEREAS Chi-Chi's contends that the "two dismissal rule" has no application to the

present proceeding; and

WHEREAS Sysco has indicated its intent to commence an action in U.S. federal court for

the purpose of seeking dismissal pursuant to Rule 41(a)(1); and

WHEREAS, the parties wish to expedite the procedure by which the motion and

STIPULATION AND ORDER

arbitration, if necessary, proceed;

IT IS HEREBY STIPULATED, AGREED AND ORDERED AS FOLLOWS:

1.     Chi-Chi's shall file and serve a Complaint in Arbitration within five days of the execution of this agreement by all signatories. The parties agree that Thomas B. Rutter, Esq. shall be appointed as the sole arbitrator. The parties further acknowledge that their contractual agreement requires the arbitration be conducted in accordance with the Commercial Arbitration Rules of the American Arbitration Association ("AAA") "and, to the maximum extent applicable, the Federal Arbitration Act."

2.     Sysco shall, within 15 days of service of the Complaint in Arbitration and for the sole purpose of seeking relief pursuant to the FRCP 41(a)(1) "two dismissal rule," file (I) an adversary proceeding in the U.S. Bankruptcy Court, District of Delaware and (2) any necessary motions to have the FRCP 41(a)(1) matter decided by the court. Chi-Chi's specifically reserves the right to argue that any determination of the applicability of the "two dismissal rule" is properly made by the arbitrator, rather than by the Bankruptcy Court. Sysco specifically reserves all other defenses to Chi-Chi's claims, including, but not limited to, the failure to state a claim upon which relief can be granted.

3.     The parties shall cooperate to ensure that all motions filed by Sysco in the U.S. Bankruptcy Court are heard by the court at the earliest possible time.

4.     The arbitration of this action shall be stayed until such time as the Bankruptcy Court issues any ruling which has the effect of leaving any issue to be decided by the arbitrator. However, to the extent the Bankruptcy Court has issued no ruling on Sysco's motion(s) within 90 days of the execution of this Stipulation and Order by Arbitrator Rutter, Chi-Chi's shall have the right, at any time thereafter, to request a hearing before Arbitrator Rutter for the purpose of

STIPULATION AND ORDER

seeking (1) an immediate lifting of the stay imposed by this paragraph, and (2) the holding of a

preliminary hearing, pursuant to paragraph 5 below. The parties understand that Sysco intends to

strenuously oppose any request by Chi-Chi's to lift the stay prior to a ruling from the bankruptcy

court.

     5.    A preliminary hearing, as that term is used in AAA Rule L-3, shall be held before

Arbitrator Rutter within 10 days of the expiration or termination, for any reason, of the stay

established by paragraph 4 above (including, if applicable, any lifting of the stay granted

pursuant to Chi-Chi's request). The preliminary hearing shall be held pursuant to, and shall

include those topics set forth in, Rule L-3 of the American Arbitration Association Commercial

Arbitration Rules (Procedures for Large, Complex Commercial Disputes). The preliminary

hearing shall also address the arbitration hearing date and whether it would be appropriate for the

arbitrator to hear dispositive motions prior to the arbitration hearing. The parties understand that

Chi-Chi's intends to strenuously oppose any request by Sysco that dispositive motions be heard

prior to the arbitration hearing.

     6.    For timing purposes related to this stipulation, service on counsel by either e-mail

or fax shall be deemed sufficient. Chi-Chi's counsel shall be responsible for promptly notifying

the arbitrator of any decision by the U.S. Bankruptcy Court which affects the provisions of this

stipulation and/or the arbitrator's jurisdiction.

     7.    The parties acknowledge that their contractual agreement provides as follows:

"All fees of the arbitrator and other costs and expenses of the arbitration shall be paid by" Sysco

and Chi-Chi's "equally unless otherwise awarded by the arbitrator; provided, however, that the

non-prevailing party in an arbitration shall pay all reasonable attorneys' fees and expenses

incurred by the prevailing party in connection with the Dispute and the arbitration."

STIPULATION AND ORDER

IT IS SO STIPULATED

Dated: August 31, 2005

GORDON & HOLMES
Frederic L. Gordon, Esq.
Rhonda J. Holmes, Esq.
Douglas J. Billings, Esq.
A. Michael Nalu, Esq.
223 West Date Street
San Diego, CA 92101
Telephone: (619) 696-0444
Facsimile: (619) 696-1144

Counsel for Claimant CHI-CHI'S, INC.

Dated: ___September 1___, 2005

COZEN O'CONNOR
Philip G. Kircher, Esq.
Aaron Krauss, Esq.
1900 Market Street
Philadelphia, PA 19103
Telephone: (215) 665-2000
Facsimile: (215) 665-2013

Counsel for Respondents SYSCO CORPORATION
and SYGMA NETWORK, INC.

IT IS SO ORDERED

Dated: __6 SEPT__, 2005

Thomas B. Rutter, Esq.
Arbitrator

STIPULATION AND ORDER

**EXHIBIT B**

ADR OPTIONS

ARBITRATION

| | |
|---|---|
| CHI-CHI'S, INC., | ) |
| | ) |
| Claimant | ) |
| | ) |
| v. | ) |
| | ) |
| SYSCO CORPORATION; and SYGMA | ) |
| NETWORK, INC. | ) |
| | ) |
| Respondents. | ) |
| | ) |

## ARBITRATION CLAIM

Claimant Chi-Chi's, Inc., by and through its attorneys of record, Gordon and Holmes, hereby alleges as follows:

### I. FACTUAL ALLEGATIONS

1.    Claimant Chi-Chi's, Inc. ("Chi-Chi's") was at all relevant times the owner and operator of a chain of restaurants preparing, serving, and selling food to consumers, primarily for on-site consumption.[1]

2.    At all times relevant herein, respondent SYSCO CORPORATION ("SYSCO") was in the business of supplying and shipping produce and other foods for use in restaurants.

---

[1]    On or about October 8, 2003, Claimant CHI-CHI'S and certain related debtors filed, in the United States Bankruptcy Court, District of Delaware, Voluntary Petitions for relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §101, et seq. The matters, which remain pending, have been consolidated for joint administration in Case No. 03-13063.

20268.1                                                  1

Claimant is informed and believes and thereon alleges that respondent SYGMA NETWORK,

INC. ("SYGMA") is an operating company/subsidiary of respondent SYSCO CORPORATION

and is also in the business of supplying and shipping produce and other foods for use in

restaurants.

       3.     In or about November 2003, an outbreak of Hepatitis A occurred in western

Pennsylvania. More than 650 people became ill and, to date, four individuals have died.

Through epidemiological and statistical analyses, the outbreak was traced to a CHI-CHI'S

restaurant located in Monaca, Pennsylvania ("the Beaver Valley Chi-Chi's"). More specifically,

the analyses led to a determination that the source of the outbreak was human consumption of

Hepatitis A-contaminated green onions which had been used in raw form as an ingredient in

salsa and as a garnish on other dishes served to CHI-CHI'S customers in or about early October

2003. The green onions, which were (unknowingly to CHI-CHI'S) contaminated with Hepatitis

A prior to their delivery to CHI-CHI'S, had been supplied and delivered to the Beaver Valley

Chi-Chi's by respondents SYSCO and SYGMA.

       4.     The presence of Hepatitis A in the green onions rendered the product adulterated,

unsafe, and unfit for human consumption.

       5.     As a direct and proximate result of respondents' supply of adulterated green

onions, CHI-CHI'S suffered immediate property damage including, but not limited to,

contamination of other food products and contamination of surfaces and other areas within the

Beaver Valley Chi-Chi's. As a further direct and proximate result of respondents' supply of

adulterated green onions, the Beaver Valley Chi-Chi's was closed from on or about November 2,

2003 to on or about January 15, 2004.

20268.1                                    2

6.    The outbreak received, and continues to receive, considerable media attention, both in western Pennsylvania and throughout the nation. At the time the outbreak was first publicly reported in or about November 2003, CHI-CHI'S owned and operated approximately 122 restaurants throughout the Midwest, mid-Atlantic and Northeast. As a direct and proximate result of the events described herein, all CHI-CHI'S restaurants have now been permanently closed, causing CHI-CHI'S loss of use of all its restaurants and related damages.

7.    As a direct and proximate result of the outbreak and the attendant publicity, claimant CHI-CHI'S has suffered, and continues to suffer, damages, including but not limited to, property damage, lost profits (relating to the closure of the Beaver Valley Chi-Chi's, the impact of the publicity on CHI-CHI'S other restaurants prior to their closure, and the ultimate closure of all CHI-CHI'S restaurants), costs directly related to the closure and cleaning of the Beaver Valley Chi-Chi's, crisis management expenses, management expenses, attorney's fees, payment of third-party claims and expenses, and loss of goodwill.

8.    In addition, CHI-CHI's has received more than 300 claims, has been named as a defendant in numerous lawsuits, and may be subjected to future claims and lawsuits, seeking damages from CHI-CHI's as a result of bodily injury and death allegedly caused by human consumption of Hepatitis A-contaminated green onions at the Beaver Valley Chi-Chi's ("the bodily injury actions"). As a result, CHI-CHI's has incurred, and continues to incur, additional expenses, including but not limited to payment of claims, attorney's fees, and other litigation costs and expenses.

## II. HISTORICAL AND CONTRACTUAL RELATIONSHIPS OF THE PARTIES

9.    Beginning in or about June 1999, Castellini Company, LLC ("Castellini") and Prandium, Inc. ("Prandium"), the parent company of claimant CHI-CHI'S, began discussing the

3

possibility of Castellini becoming a supplier of produce and other products to various restaurants operating as subsidiaries or affiliates of Prandium, including claimant CHI-CHI'S.

10.    On or about December 12, 2002, claimant CHI-CHI'S and Castellini entered into a pricing agreement in which Castellini agreed to sell green onions (among other products) to CHI-CHI's at an established price.

11.    In connection with the Castellini pricing agreement, the parties agreed that Castellini would sell the green onions, at the negotiated price, to respondents SYSCO and SYGMA. Respondents SYSCO and SYGMA, in turn, would sell the product to claimant CHI-CHI's (on a specified cost-plus basis) and would transport and deliver the green onions directly to CHI-CHI's restaurants. The green onions that were contaminated with Hepatitis A and sold to CHI-CHI's customers in or about September and/or October 2003 were supplied to CHI-CHI's pursuant to the agreements described in paragraphs 9 through 11 herein.

12.    Castellini had been doing business with respondent SYSCO for many years. On or about January 26, 1997, Castellini and SYSCO had entered into an agreement entitled "Hold Harmless Agreement and Guaranty/Warranty of Product" (hereafter "Hold Harmless Agreement"). The Hold Harmless Agreement provided that "[t]his Guaranty and Agreement is continuing and shall be in full force and effect and shall be binding upon [Castellini] with respect to each and every Product shipped or delivered to [SYSCO] by [Castellini] before the receipt of [SYSCO] of written notice of revocation thereof." Castellini further agreed to "defend, indemnify, and hold harmless [SYSCO, its subsidiaries, affiliates or divisions] and its employees, officers, directors and customers ... from all actions, suits, claims, and proceedings ... and from any judgments, damages, fines, costs and expenses (including reasonable attorney's fees) resulting therefrom ... brought or commenced by any person or entity against any

20268.1                                    4

indemnitee for the recovery of damages for the injury, illness and/or death of any person or

damage to property arising out of or alleged to have arisen out of (a) the delivery, sale, resale,

labeling, use or consumption of any Product ...."

13.    On or about June 26, 2001, claimant CHI-CHI'S and respondents SYSCO and

SYGMA entered into an agreement entitled "Distribution Service Agreement." A true and

correct copy of the June 26, 2001 Distribution Service Agreement is attached hereto as Exhibit 1.

In the Distribution Service Agreement, respondents SYSCO and SYGMA expressly agreed to

comply with claimant CHI-CHI's Distributor Quality Program (see Exhibit 1, ¶ X, and Exhibit H

thereto).

14.    Under claimant CHI-CHI's Distributor Quality Program, with which respondents

SYSCO and SYGMA agreed to comply, SYSCO and SYGMA were required to ensure that all

green onions were "manufactured, stored and transported in accordance with all applicable local,

state and federal requirements. These requirements include, but are not limited to ... No article

distributed to [CHI-CHI's] shall be adulterated or misbranded within the meaning of the Federal

Drug and Cosmetic Act." (Exhibit H to Exhibit 1, pp. 3-4).

15.    Paragraph IX of the parties' June 26, 2001 Distribution Service Agreement

requires respondents SYSCO and SYGMA to "indemnify, defend, and save harmless [CHI-

CHI'S] ... from and against any and all claims, losses, damages, liability or liens arising out of

injury to or death of persons ... or loss of or damage to property, resulting directly from [SYSCO

and SYGMA's] negligence ...."

16.    Paragraph IX of the parties' June 26, 2001 Distribution Service Agreement further

provides that "[s]uch indemnification shall include all costs of suit and reasonable attorney's fees

incurred in defending against, or negotiating settlement of any claim or suit ...."

20268.1                                      5

17. The Distribution Service Agreement further contains, at ¶ XIX, a requirement that the parties' submit all "[d]isputes, claims or controversy of any kind ... arising between the parties to this Agreement" to binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association and, to the maximum extent applicable, the Federal Arbitration Act" and that "the non-prevailing party in an arbitration shall pay all reasonable attorneys' fees and expenses incurred by this prevailing party in connection with the Dispute and the arbitration." The Distribution Service Agreement further mandates that the Agreement be "governed by the internal law, and not the law of conflicts in accordance with the laws of the State of Kentucky." The parties have stipulated to hold the arbitration before Arbitrator Thomas B. Rutter, Esq. of ADR Options in Philadelphia, Pennsylvania.

### COUNT I

### BREACH OF EXPRESS WARRANTY

18. Claimant hereby incorporates paragraphs 1 through 17, inclusive, of this Claim as if fully set forth herein.

19. By agreeing to comply with claimant's Distributor Quality Program as an obligation under the June 26, 2001 Distribution Service Agreement (Exhibit "1"), respondents SYSCO and SYGMA made an express warranty that no product distributed to CHI-CHI'S, including green onions, would be "adulterated" within the meaning of the Federal Food, Drug and Cosmetic Act ("the Act").

20. The presence of the Hepatitis A virus in or on the green onions supplied by respondents SYSCO and SYGMA to claimant CHI-CHI'S rendered the product adulterated under the Act.

21.    CHI-CHI'S relied upon SYSCO's and SYGMA's express warranty.

22.    The express warranty was breached when SYSCO and SYGMA supplied green onions that contained the Hepatitis A virus to claimant in or about September and October of 2003.

23.    As a direct and proximate cause of respondents SYSCO's and SYGMA's breach, claimant CHI-CHI'S has suffered incidental and consequential damages in an amount to be proven at arbitration.

24.    Pursuant to paragraph XIX.A of the Distribution Service Agreement, claimant CHI-CHI's is entitled to reasonable attorney's fees and other expenses incurred in this arbitration.

COUNT II

**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**

25.    Claimant hereby incorporates paragraphs 1 through 24, inclusive, of this Claim as if fully set forth herein.

26.    Respondents SYSCO and SYGMA impliedly warranted that their products would be merchantable, safe, wholesome, and fit for human consumption.

27.    Claimant CHI-CHI's relied upon these implied warranties.

28.    Respondents' implied warranties of merchantability were breached when respondents supplied claimant, in or about September and/or October 2003, with green onions contaminated with Hepatitis A.

29.    As a direct and proximate cause of respondents' breach of the implied warranty of merchantability, claimant CHI-CHI's has suffered incidental and consequential damages in an amount to be proven at arbitration.

20268.1                                    7

30.    Pursuant to paragraph XIX.A of the Distribution Service Agreement, claimant CHI-CHI's is entitled to reasonable attorney's fees and other expenses incurred in this arbitration.

## COUNT III

## BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE

31.    Claimant hereby incorporates paragraphs 1 through 30, inclusive, of this Claim as if fully set forth herein.

32.    At all relevant times, respondents SYSCO and SYGMA had reason to know of the particular purpose for which the subject green onions would be used by claimant. Specifically, respondents were aware that claimant CHI-CHI'S intended to serve the green onions in raw form without cooking or further processing as an ingredient in salsa to be served to claimant's customers. Respondents SYSCO and SYGMA were further aware that claimant was relying on the skill and judgment of respondents to supply suitable green onions (that is, green onions that were safe, wholesome, and free of adulteration) for this particular purpose.

33.    In supplying, processing, packaging, marketing, selling, and distributing the subject green onions, respondents SYSCO and SYGMA impliedly represented that the green onions were fit for the particular purpose described herein, i.e., that the green onions would not cause human illness when used for the particular purpose intended by claimant.

34.    Claimant CHI-CHI'S did in fact use the subject green onions for this particular purpose.

35.    Respondents' implied warranties of fitness for a particular purpose were breached when respondents supplied claimant CHI-CHI'S, in or about September and/or October 2003,

20268.1                                    8

with green onions which was not fit for claimant's particular purpose, in that the green onions
were contaminated with Hepatitis A.

    36.    As a direct and proximate cause of respondents' breach of the implied warranty of
fitness for a particular purpose, claimant CHI-CHI'S has suffered incidental and consequential
damages in an amount to be proven at arbitration.

    37.    Pursuant to paragraph XIX.A of the Distribution Service Agreement, claimant
CHI-CHI's is entitled to reasonable attorney's fees and other expenses incurred in this
arbitration.

COUNT IV

CONTRACTUAL INDEMNITY

    38.    Claimant hereby incorporates paragraphs 1 through 37, inclusive, of this Claim as
if fully set forth herein.

    39.    Pursuant to paragraph IX of the parties' June 26, 2001 Distribution Service
Agreement, as alleged in paragraphs 15 and 16 above, respondents SYSCO and SYGMA are
required to "indemnify, defend, and save harmless [CHI-CHI'S] ... from and against any and all
claims, losses, damages, liability or liens arising out of injury to or death of persons ... or loss of
or damage to property, resulting directly from [SYSCO and SYGMA's] negligence ...." Further,
"[s]uch indemnification shall include all costs of suit and reasonable attorney's fees incurred in
defending against, or negotiating settlement of any claim or suit...."

    40.    As a direct and proximate result of respondents SYSCO and SYGMA's supply of
contaminated green onions, claimant CHI-CHI's has in fact suffered and incurred, and continues
to suffer and incur, claims, losses, damages, liabilities, costs and attorney's fees.

20263.1                                                  9

41.    By supplying green onions contaminated with Hepatitis A, as alleged herein,

SYSCO and SYGMA were negligent as a matter of law, i.e. negligent per se. Furthermore,

SYSCO and SYGMA otherwise failed in their duty to exercise ordinary case in their supply of

green onions to claimant and thereby negligently supplied claimant CHI-CHI'S with adulterated

green onions. Accordingly, respondents SYSCO and SYGMA are obligated to indemnify

claimant CHI-CHI's under the terms of the Distribution Service Agreement and claimant CHI-

CHI's is entitled to judgment against respondents SYSCO and SYGMA for all such claims,

losses, damages, liability or liens, including attorney's fees and costs, in an amount to be proven

at arbitration.

42.    Claimant CHI-CHI'S is also entitled to reasonable attorney's fees and other

expenses incurred in this arbitration pursuant to paragraph XIX.A of the Distribution Service

Agreement.

**COUNT V**

**IMPLIED EQUITABLE INDEMNITY**

43.    Claimant hereby incorporates paragraphs 1 through 42, inclusive, of this Claim as

if fully set forth herein.

44.    Claimant CHI-CHI'S has received more than 300 claims, has been named as a

defendant in numerous lawsuits, and may be subjected to future claims and lawsuits, seeking

damages from CHI-CHI's as a result of bodily injury and death allegedly resulting from Hepatitis

A in relation to consumption of green onions at the Beaver Valley Chi-Chi's.

45.    To the extent claimants in the bodily injury claims or actions have suffered

damages, such damages were caused, entirely or in part, by respondents herein.

20268.1                                10

46.     By reason of the foregoing, to the extent claimant CHI-CHI's has incurred or incurs any future expenses, fees, costs or attorneys fees in the defense of bodily injury claims relating to the consumption of Hepatitis A-contaminated green onions, or has entered or does enter into a settlement in any such claim or action, claimant is entitled to judgment against respondents SYSCO and SYGMA for all or part of any such sums incurred by reason of such judgment or settlement and for expenses of investigation, attorney's fees, arbitration costs and other fees incurred in the defense of those claims.

47.     Pursuant to paragraph XIX.A of the Distribution Service Agreement, claimant CHI-CHI's is entitled to all reasonable attorney's fees and other expenses incurred in this arbitration.

COUNT VI

CONTRIBUTION

48.     Claimant hereby incorporates paragraphs 1 through 47, inclusive, of this Claim as if fully set forth herein.

49.     Claimant CHI-CHI's has received more than 300 claims, has been named as a defendant in numerous lawsuits, and may be subjected to future claims and lawsuits, seeking damages from CHI-CHI's as a result of bodily injury and death allegedly resulting from Hepatitis A in relation to consumption of green onions at the Beaver Valley Chi-Chi's.

50.     To the extent claimant CHI-CHI's is legally responsible for any of the damages claimed in bodily injury actions, and assuming claimant is not entitled to total indemnity for all such sums which claimant may be required to pay, claimant would be only partially responsible for the alleged injuries, damages and other detriment allegedly suffered or sustained by the bodily injury claimants.

20268.1                                     11

51.    Any loss, injury, damages or detriment allegedly suffered or sustained by the bodily injury claimants was directly and proximately caused and contributed to by the primary, active and direct responsibility of respondents herein.

52.    Any damages or other detriment allegedly suffered or sustained by the bodily injury plaintiffs should therefore be apportioned among claimant and respondents herein on the basis of their respective percentage of fault, if any, in contributing to such damage or detriment.

53.    Based on the foregoing, respondents SYSCO and SYGMA have a duty to contribute to and indemnify claimant CHI-CHI's for any recovery any bodily injury plaintiff may realize as against claimant CHI-CHI's in excess of that part of the damages directly proportionate to claimant CHI-CHI's percentage of fault, if any.

54.    Pursuant to paragraph XIX.A of the Distribution Service Agreement, claimant CHI-CHI's is entitled to reasonable attorney's fees and other expenses incurred in this arbitration.

WHEREFORE, claimant CHI-CHI'S, INC prays for judgment against respondents SYSCO CORPORATION and SYGMA NETWORK, INC. as follows:

1.    For past and future general, incidental and consequential damages in a sum not yet fully ascertained and according to proof at arbitration;

2.    For attorneys' fees and costs;

3.    For pre- and post-judgment interest;

4.    For indemnity;

5.    For contribution;

///

///

20268.1                                    12

02/28/2006 16:42 FAX                                          ☒068/075

6.    For costs of suit; and

7.    For such other and further relief as the Arbitrator may deem just.

Dated: September 8, 2005

GORDON & HOLMES
Frederic L. Gordon, Esq.
Rhonda J. Holmes, Esq.
Douglas J. Billings, Esq.
A. Michael Nalu, Esq.
223 West Date Street
San Diego, CA 92101
Telephone: (619) 696-0444
Facsimile: (619) 696-1144

Counsel for Claimant CHI-CHI'S, INC.

20268.1

13

## PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of 18 years and am not a party to the within action; my business address is 11766 Wilshire Boulevard, Sixth Floor, Los Angeles, CA 90025. On February 28, 2006, I served the following document(s) described as EX PARTE APPLICATION FOR AN ORDER SHORTENING TIME FOR HEARING ON PLAINTIFF SCOTTSDALE INSURANCE COMPANY'S MOTION FOR PRELIMINARY INJUNCTIONS; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF DAVID A. HADLEN IN SUPPORT THEREOF

on the interested parties in this action as follows:

by placing a true copy thereof enclosed in sealed envelopes addressed as follows:

### SEE ATTACHED SERVICE LIST

☐    **BY MAIL:** By placing a true copy thereof in a sealed envelope addressed as above, and placing it for collection and mailing following ordinary business practices. I am readily familiar with the firm's practice of collection and processing correspondence, pleadings, and other matters for mailing with the United States Postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐    **BY OVERNIGHT COURIER:** I caused the above-referenced document(s) to be delivered to  for delivery to the addressee(s).

☐    **BY E-MAIL:** I transmitted a copy of the foregoing documents(s) via e-mail to the addressee(s).

☒    **BY FAX:** I transmitted a copy of the foregoing documents(s) via telecopier to the facsimile numbers of the addressee(s), and the transmission was reported as complete and without error.

☐    **BY PERSONAL SERVICE:** I personally delivered such envelope by hand to the offices of the addressee(s).

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on February 28, 2006 at Los Angeles, California.

SUSAN KRIESEL

Selman Breitman LLP
ATTORNEYS AT LAW

# SERVICE LIST

*Scottsdale Insurance Company v. Castellini Company*
Ventura Superior Court Case Co.: CIV236710

*Federal Ins. Co. v. Castellini Company*
Ventura Superior Court Case No.: CIV236719

*Chi-chi's, inc., v. Castellini Company LLC,*
Ventura Superior Court Case No.: CIV 237044

*Empire Indemnity Insurance Company v. Castellini Company LLC*
Ventura Superior Court Case No.: CIV237810

| | |
|---|---|
| Fred L. Gordon, Esq., | Attorneys For CHI-CHI'S, INC. |
| Gordon & Holmes | Tele: (619) 696-0444 |
| 233 West Date St. | Fax: (619) 696-1144 |
| San Diego, CA 92101 | |
| | |
| Stephen D. Lucas, Esq. | Attorneys for FEDERAL INSURANCE |
| LUCAS & HAVERKAMP | COMPANY |
| 3636 Nobel Drive, Suite 200 | Tele: (858) 535-4000 |
| San Diego, CA 92122 | Fax: (858) 535-4001 |
| | |
| Philip H. Thompson, Esq. | Attorneys for EMPIRE INDEMNITY |
| NELSEN, THOMPSON, PEGUE & | INSURANCE COMPANY |
| THORNTON | Tele: (310) 315-1001 |
| 2425 Olympic Blvd., Suite 4000W | Fax: (310) |
| Santa Monica, CA 90404-4032 | |
| | |
| Luther W. Horton, Esq. | Attorneys for NEWSTAR FRESH |
| Horton, Oberrecht & Kirkpatrick | FOODS, LLC |
| 225 Broadway | Tele: (619) 232-1183 |
| Suite 2200 | Fax: (619) 696-5719 |
| San Diego, California 92101 | |
| | |
| Bradley W. Sullivan, Esq. | Attorneys for APIO, INC. and APIO |
| Lombardo & Gilles | FRESH, LLC |
| 318 Cayuga Street | Tele: (831) 754-2444 |
| Salinas, California 93901 | Fax: (831) 754-2011 |
| | |
| Steven R. Lewis, Esq. | Attorneys For CASTELLINI COMPANY, |
| Lewis, Brisbois, Bisgaard & Smith | LLC |
| 221 North Figueroa Street, Suite 1200 | Tele: (213) 680-5041 |
| Los Angeles, CA 90012 | Fax: (213) 580-7918 |
| | |
| Curt W. Uritz, Esq. | Attorneys for BOSKOVICH FARMS, INC. |
| Strauss-Uritz | Tele: (805) 641-9992 |
| 199 South Figueroa Street, Second Floor | Fax : (805) 641-9993 |
| Ventura, California 93001 | |

Selman Breitman LLP
ATTORNEYS AT LAW

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

299300.1  380.18932

071/075

SUPERIOR COURT OF CALIFORNIA

COUNTY OF VENTURA

| | |
|---|---|
| SCOTTSDALE INSURANCE COMPANY, | CASE NO.  CIV236710 (Master File) |
| Plaintiff, | [PROPOSED] ORDER |
| v. | Date  :  March 1, 2006<br>Time  :  8:30 a.m.<br>Dept.  :  43<br>Judge  :  Honorable Ken W. Riley |
| CASTELLINI COMPANY LLC;<br>BOSKOVICH FARMS, INC., APIO, INC.,<br>APIO FRESH, LLC, NEWSTAR FRESH<br>FOODS. LLC and DOES 1 through 100, | |
| Defendants. | Complaint Filed   :   October 12, 2005 |

## ORDER

Plaintiff Scottsdale Insurance Company ("Scottsdale")'s Ex Parte Application for an Order Shortening Time for Hearing on Motion for Preliminary Injunction came on for hearing on March 1, 2006, in Department 43 of the above-entitled court, the Honorable Ken W. Riley, Judge presiding.

Upon the consideration of the Application and the papers in support thereof, papers filed in opposition and all of the arguments presented by the parties and the pleadings in this Court's file, the Court grants the Application.

The date for hearing on the Motion for Preliminary Injunction shall be _____

1

[PROPOSED] ORDER

Selman • Breitman LLP
ATTORNEYS AT LAW

303293.1  380.18932

1    at _____.

2          The moving papers for the Motion for Preliminary Injunctions will be filed and

3    served via facsimile by _____.

4          Any opposition papers are to be filed and served via facsimile by _____.

5          Reply papers are to be filed and served via facsimile by _____.

6

7    IT IS SO ORDERED.

8

9    DATED: _____              _____

                                        JUDGE, VENTURA SUPERIOR COURT

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Selman • Breitman LLP
ATTORNEYS AT LAW

## PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of 18 years and am not a party to the within action; my business address is 11766 Wilshire Boulevard, Sixth Floor, Los Angeles, CA 90025. On February 28, 2006, I served the following document(s) described as (PROPOSED) ORDER SHORTENING TIME FOR HEARING ON PLAINTIFF SCOTTSDALE INSURANCE COMPANY'S MOTION FOR PRELIMINARY INJUNCTION on the interested parties in this action as follows:

by placing a true copy thereof enclosed in sealed envelopes addressed as follows:

**SEE ATTACHED SERVICE LIST**

☐ **BY MAIL:** By placing a true copy thereof in a sealed envelope addressed as above, and placing it for collection and mailing following ordinary business practices. I am readily familiar with the firm's practice of collection and processing correspondence, pleadings, and other matters for mailing with the United States Postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐ **BY OVERNIGHT COURIER:** I caused the above-referenced document(s) to be delivered to for delivery to the addressee(s).

☐ **BY E-MAIL:** I transmitted a copy of the foregoing documents(s) via e-mail to the addressee(s).

☒ **BY FAX:** I transmitted a copy of the foregoing documents(s) via telecopier to the facsimile numbers of the addressee(s), and the transmission was reported as complete and without error.

☐ **BY PERSONAL SERVICE:** I personally delivered such envelope by hand to the offices of the addressee(s).

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on February 28, 2006 at Los Angeles, California.

SUSAN KRIESEL

PROOF OF SERVICE

301249.1 380.18932

1

## SERVICE LIST

2     *Scottsdale Insurance Company v. Castellini Company*
      Ventura Superior Court Case Co.: CIV236710

3     *Federal Ins. Co. v. Castellini Company*
      Ventura Superior Court Case No.: CIV236719

4     *Chi-chi's, inc., v. Castellini Company LLC,*
      Ventura Superior Court Case No.: CIV 237044

5
      *Empire Indemnity Insurance Company v. Castellini Company LLC*
6     Ventura Superior Court Case No.: CIV237810

7

8     Fred L. Gordon, Esq.,                    Attorneys For CHI-CHI'S, INC.
      Gordon & Holmes                          Tele:  (619) 696-0444
      233 West Date St.                        Fax:   (619) 696-1144
9     San Diego, CA 92101

10

11    Stephen D. Lucas, Esq.                   Attorneys for FEDERAL INSURANCE
      LUCAS & HAVERKAMP                         COMPANY
      3636 Nobel Drive, Suite 200              Tele:  (858) 535-4000
12    San Diego, CA  92122                     Fax:   (858) 535-4001

13    Philip H. Thompson, Esq.                 Attorneys for EMPIRE INDEMNITY
      NELSEN, THOMPSON, PEGUE &                INSURANCE COMPANY
14    THORNTON                                  Tele:  (310) 315-1001
      2425 Olympic Blvd., Suite 4000W          Fax:   (310)
15    Santa Monica, CA  90404-4032

16

17    Luther W. Horton, Esq.                   Attorneys for NEWSTAR FRESH
      Horton, Oberrecht & Kirkpatrick          FOODS, LLC
      225 Broadway                             Tele:  (619) 232-1183
18    Suite 2200                               Fax:   (619) 696-5719
      San Diego, California 92101

19

20    Bradley W. Sullivan, Esq.                Attorneys for APIO, INC. and APIO
      Lombardo & Gilles                        FRESH, LLC
21    318 Cayuga Street                        Tele:  (831) 754-2444
      Salinas, California 93901                Fax:   (831) 754-2011

22

23    Steven R. Lewis, Esq.                    Attorneys For CASTELLINI COMPANY,
      Lewis, Brisbois, Bisgaard & Smith        LLC
24    221 North Figueroa Street, Suite 1200    Tele:  (213) 680-5041
      Los Angeles, CA  90012                   Fax:   (213) 580-7918

25

26    Curt W. Uritz, Esq.                      Attorneys for BOSKOVICH FARMS, INC.
      Strauss-Uritz                            Tele:  (805) 641-9992
                                               Fax :  (805) 641-9993
27    199 South Figueroa Street, Second Floor
      Ventura, California 93001

28

# EXHIBIT C

27587-8 - COURT
RECEIVED BY LBBS
APR 1 0 2006
By Fed X

1   SHERYL W. LEICHENGER (SBN 161688)
    ELDON S. EDSON (SBN 168869)
2   TAM T. GLUNT (SBN 225235)
    SELMAN BREITMAN LLP
3   11766 Wilshire Boulevard, Sixth Floor
    Los Angeles, CA 90025
4   Telephone: (310) 445-0800
    Facsimile: (310) 473-2525
5
    Attorneys for Plaintiff
6   SCOTTSDALE INSURANCE COMPANY

7   STEPHEN D. LUCAS (SBN 074726)
    PATRICIA JO CUSTER (SBN 128703)
8   LUCAS & HAVERKAMP
    A Professional Corporation
9   Attorneys at Law
    3636 Nobel Drive, Suite 200
10  San Diego, California 92122
    Telephone:   (858) 535-4000
11  Facsimile:   (858) 535-4001

12  Attorneys for Plaintiff
    FEDERAL INSURANCE COMPANY
13

14          SUPERIOR COURT OF CALIFORNIA

15              COUNTY OF VENTURA

16

17  SCOTTSDALE INSURANCE COMPANY,      | CASE NO.  CIV236710 (Master File)

18          Plaintiff,                  | REPLY IN SUPPORT OF MOTION FOR
                                        | ORDER MODIFYING THE
19      v.                              | PRELIMINARY INJUNCTION ISSUED
                                        | ON MARCH 9, 2006; MEMORANDUM OF
20  CASTELLINI COMPANY LLC,             | POINTS AND AUTHORITIES;
    BOSKOVICH FARMS, INC., APIO, INC.,  | DECLARATION OF ELDON S. EDSON
21  APIO FRESH, LLC, NEWSTAR FRESH      |
    FOODS, LLC and DOES 1 through 100,  |
22                                      | Date   :   April 17, 2006
            Defendants.                 | Time   :   8:30 a.m.
23                                      | Dept.  :   43
                                        | Judge  :   Honorable Ken W. Riley
24                                      |
                                        | Complaint Filed   :   October 12, 2005
25

26

27

28

308328.1 380.18932
                                    1
REPLY IN SUPPORT OF MOTION FOR ORDER MODIFYING PRELIMINARY INJUNCTION

1

2    TO ALL PARTIES HEREIN AND THEIR ATTORNEYS OF RECORD:

3        Plaintiff Scottsdale Insurance Company ("Scottsdale") and Federal Insurance

4    Company ("Federal") (collectively, "the Insurers") hereby reply to defendant Chi-Chi's,

5    Inc. ("Chi-Chi's") opposition to the Insurers' motion for an order to preclude Chi-Chi's

6    from resuming its pursuit of the arbitration in Pennsylvania ("Pennsylvania arbitration")

7    until such time as judgment has been entered in the present action.

8

9    DATED: April 7, 2006                SELMAN BREITMAN LLP

10

11                                       By: _____
                                             SHERYL W. LEICHENGER
12                                           ELDON S. EDSON
                                             TAM T. GLUNT
13                                       Attorneys for Plaintiff
                                         SCOTTSDALE INSURANCE COMPANY
14

15    DATED: April 7, 2006                LUCAS & HAVERKAMP

16

17                                       By: _____ by/kwk
                                             STEPHEN LUCAS
18                                           PATRICIA JO CUSTER
                                         Attorneys for Plaintiff
19                                       FEDERAL INSURANCE COMPANY

20

21

22

23

24

25

26

27

28

**REPLY IN SUPPORT OF MOTION FOR ORDER MODIFYING PRELIMINARY INJUNCTION**

308328.1 380.18932

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION...................................................................1

II.   THIS MOTION IS PROPERLY BEFORE THIS COURT, AS OPPOSED
      TO THE DELAWARE BANKRUPTCY COURT ...............................1

III.  THE ENDS OF JUSTICE WOULD BEST BE SERVED BY EXTENDING
      THE DURATION OF THE INJUNCTION........................................3

      A.   *Valley Casework, Inc. v. Comfort Construction, Inc.* Governs the
           Instant Action: The Insurers Should Not be Forced to Arbitrate with
           SYSCO..................................................................3

      B.   None of the Exceptions to the General Rule that a Nonsignatory May
           Neither Compel Arbitration Nor Be Compelled to Arbitrate Applies in
           This Case...............................................................5

      C.   Unless the Duration of the Injunction is Extended, the Insurers
           Effectively Will Be compelled to Arbitrate Their Subrogation
           Claims.................................................................5

      D.   Allowing Chi-Chi's to Resume the Pennsylvania Arbitration on April
           24, 2006 Would Result in the Immeditae Forfeiture of the Insurers'
           rights to a Jury Trial and to Appellate Review............................6

           1.   Chi-Chi's opposition ignores the fact that the requested
                extension of the Injunction's duration would preserve the status
                quo..............................................................6

           2.   Unless the duration of the Injunction is extended, the Insurers
                will suffer harm for which there is no adequate remedy at
                law..............................................................7

           3.   Without the requested modification, the interim harm to the
                Insurers would far exceed the harm, if any, to Chi-Chi's........8

           4.   There is a strong likelihood that the Insurers will prevail on the
                merits at trial...................................................9

IV.   CONCLUSION...................................................................10

Selman Breitman LLP
ATTORNEYS AT LAW

REPLY IN SUPPORT OF MOTION FOR ORDER MODIFYING PRELIMINARY INJUNCTION

308328.1 380.18932

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

1
2
3          The motion for an order extending the duration of the preliminary injunction until
4    such time as judgment has been entered in this action should be granted. Because this is a
5    non-core proceeding over which the bankruptcy court does not have exclusive jurisdiction,
6    and as the relief requested herein will not in any way affect the bankruptcy court's
7    Confirmation Order, the motion is properly before this court. Further, the interests of
8    justice will be best served by granting the requested relief. Chi-Chi's has represented that
9    it will resume the Pennsylvania arbitration upon expiration of the preliminary injunction.
10   Without the requested relief, the Insurers again will be forced into a choice between
11   intervening in the Pennsylvania arbitration, (thereby forfeiting their rights to a jury trial
12   and appellate review), and forfeiting its right to pursue a subrogation action against
13   SYSCO and any other defendant that participates in the arbitration. Under California law
14   an insurer's status as a subrogated signatory insured does not constitute an exception to the
15   general rule that a nonsignatory to an arbitration agreement cannot be forced to arbitrate its
16   claims. The Insurers have demonstrated that without the requested relief they will suffer
17   irreparable harm and that they are likely to prevail on the merits. For these reasons, the
18   motion should be granted.

## II.   THIS MOTION IS PROPERLY BEFORE THIS COURT, AS OPPOSED TO THE DELAWARE BANKRUPTCY COURT

21          There is no dispute among the parties that this action involves a non-core
22   proceeding and that, consequently, the bankruptcy court does not have exclusive
23   jurisdiction over it. 28 U.S.C. §1334(a)(b); see also Chi-Chi's Memorandum of Points and
24   Authorities, 3:14-20. In arguing this court lacks jurisdiction, Chi-Chi's instead relies upon
25   the mistaken presumption that the instant action affects a bankruptcy court order and that,
26   consequently, this motion should be brought in the Delaware Bankruptcy Court.
27          Contrary to Chi-Chi's contentions, the instant action does not in any way affect the
28   bankruptcy court order. On December 15, 2005 the bankruptcy court entered a Plan and a

308328.1  380.18932

1

Selman Breitman LLP
ATTORNEYS AT LAW

1   Confirmation Order transferring Chi-Chi's assets (including Chi-Chi's causes of action

2   against the suppliers of green onions) to the Liquidating Trust.  That order merely

3   transferred the assets, giving Chi-Chi's the discretion to prosecute (or settle, abandon,

4   liquidate, etc.) the trust assets.  The assets have been transferred, the bankruptcy court

5   order is fully executed, and no order regarding a stay of the arbitration proceedings in any

6   way enjoins or impedes execution of the bankruptcy court order transferring assets.

7        The cases on which Chi-Chi's relies to the contrary all involve actions that would

8   impede or otherwise affect another court's orders and are therefore inapposite.  *Van Hook*

9   *v. Van Hook* (1983) 147 Cal.App.3d 970 pertains to orders enjoining the execution of a

10  decree of another court; *In re Resorts International, Inc.*, 372 F.3d 154 (3d Cir.2004)

11  involves acts necessary for the consummation of the bankruptcy court's plan.  Because the

12  instant matter does not affect the bankruptcy court order at all, both cases are

13  distinguishable from the case at bar.  *In re AstroPower Liquidating Trust*, 335 B.R. 309 is

14  also distinguishable.  Chi-Chi's cites to *AstroPower* for the proposition that the court

15  retained jurisdiction to liquidate claims specifically provided for in the Plan.  In

16  *AstroPower*, however, the bankruptcy court's Confirmation Order specifically retained

17  jurisdiction to enable the debtor to prosecute or settle litigation claims.  *Id.* at 324-25.  The

18  court's holding is limited to situations where the bankruptcy court "expressly provides for

19  the retention of such jurisdiction to liquidate that claim for the benefit of the estate's

20  creditors."  *Ibid.*  The order in this case does not retain jurisdiction for any such purpose.

21  See Confirmation Order, paragraph 10.

22       Moreover, Chi-Chi's abstention arguments are without merit.  Indeed, Chi-Chi's has

23  turned 28 U.S.C. §1334 on its head.  Where a bankruptcy court has jurisdiction over a

24  proceeding, the bankruptcy court "must nonetheless abstain from hearing the proceeding

25  pursuant § 1334(c)(2) if six requirements are satisfied: (1) the motion to abstain is timely;

26  (2) the action is based on a state law claim or a state law cause of action; (3) an action has

27  already been commenced in state court; (4) the action can be timely adjudicated; (5) there

28  is no independent basis for federal jurisdiction which would have permitted the action to

*Selman Breitman LLP*
*ATTORNEYS AT LAW*

308328.1 380.18932

2

**REPLY IN SUPPORT OF MOTION FOR ORDER MODIFYING PRELIMINARY INJUNCTION**

1   have been commenced in federal court absent bankruptcy; and (6) the matter before the

2   Court is non-core." *In re Trans World Airlines, Inc.*, 278 B.R. 42, 50 (Bankr. D. Del.

3   2002). Here, the motion presents a unique issue of California insurance law which this

4   court is best suited to address. Indeed, the motion does not raise a single bankruptcy law

5   issue and, as Chi-Chi's admits, this is a non-core action. The California actions are already

6   proceeding and can be timely adjudicated. Further there is no independent basis for

7   federal jurisdiction. *Id.* a 50-52.

8        In sum, this is a non-core proceeding that in no way affects the bankruptcy court's

9   Order. Accordingly, the motion is properly brought in this court.

10  **III.    THE ENDS OF JUSTICE WOULD BE BEST SERVED BY EXTENDING**

11        **THE DURATION OF THE INJUNCTION**

12       In any action the court may, on notice, modify an injunction upon showing there has

13  been a material change in the facts upon which the injunction was granted, that the law

14  upon which the injunction was granted has changed, or that the ends of justice would be

15  served by the modification of the injunction. Code Civ. Proc., §533. This rule applies to

16  preliminary as well as permanent injunctions. *Union Interchange, Inc. v. Savage* (1959)

17  52 Cal.2d 601, 606; *New Tech Developments v. Bank of Nova Scotia* (1987) 191

18  Cal.App.3d 1065, 1072.

19       Here, the ends of justice would best be served by modification of the injunction

20  because, unless the duration of the injunction is extended the insurers will once again be

21  forced either to forfeit their respective rights to a jury trial and appellate review or risk

22  being precluded from seeking any recovery against any defendant submitting to arbitration

23  with Chi-Chi's.

24       **A.    *Valley Casework, Inc. v. Comfort Construction, Inc.* Governs The Instant**

25        **Action: The Insurers Should Not Be Forced to Arbitrate with SYSCO**

26       It is well settled that procedural matters are determined by the law of the forum.

27  *Scruton v. Korean Air Lines Co., Ltd.* (1995) 39 Cal.App.4th 1596, 1603; *Klaffki v.*

28  *Kauffman* (1921) 52 Cal.App. 48, 50. Whether to compel arbitration is a procedural

*Selman Breitman LLP*
ATTORNEYS AT LAW

308328.1  380.18932

3

1  question. See 3 Witkin Cal. Proc. Actions §96(f); see also *Sanders v. Kinko's, Inc.* (2002)

2  99 Cal.App.4th 1106, 1111-12. Therefore the issue here must be determined pursuant to

3  California law.

4    *Valley Casework, Inc. v. Comfort Construction, Inc.* (1999) 76 Cal.App.4th 1013,

5  governs this action. In *Valley Casework* the insurer pursued an equitable subrogation

6  claim against its insured. The insured was a party to an arbitration agreement; the insurer

7  was not. Despite the insured's consent and the insurer's rights of subrogation, the court

8  held that the insurer, "as a nonparty to the arbitration agreement, should [not] be allowed to

9  enforce it." *Id.* at 2024. The court also stated that the insurer "provided no authority for

10 the application of the equitable doctrine of subrogation in the contractual arbitration

11 context." *Id.* at 1023.

12   "[J]udicial enthusiasm for alternative methods of dispute resolution must not in all

13 contexts override the rules governing interpretation of contracts, as the policy favoring

14 arbitration cannot displace the necessity for a voluntary agreement to arbitrate." *Id.* at

15 1022. "It is one thing to permit a nonsignatory to relinquish his right to a jury trial, but

16 quite another to compel him to do so." *Benasra v. Marciano* (2001) 92 Cal.App.4th 987,

17 991. A party cannot be compelled to submit a dispute to arbitration unless he has agreed in

18 writing to do so. *Berman v. Renart Sportswear Corp.* (1963) 222 Cal.App.2d 385, 388.

19 The policy favoring arbitration does not extend to those who are not parties to such an

20 agreement. *Rhodes v. California Hospital Medical Center* (1978) 76 Cal.App.3d 606, 609.

21   Chi-Chi's does not, and cannot, cite any California law to the contrary. The only

22 cases it cites in support of its position that the nonsignatory insurer may be bound by the

23 arbitration agreement are the New York case *Solomon v. Consolidated Resistance Co.*

24 (1983) 97 A.D.2d 791 and a Second Circuit federal case applying New York law,

25 *American Bureau of Shipping v. Tencara Shipyard S.P.A.* (1999) 170 F.3d 349, 353. The

26 Insurers express no opinion on New York law, for it is irrelevant to this motion which

27 must be decided pursuant to California law.

28   Under California law, which governs the instant matter, the doctrine of equitable

308328.1 380.18932

4

REPLY IN SUPPORT OF MOTION FOR ORDER MODIFYING PRELIMINARY INJUNCTION

Selman Breitman LLP
ATTORNEYS AT LAW

1    subrogation does not render an insurer a party to a contract it did not sign. *Valley*

2    *Caselaw, Inc. v. Comfort Construction, Inc., supra*, 76 Cal.App.4th 1013.

3    B.    **None of the Exceptions to the General Rule that a Nonsignatory May**

4    **Neither Compel Arbitration Nor Be Compelled to Arbitrate Applies in**

5    **This Case**

6    There are six exceptions to the general rule that a nonsignatory may neither compel

7    arbitration nor be compelled to arbitrate: (1) where there is sufficient identity of parties; (2)

8    where one has acted as an agent for a signatory; (3) where one is estopped because he has

9    voluntarily joined an arbitration proceeding; (4) where an individual partner is bound by

10   his partnership's agreement ; (5) where the person urging enforcement can show he is a

11   third party beneficiary of the arbitration agreement; or (6) where a construction contract or

12   subcontract incorporates an arbitration procedure found in a related contract. *Bensara v.*

13   *Marciano, supra*, 92 Cal.App.4th at 990-92. As discussed above, status as a subrogated

14   signatory insured does not constitute an exception to the general rule, because there is

15   insufficient identity of parties as between the insurer and the insured. *Valley Casework,*

16   *Inc. v. Comfort Construction, Inc., supra*, 76 Cal.App.4th at 1021-22.

17   Neither of the Insurers is a signatory to the arbitration agreement. Neither Insurer is

18   Chi-Chi's agent with respect to the contract with SYSCO and neither voluntarily joined the

19   Pennsylvania arbitration. The action does not involve a construction contract.

20   Additionally, there is insufficient identity of the parties as between insurer and insured.

21   Thus, the public policy favoring arbitration does not overcome the fact that neither

22   Scottsdale nor Federal is a party to the arbitration agreement.

23   C.    **Unless the Duration of the Injunction is Extended, the Insurers**

24   **Effectively Will Be Compelled to Arbitrate Their Subrogation Claims**

25   Where the insured has only partially been compensated for a loss, the insurer has

26   the right to the amount paid to the insured and the insured has the right to the balance of

27   the loss. *Hodge v. Kirkpatrick Develop., Inc.* (2005) 130 Cal.App.4th 540, 551.

28   The insurer who has compensated its insured for a loss has the burden of protecting

5

Selman Breitman LLP
ATTORNEYS AT LAW

1   its subrogation rights, which the Insurers have done here. SYSCO will be served as of

2   Friday, April 7, 2006. SYSCO was not served earlier because Scottsdale and SYSCO have

3   been in negotiations regarding the subject action, including acceptance of service of

4   process by Aaron Krauss, counsel for SYSCO. See Edson Declaration at paragraph 3.

5         On or about September 8, 2005, Chi-Chi's commenced private arbitration against

6   SYSCO in Pennsylvania without the Insurers' knowledge or consent. Despite leading the

7   Insurers to believe Chi-Chi's agreed Ventura, California was the proper venue for the filing

8   of the now-consolidated actions, Chi-Chi's had already taken steps to pursue SYSCO in

9   private arbitration in Pennsylvania. Because the rule against splitting a cause of action

10   requires insurer and insured to bring one action together, Chi-Chi's unilateral decision to

11   pursue arbitration in Pennsylvania under Kentucky law requires the Insurers either to

12   forfeit their rights to both a jury trial and appellate review or to risk being barred from

13   pursuing any of the defendants submitting to arbitration, including SYSCO. Therefore,

14   even though Scottsdale never contracted for arbitration, Chi-Chi's unilateral decision to

15   pursue private arbitration effectively compels Scottsdale to arbitrate its subrogation claims.

16   **D.**   **Allowing Chi-Chi's to Resume the Pennsylvania Arbitration on April 24,**

17          **2006 Would Result in the Immediate Forfeiture of the Insurers' Rights**

18          **to a Jury Trial and to Appellate Review**

19         In deciding whether to issue a preliminary injunction, courts traditionally evaluate

20   two interrelated factors: (1) the interim harm the plaintiff likely would sustain were the

21   injunction denied, and (2) the comparable harm the defendant likely would suffer were the

22   preliminary injunction granted. Chi-Chi's arguments to the contrary, as set forth below,

23   are unpersuasive.

24          **1.**   **Chi-Chi's opposition ignores the fact that the requested extension**

25               **of the Injunction's duration would preserve the status quo**

26         Apparently conceding Scottsdale's argument, Chi-Chi's opposition ignores the fact

27   that the requested modification of the Injunction to extend its duration would preserve the

28   status quo.

REPLY IN SUPPORT OF MOTION FOR ORDER MODIFYING PRELIMINARY INJUNCTION

*Selman Breitman LLP*
ATTORNEYS AT LAW

1    Courts may issue injunctions at any stage of the proceedings to maintain the status

2  quo until judgment, regardless of whether the complaint seeks equitable relief. Code Civ.

3  Proc., §526, subd. (a)(3); see also *Lenard v. Edmonds* (1957) 151 Cal.App.2d 764, 769. In

4  this case, the requested modification would preserve the status quo of the parties until

5  judgment is entered in the instant action.

6    The Pennsylvania arbitration had already been stayed at the time each of the

7  complaints in the present consolidated action were filed. In filing the present action, each

8  of the Insurers secured its rights to both a jury trial and appellate review. If the requested

9  modification is granted, Chi-Chi's will be able to preserve its right to pursue arbitration

10  with SYSCO without forcing the Insurers to forfeit their rights to a jury trial and appellate

11  review. Conversely, if the requested modification is denied, the status quo cannot be

12  maintained. Chi-Chi's will resume arbitration, forcing the Insurers to intervene in order to

13  preserve their right to litigate with SYSCO and to protect themselves against potential

14  harm caused by adverse factual determination made in the arbitration.

15    **2.    Unless the duration of the Injunction is extended, the Insurers**

16    **will suffer harm for which there is no adequate legal remedy**

17    Permitting Chi-Chi's to resume the Pennsylvania arbitration will result in either: (1)

18  the forfeiture of the Insurers' rights both to a jury trial and to appellate review, or (2) the

19  loss of the Insurers' right to pursue SYSCO or any other intervening defendant due to the

20  rule against splitting a cause of action.

21    Chi-Chi's disputes that the Insurers would have no adequate remedy at law. Chi-

22  Chi's suggests that "the Insurers maintain they cannot intervene in the Arbitration because

23  they are not signatories to the ... Agreement. This argument is premature in that, without

24  having moved to intervene, the Insurers are hardly in a position to state that they are

25  somehow barred from doing so or 'are likely to suffer' harm if a further injunction is not

26  issued." Opposition at 7:24-8:1.

27    Chi-Chi's misunderstands the Insurers' position. The Insurers do not argue that they

28  are barred from intervening in the arbitration, but that they do not desire to do so. In other

*Selman Breitman LLP*
ATTORNEYS AT LAW

308528.1  380.18932

7

**REPLY IN SUPPORT OF MOTION FOR ORDER MODIFYING PRELIMINARY INJUNCTION**

1    words, Chi-Chi's has voluntarily forfeited its rights to a jury trial and to appellate review,

2    but Scottsdale has not and should not be forced to do so.

3        "[The] right to select a judicial forum, vis-à-vis arbitration, is a 'substantial right,'

4    not lightly to be deemed waived." *Lawrence v. Walzer & Gabrielson* (1989) 207

5    Cal.App.3d 1501, 1507-08. By agreeing to arbitration, a valuable right is forfeited. *Ibid.*

6        In the present case, there is no adequate legal remedy for the coerced forfeiture of

7    the rights to a jury trial and appellate review. Although both rights are valuable, neither

8    can be quantitatively valued; thus a monetary award would not be adequate compensation.

9        **3.    Without the requested modification, the interim harm to the**

10       **Insurers would far exceed the harm, if any, to Chi-Chi's**

11       Although the trial court has broad discretion to grant or deny a request for a

12   preliminary injunction, the court must exercise its discretion "in favor of the party most

13   likely to be injured." *Gosney v. State of California* (1970) 10 Cal.App.2d 499, 510. If

14   denial of the injunction would result in great harm to the plaintiff, and the defendants

15   would suffer little harm if it were granted, then it is an abuse of discretion to deny the

16   preliminary injunction. *Riviello v. Journeymen Barbers, etc. Union* (1948) 88 Cal.App.2d

17   499, 510.

18       Here, the interim harm to the insurers from allowing arbitration to resume is

19   substantially greater than the harm, if any, to Chi-Chi's should the requested modification

20   be granted. As demonstrated above, the Insurers will suffer substantial harm for which

21   there is no adequate remedy at law if the injunction is not extended.

22       Chi-Chi's argues against this conclusion by stating that "whether the Insurers are

23   required to arbitrate against SYSCO is entirely independent of Chi-Chi's own Arbitration."

24   Opposition at 11:3-6. This argument is simply incorrect. As has been demonstrated, the

25   rule against splitting a cause of action forbids an insurer and insured to proceed

26   independently. If the insured is permitted to renew arbitration the Insurers will have to

27   attempt to intervene in order to pursue any claim against SYSCO and the other arbitrating

28   defendants.

308328.1 380.18932

8

Selman Breitman LLP
ATTORNEYS AT LAW

1    Chi-Chi's, on the other hand, would suffer little harm if the extension is granted.
2    First, Chi-Chi's commenced suit in the Superior Court against Castellini and other
3    defendants, none of which is a party to the Chi-Chi's / SYSCO arbitration agreement.
4    Second, Chi-Chi's will have a full opportunity to litigate all issues in the instant action.
5    Third, SYSCO has been named in the California action and will have been served as of
6    Friday, April 7, 2006. Fourth, although Chi-Chi's argues it would lose its claims for
7    attorneys' fees if the injunction is extended until a judgment is entered in this action, Chi-
8    Chi's can easily remedy this by suing SYSCO in the Superior Court. Finally, Chi-Chi's
9    erroneously likens the proposed extended stay to a permanent injunction. The requested
10   modification merely stays the arbitration until judgment is entered in the instant action,
11   thereby preserving the status quo of the parties.

12         **4.    There is a strong likelihood that the Insurers will prevail on the**
13                **merits at trial.**

14   This factor also weighs heavily in favor of issuing the requested injunction. The
15   Insurers have alleged a cause of action for express warranty and implied warranty of
16   fitness for a particular purpose. As the Center for Disease Control reports demonstrate that
17   the employees of Chi-Chi's were not the source of the Hepatitis A contamination and it
18   cannot reasonably be disputed that the Hepatitis A-contaminated green onions were
19   provided by SYSCO, the Insurers will most likely prevail on their negligence and warranty
20   claims. As such Scottsdale has a reasonable probability of success on the merits.

21         Chi-Chi's's argument that the Insurer's should have demonstrated not a likelihood of
22   success on the merits of the causes of action they assert but of success in obtaining an
23   injunction is misplaced. CCP § 526(a)(3) provides that an injunction may issue when it
24   appears, during the litigation, that a party to the action is doing, or threatens, or is about to
25   do, or is procuring or suffering to be done, some act in violation of the rights of another
26   party to the action respecting the subject of the action, and tending to render the judgment
27   ineffectual.

28         Generally, the complaint must set forth a cause of action for injunctive relief to

Selman Breitman LLP
ATTORNEYS AT LAW

308328.1 380.18932

9

1  support issuance of a preliminary injunction (or a temporary restraining order.) See e.g.,

2  CCP § 526 subd. (a)(1)-(2). However, the court may issue injunctions at any stage of the

3  proceedings to maintain the status quo until judgment, regardless of whether the complaint

4  seeks equitable relief. CCP § 526(a)(3); *Lenard v. Edmonds* (1957) 151 Cal.App.2d 764,

5  769.

6      Here, an injunction is necessary to prevent Chi-Chi's from forcing Scottsdale to

7  forfeit its right to a jury trial. As there is no cause of action for injunctive relief, the

8  appropriate analysis is whether Scottsdale would prevail on its claims against Castellini.

9  **IV.   CONCLUSION**

10      Based upon the foregoing reasons, Scottsdale respectfully requests the court issue a

11  preliminary injunction, enjoining Chi-Chi's from pursuing SYSCO in arbitration in

12  Pennsylvania as allowing the arbitration to go forward will result in irreparable harm to

13  Scottsdale, and grant such further relief the court deems necessary and proper.

14

15  DATED: April 7, 2006            SELMAN BREITMAN LLP

16

17                          By:_____

18                              SHERYL W. LEICHENGER
                                ELDON S. EDSON
                                TAM T. GLUNT
19                          Attorneys for Plaintiff
                            SCOTTSDALE INSURANCE COMPANY

20

21  DATED: April 7, 2006            LUCAS & HAVERKAMP

22

23                          By:_____ by: KWK
                                STEPHEN LUCAS
24                              PATRICIA JO CUSTER
                            Attorneys for Plaintiff
25                          FEDERAL INSURANCE COMPANY

26

27

28

Selman Breitman LLP
ATTORNEYS AT LAW

308328.1 380.18932

REPLY IN SUPPORT OF MOTION FOR ORDER MODIFYING PRELIMINARY INJUNCTION

**Selman Breitman LLP**
ATTORNEYS AT LAW

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## DECLARATION OF ELDON S. EDSON

I, ELDON S. EDSON, declare and state as follows:

1.    I am an attorney at law, duly licensed to practice before the courts of the State of California. I am a partner in the law firm of Selman Breitman LLP, attorneys of record for plaintiff Scottsdale Insurance Company ("Scottsdale").

2.    The facts set forth herein are known to me personally, and if called upon to testify, I could and would competently testify thereto, I make this declaration in support of Scottsdale's Motion for Preliminary Injunction.

3.    SYSCO will be served as of Friday, April 7, 2006.

4.    SYSCO was not served earlier because Scottsdale and SYSCO have been in negotiations regarding the subject action, including acceptance of service of process by Aaron Krauss, counsel for SYSCO.

5.    On or about September 8, 2005, Chi-Chi's commenced private arbitration against SYSCO in Pennsylvania without the Insurers' knowledge or consent.

6.    Despite leading the Insurers to believe Chi-Chi's agreed Ventura, California was the proper venue for the filing of the now-consolidated actions, Chi-Chi's had already taken steps to pursue SYSCO in private arbitration in Pennsylvania.

7.    Because the rule against splitting a cause of action requires insurer and insured to bring one action together, Chi-Chi's unilateral decision to pursue arbitration in Pennsylvania under Kentucky law requires the Insurers either to forfeit their rights to both a jury trial and appellate review or to risk being barred from pursuing any of the defendants submitting to arbitration, including SYSCO.

/ / /
/ / /
/ / /
/ / /
/ / /

308328.1  380.18932

**REPLY IN SUPPORT OF MOTION FOR ORDER MODIFYING PRELIMINARY INJUNCTION**

8.    Therefore, even though Scottsdale never contracted for arbitration, Chi-Chi's unilateral decision to pursue private arbitration effectively compels Scottsdale to arbitrate its subrogation claims.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on February 28, 2006, at Los Angeles, California.

_____
ELDON S. EDSON

**REPLY IN SUPPORT OF MOTION FOR ORDER MODIFYING PRELIMINARY INJUNCTION**

Selman Breitman LLP
ATTORNEYS AT LAW

308328.1  380.18932

**PROOF OF SERVICE**

*Scottsdale Insurance Company v. Castellini Company*
Ventura Superior Court Case Co.: CIV236710

*Federal Ins. Co. v. Castellini Company*
Ventura Superior Court Case No.: CIV236719

*Chi-Chi's, Inc., v. Castellini Company LLC,*
Ventura Superior Court Case No.: CIV 237044

*Empire Indemnity Insurance Company v. Castellini Company LLC*
Ventura Superior Court Case No.: CIV237810

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of 18 years and am not a party to the within action; my business address is 11766 Wilshire Boulevard, Sixth Floor, Los Angeles, CA 90025. On April 7, 2006, I served the following document(s) described as follows: **SCOTTSDALE'S AND FEDERAL'S REPLY IN SUPPORT OF MOTION FOR ORDER MODIFYING THE PRELIMINARY INJUNCTION ISSUED ON MARCH 9, 2006; MEMORANDUM OF POINTS AND AUTHORITIES** on the interested parties in this action by placing a true copy thereof enclosed in sealed envelopes addressed as follows:

☐ **BY MAIL:** By placing a true copy thereof in a sealed envelope addressed as above, and placing it for collection and mailing following ordinary business practices. I am readily familiar with the firm's practice of collection and processing correspondence, pleadings, and other matters for mailing with the United States Postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☒ **BY OVERNIGHT COURIER:** I caused the above-referenced document(s) to be delivered by Federal Express to the addressee(s).

☐ **BY E-MAIL:** I transmitted a copy of the foregoing documents(s) via e-mail to the addressee(s).

☐ **BY PERSONAL SERVICE:** I caused the above referenced documents to be personally delivered in such envelope by hand **VIA FIRST LEGAL SUPPORT SERVICES** to the offices of the addressee(s) listed below:

☐ **BY FAX:** I transmitted a copy of the foregoing documents(s) via telecopier to the facsimile numbers of the addressee(s) listed on the **ATTACHED SERVICE LIST** and the transmission was reported as complete and without error to the parties.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on April 7, 2006, at Los Angeles, California.

SUSAN KRIESEL

299300.1  380.18932

1

1

## SERVICE LIST

*Scottsdale Insurance Company v. Castellini Company*
Ventura Superior Court Case Co.: CIV236710

*Federal Ins. Co. v. Castellini Company*
Ventura Superior Court Case No.: CIV236719

*Chi-Chi's, Inc., v. Castellini Company LLC,*
Ventura Superior Court Case No.: CIV 237044

*Empire Indemnity Insurance Company v. Castellini Company LLC*
Ventura Superior Court Case No.: CIV237810

| | |
|---|---|
| Fred L. Gordon, Esq.,<br>Gordon & Holmes<br>233 West Date St.<br>San Diego, CA 92101 | Attorneys For CHI-CHI'S, INC.<br>Tele: (619) 696-0444<br>Fax: (619) 696-1144 |
| Stephen D. Lucas, Esq.<br>LUCAS & HAVERKAMP<br>3636 Nobel Drive, Suite 200<br>San Diego, CA 92122 | Attorneys for FEDERAL INSURANCE<br>COMPANY<br>Tele: (858) 535-4000<br>Fax: (858) 535-4001 |
| Philip H. Thompson, Esq.<br>NELSEN, THOMPSON, PEGUE &<br>THORNTON<br>2425 Olympic Blvd., Suite 4000W<br>Santa Monica, CA 90404-4032 | Attorneys for EMPIRE INDEMNITY<br>INSURANCE COMPANY<br>Tele: (310) 315-1001<br>Fax: (310) 315-1333 |
| Luther W. Horton, Esq.<br>Horton, Oberrecht & Kirkpatrick<br>225 Broadway<br>Suite 2200<br>San Diego, California 92101 | Attorneys for NEWSTAR FRESH<br>FOODS, LLC<br>Tele: (619) 232-1183<br>Fax: (619) 696-5719 |
| Thomas P. Minehan, Esq.<br>Minehan, McFaul & McLinn, LLP<br>615-B St.<br>Santa Barbara, California 93101 | Attorneys for APIO FRESH, LLC<br>Tele: (805) 963-8252<br>Fax: (805) 963-8272<br>(Co-Counsel) |
| Bradley W. Sullivan, Esq.<br>Lombardo & Gilles<br>318 Cayuga Street<br>Salinas, California 93901 | Attorneys for APIO, INC. and APIO<br>FRESH, LLC<br>Tele: (831) 754-2444<br>Fax: (831) 754-2011 |
| Steven R. Lewis, Esq.<br>Lewis, Brisbois, Bisgaard & Smith<br>221 North Figueroa Street, Suite 1200<br>Los Angeles, CA 90012 | Attorneys For CASTELLINI COMPANY,<br>LLC<br>Tele: (213) 680-5041<br>Fax: (213) 580-7918 |

Selman Breitman LLP
ATTORNEYS AT LAW

299300.1  380.18932

2

1

2   Curt W. Uritz, Esq.
    Strauss-Uritz
3   199 South Figueroa Street, Second Floor
    Ventura, California 93001

Attorneys for BOSKOVICH FARMS, INC.
Tele:  (805) 641-9992
Fax :  (805) 641-9993

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Selman Breitman LLP
ATTORNEYS AT LAW

299300.1  380.18932

3

# EXHIBIT D

MAY-18-06  09:49AM  FROM-GORDON & ... S        619 696 1144        93  P.002  F-906

| | |
|---|---|
| 1 | Frederic L. Gordon, Esq., SBN 98994 |
| | Rhonda J. Holmes, Esq., SBN 157017 |
| 2 | Douglas J. Billings, Esq., SBN 169881 |
| | A. Michael Nalu, Esq., SBN 202811 |
| 3 | GORDON & HOLMES |
| | 223 West Date Street |
| 4 | San Diego, CA 92101 |
| | Telephone: (619) 696-0444 |
| 5 | Facsimile: (619) 696-1144 |
| 6 | Attorneys for Plaintiff |
| | CHI-CHI'S, INC. |
| 7 | |

VENTURA COUNTY
SUPERIOR AND MUNICIPAL COURTS
**FILED** by **FAX**

8  SUPERIOR COURT FOR THE STATE OF CALIFORNIA

9  COUNTY OF VENTURA

10  SCOTTSDALE INSURANCE COMPANY, )   CASE NO. CIV236710
 )   (CONSOLIDATED WITH CASE NOS.
11          Plaintiff, )   CIV236719, CIV237044, AND CIV237810
 )
12      v. )   PLAINTIFF CHI-CHI'S INC.'S EX
 )   PARTE APPLICATION FOR
13  CASTELLINI COMPANY LLC, )   CLARIFICATION RE INJUNCTION;
 BOSKOVICH FARMS, INC., APIO, INC., )   DECLARATION OF DOUGLAS J.
14  APIO FRESH, LLC, NEWSTAR FRESH )   BILLINGS
 FOODS, LLC and Does 1 through 100, )
15 )
          Defendants. )   DATE:    May 17, 2006
16 )   TIME:    8:30 a.m.
 )   DEPT.:   43
17 )   JUDGE:   Hon. Ken W. Riley
 )
18 )
 )
19  FEDERAL INSURANCE COMPANY, )
 )
20          Plaintiff, )
 )
21      v. )
 )
22  CASTELLINI COMPANY, INC.; )
 BOSKOVICH FARMS, INC.; APIO, INC.; )
23  APIO FRESH, LLC; NEWSTAR FRESH )
 FOODS, LLC; and DOES 1 through 100, )
24  inclusive, )
 )
25          Defendants. )
 )
26 )
 )
27 )
 )
28 )

@FFDesktop::ODMA/PCDOCS/GH/2111/1                -1-
EX PARTE APPLICATION FOR CLARIFICATION OF INJUNCTION; DECL OF DOUGLAS J. BILLINGS

1   CHI-CHI's, INC.,                                        )
                                                            )
2                     Plaintiff,                            )
                                                            )
3       vs.                                                 )
                                                            )
4   CASTELLINI COMPANY, LLC; APIO                           )
    FRESH, L.L.C.; BOSKOVICH FARMS,                         )
5   INC.; NEWSTAR FRESH FOODS, L.L.C.;                      )
    CERES FRESH FOODS, L.L.C.; and DOES                     )
6   1-50                                                    )
                                                            )
7                     Defendants.                           )
                                                            )
8   EMPIRE INDEMNITY INSURANCE                              )
    COMPANY,                                                )
9                                                           )
                      Plaintiff,                            )
10                                                          )
        v.                                                  )
11                                                          )
    CASTELLINI COMPANY, LLC;                                )
12  BOSKOVICH FARMS, INC.; APIO, INC.;                      )
    NEWSTAR FRESH FOODS, LLC                                )
13                                                          )
                      Defendants.                           )
14  _____                   )

15      Plaintiff Chi-Chi's, Inc. ("Chi-Chi's") respectfully submits the following Ex Parte

16  Application for Clarification of Injunction.

17      On March 9, 2006, this Court entered an injunction which prohibited Chi-Chi's "from

18  continuing to pursue arbitration against SYSCO Corporation in Pennsylvania." The injunction is

19  effective until June 30, 2006. On May 3, 2006, the U.S. District Court for the District of

20  Delaware entered an order requiring Chi-Chi's and other parties to submit a briefing schedule

21  with respect to Sysco Corporation's ("Sysco") appeal of the U.S. Bankruptcy Court for the

22  District of Delaware's order and judgment denying Sysco's motion to enjoin Chi-Chi's from

23  pursuing any action against Sysco, including the Pennsylvania arbitration, pursuant to Rule 41 of

24  the Federal Rules of Civil Procedure. Sysco has proposed a briefing schedule that would require

25  Chi-Chi's to file its answering brief on or before June 12, 2006.

26      Chi-Chi's is confident that this Court's March 9, 2006 injunction is not intended to prevent

27  Chi-Chi's from protecting its rights by participating in the subject appeal. However, Scottsdale

28  Insurance Company and Federal Insurance Company, the parties that sought the injunction, have

GORDON & HOLMES
223 West Date Street San Diego, CA   92101
(619) 696-0444   Fax (619) 696-1144

@PFDesktop\::ODMA/PCDOCS/GH/21116/1          - 2 -
EX PARTE APPLICATION FOR CLARIFICATION OF INJUNCTION; DECL. OF DOUGLAS J. BILLINGS

1   indicated their belief that Chi-Chi's is in fact enjoined from such participation. Despite the clear

2   language of the injunction, Chi-Chi's has opted, out of respect for this Court and in light of the

3   insurers' objection, to seek clarification from this Court prior to participating in the appellate

4   process.

5       Chi-Chi's therefore respectfully requests, as more fully addressed in the Declaration of

6   Douglas J. Billings, a clarification confirming that Chi-Chi's may fully participate in appellate

7   proceeding currently underway before the U.S. District Court for the District of Delaware.

8

9   Dated: May 16, 2006                          Respectfully submitted,

10                                               GORDON & HOLMES

11

12  By: _____
                                                FREDERIC L. GORDON, ESQ.
13                                              RHONDA J. HOLMES, ESQ.
                                                DOUGLAS J. BILLINGS, ESQ.
14                                              A. MICHAEL NALU, ESQ.
                                                Attorneys for Plaintiff/Cross-Defendant
15                                              CHI-CHI'S, INC.

16

17

18

19

20

21

22

23

24

25

26

27

28

GORDON & HOLMES
223 West Date Street San Diego, CA 92101
(619) 696-0444  Fax (619) 696-1144

GORDON & HOLMES
223 West Date Street San Diego, CA  92101
(619) 696-0444  Fax (619) 696-1144

## DECLARATION OF DOUGLAS J. BILLINGS

1

2     I, DOUGLAS J. BILLINGS, declare as follows:

3          1.     I am an attorney at law duly admitted to practice before all the courts of the State of

4     California and am an attorney in the law firm of Gordon & Holmes, the attorneys of record

5     herein for plaintiff Chi-Chi's, Inc. ("Chi-Chi's").

6          2.     The matters set forth in this declaration are based upon my own personal

7     knowledge and, if called as a witness, I could and would competently testify to the matters

8     discussed herein.

9          3.     On March 9, 2006, this Court, on the motion of plaintiffs Scottsdale Insurance

10    Company ("Scottsdale") and Federal Insurance Company ("Federal") (collectively "the

11    Insurers"), entered an injunction ("the Injunction") by which plaintiff "Chi-Chi's and its

12    employees, agents and persons acting with it or on its behalf are enjoined from continuing to

13    pursue arbitration against SYSCO Corporation in Pennsylvania." On April 17, 2006, this Court

14    continued the injunction, which was originally set to dissolve on April 24, 2006, to June 30,

15    2006. A true and correct copy of the Order imposing the Injunction is attached hereto as Exhibit

16    1.

17         4.     By this Application, Chi-Chi's respectfully asks this Court to confirm that the

18    Injunction does not prohibit Chi-Chi's from participating in Sysco Corporation's ("Sysco")[1]

19    appeal ("the Appeal"), which is pending in the U.S. District Court for the District of Delaware

20    (the "District Court"), of the U.S. Bankruptcy Court for the District of Delaware's (the

21    "Bankruptcy Court") order and judgment denying Sysco's "Rule 41" motion (the "Rule 41

22    Motion") including, without limitation, the filing of an opposition brief in the Appeal. Sysco's

23    unsuccessful Rule 41 Motion, detailed below, sought to prohibit Chi-Chi's from pursuing the

24    Pennsylvania arbitration, or any other claims against Sysco, asserting that such claims had been

25    dismissed, by operation of Rule 41 of the Federal Rules of Civil Procedure ("FRCP 41"), with

26    prejudice.

27    _____

28    [1]     For ease of reference, the term "Sysco" as used herein refers to both Sysco Corporation and The
      Sygma Network, Inc.

GORDON & HOLMES
223 West Date Street San Diego, CA  92101
(619) 696-0444  Fax (619) 696-1144

1    5.    In 2004, two federal court actions, each of which asserted damages against Sysco

2  arising out of the Hepatitis A outbreak which occurred at a Chi-Chi's restaurant in or about

3  October 2003, were filed.  The first action was initiated by Chi-Chi's and the second by Empire

4  Indemnity Insurance Company ("Empire"), Chi-Chi's insurer.  Each action was voluntarily

5  dismissed as to Sysco by the respective plaintiff.  To resolve whether FRCP 41 prohibited Chi-

6  Chi's from instituting arbitration or any other action against Sysco, the parties stipulated that

7  Sysco's would file a new adversary proceeding in the Bankruptcy Court (where Chi-Chi's

8  bankruptcy was pending) for the sole purpose of determining whether FRCP 41 operated to bar

9  any claims by Chi-Chi's against Sysco.  In the Rule 41 Motion, Sysco argued that the second of

10  the two prior federal court dismissals of Sysco operated as a dismissal with prejudice under Rule

11  41, which generally only allows a single plaintiff to voluntarily dismiss without prejudice once.

12    6.    The Rule 41 Motion was argued on November 16, 2006 and an order and judgment

13  denying the Rule 41 Motion ("the Judgment") was issued on January 18, 2006.  A true and

14  correct copy of the Judgment is attached hereto as Exhibit 2.  Sysco thereafter appealed the

15  Judgment to the District Court.

16    7.    On May 3, 2006, the District Court issued an order ("the May 3 Order") requiring

17  Chi-Chi's, Sysco, and Empire (which had intervened in the Bankruptcy Court action and

18  opposed Sysco's motion) to "confer and submit a briefing schedule to the court no later than May

19  17, 2006."  A true and correct copy of the May 3 Order is attached hereto as Exhibit 3.

20    8.    On or about May 4, 2006, I participated in a telephone conference with counsel for

21  Sysco and Empire, during which Sysco proposed a briefing schedule for the U.S. District Court

22  appeal.  The proposed schedule would require (a) Sysco to file its opening brief on or before May

23  26, 2006 and (b) Chi-Chi's to file its answering brief on or before June 12, 2006.

24    9.    Chi-Chi's has no objection to Sysco's proposed briefing schedule and, subject to

25  this Court's clarification, intends to agree to the proposal.  I am informed and believe, similarly,

26  that Empire intends to stipulate to the proposed schedule.  As of the date of this Application, the

27  parties have not yet submitted any proposal to the District Court.

28

GORDON & HOLMES
223 West Date Street San Diego, CA  92101
(619) 696-0444  Fax (619) 696-1144

1    10.    Prior to and after participating in the May 4, 2006 telephone conference referenced

2  in paragraph 8 above, I and other Chi-Chi's counsel reviewed this Court's March 9, 2006

3  Injunction, as well as the pleadings by which the Injunction was obtained. Following this

4  review, Chi-Chi's confidently concluded that the Injunction does not extend beyond Chi-Chi's

5  participation in or prosecution of the Pennsylvania arbitration *itself*. Nevertheless, I informed

6  counsel for Sysco and Empire during the May 4, 2006 conference call that Chi-Chi's did not

7  wish to execute any stipulated schedule until it first confirmed that Scottsdale and Federal, the

8  parties who sought the Injunction, agreed with Chi-Chi's as to the Injunction's limited scope.

9    11.    Accordingly, on May 4, 2006, I sent an email to counsel for Scottsdale and Empire,

10  asking each to confirm their agreement with Chi-Chi's understanding of the Injunction. A true

11  and correct copy of my May 4, 2006 email to Eldon Edson and Steve Lucas is attached hereto as

12  Exhibit 4.

13    12.    On May 8, 2006, I received a joint letter from counsel for Scottsdale and Empire, in

14  which they stated their belief that the Injunction precludes "Chi-Chi's from participating in the

15  Delaware District Court appellate process." A true and correct copy of the May 8, 2006 letter is

16  attached hereto as Exhibit 5.[2]

17    13.    Although Chi-Chi's is confident that it has properly interpreted this Court's

18  Injunction, the language of which is clear, Chi-Chi's has filed the present Application and has

19  withheld its approval of the proposed District Court briefing schedule out of respect for this

20  Court.

21    14.    By participating in the Rule 41 appellate process, Chi-Chi's will not be "pursuing"

22  the Pennsylvania arbitration. Rather, Chi-Chi's must participate in that process to protect its

23  rights to assert any action whatsoever (whether in arbitration or court) against Sysco. That is, an

24

25    [2]    In their May 8, 2006 letter, counsel suggest that Sysco, Chi-Chi's, and Empire should simply
26    agree to a briefing schedule which commences after the June 30, 2006 expiration of the
     injunction. This solution is unworkable for several reasons, including: (1) Sysco's counsel has
27    explicitly advised me that Sysco will not agree to such a schedule, (2) Chi-Chi's does not wish the
     resolution of the appeal of the Rule 41 Motion to be unnecessarily delayed, and (3) the proposed
28    solution did not come with a promise that the Insurers would not seek a further extension of the
     injunction.

1  adverse ruling on the appeal of the Rule 41 Motion would result in a permanent bar against Chi-

2  Chi's claims against Sysco. The Pennsylvania arbitration, which has been stayed by Arbitrator

3  Thomas Rutter until the expiration of the Injunction, will remain on hold irrespective of Chi-

4  Chi's participation in the Appeal pending before the U.S. District Court.

5      15.    For the reasons stated above, Chi-Chi's respectfully requests that this Court simply

6  clarify that its March 9, 2006 Injunction does not prohibit Chi-Chi's from filing, in the U.S.

7  District Court for the District of Delaware, an Answering Brief in response to Sysco's appeal of

8  the Delaware Bankruptcy Court's denial of Sysco's Rule 41 Motion, or from otherwise

9  participating in the Delaware appellate process.

10     16.    Prior to 10:00 a.m. on the morning of May 16, 2006, my office gave notice of the

11 date, time and purpose of the present ex parte application to all counsel of record by faxed letter.

12 A true and correct copy of my May 16, 2006 letter is attached hereto as Exhibit 6.

13     I declare under penalty of perjury under the laws of the State of California that the

14 foregoing is true and correct except as to those matters I state on information and belief, and as to

15 those matters, I believe them to be true.

16     This Declaration has been executed May 16, 2006 in San Diego, California.

17

18                                    _____
                                      DOUGLAS J. BILLINGS, ESQ.
19

20

21

22

23

24

25

26

27

28

GORDON & HOLMES
223 West Date Street San Diego, CA   92101
(619) 696-0444  Fax (619) 696-1144

Ex. 1

1

2

3

VENTURA
SUPERIOR COURTS
**FILED**

MAR 1 7 2006

MICHAEL D. PLANET
Executive Officer and Clerk
BY: __MARISELA SOTO__ , Deputy

4

5

6

7       SUPERIOR COURT OF CALIFORNIA

8          COUNTY OF VENTURA

9

| | |
|---|---|
| 10  SCOTTSDALE INSURANCE COMPANY, | CASE NO.  CIV236710 (Master File) |
| 11         Plaintiff, | [PROPOSED] ORDER |
| 12      v. | Date  :  March 9, 2006 |
| 13  CASTELLINI COMPANY LLC, | Time  :  8:30 a.m. |
|     BOSKOVICH FARMS, INC., APIO, INC., | Dept.  :  43 |
| 14  APIO FRESH, LLC, NEWSTAR FRESH | Judge  :  Honorable Ken W. Riley |
|     FOODS, LLC and DOES 1 through 100, | |
| 15 | Complaint Filed  :  October 12, 2005 |
|     Defendants. | |
| 16 | |

17

18

19

20                          **ORDER**

21       The Motion for Preliminary Injunction of plaintiff Scottsdale Insurance Company

22   ("Scottsdale") and Federal Insurance Company, joined by Empire Insurance Company,

23   came on for hearing on March 9, 2006, in Department 43 of the above-entitled court, the

24   Honorable Ken W. Riley, Judge presiding.

25       Having considered the moving papers, the opposing papers and the arguments of

26   counsel and having taken the matter under submission, the Motion for Preliminary

27   Injunction is granted.

28       Plaintiff Chi-Chi's and its employees, agents and persons acting with it or on its

Selman • Breitman LLP
ATTORNEYS AT LAW

304645.1  380.18992

1

1   behalf are enjoined from continuing to pursue arbitration against SYSCO Corporation in

2   Pennsylvania.  This injunction will expire and be dissolved on April 24, 2006 at 5:00 p.m.

3   Pacific Daylight Time.

4            Plaintiff Scottsdale is ordered to prepare the formal order.

5

6   IT IS SO ORDERED.

7   DATED:  3·14.06

8                                             KEN W. RILEY
                                    JUDGE, VENTURA SUPERIOR COURT

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

304645.1  380.18932

[PROPOSED] ORDER

1

## PROOF OF SERVICE

*Scottsdale Insurance Company v. Castellini Company*
Ventura Superior Court Case Co.: CIV236710

*Federal Ins. Co. v. Castellini Company*
Ventura Superior Court Case No.: CIV236719

*Chi-Chi's, Inc., v. Castellini Company LLC,*
Ventura Superior Court Case No.: CIV 237044

*Empire Indemnity Insurance Company v. Castellini Company LLC*
Ventura Superior Court Case No.: CIV237810

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of 18 years and am not a party to the within action; my business address is 11766 Wilshire Boulevard, Sixth Floor, Los Angeles, CA 90025. On March 10, 2006, I served the following document(s) described as follows: [PROPOSED] ORDER on the interested parties in this action by placing a true copy thereof enclosed in sealed envelopes addressed as follows:

☒    **BY MAIL:** By placing a true copy thereof in a sealed envelope addressed as above, and placing it for collection and mailing following ordinary business practices. I am readily familiar with the firm's practice of collection and processing correspondence, pleadings, and other matters for mailing with the United States Postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐    **BY OVERNIGHT COURIER:** I caused the above-referenced document(s) to be delivered by Federal Express to the addressee(s).

☐    **BY E-MAIL:** I transmitted a copy of the foregoing documents(s) via e-mail to the addressee(s).

☐    **BY PERSONAL SERVICE:** I caused the above referenced documents to be personally delivered in such envelope by hand **VIA FIRST LEGAL SUPPORT SERVICES** to the offices of the addressee(s) listed below:

☐    **BY FAX:** I transmitted a copy of the foregoing documents(s) via telecopier to the facsimile numbers of the addressee(s) **listed on the ATTACHED SERVICE LIST** and the transmission was reported as complete and without error to the parties.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on March 10, 2006, at Los Angeles, California.

SUSAN KRIESEL

Selman Breitman LLP
ATTORNEYS AT LAW

299300.1 380.18932

1

## SERVICE LIST

*Scottsdale Insurance Company v. Castellini Company*
Ventura Superior Court Case Co.: CIV236710

*Federal Ins. Co. v. Castellini Company*
Ventura Superior Court Case No.: CIV236719

*Chi-Chi's, Inc., v. Castellini Company LLC,*
Ventura Superior Court Case No.: CIV 237044

*Empire Indemnity Insurance Company v. Castellini Company LLC*
Ventura Superior Court Case No.: CIV237810

| | |
|---|---|
| Fred L. Gordon, Esq.,<br>Gordon & Holmes<br>233 West Date St.<br>San Diego, CA 92101 | Attorneys For CHI-CHI'S, INC.<br>Tele: (619) 696-0444<br>Fax: (619) 696-1144 |
| Stephen D. Lucas, Esq.<br>LUCAS & HAVERKAMP<br>3636 Nobel Drive, Suite 200<br>San Diego, CA 92122 | Attorneys for FEDERAL INSURANCE<br>COMPANY<br>Tele: (858) 535-4000<br>Fax: (858) 535-4001 |
| Philip H. Thompson, Esq.<br>NELSEN, THOMPSON, PEGUE &<br>THORNTON<br>2425 Olympic Blvd., Suite 4000W<br>Santa Monica, CA 90404-4032 | Attorneys for EMPIRE INDEMNITY<br>INSURANCE COMPANY<br>Tele: (310) 315-1001<br>Fax: (310) 315-1333 |
| Luther W. Horton, Esq.<br>Horton, Oberrecht & Kirkpatrick<br>225 Broadway<br>Suite 2200<br>San Diego, California 92101 | Attorneys for NEWSTAR FRESH<br>FOODS, LLC<br>Tele: (619) 232-1183<br>Fax: (619) 696-5719 |
| Bradley W. Sullivan, Esq.<br>Lombardo & Gilles<br>318 Cayuga Street<br>Salinas, California 93901 | Attorneys for APIO, INC. and APIO<br>FRESH, LLC<br>Tele: (831) 754-2444<br>Fax: (831) 754-2011 |
| Steven R. Lewis, Esq.<br>Lewis, Brisbois, Bisgaard & Smith<br>221 North Figueroa Street, Suite 1200<br>Los Angeles, CA 90012 | Attorneys For CASTELLINI COMPANY,<br>LLC<br>Tele: (213) 680-5041<br>Fax: (213) 580-7918 |
| Curt W. Uritz, Esq.<br>Strauss-Uritz<br>199 South Figueroa Street, Second Floor<br>Ventura, California 93001 | Attorneys for BOSKOVICH FARMS, INC.<br>Tele: (805) 641-9992<br>Fax: (805) 641-9993 |

Selman Breitman LLP
ATTORNEYS AT LAW

299300.1  380.18932

2

Ex. 2

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

In Re:                                        In Proceedings Under Chapter 11

CHI-CHI'S, INC., *et al.*                      Case No.: 03-13063

Debtors.

SYSCO CORPORATION and                         Adv. Proc. No. 05-52726
THE SYGMA NETWORK, INC.,
                                              JUDGE RANDOLPH BAXTER
Plaintiffs,

v.

CHI-CHI'S, INC.,

Defendant.

## MEMORANDUM OF OPINION AND ORDER

Before the Court is the complaint of Sysco Corporation and the SYGMA Network (collectively, "Sysco") seeking to enjoin the Debtor Chi-Chi's Inc. ("Chi-Chi's") from initiating, continuing, and/or participating in any additional actions, including arbitration, against them in connection with certain hepatitis claims.

The Court acquires core matter jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157(a), (b) and 1334(b). Upon an examination of the parties' respective briefs and supporting documentation, and after conducting a trial on the matter, the following findings of fact and conclusions of law are hereby rendered:

*

1.    **Factual History**

The present action arises out of a November 2003 outbreak of Hepatitis A illnesses attributed to the consumption of certain contaminated green onions at a Chi-Chi's restaurant in Monaca, Pennsylvania. The outbreak caused at least four deaths, and at least 650 illnesses. Chi-Chi's alleges that Sysco was the supplier of the contaminated onions. Sysco, in turn, allegedly obtained the onions from Castellini Company, LLC ("Castellini").

Bodily injury claimants have filed several hundred claims and/or complaints against Chi-Chi's (collectively, the "Hepatitis Claims"). To date, Chi-Chi's, through its own funds and those of its liability insurers, has paid approximately $31,000,000 in damages. Empire Indemnity Insurance Company ("Empire"), one of Chi-Chi's liability insurers, has paid, or will pay out, some $10,000,000 ("Empire costs").[1] Chi-Chi's also alleges that it has suffered its own damages of more than $30,000,000, including lost profits, property damage, self-insurance costs, indemnification, and other outbreak related costs (collectively, "lost profits damages").

2.    **Procedural History**

a.    **Chi-Chi's Action**

In July 2004, Chi-Chi's filed an adversary proceeding in this Court against Sysco and Castellini (the "Chi-Chi's Action"). Castellini informed Chi-Chi's of its intention to demand a jury trial and to seek withdrawal of the District Court's reference. Chi-Chi's also asserts that Sysco indicated a desire to submit the matter to arbitration, pursuant to the Distribution Service Agreement executed by the parties. For these reasons, on November 12, 2004, Chi-Chi's filed 1) a stipulation of dismissal as to defendant Castellini, so that Chi-Chi's could initiate an action against Castellini in the United States District Court for the Central District of California

---

[1] Empire Response, at 2.

("California District Court"), and 2) a notice of dismissal as to defendants Sysco and SYGMA, allegedly upon Sysco's suggestion that they would pursue resolution of the dispute through arbitration.

On November 22, 2004, Chi-Chi's filed a complaint in the Central District of California against Castellini. On June 1, 2005, the California District Court abstained from hearing the matter pursuant to 28 U.S.C. § 1334(c)(1). On June 6, 2005, Chi-Chi's refiled its complaint against Castellini in the United States District Court for the Western District of Pennsylvania ("Pennsylvania District Court") as a third-party complaint in a bodily injury case filed against Chi-Chi's.[2] On October 7, 2005, the Pennsylvania District Court, citing the first filed rule, granted Castellini's motion to dismiss Chi-Chi's third party complaint in favor of the action currently pending in this Court prosecuted by Empire against Castellini (see below).

On September 8, 2005, Chi-Chi's filed an arbitration claim against Sysco with ADR Options in Philadelphia, Pennsylvania.

b.     **Empire Action**

On November 16, 2004, Empire filed, as a real party in interest, its own adversary action in this Court (the "Empire Action"). Empire, naming Chi-Chi's as the plaintiff in the adversary action, noted that the complaint was filed by Empire, as subrogee of Chi-Chi's.[3] The complaint was brought by Empire's own litigation counsel. The complaint in the Empire Action is nearly word-for-word identical to the complaint in the Chi-Chi's Action.

Similar to the Chi-Chi's Action, Sysco also allegedly indicated to Empire that it would

---

[1]     *Funkhouser v. Chi-Chi's*, 05-cv-00638, (W.D. Pa.) (McVerry, J.).

[3]     Empire Complaint, at 1 n.1.

3

seek to invoke the mandatory arbitration provision contained in the Distribution Service Agreement. Accordingly, on December 7, 2004, Empire filed a notice of dismissal of its complaint, without prejudice, as to Sysco and SYGMA. Empire's complaint alleging claims against Castellini remains pending at this time.

**

The Court must determine whether FED. R. CIV. P. 41(a)(1) bars Chi-Chi's from bringing an arbitration claim and/or other proceedings against Sysco. Under the two dismissal rule, "if the plaintiff invokes Rule 41(a)(1) a second time for an 'action based on or including the same claim,' the action must be dismissed with prejudice." *Radogna v. Ashland, Inc.*, 2005 WL 736599, *1 n.2 (E.D. Pa. 2005) (citing *Cooter & Gell v. Hartmax Corp.*, 496 U.S. 384, 394 (1990)). The Court must determine whether Chi-Chi's is barred by Federal Rule of Civil Procedure 41(a)(1) from pursuing arbitration, as well as all other actions. Rule 41 states, in relevant part:

> (a) Voluntary Dismissal: Effect Thereof.
>
> (1) By Plaintiff; by Stipulation. . . . Unless otherwise stated in the notice of dismissal or stipulation, the dismissal is without prejudice, except that a notice of dismissal operates as an adjudication upon the merits when filed by a plaintiff who has once dismissed in any court of the United States or of any state an action based on or including the same claim.

FED. R. CIV. P. 41(a)(1).

Because it operates as an adjudication on the merits, the two dismissal rule has been strictly construed. *E.g., Manze v. State Farm Ins. Co.*, 817 F.2d 1062, 1066 (3d Cir. 1987) ("several other courts of appeals have strictly interpreted Rule 41(a)(1)"); *Janssen v. Harris*, 321 F.3d 998, 1001 (10th Cir. 2003); *Sutton Place Development Co. v. Abacus Mortg. Inv. Co.*, 826

4

F.2d 637, 640 (7th Cir. 1987) ("We should be especially careful not to extend the scope of such a narrow exception when the purpose for the exception would not be served."); *Seippel v. Jenkins & Gilchrist, P.C.*, 2004 WL 2809205, *1 (S.D.N.Y. 2004); *Muzikowski v. Parmount Pictures Corp.*, 2003 WL 22872117, *3 (N.D. Ill. 2003); *Kuhn v. Williamson*, 122 F.R.D. 192, 195 (E.D.N.C. 1988) ("Since the two dismissal rule is in derogation of previously existing right and thus is to be strictly construed . . .").

Sysco argues that arbitration, as well as all other actions against Sysco, should be enjoined because the two dismissal rule prohibits Chi-Chi's from bringing a third action in connection with the Hepatitis Claims. Sysco argues that two dismissals have already occurred: 1) the Chi-Chi's Action, which was dismissed by notice as to Sysco and SYGMA on November 12, 2004, and 2) the Empire Action, which was also dismissed by notice as to Sysco and SYGMA on December 7, 2004. Therefore, pursuant to Rule 41(a)(1), the Empire Action would serve as an adjudication on the merits, and Chi-Chi's should be enjoined from pursuing arbitration at this stage.

As the party seeking to invoke Rule 41(a)(1), Sysco bears the burden of proving the applicability of the two dismissal rule by a preponderance of the evidence. *Marques v. Federal Reserve Bank of Chicago*, 286 F.3d 1014, 1017 (7th Cir. 2002) (placing the burden under Rule 41(a)(1) on the defendant, "since it is the defendant that is asserting the right to prevent the plaintiff from dismissing the suit.").

\*\*\*

Initially, Sysco asserts that if applicable, this Court has the authority to enjoin arbitration proceedings in order to enforce Rule 41(a)(1). This assertion is not disputed by Chi-Chi's, since

Chi-Chi's believes that Rule 41(a)(1) is inapplicable. Sysco argues that pursuant to Rule 41(a)(1), the dismissal of the Empire Action in this Court would operate as an adjudication on the merits of Chi-Chi's complaint. In the event that this Court determines that Rule 41(a)(1) would apply in this manner, this Court would have the power to enjoin arbitration in order to protect its prior judgment. *See John Hancock Mut. Life Ins. Co. v. Olick*, 151 F.3d 132, 138 (3d Cir. 1998) ("[A] realistic concern for the finality and integrity of judgments would arise if parties were free to ignore federal court decisions that have conclusively settled claims or issues now sought to be arbitrated. . . . When a federal court is presented with the contention that a prior federal judgment determined issues now sought to be relitigated in an arbitral forum it must first determine the effect of the judgment." ); *In re American Honda Motor Co., Inc., Dealerships Relations Litigation*, 315 F.3d 417, 443 (4th Cir. 2003).

\*\*\*\*

The express language of Rule 41(a)(1) requires that the second action be filed by a "plaintiff who has once dismissed." The Court must determine whether the Chi-Chi's Action and the Empire Action were filed by the same real party in interest.

The complaints in both actions are captioned with Chi-Chi's as the named plaintiff. The fact that the same plaintiff is named in the case caption, however, is not sufficient, alone, to invoke the two dismissal rule. The Empire complaint states that it was filed by Empire, as subrogee of the Debtor.[4] At oral argument the Court noted, and counsel for Sysco acknowledged, that it is not uncommon for a subrogated action by an insurer to be captioned in the name of the

---

[4] Empire Complaint, at 1 n.1.

6

insured.[5] *Michigan Alkali Co. v. Bankers Indemnity Ins. Co.*, 103 F.2d 345, 348 (2d Cir. 1939) ("Even when a suit is for the benefit of an insurer, it may be brought in the insured's name."); *see also Link Aviation, Inc. v. Downs*, 325 F.2d 613, 615 (D.C. Cir. 1963) ("We are of like opinion, that is to say that though brought in the name of the insureds, this suit was not a nullity, since, as we hold, it was brought for the use of the real parties in interest."); *In re Profile Systems, Inc.*, 1996 WL 26258, *6 n.2 (Bankr. D. Minn. 1996) ("[S]ubrogation claims are generally brought in the name of the insured rather than the insurer so that the controversy appears as a dispute between the insured and third parties. When, such as in this case, an insurer has paid only part of the loss and the insured continues to have a beneficial interest in the cause of action, such a practice can be further justified.").

Similarly, "the two-dismissal rule should not be defeated by a change in the nominal parties, without a change in the real party in interest." *Poloron Prods. Inc. v. Lybrand Ross Bros. & Montgomery*, 66 F.R.D. 610, 614 (S.D.N.Y. 1975) (hereinafter "*Poloron I*"), *rev'd on other grounds*, 534 F.2d 1012 (2d Cir. 1975)) (hereinafter "*Poloron II*"). In *Poloron I*, the district court found that three separate actions, although involving nominally different plaintiffs, were filed by the same real party in interest, and therefore the two dismissal rule could be applied.[6]

Therefore, the Court must determine whether the Chi-Chi's Action and the Empire Action were brought by the same real parties in interest. It is clear in this case, however, that

---

[5] Transcript of November 16, 2005 Hearing, at 10.

[6] *Poloron I* was reversed by the Second Circuit in *Poloron II* on the basis that a stipulated dismissal did not operate as a first "strike" under the two dismissal rule. *Poloron II*, 534 F.2d at 1017-18. In this case, both actions were dismissed by notice as to Sysco and SYGMA.

Empire and Chi-Chi's are separate real parties as required by the two dismissal rule. Empire seeks to assert its own rights, as subrogee. It is well settled that where there is partial subrogation, both the insured and the insurer are real parties in interest. *Virginia Elec. & Power Co. v. Westinghouse Elec. Corp.*, 485 F.2d 78, 84 (4th Cir. 1973) (citing *United States v. Aetna Casualty & Surety Co.*, 338 U.S. 366, 381-82 (1949)) ("Where there is partial subrogation, there are two real parties in interest under Rule 17."); *Gannett v. Pettegrow*, 224 F.R.D. 293, 294 (D. Me. 2004) (citing *State Farm Mut. Liab. Ins. Co. v. United States*, 172 F.2d 737, 739 (1st Cir.1949)); *Huncotte v. Sears, Roebuck & Co.*, 93 F.R.D. 845, 846 (E.D. Pa. 1982) ("It is settled law that an insurer, whether it has paid all of the loss or only part of the loss, is a real party in interest under Rule 17(a)."); *St. Paul Fire & Marine Ins. Co. v. Peoples Natural Gas Co.*, 166 F. Supp. 11, 12 (W.D. Pa. 1958) ("a partial subrogee may maintain an action in a federal court alone without joining other real parties in interest, i.e., the indemnitee and other subrogees."). Further, there has been no allegation that Empire is in privity with Chi-Chi's, or that Chi-Chi's assigned its rights to Empire.

At oral argument, Sysco argued that an insured may have the right to pursue the entire claim, citing *Catalfano v. Higgins*, 188 A.2d 357 (Del. 1962).[7] This proposition, while uncontroversial, is misguided. The fact that Chi-Chi's *may* have been able to pursue the entire claim, does not mean that Chi-Chi's *did*, in fact, pursue the entire claim. *E.g., Virginia Elec. & Power Co. v. Westinghouse Elec. Corp.*, 485 F.2d 78, 84 (4th Cir. 1973) ("Either party may bring suit-the insurer-subrogee to the extent it has reimbursed the subrogor, or the subrogor for either the entire loss or only its unreimbursed loss."). The two dismissal rule does not operate as an

_____

[7] Transcript of November 16, 2005 Hearing, at 9.

adjudication on the merits for any claims that Chi-Chi's could have brought, but operates only on causes of action which were actually pursued by Chi-Chi's. Accordingly, it is hereby determined that the Chi-Chi's and Empire Actions were not filed by the same plaintiff. Thusly, the two dismissal rule is inapplicable.

*****

Because the two actions were not brought by the same plaintiffs, it is unnecessary to make a determination on whether the other requirements of the two dismissal rule have been met. As determined above, it is an unsupported contention that the Chi-Chi's Action and the Empire Action involve the same claims. It is true that the Chi-Chi's complaint and the Empire complaint arise from the same underlying facts, the hepatitis outbreak. Chi-Chi's, however, seeks recovery for lost profits, and other amounts paid in connection with the hepatitis claims. Empire seeks only to recover part or all of the $10,000,000 that it paid as Chi-Chi's insurer. Empire cannot, and does not, seek to recover for Chi-Chi's lost profits, and brings its own, distinct causes of action. *See Jackson Nat. Life Ins. Co. v. Greycliff Partners, Ltd.*, 226 B.R. 407, 417 (E.D. Wis. 1998) ("The argument is meritless because the two Delaware actions do not involve the same claims. . . . Thus, the actions were brought by legally-distinct plaintiffs asserting two completely different sets of legal rights."). The fact that Empire chose to use language in its complaint that is quite similar to Chi-Chi's complaint is insufficient, alone, to place the actions within the scope of the two dismissal rule.

Second, even though both dismissals were accomplished by notice as to Sysco, courts have declined to apply the two dismissal rule under similar circumstances. Chi-Chi's alleges that its complaint was allegedly dismissed due to Chi-Chi's belief that Sysco would seek arbitration.

9

As stated by the District of Puerto Rico in *Island Stevedoring*:

> Even were we to find that the second dismissal was voluntary or by notice as
> required by the language of Rule 41(a)(1), we would still find the two dismissal
> rule inapplicable. A second dismissal as contemplated by this provision preceded
> by a dismissal by stipulation knowingly consented to by all the parties does not
> trigger the two dismissal rule. The rationale for this exception stems from the
> underlying policy of the rule. The primary purpose of the "two dismissal" rule is
> to prevent an unreasonable use of the plaintiff's unilateral right to dismiss an
> action prior to the filing of defendant's responsive pleading. However, the danger
> of abuse of this right lessens when the original dismissal stems from mutual
> agreement.

> While the parties did not file a formal stipulation, the record in the case clearly
> indicates that the first dismissal resulted from negotiations and a consent
> agreement among the parties. BORDELON, however, by insisting on a formal
> stipulation, asks this court to swear allegiance to the language of Rule 41(a)(1) at
> the expense of its underlying policy. This we refuse to do.

> . . . Consequently, we find that the first dismissal was in essence, if not in form, by
> stipulation. The two dismissal rule, therefore, does not apply.

*Island Stevedoring, Inc. v. Barge CCBI*, 129 F.R.D. 430, 432 (D. P.R. 1990); *TCW Special*

*Credits v. FISHING VESSEL CHLOE Z*, 2000 WL 1277922, *2 (9th Cir. 2000) (holding that

although a prior dismissal "was not formally 'stipulated,' it was not unilateral as all parties tacitly

agreed to the dismissal in favor of litigating the action" elsewhere, and that there was "no

evidence that the filings and dismissals were part of a strategy to harass" the defendant);

*Ater ex rel. Ater v. Follrod*, 238 F. Supp. 2d 928, 953-54 (S.D. Ohio 2002) (finding that

application of the two dismissal rule was not warranted because the "dismissals were not

completely unilateral, and there is no evidence in the record that Plaintiffs acted with the intent of

harassing Defendants.").

******

Further, the purpose of the two dismissal rule would not be served if applied in this

10

instance. "The purpose of the 'two dismissal' rule, 'pointed out in numerous decisions, is to prevent unreasonable abuse and harassment,' 'by plaintiff securing numerous dismissals without prejudice.'" *E.g., Sutton Place Development Co. v. Abacus Mortg. Inv. Co.*, 826 F.2d 637, 640 (7th Cir. 1987) (citations omitted); *ASX Inv. Corp. v. Newton*, 183 F.3d 1265, 1268 (11th Cir. 1999) (citing *Poloron II*, 534 F.2d at 1017) ("[T]he primary purpose of the 'two dismissal' rule is to prevent an unreasonable use of the plaintiff's unilateral right to dismiss an action prior to the filing of the defendant's responsive pleading."); *American Cyanamid Co. v. McGhee*, 317 F.2d 295, 297-98 (5th Cir. 1963); *Western Group Nurseries, Inc. v. Ergas*, 211 F.Supp.2d 1362, 1370 (S.D. Fla. 2002) ("The purpose of the two dismissal rule is to prevent duplicative, wasteful and harassing litigation."). There has been no allegation or indication from the record that Chi-Chi's actions have been taken in bad faith to harass Sysco, or to otherwise abuse the judicial system. The record does not reflect whether Sysco filed a responsive pleading in any of the subject proceedings. While the two dismissal rule exists to protect Sysco from harassment, it would not be served by penalizing Chi-Chi's for the unilateral decisions of Empire to bring an action against Sysco and Castellini, inserting Chi-Chi's as the nominal plaintiff, and incorporating the language of the complaint in the Chi-Chi's Action. Empire is represented by separate counsel, which has acted to protect its own interests without the consultation or collaboration of Chi-Chi's. Instead, application of the two dismissal rule would serve to operate as an adjudication on the merits of Chi-Chi's claim, leaving Chi-Chi's without its first opportunity to litigate its claims. *See Poloron II*, 534 F.2d at 1017 ("Where the purpose behind the 'two dismissal' exception would not appear to be served by its literal application, and where that application's effect would be to close the courthouse doors to an otherwise proper litigant, a court should be most careful

11

not to construe or apply the exception too broadly.").

Sysco also notes that Chi-Chi's arguments would allow Sysco to be sued by Chi-Chi's,
and then individually by each of Chi-Chi's insurers and creditors. Other protections, however,
exist to protect Sysco against this hypothetical scenario. Sysco's arguments may have been more
persuasive in a motion seeking to join Empire or Chi-Chi's as a necessary party.
*Arkwright-Boston Mfrs. Mut. Ins. Co. v. City of New York*, 762 F.2d 205, 209 (2d Cir.1985) ("In
a subrogation case the insurer and the insured are 'necessary' parties, but clearly they are not
indispensable parties."); *St. Paul Fire & Marine Ins. Co. v. Peoples Natural Gas Co.*, 166 F.
Supp. 11, 12 (W.D. Pa. 1958) (citing *Yorkshire Ins. Co. v. United States*, 171 F.2d 374 (3d Cir.
1948)) ("the defendant is protected from a multiplicity of suits by its opportunity under the rules
to join the necessary parties."). Neither Sysco nor Castellini filed motions seeking to join Empire
or Chi-Chi's as necessary parties in either action. Accordingly, Sysco cannot now attempt to
utilize Rule 41(a)(1) to extinguish Chi-Chi's ability to litigate its claims.

*******

Sysco also cites language contained in the order of the Pennsylvania District Court, which
states that

> In addition to both claims being brought solely in the name of Chi-Chi's, Inc.,
> both assert the "same rights" through the same six contractually based theories of
> recovery, both assert the "same facts" and claim the same harm, and both demand
> the same "relief" from Castellini. The Court, therefore, concludes that pursuant to
> the first filed rule, the Third-Party Complaint filed against Castellini in this Court
> should be dismissed.

*Funkhouser v. Chi-Chi's Inc.*, 2005 WL 2545300, at *2 (W.D. Pa. 2005) (citations omitted).

Initially, it should be noted that the Pennsylvania District Court found only that under the first
filed rule, the suits were both brought solely in the name of Chi-Chi's. It did not make a

12

determination as to the real party in interest in each action, as required by the two dismissal rule. The findings of the Pennsylvania District Court, moreover, were made under different procedural circumstances, and are not necessarily binding in this matter. Further, the preclusive effect of the Pennsylvania District Court's findings may be defeated where the difference in legal standards applied are significantly different. *E.g., Raytech Corp. v. White*, 54 F.3d 187, 191 (3d Cir. 1995) ("To defeat a finding of identity of the issues for preclusion purposes, the difference in the applicable legal standards must be 'substantial.'"); *Peterson v. Clark Leasing Corp.*, 451 F.2d 1291 (9th Cir. 1971) ("Issues not identical [for collateral estoppel purposes] if the second action involves application of a different legal standard, even though the factual setting of both suits be the same.").

"The first-filed rule is a judicial construct aimed at conserving judicial resources and safeguarding litigants by preventing concurrent duplicative litigation of the same issues between the same parties in more than one federal court." *APV North America, Inc. v. Sig Simonazzi North America, Inc.*, 295 F. Supp. 2d 393, 396 (D. Del. 2002). As stated by the Pennsylvania District Court, the "first-filed rule has been employed by the courts in the Third Circuit to enjoin, where appropriate, 'the subsequent prosecution of 'similar cases . . . in different federal district courts.'" *Funkhouser*, 2005 WL 2545300 at *1 (quoting *EEOC v. University of Pennsylvania*, 850 F.2d 969, 971 (3d Cir. 1988)); *Hay Acquisition Co., I, Inc. v. Schneider*, 2005 WL 1017804, *12 (E.D. Pa. 2005); *see also Ellenby Technologies, Inc. v. AT Systems Inc.*, 2002 WL 356686, *2 (D. Del. 2002) (the first filed rule applies "where two federal courts have concurrent jurisdiction over sufficiently similar issues and parties."). "The decision to invoke the first-filed rule is an equitable determination that is made on a case-by-case, discretionary basis." *Nutrition*

13

& *Fitness, Inc. v. Blue Stuff, Inc.,* 264 F.Supp.2d 355, 360 (W.D. N.C. 2003). The Pennsylvania District Court made a determination based on considerations of judicial economy and convenience that the plaintiffs in the actions were sufficiently similar to invoke the first-filed rule. Accordingly, Chi-Chi's third party complaint was dismissed in favor of the Empire Action being prosecuted in this Court against Castellini.

The legal standards applied under the first-filed rule are significantly different from the requirements under Rule 41(a)(1). As noted above, because it operates as an adjudication on the merits, the two dismissal rule is a statutory rule that has been strictly construed. Adherence to the statutory language of Rule 41(a)(1) overrides a doctrine judicially created for reasons of convenience and economy. *See Applied Concepts, Inc. v. Olympia Indus., Inc.,* 15 Fed. Appx. 793, 799 (Fed. Cir. 2001) ("Moreover, the judicially created doctrine of claim differentiation cannot override the statutory requirements of § 112 . . .."); *Coohey v. U.S.,* 172 F.3d 1060, 1063 (8th Cir. 1999) ("These provisions override and displace judicially-created doctrines in cases where the statutory provisions apply."). The Pennsylvania District Court's findings should not be given preclusive effect in this proceeding, where the policy of the two dismissal rule would not be served, and the narrow requirements of Rule 41(a)(1) are not present. *See Bath Iron Works Corp. v. Director, Office of Workers' Compensation Programs, U.S. Department of Labor,* 125 F.3d 18, 22 (1st Cir. 1997) ("Certainly a difference in the legal standards pertaining to two proceedings may defeat the use of collateral estoppel. . . . But this is so only where the difference undermines the rationale of the doctrine."); *Copeland v. Merrill Lynch & Co., Inc.,* 47 F.3d 1415, 1422 (5th Cir. 1995) (citing *Brister v. A.W.I, Inc.,* 946 F.2d 350, 354 & n. 1 (5th Cir. 1991)) ("[E]ven when issues are stated in 'nearly identical language,' collateral estoppel is

14

unavailable when there are disparate policies underlying each inquiry which result in definite differences in application and result."); *City of Cleveland v. Cleveland Elec. Illuminating Co.*, 538 F. Supp. 1227, 1231 n.3 (N.D. Ohio 1980) ("Where, as here, the legal standards of two statutes are significantly different, the decision of issues under one statute does not give rise to collateral estoppel in the litigation of similar issues under a different statute.").

********

Sysco has not met its burden of showing that Rule 41(a)(1) should be applied to bar Chi-Chi's arbitration claim, since this case involves separate real parties in interest, represented by separate counsel, prosecuting distinct causes of action. Accordingly, judgment is hereby rendered in favor of Debtor-Defendant Chi-Chi's, and the complaint is hereby DISMISSED. Each party is to bear its respective costs.

IT IS SO ORDERED.

Dated, this _11th_ day of
January, 2006

JUDGE RANDOLPH BAXTER
UNITED STATES BANKRUPTCY COURT

15

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

In Re:

CHI-CHI'S, INC., *et al.*

Debtors.

In Proceedings Under Chapter 11

Case No.: 03-13063

SYSCO CORPORATION and
THE SYGMA NETWORK, INC.,

Plaintiffs,

v.

CHI-CHI'S, INC.,

Defendant.

Adv. Proc. No. 05-52726

JUDGE RANDOLPH BAXTER

## JUDGMENT

In Delaware, in said District, on this 17th day of January, 2006.

A Memorandum Of Opinion And Order having been rendered by this Court in this matter.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that judgment is hereby rendered in favor of Debtor-Defendant Chi-Chi's, and the complaint is hereby DISMISSED. Each party is to bear its respective costs.

IT IS SO ORDERED.

RANDOLPH BAXTER
JUDGE
UNITED STATES BANKRUPTCY COURT

Ex. 3

IN THE UNITED STATE DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| CHI-CHI'S INC., et al., | ) | Case No. 03-13063 |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| —————————————— | ) | Adv. Pro. No. 05-52726 |
| SYSCO CORPORATION and SYGMA | ) | |
| NETWORK, INC., | ) | |
| | ) | |
| Appellants, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-169-KAJ |
| | ) | |
| CHI-CHI'S INC., | ) | |
| | ) | |
| Appellee. | ) | |

## ORDER

WHEREAS, the court having been informed that mediation of the captioned

matter is complete, and the parties were unsuccessful in resolving their dispute,

IT IS HEREBY ORDERED that the parties shall confer and submit a briefing

schedule to the court no later than May 17, 2006.

UNITED STATES DISTRICT JUDGE

May 3, 2006
Wilmington, Delaware

Ex. 4

## Douglas J. Billings

| | |
|---|---|
| **From:** | Douglas J. Billings |
| **Sent:** | Thursday, May 04, 2006 8:40 AM |
| **To:** | 'eedson@SelmanBreitman.com'; 'slucas@lucashaverkamp.com' |
| **Subject:** | Injunction's Effect on Sysco Rule 41 Appeal |

**Attachments:** Chi-Chi's Order re Brief Schedule.pdf

Eldon & Steve:

We have received the attached order from the Delaware District Court with regard to Sysco's appeal of the Bankruptcy Court's denial of the Rule 41 motion. The order requires the parties to that proceeding (Sysco/Sygma, Chi-Chi's, and Empire) to submit, by May 17, a proposed briefing schedule for the appeal. I am writing to you at this time to determine your clients' positions with respect to the effect of Judge Riley's injunction, if any, on the Rule 41 appeal.

Chi-Chi's does not interpret the Ventura injunction to prohibit us from participating in the appellate process in Delaware District Court (i.e., such action does not constitute "continuing to pursue arbitration against Sysco Corp. in Pennsylvania"). Rather, we understand the injunction to only prevent further activity in the arbitration proceeding itself. There may also be an issue of whether the California state court has power to prevent Chi-Chi's from participating in a Delaware federal court action, but that issue is of course moot if the injunction does not reach the current activities in Delaware.

Because Scottsdale and Federal obtained the injunction, Chi-Chi's would like to know your position before we further proceed. Therefore, please let us know as soon as possible whether Scottsdale and Federal agree with Chi-Chi's interpretation and whether your clients have any objection to Chi-Chi's, prior to expiration of the injunction, (1) stipulating to a briefing schedule as per the attached order, and/or (2) filing a brief in opposition to the Sysco appeal. If you do object, we will likely seek clarification or relief from the court.

Although Sysco intends to send out a proposed briefing schedule later today, I have informed counsel for both Sysco and Empire that we cannot stipulate to any proposed schedule until we are satisfied on the injunction issue (although we otherwise have no objection to the dates Sysco has indicated will be set forth in their proposal, including a requirement that Chi-Chi's file its opposition by June 12, 2006).

As you consider this issue, please be aware that Sysco has indicated it intends to ask the Delaware court to proceed even if Chi-Chi's is prohibited from participating. Thus, it is possible that a ruling effectively dismissing all of our respective clients' claims against Sysco and Sygma could issue without Chi-Chi's participation if the injunction, which you requested, is deemed to prohibit our filing of an opposition brief. Finally, you should also be aware that Bernie Conaway, Empire's counsel in Delaware, has confirmed that Empire would not consider Chi-Chi's active participation in the Rule 41 appellate process to be a violation of the injunction.

I appreciate your prompt attention and response.

Regards,
Doug

Douglas J. Billings, Esq.
Gordon & Holmes
223 West Date Street
San Diego, California  92101
619-696-0444 (phone)
619-696-1144 (fax)

5/15/2006

Ex. 5

## SELMAN
## BREITMAN LLP
### ATTORNEYS

Eldon S. Edson
eedson@selmanbreitman.com
David A. Hadlen
dhadlen@selmanbreitman.com

11766 Wilshire Boulevard, Sixth Floor
Los Angeles, CA 90025-6538

Telephone 310.445.0800
Facsimile  310.473.2525
www.selmanbreitman.com

May 8, 2006


**Via Facsimile**
**Followed by U.S. Mail**


Douglas J. Billings, Esq.
Gordon & Holmes
223 W. Date Street
San Diego, California 92101-3571


Re:    Scottsdale Insurance Company v. Castellini Company, et al.

| | | |
|---|---|---|
| Our File No. | : | 380.18932 |
| Named Insured | : | Prandium, Inc. |
| Scottsdale | : | UMS0013983, effective July 1, 2003 to July 1, 2004 |
| Policy Numbers | | XLS0017774, effective July 1, 2003 to July 1, 2004 |
| Date of Loss | : | October 22, 2003 |
| Scottsdale Claim Nos. | : | 876006-186; 875994-186 |

Dear Doug:

This is to respond your inquiry concerning the position of Scottsdale Insurance Company and Federal Insurance Company regarding the injunction's effect on Sysco's Rule 41 appeal. Scottsdale's and Federal's initial views[1] are that both the spirit and intent of the injunction that was sought and granted, as well as the relationship of the Sysco motion and appeal of the Bankruptcy Court's ruling to the enjoined Chi-Chi's-Sysco arbitration, would technically preclude Chi-Chi's from participating in the Delaware District Court appellate process. In other words, since the intent of the injunction was to enjoin Chi-Chi's from pursuing the arbitration it had initiated in Pennsylvania against Sysco, Scottsdale and Federal believe that Chi-Chi's participation in the Delaware District Court appellate process would constitute pursuing that arbitration.

However, we recognize that Sysco cannot be allowed to proceed with its appeal while Chi-Chi's is enjoined. (Although, as we understand it, Sysco has not taken the position it can somehow proceed with the arbitration while the injunction is in place, so how can it take the position that it could proceed with the appeal?) In any event, we propose that a reasonable solution would be to simply propose a briefing schedule that commences after the injunction to Ventura is resolved. That way we do not have to spend time and money trying to get the court to clarify the scope of

---

[1] In order to respond to your inquiry as soon as possible, counsel for Scottsdale and Federal have discussed your inquiry and make this joint response.

312140.1 380.18932

**SELMAN**
**BREITMAN** LLP
ATTORNEYS

Douglas J. Billings, Esq.
May 8, 2006
Page 2

the injunction. You said you would go ex parte for relief, but that can easily be avoided by just
putting off the briefing.

Please feel free to contact either Ms. Custer or us if you have any other suggestions or would like
to discuss this matter further.

Very truly yours,

ELDON S. EDSON
DAVID A. HADLEN
Attorneys For SCOTTSDALE INSURANCE COMPANY

STEPHEN LUCAS
JO CUSTER
Attorneys for FEDERAL INSURANCE COMPANY

cc:     Jo Custer, Esq.
        Philip Thompson, Esq.

012140.1 J80.18932

Ex. 6



GORDON + HOLMES

CIVIL TRIAL LAWYERS

May 16, 2006

**VIA FACSIMILE ONLY**

ALL COUNSEL
(See Attached List)

      RE:    <u>Chi-Chi's v. Castellini, et al.</u>
              Ventura Superior Court Case No. CIV236710 (Consolidated with Case Nos.
              CIV236719, CIV237044, AND CIV237810)

Dear Counsel:

      This letter is to inform you that plaintiff Chi-Chi's, Inc. **will be appearing ex parte on Wednesday, May 17, 2006 at 8:30 a.m. in Department 43** of the Ventura Superior Court to request clarification as to the scope of the Court's March 9, 2006 injunction. Specifically, Chi-Chi's will seek clarification that the injunction does not prohibit Chi-Chi's from participating in the appellate process before the U.S. District Court for the District of Delaware with respect to Sysco Corporation's FRCP Rule 41 motion, which was previously denied by the U.S. Bankruptcy Court for the District of Delaware.

      We anticipate faxing a copy of our moving papers to all counsel early this afternoon. In the meantime, please let me know if you have any questions.

              Very truly yours,

              Douglas J. Billings, Esq.
                    for
              GORDON & HOLMES

@PFDesktop\::ODMA/PCDOCS/GH/21118/1

A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
Frederic L. Gordon | Rhonda J. Holmes | Douglas J. Billings | A. Michael Nalu
Email: law@gordonandholmes.com

# EXHIBIT E

Rec'd 6-14-05



IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MARTHA J. FUNKHOUSER,                    )
                                         )
            Plaintiff                    )
                                         )
      vs.                                )  No. C.A. 05-638
                                         )
CHI-CHI'S, INC.,                         )
                                         )
            Defendant                    )
                                         )
      vs.                                )
                                         )
                                         )
CASTELLINI COMPANY                       )
                                         )
            Third Party Defendant.       )
                                         )

## AMENDED THIRD PARTY COMPLAINT IN CIVIL ACTION AND DEMAND FOR TRIAL BY JURY

AND NOW, comes the Third Party Plaintiff, Chi Chi's, Inc. ("Chi Chi's"), by and through its

attorneys, Dickie, McCamey & Chilcote, P.C., and James R. Miller, Esquire and Gordon & Holmes,

and Frederic L. Gordon, Esquire, of counsel, hereby files the within Amended Third Party Complaint

and sets forth as follows:

## I.   INTRODUCTION

1.      This is a Third Party Complaint seeking damages, including lost profits, property

damage, contribution, indemnification, and other incidental and consequential damages, from a

grower and supplier of green onions to Third Party Plaintiff's Beaver County Restaurant.

2.    At all times material hereto, Third Party Plaintiff owned and operated the Chi Chi's restaurant located at 600 Beaver Valley Mall, Monaca, Pennsylvania ("Beaver County Restaurant").

3.    On November 3, 2003, the Pennsylvania Department of Health issued a Health Alert, stating that it was investigating an alleged outbreak of Hepatitis A among patrons and staff of a Chi-Chi's Beaver County Restaurant ("Hepatitis A Outbreak").

4.    Ultimately, on November 21, 2003, the United States Center for Disease Control ("CDC") reported that tainted green onions were the cause of the Hepatitis A Outbreak.

5.    As a result of the Hepatitis A Outbreak, Chi Chi's has received notice of several hundred claims for personal injuries and damages by individuals claiming that they were infected with Hepatitis A, including the Plaintiff herein.  In addition, Chi Chi's has suffered damages including, without limitation, lost profits, property damage, and loss of use of property.

## II.    JURSIDICTION AND VENUE

6.    On or about October 8, 2003, Third Party Plaintiff and certain related debtors filed, in the United States Bankruptcy Court, District of Delaware, Voluntary Petitions for relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §101, et seq.  The matters have been consolidated for joint administration in Case No. 03-13063.  This proceeding arises under or in, or is related to, the Chapter 11 case.  This court has jurisdiction over this proceeding pursuant to 28 U.S.C. §1334(b).

7.    Venue is proper under 28 U.S.C. § 1391 as a substantial part of the events giving rise to the claim occurred in Beaver County, Pennsylvania which is located in the Western District of Pennsylvania.

### III.    **PARTIES**

8.      Original Plaintiff is a resident of Beaver County, Pennsylvania.

9.      Third Party Plaintiff Chi Chi's, Inc. is a Delaware corporation with its principal place of business in Irvine, California. At all times material hereto, Chi Chi's was in the business of the preparation, service, and sale of food to restaurant customers at the Beaver County Restaurant.

10.     Third Party Defendant Castellini Company ("Castellini") is a Delaware Limited Liability Company with its principal place of business in Wilder, Kentucky. At all times material hereto, Castellini was in the business of growing, shipping, wholesaling and brokering green onions to restaurant customers in Beaver County, Pennsylvania.

### IV.    **FACTS**

11.     In or about October and November 2003, an outbreak of Hepatitis A occurred in western Pennsylvania. More than 650 people became ill and, to date, four individuals have died. Through epidemiological and statistical analyses, the United States Centers for Disease Control ("the CDC") traced the outbreak to Chi Chi's Beaver County Restaurant, located in Monaca, Pennsylvania. More specifically, the CDC's analyses led to a determination that the source of the outbreak was human consumption of Hepatitis A-contaminated green onions which had been used in raw form as an ingredient in salsa and as a garnish on other dishes served to CHI-CHI'S customers in or about early October 2003. The green onions, which were (unknowingly to Chi Chi's) contaminated with Hepatitis A prior to their delivery to Chi Chi's, had been supplied to the Beaver County Restaurant by Third Party Defendant Castellini.

3

12.    The presence of Hepatitis A in the green onions when delivered to Chi Chi's rendered the product adulterated, unsafe, and unfit for human consumption.

13.    Plaintiff herein filed this action against Chi Chi's alleging that she suffered injuries and damages as a result of the alleged consumption of food from Chi Chi's containing onions contaminated with the Hepatitis A virus. (See Plaintiff's Complaint Attached hereto as Exhibit A.)

14.    Chi Chi's has denied all liability to the Plaintiffs. (See Chi Chi's Answer and Affirmative Defenses attached hereto as Exhibit B.)

15.    As a direct and proximate result of third party defendant Castellini's supply of adulterated green onions, Chi Chi's suffered property damage including, but not limited to contamination of other food products and contamination of surfaces and other areas within the Beaver County Restaurant. As a further direct and proximate result of Castellini's supply of adulterated green onions, the Beaver County Restaurant was closed from on or about November 2, 2003 to on or about January 15, 2004. All of CHI-CHI'S damages described herein resulted because of this property damage and loss of use of property, and/or because of the bodily injuries described in paragraph 11 above.

16.    The Hepatitis A outbreak received, and continues to receive, considerable media attention, both in Beaver County, Pennsylvania and throughout the nation. At the time the outbreak was first publicly reported in or about November 2003, Chi Chi's owned and operated approximately 122 restaurants throughout the Midwest, mid-Atlantic and Northeast. As a direct and proximate result of the events described herein, all Chi Chi's restaurants have now been permanently closed, causing Chi Chi's loss of use of all its restaurants.

4

17. As a direct and proximate result of the outbreak and the attendant publicity, Third Party Plaintiff Chi Chi's has suffered, and continues to suffer, damages, including but not limited to, property damage, lost profits (both relating to the closure of the Beaver County Restaurant and the impact of the publicity on Chi Chi's other restaurants), lost value, costs directly related to the closure and cleaning of the Beaver County Restaurant, crisis management expenses, attorney's fees, payment of medical expenses and preventative care, and loss of goodwill.

18. In addition, Chi Chi's has received more than 800 claims, has been named as a defendant in numerous lawsuits, and anticipates being subjected to future claims and lawsuits, seeking damages from Chi Chi's as a result of bodily injury and death allegedly caused by human consumption of Hepatitis A-contaminated green onions at the Beaver County Restaurant ("the bodily injury actions"). As a result, Chi Chi's has incurred, and continues to incur, additional expenses, including but not limited to payment of claims, attorney's fees, and other litigation costs and expenses.

## V. HISTORICAL AND CONTRACTUAL RELATIONSHIPS OF THE PARTIES

19. Beginning in or about June 1999, Third Party Defendant Castellini and Prandium, Inc. ("Prandium"), the parent company of Chi Chi's, began discussing the possibility of Castellini becoming a supplier of produce and other products to various restaurants operating as subsidiaries or affiliates of Prandium, including Third Party Plaintiff Chi Chi's.

20. As part of the negotiations and in order for Castellini to bid the project, Prandium provided Castellini with a variety of documents, including, but not limited to, product specifications for green onions and a document entitled "Supplier General Requirements Master Food Specification

5

for Whole Produce ("Supplier General Requirements"). The Supplier General Requirements and

product specifications required suppliers, including Castellini, to provide Prandium and Chi Chi's

with unadulterated, safe, and wholesome green onions. Specifically, Castellini was required to and

in fact did warrant as follows:

> "§1.2.1 - The supplier hereby guarantees that no article sold to Prandium for use
> in any Prandium restaurant is adulterated or misbranded within the meaning of the
> Federal, Drug and Cosmetic Act, or is an article which may, under the provisions
> of Section 404, 505, or 512 of the Act be introduced into interstate commerce.
>
> §1.2.2 - The article comprising each shipment or other delivery hereafter made by the
> supplier is hereby guaranteed, as of the date of such shipment or delivery, to be on
> such date, not adulterated or misbranded within the meaning of the Federal Food,
> Drug and Cosmetic Act, and not an article which may not, under the provisions of
> Sections 404, 505 or 512 of the Act, be introduced into interstate commerce."

A true and correct copy of the Supplier General Requirements and green onion specifications are

attached hereto as Exhibit C.

21.    On or about July 28, 1999, and in connection with the negotiations described above,

Third Party Defendant Castellini executed a document entitled "Confidentiality Agreement," in

which Castellini agreed to, in part, "indemnify, protect, defend, and hold harmless [Prandium], its

subsidiaries, related and affiliate companies and entities ... from and against any and all claims,

causes of action, demands, losses, costs, expenses (including reasonable attorneys' fees), obligations,

liabilities, damages, and deficiencies of any kind that arise out of, result from, or in any way relate

to" the parties' "business relationship." A true and correct copy of the July 28, 1999 agreement is

attached hereto as Exhibit D.

22.    Before Third Party Defendant Castellini was permitted to bid as a potential supplier to

Chi Chi's, Castellini was required to agree to comply with the Supplier General Requirements and

6

product specifications, including the green onion specifications, alleged in paragraph 20 above. In or about late summer 1999, representatives of Castellini made a presentation to Third Party Plaintiff in which Castellini did in fact further warrant that it would and could comply with Prandium and Chi Chi's general requirements and product specifications. The parties thereafter entered into a pricing agreement for various products, including green onions.

23.    On or about December 12, 2002, Third Party Plaintiff Chi Chi's and Third Party Defendant Castellini entered into a revised pricing agreement in which Castellini agreed to sell green onions (among other products) to Chi Chi's at an established price. As a condition to the revised pricing agreement, Chi Chi's continued to require Third Party Defendant Castellini to, and Castellini agreed to, supply green onions that met the Supplier General Requirements and green onion specifications provided to Castellini in 1999.

24.    In connection with the Castellini pricing agreements, the parties agreed that Third Party Defendant Castellini would sell the green onions, at the negotiated price, to Sysco Corporation ("Sysco"). Sysco, in turn, would sell the product to Third Party Plaintiff Chi Chi's (on a specified cost-plus basis) and would transport and deliver the green onions directly to Chi Chi's restaurants. The green onions that were contaminated with Hepatitis A and sold to Chi Chi's customers in or about September and/or October 2003 were supplied to Chi Chi's pursuant to the agreements described in paragraphs 19 through 24 herein.

25.    Third Party Defendant Castellini had been doing business with Sysco for many years. On or about January 26, 1997, Castellini and Sysco had entered into an agreement entitled "Hold

7

Harmless Agreement and Guaranty/Warranty of Product" (hereafter "Hold Harmless Agreement"). A true and correct copy of the Hold Harmless agreement is attached hereto as Exhibit E.

26.     The Hold Harmless Agreement provided that "[t]his Guaranty and Agreement is continuing and shall be in full force and effect and shall be binding upon [Castellini] with respect to each and every Product shipped or delivered to [Sysco] by [Castellini] before the receipt of [Sysco] of written notice of revocation thereof." Third Party Plaintiff Chi Chi's is informed and believes and thereon alleges that Third Party Defendant Castellini never provided Sysco with revocation of any aspect of the Hold Harmless Agreement with respect to the contaminated green onions supplied to plaintiff in or about September or October of 2003.

27.     In the Hold Harmless Agreement, Third Party Defendant Castellini agreed to "defend, indemnify, and hold harmless [Sysco] and its employees, officers, directors and customers ... from all actions, suits, claims, and proceedings ... and from any judgments, damages, fines, costs and expenses (including reasonable attorney's fees) resulting therefrom ... brought or commenced by any person or entity against any indemnitee for the recovery of damages for the injury, illness and/or death of any person or damage to property arising out of or alleged to have arisen out of (a) the delivery, sale, resale, labeling, use or consumption of any Product ...."

28.     In addition, Third Party Defendant Castellini warranted, in the Hold Harmless Agreement, that "articles contained in any shipment or delivery made by [Castellini] to or on the order of [Sysco] is hereby guaranteed, as of the date of such shipment or delivery, (a) to not be adulterated or misbranded within the meaning of the Federal Food, Drug and Cosmetic Act (the 'Act'), (b) to not be an article which cannot be introduced into interstate commerce under the

8

provisions of Sections 404 and 505 of the Act, and (c) to be in compliance with all applicable federal, state and local laws." This warranty was consistent with the separate oral representations made by Third Party Defendant Castellini to Third Party Plaintiff Chi Chi's during the negotiations between the parties in the summer of 1999, as alleged in paragraph 22 above.

29.    Chi Chi's is informed and believes and thereon alleges that Third Party Defendant Castellini shipped the contaminated green onions from the states of Kentucky and/or Ohio to defendant Sysco's distribution center in Pennsylvania, from which the green onions were subsequently transported by Sysco to Chi Chi's Beaver County Restaurant.

### COUNT I

### BREACH OF EXPRESS WARRANTY AGAINST THIRD PARTY DEFENDANT CASTELLINI

30.    Chi Chi's hereby incorporates paragraphs 1 through 29, inclusive, of this Third Party Complaint as if fully set forth herein.

31.    Third Party Defendant Castellini, by agreeing to meet Chi Chi's General Supplier Requirements and Green Onion Specifications (Exhibit C), by executing the January 26, 1997 Hold Harmless Agreement (Exhibit E), and when making an oral presentation to plaintiff in or about late summer 1999 (as alleged in paragraph 22 herein), made express warranties that the green onions it supplied for use in Chi Chi's restaurants would be safe and wholesome, would not be "adulterated" within the meaning of the Federal Food, Drug and Cosmetic Act ("the Act"), and would be a product capable of being introduced into interstate commerce under the Act.

32.    The presence of the Hepatitis A virus in or on the green onions supplied by Third Party Defendant Castellini to Third Party Plaintiff Chi Chi's rendered the product adulterated

9

under the Act.

33.    Chi Chi's relied upon Castellini's express warranties.

34.    The express warranties was breached when Castellini supplied green onions that contained the Hepatitis A virus to Chi Chi's in or about September and October of 2003.

35.    As a direct and proximate cause of Third Party Defendant Castellini's breach, Third Party Plaintiff Chi Chi's has suffered incidental and consequential damages in an amount to be proven at trial.

## COUNT II

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY AGAINST THIRD PARTY DEFENDANT CASTELLINI

36.    Chi Chi's hereby incorporates paragraphs 1 through 35, inclusive, of this Third Party Complaint as if fully set forth herein.

37.    Third Party Defendant Castellini impliedly warranted that its products would be merchantable, safe, wholesome, and fit for human consumption.

38.    Third Party Plaintiff Chi Chi's relied upon these implied warranties.

39.    Third Party Defendant Castellini's implied warranties of merchantability were breached when Castellini supplied Third Party Plaintiff Chi Chi's, in or about September and/or October 2003, with green onions contaminated with Hepatitis A.

40.    As a direct and proximate cause of Third Party Defendant Castellini's breach of the implied warranty of merchantability, Chi Chi's has suffered incidental and consequential damages in an amount to be proven at trial.

10

## COUNT III

### BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE AGAINST THIRD PARTY DEFENDANT CASTELLINI

41.    Chi Chi's hereby incorporates paragraphs 1 through 40, inclusive, of this Third Party Complaint as if fully set forth herein.

42.    At all relevant times, Third Party Defendant Castellini had reason to know of the particular purpose for which the subject green onions would be used by Third Party Plaintiff. Specifically, Castellini was aware that Chi Chi's intended to serve the green onions in raw form without cooking or further processing as an ingredient in salsa and as a garnish to be served to plaintiff's customers.  Third Party Defendant Castellini was further aware that Chi Chi's was relying on the skill and judgment of Castellini to supply suitable green onions (that is, green onions that were safe, wholesome, and free of adulteration) for this particular purpose.

43.    In supplying, processing, packaging, marketing, selling, and distributing the subject green onions, Third Party Defendant Castellini impliedly represented that the green onions were fit for the particular purpose described herein, i.e., that the green onions would not cause human illness when used for the particular purpose intended by Third Party Plaintiff.

44.    Third Party Plaintiff Chi Chi's did in fact use the subject green onions for this particular purpose.

45.    Third Party Defendant Castellini's implied warranties of fitness for a particular purpose were breached when Castellini supplied Chi Chi's, in or about September and/or October 2003, with green onions which was not fit for Chi Chi's particular purpose, in that the green onions were contaminated with Hepatitis A.

11

46.     As a direct and proximate cause of Third Party Defendant Castellini's breach of the implied warranty of fitness for a particular purpose, Third Party Plaintiff Chi Chi's has suffered incidental and consequential damages in an amount to be proven at trial.

### COUNT IV

## CONTRACTUAL INDEMNITY AGAINST THRID PARTY DEFENDANT CASTELLINI

47.     Chi Chi's hereby incorporates paragraphs 1 through 46, inclusive, of this Third Party Complaint as if fully set forth herein.

48.     Pursuant to Third Party Defendant Castellini's July 28, 1999 Confidentiality Agreement with Third Party Plaintiff Chi Chi's, as alleged in paragraph 21 herein, Castellini is required to indemnify Chi Chi's from and against any and all claims, causes of action, demands, losses, costs, expenses (including attorney's fees), obligations, liabilities, damages and deficiencies arising out of or related to the parties' relationship.

49.     Further, pursuant to Third Party Defendant Castellini's January 26, 1997 Hold Harmless Agreement with Sysco, as alleged in paragraphs 25-28, Castellini is required to indemnify Third Party Plaintiff from all actions, suits, claims and proceedings arising out of or alleged to have arisen out of the delivery, sale or consumption of the Hepatitis A-contaminated green onions.

50.     As a direct and proximate result of Third Party Defendant Castellini's supply of contaminated green onions, Third Party Plaintiff Chi Chi's has suffered and incurred, and continues to suffer and incur, claims, causes of action, demands, losses, costs, expenses (including attorney's fees), obligations, liabilities, damages, deficiencies, actions, suits, and

12

proceedings, as to all of which Third Party Defendant Castellini is obligated to indemnify Chi Chi's under the agreements alleged in paragraphs 121and 25-28 above.

51.    Third Party Plaintiff Chi Chi's is therefore entitled to judgment against Third Party Defendant Castellini for all such losses suffered and expenses incurred, including attorney's fees, in an amount to be proven at trial.

52.    Pursuant to the July 28, 1999 Confidentiality Agreement, Third Party Plaintiff Chi Chi's is entitled to reasonable attorney's fees and other expenses incurred in this action.

**COUNT V**

**INDEMNIFICATION AGAINST THIRD PARTY DEFENDANT CASTELLINI**

53.    Chi Chi's hereby incorporates paragraphs 1 through 52, inclusive, of this Third Party Complaint as if fully set forth herein.

54.    In addition to the action brought by plaintiff herein, Third Party Plaintiff Chi Chi's has received more than 800 claims, has been named as a defendant in numerous lawsuits, and anticipates being subjected to future claims and lawsuits, seeking damages from Chi Chi's as a result of bodily injury and death allegedly resulting from Hepatitis A in relation to consumption of green onions at the Beaver County Restaurant.

55.    To the extent plaintiffs in the bodily injury actions, including this action, have suffered injury and/or damages, such injury and/or damages were proximately caused, entirely or in part, by Third Party Defendant Castellini as aforementioned.  Alternatively, if Chi Chi's is ultimately held liable to the Plaintiff or other bodily injury claimants, then Third Party Defendant Castellini is liable to Chi Chi's for indemnification.

13

56.     By reason of the foregoing, to the extent Third Party Plaintiff Chi Chi's incurs any expenses, fees, costs or attorneys fees in the defense of bodily injury claims relating to the consumption of Hepatitis A-contaminated green onions, or enters into a settlement in any such claim or action, Chi Chi's is entitled to judgment against Third Party Defendant Castellini for all or part of any such sums incurred by reason of said judgment or settlement and for expenses of investigation, attorney's fees, court costs and other fees incurred in the defense of those claims.

## COUNT VI

## CONTRIBUTION AGAINST THIRD PARTY DEFENDANT CASTELLINI

57.     Chi Chi's hereby incorporates paragraphs 1 through 56, inclusive, of this Third Party Complaint as if fully set forth herein.

58.     In addition to the action brought by Plaintiff herein, Third Party Plaintiff Chi Chi's has received more than 800 claims, has been named as a defendant in numerous lawsuits, and anticipates being subjected to future claims and lawsuits, seeking damages from Chi Chi's as a result of bodily injury and death allegedly resulting from Hepatitis A in relation to consumption of green onions at the Beaver County Restaurant.

59.     To the extent Third Party Plaintiff Chi Chi's is legally responsible for any of the damages claimed in bodily injury actions, including this action, and assuming Chi Chi's is not entitled to total indemnity for all such sums which Chi Chi's may be required to pay, Chi Chi's would be only partially responsible for the alleged injuries, damages and other detriment allegedly suffered or sustained by the bodily injury claimants.

60.     Any loss, injury, damages or detriment allegedly suffered or sustained by the

14

bodily injury claimants, including Plaintiff herein, was directly and proximately caused and contributed to by the primary, active and direct responsibility of Third Party Defendant Castellini.

61.     Any damages or other detriment allegedly suffered or sustained by the bodily injury plaintiffs, including Plaintiff herein, should therefore be apportioned among Chi Chi's and Third Party Defendant Castellini on the basis of their respective percentage of fault, if any, in contributing to such damage or detriment.

62.     Based on the foregoing, Third Party Defendant Castellini has a duty to contribute to and indemnify Third Party Plaintiff Chi Chi's for any recovery any bodily injury plaintiff, including Plaintiff herein, may realize as against Chi Chi's in excess of that part of the damages directly proportionate to Third Party Plaintiff Chi Chi's percentage of fault, if any.

**WHEREFORE,** Third Party Plaintiff Chi Chi's, Inc. prays for judgment against Third Party Defendant Castellini Company, LLC as follows:

1.     For past and future general, incidental and consequential damages in a sum not yet fully ascertained and according to proof at trial;

2.     For attorneys' fees and costs;

3.     For pre- and post-judgment interest;

15

4.    For indemnity;

5.    For contribution;

6.    For costs of suit; and

7.    For such other and further relief as the Court may deem just.

FURTHER, Third Party Plaintiff Chi Chi's hereby demands trial by jury.

Respectfully submitted,

DICKIE, McCAMEY & CHILCOTE, P.C.

By: _____

James R. Miller, Esquire
PA. I.D. #16190

Christopher T. Lee, Esquire
PA I.D. #62422

Two PPG Place, Suite 400
Pittsburgh, PA 15222
(412) 392-5395

*Attorneys for Third Party Plaintiff, Chi Chi's, Inc.*

GORDON & HOLMES

Frederic L. Gordon, Esquire
Rhonda J. Holmes, Esquire
Douglas J. Billings, Esquire
A. Michael Nalu, Esquire.

223 West Date Street
San Diego, CA 92101
(619) 696-0444

*Of Counsel for Third Party Plaintiff, Chi-Chi's, Inc.*

16

**Exhibit A**

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY,
PENNSYLVANIA

MARTHA J. FUNKHOUSER,                    CIVIL DIVISION

            Plaintiff,                   No.

      vs.                                Issue No.

CHI-CHI'S, INC.,                         COMPLAINT

            Defendant.                   Code:  009

                                         Filed    on    Behalf    of
                                         Plaintiff

                                         Counsel  of  Record  for  This
                                         Party:

                                         Edward   J.   Balzarini,   Jr.,
                                         Esq.
                                         Pa. I.D. #34320

                                         BALZARINI & WATSON
                                         Firm No. 013
                                         3303 Grant Building
                                         Pittsburgh, PA  15219

                                         (412) 471-1200

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY,
PENNSYLVANIA

MARTHA J. FUNKHOUSER,                           CIVIL DIVISION

          Plaintiff,                            NO.

     vs.                                        COMPLAINT

CHI-CHI'S, INC.,                                JURY TRIAL DEMANDED

          Defendant.

## NOTICE TO DEFEND

     You have been sued in court. If you wish to defend against
the claims set forth in the following pages, you must take action
within twenty (20) days after this complaint and notice are
served, by entering a written appearance personally or by
attorney and filing in writing with the court your defenses or
objections to the claims set forth against you. You are warned
that if you fail to do so the case may proceed without you and a
judgment may be entered against you by the court without further
notice for any money claimed in the complaint or for any other
claim or relief requested by the plaintiff. You may lose money or
property or other rights important to you.

     YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU
DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE
OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET HELP. THIS
OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER. IF
YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO
PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL
SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

LAWYER REFERRAL SERVICE

THE ALLEGHENY COUNTY BAR ASSOCIATION
920 CITY-COUNTY BUILDING
PITTSBURGH, PENNSYLVANIA, 15219

412-261-0518

## COMPLAINT

AND NOW, comes the plaintiff, Martha J. Funkhouser, by her undersigned attorneys, Edward J. Balzarini, Jr. and Balzarini & Watson, and complains against the defendant, Chi-Chi's, Inc., as follows:

1. The plaintiff, Martha J. Funkhouser, resides at 3618 Seventh Avenue, Beaver Falls, Beaver County, Pennsylvania 15010.

2. The defendant, Chi-Chi's, Inc., is a corporation with offices for the transaction of business located at 10200 Linn Station Road, Louisville, Kentucky 40223.

3. At all times relevant hereto, the defendant, Chi-Chi's, Inc., was the owner and/or the operator of a restaurant located at the Beaver Valley Mall, Beaver, Pennsylvania.

4. At all times relevant hereto, the above-described restaurant was open for business to members of the public, including the plaintiff herein.

5. The incident which is complained of occurred in October 2003.

6. During the month of October, the plaintiff, Martha J. Funkhouser, purchased and consumed prepared food at the Chi-Chi's restaurant described above.

7. The food which the plaintiff, Martha J. Funkhouser, was served at the above-described Chi-Chi's

restaurant included food products which were served with, or contained, green onions.

8. As a direct and proximate result of the negligence, recklessness and carelessness of the defendant, and/or its supply of a defective and unsafe food product and/or its breach of warranty, the plaintiff, Martha J. Funkhouser, was caused and permitted to contract Hepatitis A from the food which she was served at the above-described restaurant.

## FIRST CAUSE OF ACTION - NEGLIGENCE

9. The incident described above and the resulting injuries and damages were a direct and proximate result of the recklessness, negligence and carelessness of the defendant, Chi-Chi's, Inc., as follows:

a. In selling or providing adulterated and contaminated food to the plaintiff;

b. In preparing and/or serving food products that were contaminated and adulterated with Hepatitis A;

c. In failing to properly train the employees of the involved restaurant;

d. In failing to properly instruct the employees of the involved restaurant;

e. In failing to supervise or to properly supervise the employees of the involved restaurant;

f. In violating the federal regulations pertaining to the supply and sale of food for human consumption;

2

g.   In failing to inform and advise its
     patrons of the source of the green
     onions which it utilized in food
     preparation, and served at the involved
     restaurant.

10. As  a  direct  and  proximate  result  of  the
recklessness, negligence and carelessness of the defendant
as set forth above, the plaintiff, Martha J. Funkhouser, has
sustained the following injuries, all of which are or may be
of a serious and permanent nature:

a.   Hepatitis A infection;

b.   Damage to the liver;

c.   Other serious and permanent injuries.

11. Solely as the result of the aforesaid injuries,
the plaintiff has sustained the following damages:

a.   She has suffered and will suffer great pain,
     suffering, inconvenience, embarrassment and
     mental anguish;

b.   She has been and will be required to expend
     large sums of money for medical and
     surgical attention, hospitalization,
     medical supplies, surgical appliances,
     medicines and attendant services;

c.   She has been and will be deprived of her
     earnings;

d.   Her earning capacity has been reduced and
     permanently impaired;

e.   Her general health, strength and vitality
     have been impaired;

f.   She has been unable to enjoy the ordinary
     pleasures of life.

3

12. On two occasions, the plaintiff herein has participated in mediation of the claim which is the subject of this civil action, in accordance with the Stipulation and Order granting relief from the automatic stay in the United States Bankruptcy Court for the District of Delaware, which did not result in resolution in payment of this claim, which is therefore an unresolved claim under the Order of the Bankruptcy Court.

WHEREFORE, the plaintiff, Martha J. Funkhouser, claims damages of the defendant, Chi-Chi's, Inc., in a sum in excess of TWENTY FIVE THOUSAND ($25,000.00) DOLLARS.

## SECOND CAUSE OF ACTION - STRICT LIABILITY

13. The plaintiff, Martha J. Funkhouser, incorporates by reference all preceding allegations of the Complaint with the same force and effect as though set forth at length herein.

14. The plaintiff, Martha J. Funkhouser, avers that at all times relevant hereto, the business of the defendant, Chi-Chi's, Inc., included the preparation and sale of food and food products to members of the public, including the plaintiff.

15. The plaintiff, Martha J. Funkhouser, avers that the food which was distributed and/or sold and/or provided by the defendant to this action on the date complained of

4

above was contaminated with and/or adulterated with Hepatitis A.

16. The plaintiff, Martha J. Funkhouser, avers that by reason of the fact that the food described above was contaminated and/or adulterated with Hepatitis A, it was defective and/or unsafe and/or unreasonably dangerous, thereby subjecting the defendant to liability under Section 402A of the Restatement (Second) of Torts and/or Section 402B of the Restatement (Second) of Torts.

WHEREFORE, the plaintiff, Martha J. Funkhouser, claims damages of the defendant, Chi-Chi's, Inc., in a sum in excess of TWENTY FIVE THOUSAND ($25,000.00) DOLLARS.

## THIRD CAUSE OF ACTION - BREACH OF WARRANTY

17. The plaintiff, Martha J. Funkhouser, incorporates by reference the allegations of paragraphs 1 through 12 with the same force and effect as though set forth at length herein.

18. The plaintiff, Martha J. Funkhouser, avers that the food which was served to her on the date described above at the involved Chi-Chi's restaurant was intended to and did reach her without substantial change in its condition.

19. The plaintiff, Martha J. Funkhouser, avers that as a result of the provision and sale of the above-described food, express and implied warranties of merchantability and

5

fitness for a particular purpose accompanied the food products at the time of their distribution and/or sale and/or provision to her.

20. The plaintiff, Martha J. Funkhouser, avers that at all times relevant hereto, Chi-Chi's, Inc. warranted and/or guaranteed that the food products described above which were served to her on the date complained of were contaminated, adulterated and unfit for human consumption.

21. The plaintiff, Martha J. Funkhouser, avers that the food products which were served to her on the date complained of were contaminated with Hepatitis A and were therefore unsafe and unfit for human consumption.

22. The plaintiff, Martha J. Funkhouser, avers that sale and/or distribution and/or provision of the above-described food products in the condition described above constitutes a breach of the express and implied warranties and/or failure of the products to conform to the warranties which accompany them, thereby subjecting the defendant to liability for breach of warranty and all resultant and consequential damages.

WHEREFORE, the plaintiff claims damages of the defendant, Chi-Chi's, Inc., in a sum in excess of TWENTY FIVE THOUSAND ($25,000.00) DOLLARS.

JURY TRIAL DEMANDED.

6

BALZARINI & WATSON

BY
    Attorneys for Plaintiff

<u>AFFIDAVIT</u>

COMMONWEALTH OF PENNSYLVANIA    :
                                :   SS:
COUNTY OF ALLEGHENY             :

BEFORE ME, the undersigned authority, personally appeared

<u>Martha J. Funkhouser</u>, who, being first duly

sworn according to law, deposes and says that the facts set forth

in the foregoing <u>Complaint</u> are

true and correct to the best of (XXX/her) knowledge, information

and belief.

x _____
  Martha J. Funkhouser


SWORN TO AND SUBSCRIBED

Before me this 13th day

of April, 2005.

_____
Notary Public

Notarial Seal
Lisa M. Dorner, Notary Public
City Of Pittsburgh, Allegheny County
My Commission Expires September 12, 2008
Member, Pennsylvania Association Of Notaries

Exhibit B

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MARTHA J. FUNKHOUSER, )
)
          Plaintiff )
)
      vs. ) Civil Action No. 05-638
)
CHI-CHI'S, INC., )
)
          Defendant )

## ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT

AND NOW, comes the Defendant, Chi-Chi's, Inc., a Delaware corporation, by and through its counsel, Dickie, McCamey & Chilcote, P.C., and hereby files the Answer and Affirmative Defenses to Plaintiff's Complaint and sets forth as follows:

### FIRST AFFIRMATIVE DEFENSE

1.    After reasonable investigation, this Defendant is without knowledge or information sufficient to form a belief as to the truth of the statements concerning the Plaintiff's identity and/or residence contained in Paragraph 1.

2.    The allegations contained in Paragraph 2 are admitted.

3.    The allegations contained in Paragraph 3 are admitted in part and denied in part. It is admitted that this Defendant operated the Chi-Chi's restaurant located at 600 Beaver Valley Mall, Monaca, Pennsylvania. However, it is denied that this Defendant was the owner of said property.

4.    The allegations contained in Paragraph 4 are admitted.

5.    After reasonable investigation, this Defendant is without knowledge sufficient to form a belief as to the truth of the statements contained in Paragraph 5 of Plaintiff's Complaint.

Consequently, said allegations are denied and strict proof to the contrary is demanded at the time of trial.

6.    After reasonable investigation, this Defendant is without knowledge sufficient to form a belief as to the truth of the statements contained in Paragraph 6 of Plaintiff's Complaint. Consequently, said allegations are denied and strict proof to the contrary is demanded at the time of trial.

7.    After reasonable investigation, this Defendant is without knowledge sufficient to form a belief as to the truth of the statements contained in Paragraph 7 of Plaintiff's Complaint. Consequently, said allegations are denied and strict proof to the contrary is demanded at the time of trial.

8.    The allegations contained in Paragraph 8 are legal conclusions such that no response is required.  Consequently, said allegations are denied and strict proof to the contrary is demanded at the time of trial.

## FIRST CAUSE OF ACTION – NEGLIGENCE

9.    The allegations contained in Paragraph 9, including subparagraphs (a) through (g) are legal conclusions such that no response is required.

10.    The allegations contained in Paragraph 10, including subparagraphs (a) through (c) are legal conclusions such that no response is required.  Consequently, said allegations are denied and strict proof to the contrary is demanded at the time of trial.

11.    The allegations contained in Paragraph 11, including subparagraphs (a) through (f) are legal conclusions such that no response is required.  Consequently, said allegations are denied and strict proof to the contrary is demanded at the time of trial.  To the extent Paragraph 11, including subparagraphs (a) through (f), alleges facts, after reasonable investigation, this

2

Defendant is without knowledge sufficient to form a belief as to the truth of the statements contained in Paragraph 12 of Plaintiff's Complaint.

12.    The allegations contained in Paragraph 12 are denied.

WHEREFORE, Defendant, Chi-Chi's, Inc., respectfully requests that this Honorable Court grant judgment in its favor and against the Plaintiff.

## SECOND CAUSE OF ACTION – STRICT LIABILITY

13.    In response to Paragraph 13 of Plaintiff's Complaint, this Defendant herein incorporates the answer to Paragraphs 1 through 12 as set forth herein.

14.    The allegations contained in Paragraphs 14 are admitted in part.  While it is admitted that the Defendant is in the business of selling food, after reasonable investigation, this Defendant is without knowledge or information sufficient to form a belief as to the truth of the statements contained in Paragraph 14 of Plaintiff's Complaint.  Consequently, said allegations are denied and strict proof to the contrary is demanded at the time of trial.

15.    The allegations contained in Paragraph 15 are legal conclusions such that no response is required.  Consequently, said allegations are denied and strict proof to the contrary is demanded at the time of trial.  To the extent Paragraph 15 alleges facts, after reasonable investigation, this Defendant is without knowledge or information sufficient to form a belief as to the truth of the statements contained in Paragraph 15 of Plaintiff's Complaint.

16.    The allegations contained in Paragraph 16 are legal conclusions such that no response is required.  Consequently, said allegations are denied and strict proof to the contrary is demanded at the time of trial.

WHEREFORE, Defendant, Chi-Chi's, Inc., respectfully requests that this Honorable Court grant judgment in its favor and against the Plaintiff.

3

## THIRD CAUSE OF ACTION – BREACH OF WARRANTY

17.     In response to Paragraph 17 of Plaintiff's Complaint, this Defendant herein incorporates the answer to Paragraphs 1 through 16 as set forth herein.

18.     The allegations contained in Paragraphs 18 are legal conclusions such that no response is required. Consequently, said allegations are denied and strict proof to the contrary is demanded at the time of trial.

19.     The allegations contained in Paragraphs 19 are legal conclusions such that no response is required. Consequently, said allegations are denied and strict proof to the contrary is demanded at the time of trial.

20.     The allegations contained in Paragraphs 20 are legal conclusions such that no response is required. Consequently, said allegations are denied and strict proof to the contrary is demanded at the time of trial.   To the extent Paragraph 20 alleges facts, after reasonable investigation, this Defendant is without knowledge or information sufficient to form a belief as to the truth of the statements contained in Paragraph 20 of Plaintiff's Complaint.

21.     The allegations contained in Paragraph 21 are legal conclusions such that no response is required. Consequently, said allegations are denied and strict proof to the contrary is demanded at the time of trial. To the extent Paragraph 21 alleges facts, after reasonable investigation, this Defendant is without knowledge or information sufficient to form a belief as to the truth of the statements contained in Paragraph 21 of Plaintiff's Complaint.

22.     The allegations contained in Paragraph 22 are legal conclusions such that no response is required. Consequently, said allegations are denied and strict proof to the contrary is demanded at the time of trial.

WHEREFORE, Defendant, Chi-Chi's, Inc., respectfully requests that this Honorable

4

Court grant judgment in its favor and against the Plaintiff.

## SECOND AFFIRMATIVE DEFENSE

23.    Plaintiff's claims are barred in whole or in part because she has failed to state a claim upon which relief can be granted.

## THIRD AFFIRMATIVE DEFENSE

24.    The Plaintiff's cause of action and right of recovery may be barred and/or modified by the application of the doctrine of comparative negligence to the facts of this case developed during discovery.

## FOURTH AFFIRMATIVE DEFENSE

25.    If the Plaintiff was injured as alleged, which has been and continues to be denied, the Plaintiff's injuries and damages were caused by the actions of persons or entities over whom this Defendant has no control and for whom this Defendant bears no responsibility.

## FIFTH AFFIRMATIVE DEFENSE

26.    If the Plaintiff was injured as alleged, which has been and continues to be denied, then in the alternative, the Plaintiff's injuries and damages resulted from an independent and superseding or intervening cause.

## SIXTH AFFIRMATIVE DEFENSE

27.    The Plaintiff's cause of action and right of recovery are subject to and limited by the provisions of the Pennsylvania Uniform Commercial Code.

## SEVENTH AFFIRMATIVE DEFENSE

28.    If the Plaintiff was injured as alleged, which has been and continues to be denied, then any problems which may have been experienced by the Plaintiff may have been caused by

5

subsequent and substantial change, modification, or alteration in the product after it left the control of this Defendant, upon the facts to be determined in discovery.

## EIGHTH AFFIRMATIVE DEFENSE

29.    Any defects in any product sold by the Defendant which may be determined to have existed were the result of misuse or alteration of the product.

## NINTH AFFIRMATIVE DEFENSE

30.    If the Plaintiff was injured as alleged, which has been and continues to be denied, then the alleged injuries and damages are the result of a pre-existing or subsequent condition unrelated to the activities of this Defendant.

## TENTH AFFIRMATIVE DEFENSE

31.    Any recovery by Plaintiff must be reduced or offset by amounts Plaintiff has received or will receive from others for the same injuries alleged in the lawsuit.

## ELEVENTH AFFIRMATIVE DEFENSE

32.    The Plaintiff's claims are barred in whole or in part because any product determined to have been supplied by this Defendant were not unreasonable or highly dangerous at any time prior to this cause of action.

## TWELTH AFFIRMATIVE DEFENSE

33.    The Plaintiff's claims are barred because Plaintiff cannot demonstrate the product which caused the alleged infection was supplied by this Defendant.

## THIRTEENTH AFFIRMATIVE DEFENSE

34.    Defendant asserts as an affirmative defense, Plaintiff's obligation to mitigate damages.

6

## FOURTEENTH AFFIRMATIVE DEFENSE

35.    No act or conduct of this Defendant or any agent, servant, or employee caused any alleged injury, damage or loss to the Plaintiffs.

## FIFTEENTH AFFIRMATIVE DEFENSE

36.    The sole, proximate cause of any alleged damage sustained by the Plaintiff was the act, conduct, negligence, carelessness, breach of contract, warranties, duties, or obligations by third persons or parties other than this Defendant and over which this Defendant did not control or posses a right to control.

## SIXTEENTH AFFIRMATIVE DEFENSE

37.    This Defendant did not breach any alleged duties or warranties.

## SEVENTEENTH AFFIRMATIVE DEFENSE

38.    This Defendant raises as a set-off any and all sums of money that was paid or may be paid to Plaintiff by this Defendant or by other individuals or entities for medical bills and/or lost wages and/or any other items of damage.

## EIGHTEENTH AFFIRMATIVE DEFENSE

39.    This Defendant reserves their right to rely upon such other defenses that may become available or apparent through discovery.

WHEREFORE, Defendant, Chi-Chi's, Inc., respectfully requests that this Honorable Court grant judgment in its favor and against the Plaintiff.

**JURY TRIAL DEMANDED**

Dated: May 16, 2005

Respectfully submitted,

DICKIE, McCAMEY & CHILCOTE, P.C.

By _____

James R. Miller, Esquire
PA I.D. #16190
Christopher T. Lee, Esquire
PA I.D. #62422

Two PPG Place, Suite 400
Pittsburgh, PA 15222-5402
(412) 281-7272

Attorneys for Defendant, Chi-Chi's, Inc.

8

## CERTIFICATE OF SERVICE

I, Christopher T. Lee, Esquire, hereby certify that true and correct copies of the foregoing Answer and Affirmative Defenses to Plaintiff's Complaint have been served this _16th_ day of May, 2005, by U. S. first-class mail, postage pre-paid, to counsel of record listed below:

Edward J. Balzarini, Jr., Esquire
BALZARINI & WATSON
3303 Grant Building
Pittsburgh, PA   15219
*Attorneys for Plaintiff*

DICKIE, McCAMEY & CHILCOTE, P.C.

By: _Clann Pel_

Christopher T. Lee, Esquire

Attorneys for Defendant, CHI-CHI'S, INC.

Exhibit C

**CONFIDENTIAL**

| Supplier General Requirements Master Food Specification for Whole Produce | Specification No.: 002-01 | Effective Date: 6/24/99 |
|---|---|---|
| | Supersedes: N/A (First Issue) | Page 1 of 5 |

All suppliers producing whole produce products for Prandium should comply to the General Requirements outlined in this document and the detailed specification for each respective product. Failure to comply will be considered grounds for rejection and/or supplier disapproval.

## 1.0    GENERAL REQUIREMENTS

1.1    Good Manufacturing Practice

1.1.1    The product shall be processed in accordance with Title 21, Part 110 of the United States Code of Federal Regulations: "Current Good Manufacturing Practice (Sanitation) in Manufacturing, Processing, Packing, or Holding Human Food".

1.2    Continuing Pure Food Guaranty [21 CFR 7.13b (2)]

1.2.1    The supplier hereby guarantees that no article sold to Prandium for use in any Prandium restaurant is adulterated or misbranded within the meaning of the Federal, Drug and Cosmetic Act, or is an article which may, under the provisions of Sections 404, 505, or 512 of the Act be introduced into interstate commerce.

1.2.2    The article comprising each shipment or other delivery hereafter made by the supplier is hereby guaranteed, as of the date of such shipment or delivery, to be on such date, not adulterated or misbranded within the meaning of the Federal Food, Drug and Cosmetic Act, and not an article which may not, under the provisions of Sections 404, 505 or 512 of the Act, be introduced into interstate commerce.

1.2.3    The supplier must provide a written guarantee to the Prandium Quality Assurance department on each product sold which will be used in any Prandium restaurant. Frequency of revision or update of written guarantee will be a minimum of every two years.

## 2.0    PROPOSITION 65

2.1.    The supplier agrees to provide Prandium with a written report on any chemicals contained in its products, including without limitation, its food products, which also appears on the latest "list" published by the State of California, entitled Chemicals Known to the State to Cause Cancer and Reproductive Toxicity pursuant to Proposition 65 and the regulations promulgated thereunder. The report shall set forth the following: (1) the name of the chemical, (2) the product in which the chemical is contained, and (3) the level or amount of the chemical in the product, verified with laboratory documentation. Supplier agrees to update the information contained in the report periodically, but at least within six months after each publishing by the State of California of a new "list" of Chemicals Known to the State to Cause Cancer and Reproductive Toxicity or immediately upon the inclusion in supplier's product of such chemicals. If supplier's product contains no reportable amounts

CONFIDENTIAL



| Supplier General Requirements Master Food Specification for Whole Produce | Specification No.: 002-01 | Effective Date: 6/24/99 |
|---|---|---|
| | Supersedes: N/A (First Issue) | Page 2 of 5 |

of such chemicals, supplier shall provide a written statement to the effect every two years to Prandium.

2.2    Supplier hereby acknowledges that Prandium intends to rely upon the information contained in the report to assist it in compliance with its obligations under Proposition 65 and the regulations promulgated thereunder. The undersigned agrees to indemnify, defend and hold Prandium, its directors, officers, employees, counsel, agents, and franchisees harmless against and from any claim, demand, cause of action, judgment, loss, liability, cost or expense whatsoever, including without limitation, reasonable attorney's fees, which Prandium or other indemnified party may suffer, sustain, incur or otherwise become subject to as a result of (I) any inaccuracies or material representations contained in the report to Prandium, (II) the failure of the report as required hereunder, or (III) the failure to provide a report as required hereunder to enable Prandium to comply with the provisions of Proposition 65 and any regulations promulgated thereunder.

## 3.0   APPROVALS

3.1    All suppliers of products sold for use in any Prandium restaurant must be approved by Prandium Quality Assurance and Purchasing. Approvals are specific to packing facilities. A supplier may not pack product in an unapproved facility without prior notification and written approval of Prandium Quality Assurance and Purchasing.

3.2    All approved suppliers (packing facilities) will be listed in the Prandium Approved Supplier Manual.

## 4.0   RESTAURANT PERFORMANCE/ACCEPTABILITY

4.1    It is critical that the product must meet all Prandium restaurant performance, flavor and appearance requirements. Variance to this requirement is a critical defect and grounds for product rejection and supplier disapproval.

4.2    If any dispute arises, Prandium's determination of whether the product complies to the general and detailed product specifications shall be determinative and final.

## 5.0   QUALITY ASSURANCE

5.1    All suppliers must have an established, effective, and approved quality assurance program to monitor product consistency, specification compliance, manufacturing risk points, employee hygiene, and plant sanitation.

5.2    Upon request of Prandium Quality Assurance, routine quality control records shall be made available for inspection. Such records shall attest to compliance with all specifications relating to the product and good manufacturing practices.

CONFIDENTIAL



| Supplier General Requirements Master Food Specification for Whole Produce | Specification No.: 002-01 | Effective Date: 6/24/99 |
|---|---|---|
| | Supersedes: N/A (First Issue) | Page 3 of 5 |

5.3    All suppliers must have in place, where appropriate, an active swabbing program for auditing environmental conditions to verify sanitation procedures are effective.

5.4    All suppliers must comply to Prandium's supplier requirements as outlined in the Prandium Supplier Quality Assurance Program. Minimum requirements include (not inclusive):

    5.4.1    An established and effective HACCP program.

    5.4.2    An established and effective pest control program.

    5.4.3    An established and effective sanitation program.

    5.4.4    An established and effective quality program.

    5.4.5    An established and effective ingredient tracking and recall program, including an effective and documented program for the evaluation of all appropriate incoming materials.

    5.4.6    An established and effective preventative maintenance program.

    5.4.7    Demonstrated conformance to Title 21, Part 110 of the United States Code of Federal Regulations: "Current Good Manufacturing Practice (Sanitation) in Manufacturing, Processing, Packing, or Holding Human Food".

    5.4.8    Self-inspection audit program.

    5.4.9    An established, effective and documented calibration program, as appropriate.

6.0    STORAGE/TRANSPORTATION

6.1    All raw materials and finished product shall be stored in clean, repaired areas, which are appropriately tempered.

6.2    All product shall be protected from contamination at all times.

6.3    First-in, first-out rotation shall be implemented. All variances to FIFO product rotation must have written authorization by Prandium Quality Assurance.

6.4    All finished product shall be transported in trucks/trailers which are clean and in good working order and that have effective refrigeration (where applicable), meeting the temperature requirements outlined in the detailed product specifications.

6.5    There shall be no evidence of temperature abuse, such as thawing and overheating, water damage, contamination, dehydration, etc.

CONFIDENTIAL



| Supplier General Requirements Master Food Specification for Whole Produce | Specification No.: 002-01 | Effective Date: 6/24/99 |
|---|---|---|
| | Supersedes: N/A (First Issue) | Page 4 of 5 |

## 7.0    PACKAGING, LABELS, AND CODE

### 7.1    Packaging

7.1.1    Packaging materials and workmanship must contain and protect the product throughout its life cycle (packaging, distributor storage and use). Boxes and cases must be sealed with glue and/or tape; staples and other metallic fasteners are prohibited. By mutual written agreement with Prandium Quality Assurance, justifiable exceptions to this may be permitted.

### 7.2    Labels

7.2.1    The package label must comply with all applicable laws, and contain the following information: product name, net weight, name and address of supplier or distributor, and code showing production date, location (if applicable), and product identity. The case label must include the product name, net weight, and production date. Specific label requirements will be outlined in the detailed product specifications.

### 7.3    Code

7.3.1    A legible code date must appear on both the case and primary package, where applicable. An open code identifying the pack date and lot of production is preferred. The supplier must furnish a full explanation of the coding system to the Prandium Quality Assurance Department.

## 8.0    SPECIFICATION VARIANCE REQUESTS

8.1    All requested specification variances are to be submitted in writing to the Prandium Quality Assurance Department.

8.2    Prandium Quality Assurance Department management reserves the right to change the Supplier General Requirements and detail product specifications as required and deemed necessary.

## 9.0    PLANT INSPECTIONS

9.1    All packing facilities and transit/storage facilities used in the preparation, handling and storage of products to be used in Prandium restaurants shall be open for inspection by Prandium management or authorized representatives of Prandium at all reasonable times and during the production of Prandium ingredients. In addition to processing facility inspections, the right of inspection includes determination of product quality at one or all times or stages during packaging, storage and transit. This inspection may require the

CONFIDENTIAL



| Supplier General Requirements Master Food Specification for Whole Produce | Specification No.: 002-01 | Effective Date: 6/24/99 |
|---|---|---|
| | Supersedes: N/A (First Issue) | Page 5 of 5 |

utilization of reasonable quantities of product which the supplier, at its expense, agrees to furnish to Prandium for testing.

9.2   All packaging facilities shall meet the requirements of any Prandium Quality Assurance plant inspection audit that may be performed by Prandium personnel or their authorized representatives.

CONFIDENTIAL

| Supplier General Requirements Master Food Specification for Whole Produce | Specification No.: 002-01 |
|---|---|
| | Supersedes: N/A (First Issue) |

## 12.0  AUTHORIZATION SIGNATURES

Title                                               Signature                          Date

VP, Quality and Supply Chain Management    _____    _____

VP, Quality Assurance and Food Safety      _____    _____

SUPPLIER

Company: _____

Authorized Signature: _____

Type/Print Name: _____

Title: _____  Date: _____

## CONFIDENTIAL SPECIFICATION

| Green Onions, Pencil, 48 ct. (CC) | Specification No.: WPRD-029-01 | Effective Date: 9/25/99 |
|---|---|---|
| | Supersedes: N/A (First Issue) | Page 1 of 4 |



### 1.0    General Requirements

General requirements for all suppliers providing or processing products for sale/use in any Prandium, Inc. ("the Company") restaurant are outlined in the most recent issue of the Company's Master Food/Beverage Specification of General Requirements (document number 002). A signed copy of this document must be kept on file at all processing locations in conjunction with this detailed product specification.

### 2.0    General Description

Green onions shall be U.S. Grade #1 as per 7CFR-51.1051-.1065 inclusive. All product shall be from North America. Product shall be fairly well formed, firm, tender, properly trimmed, and free from decay and damage. Product shall not show any evidence of wet slip, sunscald, weather damage, dirt, mold or disease. Product shall meet current USDA/EPA/FDA standards for residual pesticides.

### 3.0    Processing Requirements

The following processing requirements are specific to Green Onions, Pencil, 48-count and are in addition to those outlined in the Company's Master Food/Beverage Specification of General Requirements.

3:1    Critical Temperature Control Requirements

    3.1.1    Product shall be iced to totally cover the product. Product temperature shall not exceed 40°F at any time. Product shall be stored in refrigeration storage not to exceed 40°F.

3.2    Inspection

    3.2.1    Product shall be produced in a USDA inspected facility in accordance with state and federal guidelines as well as those guidelines promulgated by the Food, Drug and Cosmetic Act.

    3.2.2    Product shall meet all USDA product requirements per guidelines established by the USDA, Agriculture Marketing Services.

3.3    Ingredient Requirements

    3.3.1    All raw materials shall be in wholesome condition and shall show no evidence of off-condition, including, but not limited to: spoilage, off odors, off flavors, discoloration or other inappropriate appearance.

CONFIDENTIAL SPECIFICATION

| Green Onions, Pencil, 48 ct. (CC) | Specification No.: WPRD-029-01 | Effective Date: 9/25/99 |
|---|---|---|
| | Supersedes: N/A (First Issue) | Page 1 of 4 |



**1.0    General Requirements**

General requirements for all suppliers providing or processing products for sale/use in any Prandium, Inc. ("the Company") restaurant are outlined in the most recent issue of the Company's Master Food/Beverage Specification of General Requirements (document number 002). A signed copy of this document must be kept on file at all processing locations in conjunction with this detailed product specification.

**2.0    General Description**

Green onions shall be U.S. Grade 1 as per 7CFR51.3055-.3075 inclusive. All product shall be from North American. Product shall be mature, well formed, firm, tender, properly trimmed, and free from decay and damage. Product shall not show any evidence of wet slimy sunscald, weather damage, dirt, mold or disease. Product shall meet current USDA/EPA/FDA standards for residual pesticides.

**3.0    Processing Requirements**

The following processing requirements are specific to Green Onions, Pencil, 48-count and are in addition to those outlined in the Company's Master Food/Beverage Specification of General Requirements.

   3.1    Critical Temperature Control Points Limits

      3.1.1    Product shall be iced to totally cover the product. Product temperature shall not exceed 40°F at any time. Product shall be stored in refrigeration storage not to exceed 40°F.

   3.2    Inspection

      3.2.1    Product shall be produced in a USDA inspected facility in accordance with state and federal guidelines as well as those guidelines promulgated by the Food, Drug and Cosmetic Act.

      3.2.2    Product shall meet all USDA product requirements per guidelines established by the USDA, Agriculture Marketing Services.

   3.3    Ingredient Requirements

      3.3.1    All raw materials shall be in wholesome condition and shall show no evidence of off-condition, including, but not limited to: spoilage, off odors, off flavors, discoloration or other inappropriate appearance.

## CONFIDENTIAL SPECIFICATION

| Green Onions, Pencil, 48 ct. (CC) | Specification No.: WPRD-029-01 | Effective Date: 9/25/99 |
|---|---|---|
| | Supersedes: N/A (First Issue) | Page 2 of 4 |

3.4    Other

    3.4.1    All suppliers must have an established and effective Quality Control Program and HACCP programs to monitor product consistency, specification compliance, manufacturing risk points, employee hygiene and plant sanitation.

    3.4.2    No changes shall be made to this product or the packaging of the product, without the written authorization of the Company's Quality Assurance.

    3.4.3    All Quality Control/Assurance documentation relating to the production of the product shall be forwarded to the Company's QA on a monthly basis, unless otherwise instructed.

## 4.0    Finished Product Specification

| Characteristic | Test Procedure | Standard Tolerance | Defect Description |
|---|---|---|---|
| **Physical Characteristics/Defects** | | | |
| Appearance | Sensory | Crisp, fresh tender green tops with white bulbs. Not wilted in appearance | Critical |
| Flavor | Sensory | Mild to sweet-mild; typical green onions. No sour or other off flavors | Critical |
| Texture | Sensory | Tender crisp green tops with firm white bulbs. Not dry or slimy in texture | Critical |
| Net Wt. (catch weight) | Balance | 12 – 18 lbs. | Major |
| Count/Case | Count | 48 bunches | Major |
| Count/Bunch | Count | 6 – 8 bulbs | Major |
| Size – Small | Ruler/Caliper | ≤ ½" diameter | Major |
| Defects – Decay | Visual | ≤ 2.0% total | Major |
| Defects – Seriously Damaged, Broken or Bruised Tops (as defined by 7CFR 51.1059) | Visual | < 5.0% | Major |
| Defects – Total (non conformance to US #1 defined by 7CFR 51.1055) | Visual | < 10.0% | Major |

CONFIDENTIAL SPECIFICATION

| Green Onions, Pencil, 48 ct. (CC) | Specification No.: WPRD-029-01 | Effective Date: 9/25/99 |
|---|---|---|
| | Supersedes: N/A (First Issue) | Page 3 of 4 |

Other:  1.  Finished product shall be free from extraneous materials (i.e. extenders, flavor enhancers, dyes, etc.).

2.  Finished product shall be free of any foreign object.

**5.0  Finished Product Testing Requirements**

5.1  Testing Frequency: Per batch or sampling dependent upon suppliers processing quantities and the Company's Quality Assurance approval. The Company's Quality Assurance reserves the option to change sampling frequencies at any time.

5.2  Testing Methods:

5.2.1  All chemical methods used must be in accordance with the Association of Analytical Chemists (AOAC) unless otherwise approved by the Company's Quality Assurance.

All microbiological tests must be in accordance with FDA's Bacteriological Analytical Manual (BAM).

5.2.3  Results for all microbiological, chemical and physical testing must be completed and **must meet above referenced specification criteria** before shipping, unless otherwise authorized by the Company's Quality Assurance.

**6.0  Handling/Storage/Transportation/Shelf Life**

6.1  Storage Temperature: Not to exceed 40°F at all times during distribution.

6.2  The shelf life shall be 10 days from the date of manufacture, when held and distributed under the above conditions.

6.3  The distributor shall be guaranteed a minimum of 3 days of shelf life upon receipt.

6.4  The shelf life shall be 5 days from delivery to the restaurant, when held and distributed under the above conditions.

**7.0  Packing and Handling Guidelines**

7.1  Primary Package/Pack Size: Product shall be completely covered with crushed ice at all times during distribution.

**CONFIDENTIAL SPECIFICATION**

| Green Onions, Pencil, 48 ct. (CC) | Specification No.: WPRD-029-01 | Effective Date: 9/25/99 |
|---|---|---|
| | Supersedes: N/A (First Issue) | Page 4 of 4 |

7.2   Case Guidelines:



| | |
|---|---|
| x (Length): | 14.00" |
| z (Width): | 11.00" |
| y (Height): | 12.00" |
| Style: | |
| Burst Strength/Edge Crush: | 40# ECT |
| Flute: | |
| Method of Closure: | Tape or Glued |

**8.0   Labeling Special Requirements**

8.1   All product labeling will comply with applicable state and federal labeling regulations as required in 21 CFR.

8.2   Cases will be coded with an open code in MM/DD/YY format. Additionally, in order to further assist in the tracking of finished product, there will be a discrete subcode that will further identify production increments not to exceed two hours. All variations to this coding must have been granted written approval by the Company.

8.3   Case will have safe storage conditions for product imprinted on its exterior. These conditions will be clear and legible.

*Prandium, Inc.* ™

## CONFIDENTIAL SPECIFICATION

| Green Onions, Pencil, 48 ct. | Specification No.: WPRD-029-01 |
|---|---|
| | Supersedes: n/a |

).0    **Authorization Signatures**

| Title | Signature | Date |
|---|---|---|
| Director, Quality Assurance | James A Hartzell | 12/27/98 |
| Purchasing Agent | | 4/14/99 |
| VP, Research & Development | | 8/17/99 |
| VP, Supply Chain Management | | 1/22/99 |
| ~~Sr. Director,~~ Quality Assurance  VP | | 1/25/99 |

TM

SUPPLIER

Company: *Prandium, Inc.*

Authorized Signature: _____

Type/Print Name: _____

Title: _____    Date: _____

Exhibit D



Prandium, Inc.

# CONFIDENTIALITY AGREEMENT
Castellini Company
2 Pixm Street
Wilder, KY 41076

PRANDIUM, INC.                                                             June 16, 1999
18831 Von Karman Avenue
Irvine, CA 92612
Attn:   Laura Blair

Re:    *Confidential Treatment of Information Exchanged Pursuant to Business Relationship*

Dear Ms. Blair;

In connection with our business relationship (the "Relationship") Prandium, Inc. (formally named Koo Koo Roo Enterprises, Inc.), a Delaware corporation and/or one or more of its subsidiaries (collectively, the "Disclosing Party"), the Disclosing Party will provide us with certain information, including but not limited to, certain recipes, formulas, processes, procedures, designs, plans, techniques, methods, inventions, general financial information and other information relating to the Disclosing Party's business, which the Disclosing Party deems proprietary and confidential (the "Materials"). In consideration of the foregoing, we hereby agree as follows:

The Materials will be kept confidential, except as provided herein, and will not, except as provided herein, be: (i) used by us except as necessary in connection with the Relationship; or (ii) made known by us, in whole or in part, to any third party. We agree to be bound, and will use reasonable efforts to assure that our directors, officers, employees and representatives abide by the terms of this Letter Agreement. Notwithstanding the foregoing, the Disclosing Party hereby agrees that we may make disclosure of the Materials without liability; (i) to any appropriately requesting governmental agency, bank, regulatory body or representative of any thereof; (ii) pursuant to court order or legal process; (iii) as otherwise required by law or regulation; and (iv) to any of our attorneys, accountants, advisors or other representatives who require access to the Materials to meaningfully participate in the Relationship.

"Materials" shall not include the following: (i) any information in our possession or otherwise known to us prior to the date hereof; (ii) any information which is made available subsequent to the date hereof to us by a source not known to us to be bound by a confidentiality agreement with the Disclosing Party; and (iii) any information which is or becomes public or part of the public domain.

Unless prohibited specifically by law, regulation, court order or legal process, we shall notify the Disclosing Party, prior to any disclosure of the Materials, and we shall request confidential treatment thereof.

Co_apvl.doc                                                              Page 1/2

We recognize that the Disclosing Party: (i) is not making any representation as to the accuracy or completeness of the Materials; and (ii) shall not have any liability to us resulting from the use of the Materials.

We agree and acknowledge that the Disclosing Party is the owner of the trademarks, registrations and other intangible rights to the Materials, including without limitation the names, logos, graphics, designs and recipes contained therein, and that the use of any such intangible rights shall inure to the benefit of the Disclosing Party.

We agree to indemnify, protect, defend and hold harmless Disclosing Party, its subsidiaries, related and affiliate companies and entities, and the officers, directors, employees, agents and representatives of each, from and against any and all claims, causes of action, demands, losses, costs, expenses (including reasonable attorneys' fees), obligations, liabilities, damages, and deficiencies of any kind that arise out of, result from, or in any way relate to the Relationship or Materials, including but not limited to unauthorized use of information obtained by us.

In any action or proceeding brought to enforce any provision hereof, or where any provision hereof is validly asserted as a defense, the successful party shall be entitled to recover reasonable attorneys' fees in addition to any other available remedy.

This Letter Agreement shall be governed by and construed in accordance with the laws of the State of California.

Very truly yours,

Castellini Company , _an Ohio_ Corporation
*(State of Incorporation)*

By: _____ , _Pres._

Printed Name: _W. M. Schuler_

Date: _7/28/99_

Exhibit E

HOLD HARMLESS AGREEMENT
AND
GUARANTY/WARRANTY OF PRODUCT

Sysco Corporation and/or its Affiliates
ATTN:  Vice President of Merchandising
1390 Enclave Parkway
Houston, Texas  77077-2099

Gentlemen:

The undersigned person or entity ("Seller"), for value received, hereby represents and agrees as follows:

1.    The articles contained in any shipment or delivery made by Seller, its subsidiaries or divisions (a "Product") made to or on the order of Sysco Corporation, its subsidiaries, affiliates or divisions (collectively referred to as "Buyer") is hereby guaranteed, as of the date of such shipment or delivery, (a) to not be adulterated or misbranded within the meaning of the Federal Food, Drug and Cosmetic Act (the "Act"), (b) to not be an article which cannot be introduced into interstate commerce under the provisions of Sections 404 and 505 of the Act, and (c) to be in compliance with all applicable federal, state and local laws.

2.    Seller agrees to defend, indemnify and hold harmless Buyer and its employees, officers, directors and customers (individually, an "Indemnitee") from all actions, suits, claims and proceedings ("Claims"), and any judgments, damages, fines, costs and expenses (including reasonable attorneys' fees) resulting therefrom:

(i)    brought or commenced by federal, state or local governmental authorities against any Indemnitee alleging that any Product sold by Seller to or on the order of Buyer did not, as of the date of delivery, meet the guaranty set forth in Paragraph 1;

(ii)   brought or commenced by any person or entity against any Indemnitee for the recovery of damages for the injury, illness and/or death of any person or damage to property arising out of or alleged to have arisen out of (a) the delivery, sale, resale, labeling, use or consumption of any Product, or (b) the negligent acts or omissions of Seller; provided, however, that Seller's indemnification obligations hereunder shall not apply to the extent that Claims are caused by the negligence of Buyer.

Indemnitee shall notify Seller promptly of the service of process or the receipt of actual notice of any claim.

a.        Seller agrees to maintain in effect insurance coverage with reputable insurance companies covering workers' compensation and employers' liability, automobile liability, commercial general liability, including product liability and excess liability, all with such limits as are sufficient in Buyer's reasonable judgment, to protect Seller and Buyer from the liabilities insured against by such coverages.  Seller's insurance described herein shall be primary.  Seller shall furnish a certificate evidencing the obligation of its insurance carriers not to cancel or materially amend such policies without thirty (30) days prior written notice to Buyer.  In addition, Buyer shall be named as an additional insured using Form CG 20 26-Designated Person or Organization Endorsement with respect to the commercial general liability policy including products liability.  Automobile liability and excess/umbrella liability coverages will also name Buyer as an additional insured.  All policies shall provide waivers of subrogation in favor of Buyer.

4.        This Guaranty and Agreement is continuing and shall be in full force and effect and shall be binding upon Seller with respect to each and every Product shipped or delivered to buyer by the Seller before the receipt of the Buyer of written notice of revocation thereof.

Dated this ___16___ day of ___January___ 19_97_

_Castellini Company_
Name of Company, Seller

_Lorenzo Contrell_
Signature of Authorized
Official and Title

_2 Plum Street_
Street Address

_Cincinnati OH  45202_
City, State and Zip Code

## CERTIFICATE OF SERVICE

I, Christopher T. Lee, Esquire, hereby certify that true and correct copies of the foregoing Amended Third Party Complaint in Civil Action and Demand for Trial by Jury have been served this 6th day of June, 2005, by U.S. first-class mail, postage pre-paid, to counsel of record listed below:

Edward J. Balzarini, Jr., Esquire
Balzarini & Watson
3303 Grant Building
Pittsburgh, PA 15219
*Attorneys for Plaintiff, Martha J. Funkhouser*

Castellini Company
Wilder, Kentucky
*Defendant*

DICKIE, McCAMEY & CHILCOTE, P.C.

By _____
Christopher T. Lee, Esquire

*Attorneys for Defendant, Chi Chi's, Inc.*

EXHIBIT F

Westlaw.

Slip Copy                                                    Page 1
Slip Copy, 2005 WL 2545300 (W.D.Pa.)
**(Cite as: Slip Copy)**

**C**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,W.D. Pennsylvania.
Martha J. FUNKHOUSER, Plaintiff,
v.
CHI-CHI'S, INC., Defendant,
v.
CASTELLINI COMPANY, LLC, Third-Party
Defendant.
**No. 02:05CV638.**

Oct. 7, 2005.

Edward J. Balzarini, Jr., Balzarini, Carey & Watson,
Pittsburgh, PA, for Plaintiff.
Douglas J. Billings, Frederic L. Gordon, Rhonda J.
Holmes, Gordon & Holmes, San Diego, CA; James
R. Miller, Christopher T. Lee, Dickie, and Shannon
E. Smith, McCarney & Chilcote, Pittsburgh, PA, for
Defendant.

MEMORANDUM ORDER

MCVERRY, J.
**\*1** Presently before the Court are the following:

• MOTION TO DISMISS filed by Third Party
Defendant Castellini Company, LLC, with brief in
support (*Document Nos. 10 and 11* ), the brief in
opposition filed by Third-Party Plaintiff Chi-Chi's,
Inc. (*Document No. 17* ), and the Reply
Memorandum filed by Third-Party Defendant
Castellini Company (*Document No. 25* ). For the
reasons that follow, the Motion will be granted.

Since its adoption in *Crosley Corp. v. Hazeltine
Corp., 122 F.2d 925 (3d Cir.1941)*, the first-filed rule
has been employed by the courts in the Third Circuit
to enjoin, where appropriate, "the subsequent
prosecution of 'similar cases ... in different federal
district courts." ¹ *EEOC v. University of
Pennsylvania, 850 F.2d 969, 971 (3d Cir.1988)*
(quoting *Compagnie Des Bauxites De Guinea v.
Insurance Co. of North America, 651 F.2d 877, 887
n. 10 (3d Cir.1981)*). The first-filed rule simply
dictates that, in cases of federal concurrent
jurisdiction involving the same parties and issues, the
court of first-filing must proceed to decide the matter.
*EEOC, 850 F.2d at 971*. Although district courts do

have discretion in applying the first-filed rule, district
courts have adopted a policy which requires the
existence of unusual or exceptional circumstances
before a court may choose to depart from the rule.
*See Berkshire International Corp. v. Marquez, 69
F.R.D. 583, 586 (E.D.Pa.1976)*.

Circumstances which may justify a departure from
the first-filed rule include: 1) bad faith on the part of
plaintiff in the first-filed action; 2) forum shopping
being a motivation for the filing of the first action; 3)
the second filed action being further developed than
the first at the time the motion is made; and 4) the
filing of the first suit in one forum to preempt the
opponent's imminent filing of a suit in a different,
less favorable forum. *See EEOC, 850 F.2d at 976*
(declining to apply the first-filed rule after
concluding that defendant had filed its prior action in
the District of Columbia in order to avoid
unfavorable precedent in the Third Circuit).

In its response to the present motion, Third-Party
Plaintiff Chi-Chi's, Inc. ("Chi-Chi's") attempts to
persuade the Court that, due to the existence of
several special circumstances, the first-filed rule
should not be enforced to enjoin it from prosecuting
its third party action against Castellini Company,
LLC in this district.

First, Chi-Chi's argues that although the Delaware
bankruptcy action has been brought in the name of
"Chi-Chi's," that claim was brought by one of the
Company's insurance companies whereas the instant
case was brought by the attorneys retained directly by
Chi-Chi's. Therefore, according to this argument, the
parties in the two actions are not identical.

Second, Chi-Chi's argues that the balance of
convenience "overwhelmingly favor the exercise of
jurisdiction by this Court." Br. at 12. Third, Chi-Chi's
argues that this "Court's familiarity with the subject
matter of this action provides an additional basis for
denial of Castellini's motion." Last, Chi-Chi's argues
that "this action is likely to proceed more rapidly than
Empire's Delaware Action." *Id.* at. 15.

**\*2** Chi-Chi's, however, has failed to persuade the
Court that any circumstances exist in this matter
which would justify a departure from the first-filed
rule. *EEOC, 850 F.2d at 976*. In addition to both
claims being brought solely in the name of Chi-Chi's,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2005 WL 2545300 (W.D.Pa.)
**(Cite as: Slip Copy)**

Inc., both assert the "same rights" through the same six contractually based theories of recovery, both assert the "same facts" and claim the same harm, and both demand the same "relief" from Castellini. The Court, therefore, concludes that pursuant to the first-filed rule, the Third-Party Complaint filed against Castellini in this Court should be dismissed.

AND NOW, this 7th day of October, 2005, it is hereby ORDERED, ADJUDGED AND DECREED that pursuant to the first-filed ruled the Third-Party Complaint of Defendant/Third-Party Plaintiff Chi-Chi's, Inc. against Castellini Company is hereby DISMISSED forthwith.

W.D.Pa.,2005.
Funkhouser v. Chi-Chi's, Inc.
Slip Copy, 2005 WL 2545300 (W.D.Pa.)

Briefs and Other Related Documents (Back to top)

• 2:05cv00638 (Docket) (May. 09, 2005)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| CHI-CHI'S, INC., et al., | : | Case No. 03-13063 |
| | : | (Jointly Administered) |
| Debtors. | : | |
| | : | Adv. Pro. No. 05-52726 |
| SYSCO CORPORATION and | : | |
| THE SYGMA NETWORK, INC., | : | |
| | : | |
| Appellants, | : | Civil Action No. 06-169-KAJ |
| | : | |
| v. | : | |
| | : | |
| CHI-CHI'S, INC., | : | |
| | : | |
| Appellee. | : | |

**CERTIFICATE OF SERVICE**

I, Jeffrey R. Waxman, certify that I am not less than 18 years of age, and that service of the attached OPENING BRIEF OF SYSCO CORPORATION AND THE SYGMA NETWORK, INC. IN SUPPORT OF THEIR APPEAL OF THE BANKRUPTCY COURT'S JANUARY 18, 2006 ORDER FINDING THAT RULE 41 DOES NOT BAR FURTHER PROCEEDINGS AGAINST SYSCO CORPORATION AND THE SYGMA NETWORK, INC. was made on May 26, 2006 upon the parties listed below:

| VIA HAND DELIVERY | VIA FIRST CLASS MAIL |
|---|---|
| Laura Davis Jones, Esquire<br>Pachulski, Stang, Ziehl, Young, Jones &<br>Weintraub P.C.<br>919 North Market Street, 16th Floor<br>Wilmington, DE 19801 | Frederic L. Gordon, Esquire<br>Gordon & Holmes<br>223 West Date Street<br>San Diego, California 92101-3571 |
| David M. Klauder, Esquire<br>Office of the U.S. Trustee<br>844 King Street, Room 2207<br>Wilmington, DE 19801 | William N. Nobel, Esquire<br>Irell & Manella, LLP<br>840 Newport Center Drive, Suite 400<br>Newport Beach, CA 92660-6324 |
| Kevin Gross, Esquire<br>Rosenthal, Monhait, Gross & Goddess, P.A.<br>919 Market Street, Suite 1401<br>Wilmington DE 19899-1070 | Gary Becker, Esquire<br>Dinsmore & Shohl LLP<br>255 East Fifth Street<br>Cincinnati, OH 45202 |
| Bernard George Conaway, Esquire<br>Fox Rothschild, LLP<br>Citizens Bank Building, Suite 1300<br>919 North Market Street<br>Wilmington, DE 19899-2323 | . |

Under penalty of perjury, I declare that the foregoing is true and correct.

_____
Jeffrey R. Waxman (No. 4159)

2