## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CHI-CHI'S, INC., et al., | ) | Case No. 03-13063 (JLP) |
| | ) | (Jointly Administered) |
| Debtors | ) | |
| _____ | ) | Adv. No. 05-52726-RB |
| SYSCO CORPORATION and | ) | |
| SYGMA NETWORK, INC., | ) | |
| | ) | |
| Appellent, | ) | Civil Action No.: 06-169 KAJ |
| | ) | |
| v. | ) | |
| | ) | |
| CHI-CHI'S, INC., et al., | ) | |
| | ) | |
| Appellee. | ) | |

### ANSWERING BRIEF OF THE APPELLEE INTERVENOR EMPIRE INDEMNITY INSURANCE COMPANY'S, d/b/a ZURICH, TO SYSCO CORPORATION AND SYGMA NETWORK, INC.'S APPEAL OF THE BANKRUPTCY COURT'S JANUARY 19, 2006 DECISION DENYING APPELLANT'S APPLICATION FOR INJUNCTIVE RELIEF

### FOX ROTHSCHILD LLP

/S/  Bernard George Conaway, Esquire
Francis G.X. Pileggi, Jr., Esquire (DE 2624)
Bernard George Conaway, Esquire (DE 2856)
919 N. Market Street, Suite 1300, P.O. Box 2323
Wilmington, DE  19899-2323
(302) 654-7444

- and -

Richard Dennis Abrams, Esquire (DE 2968)
Heckler & Frabizzio, PA
800 Delaware Avenue, Suite 200
Wilmington, DE  19801
(302) 573-4800
*Attorneys for Empire Indemnity Insurance
Company[1], subrogee of the above-captioned Debtors*

DATE:  June 12, 2006

---

[1] The firm of Heckler & Frabizzio represents Subrogee as to all claims against the Defendants, whereas Fox Rothschild LLP represents Subrogee as to claims arising solely against Defendant Castellini.

WM1A 80552v1 06/12/06

# TABLE OF CONTENTS

STATEMENT OF THE NATURE AND STAGE OF PROCEEDINGS ............................1

SUMMARY OF ARGUMENT ........................................................................................2

STATEMENT OF FACTS ..............................................................................................3

ARGUMENT ...................................................................................................................5

    A.  FRCP 41(a)(1) Is Inapplicable To This Matter ...................................................5

        1.   The Prior Dismissals Were Not By the Same Plaintiffs ........................6

        2.   The Prior Dismissal Was Not Based Upon Or Including
            The Same Claims ................................................................................11

    B.  Dismissing This Action Would Not Serve The Purpose Intended By Rule 41....13

CONCLUSION...............................................................................................................15

WM1A 80552v1 06/12/06

# TABLE OF CITATIONS

## FEDERAL CASES

*ASX Investment Corp. v. Newton, III,*
183 F.3d 1265 (11th Cir. 1999) ...................................................................6

*Brown v. Hartshorne Public School District,*
926 F.2d 959 (10th Cir. 1991) ...................................................................8

*In re Candor Diamond Corp.,*
26 B.R. 844 (Bkrtcy. S.D.N.Y. 1983).........................................................1

*In re Candor Diamond Corp.,*
30 B.R. 17 (Bkrtcy. S.D.N.Y. 1983),..........................................................1

*In re Food Fair, Inc.,*
15 B.R. 569 (Bkrtcy. S.D.N.Y. 1981).........................................................1

*Cornell v. Chase Brass & Copper Co.,*
48 F. Supp. 979 (D.C.N.Y. 1943) ...............................................................7

*FDIC v. Lacentra Trucking, Inc.,*
157 F.3d 1292 (11th Cir. 1998) ..................................................................8

*Huskey v. United States,*
29 F. Supp. 283 (E.D. Tenn. 1939).........................................................7, 8

*Island Stevedores, Inc., Barge CCBI,*
129 F.R.D. 430 (D.P.R. 1990) ....................................................................5

*Janssen v. Harris,*
321 F.3d 998 (10th Cir. 2003) ....................................................................6

*Kuhn v. Williamson,*
122 F.R.D. 192 (E.D.N.C. 1988) ................................................................6

*Lake at Las Vegas Investors Group, Inc. v. Pacific Malibu Development Corp.,*
933 F.2d 724 (9th Cir. 1991) ......................................................................8

*Manning v. South Carolina Department of Highway & Public Transport,*
914 F.2d 44 (4th Cir. 1990) ..........................................................10, 11, 13

*Manze v. State Farm Insur. Co.,*
817 F.2d 1062 (3d Cir. 1987).....................................................................6

*Murray v. Sevier,*
145 F.R.D. 563 (D. Kan. 1993)........................................................8, 11, 13

*Muzikowski  Paramount Pictures Corp.*
2003 WL 22872117, slip op. at 3 (N.D. Ill.)..................................................6

*Poloron Products Inc. v. Lybrand Ross Brothers & Montgomery,*
66 F.R.D. 610 (S.D.N.Y. 1975) ...............................................................8, 11

*Poloron Products, Inc. v. Lybrand Ross Brothers & Montgomery,*
534 F.2d 1012 (2d Cir. 1976)...............................................................5, 9, 13

*Robertshaw-Fulton Controls Co. v. Norma Electric Corp.,*
10 F.R.D. 32 (D. Md. 1950)......................................................................9

*Shapiro v. Shapiro,*
1995 WL 550635 (E.D. Pa.) ....................................................................5

*Seippel v. Jenkins & Gilchrist, P.C.,*
2004 WL 2809205, slip op. at 1 (S.D.N.Y.) ..............................................6

*Smith, Kline & French Laboratories v. A.H. Robins Co.,*
61 F.R.D. 24 (E.D. Pa. 1973)...................................................................13

*St. Paul Fire and Marine Insurance Co. v. Universal Builders Supply,*
409 F.3d 73 (2nd Cir. 2005).....................................................................12

*Sulton Place Development Co. v. Abacus Mortgage Invest Co.,*
826 F.2d 637 (7th Cir. 1987) ....................................................................6

*Sysco Corp. v. Chi-Chi's, Inc.,*
338 B.R. 618 (Bankr. D. Del. 2006) ..........................................................6

*United HealthCare Corp. v. American Trade Insurance Co.,*
88 F.3d 563 (8th Cir. 1996) ......................................................................9

*United States v. Aetna Casualty & Surety Co.,*
338 U.S. 366 (1949)...............................................................................12

## STATE CASES

*Banker v. Valley Forge Insurance Co.,*
585 A.2d 504 (Pa. Super. 1991)...............................................................10

*Matter of Burley,*
658 P.2d 8 (Wash. App. (Div. 1) 1981) ....................................................7

*County of St. Louis v. Marchand,*
401 N.W.2d 449 (Minn. Ct. App. 1987).....................................................7

WM1A 80552v1 06/12/06

*Crump v. Gold House Restaurants, Inc.,*
    96 So. 2d 215 (Fla. 1957)............................................................................7

*Maldonado v. Flynn,*
    417 A.2d 378 (Del. Ch. 1980).................................................................10

## FEDERAL RULES

FRCP 41(a)(1) ............................................................................... *passim*

v

## STATEMENT OF THE NATURE AND STAGE OF PROCEEDINGS

On September 23, 2005, the Appellant filed an action in the Bankruptcy Court of the District of Delaware seeking to enjoin Chi-Chi's from "initiating, continuing and/or participating in any additional actions, including arbitration, against Sysco and SYGMA in connection with the Hepatitis claims." *See* Sysco/SYGMA Complaint appearing as **Exhibit A**. On the same day that the Complaint was filed, the Appellant filed its Motion for Protective Order. That Motion likewise sought to enjoin Chi-Chi's from maintaining actions against either Sysco or SYGMA.

On October 24, 2005, Empire Indemnity Insurance Company, d/b/a Zurich [hereinafter referred to as "Empire"], moved to intervene as subrogee of Chi-Chi's, Inc. On November 16, 2005, the Bankruptcy Court heard and granted Empire's Motion to Intervene. *See Transcript of Hearing* at **Exhibit B**, pp. 6-8.

On January 18, 2006, the Bankruptcy Court issued a Memorandum of Opinion and Order Dismissing Complaint thereby denying the Appellant's motion and dismissing the complaint.[1] *See Memorandum of Opinion and Order Dismissing Complaint* appearing at **Exhibit C**. That opinion appears at 338 B.R. 618 (Bankr. D. Del. 2006). On January 30, 2006, Appellant filed its Notice of Appeal.

On May 26, 2006 Appellent filed its Opening Brief.[2] This represents Empire's Answering Brief.

---

[1]  The Memorandum of Opinion and Order Dismissing Complaint was docketed January 19, 2006.

[2]  In its Opening Brief Sysco relies upon several exhibits that were not part of the record designated by the parties to this appeal. D.I. 2, 3 and 11. Specifically, Exhibits B, C, and D to Sysco's Opening Brief were not part of any party's designation of the record. Two of those exhibits are briefs filed in a California case by third party litigants. Sysco is not a party to that California case. All of those exhibits arose after the Bankruptcy Court issued its decision on January 19, 2006. None of these exhibits is (a) "necessary to afford [this Court] a complete understanding of the case," *In re Candor Diamond Corp.*, 26 B.R. 844, 846 (Bkrtcy. S.D.N.Y. 1983), and (b) "[m]aterial from related proceedings," *In re Candor Diamond Corp.*, 30 B.R. 17, 18 (Bkrtcy. S.D.N.Y. 1983)(citing *In re Food Fair, Inc.*, 15 B.R. 569, 572 (Bkrtcy .S.D.N.Y. 1981)). The Court should refuse to consider these exhibits and that part of Sysco's brief that refers and relates to them.

- 1 -

## SUMMARY OF ARGUMENT

For Sysco to avail itself of relief under FEDERAL RULE OF CIVIL PROCEDURE 41(a)(1), or the two dismissal rule, the prior dismissals must have been given by the same plaintiff, involving the same claims. That did not happen and accordingly, Sysco is not entitled to relief enjoining either Empire or Chi-Chi's from initiating, continuing and/or participating in any additional actions, including arbitration, against Sysco and SYGMA in connection with the Hepatitis claims.

Sysco's argument advanced in its Opening Brief fails to account for the fact that Empire and Chi-Chi's are not the same parties and fails to account for the different claims that Empire and Chi-Chi's have against Sysco.

WM1A 80235v1 06/12/06

## STATEMENT OF FACTS

Chi-Chi's, Inc., and related debtors (hereinafter collectively referred to as "Chi-Chi's" or "Defendant Below"), filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code on or about October 8, 2003 (hereinafter the "Petition Date"). Empire is a commercial liability insurer with operations throughout the United States, including Omaha, Nebraska. Prior to the Petition Date, Empire and Chi-Chi's entered into a Commercial Liability Umbrella Coverage Form (hereinafter the "Policy"), whereby Empire agreed to provide Chi-Chi's with Bodily Injury and Property Damage Liability Coverage in the amount of $10 million dollars. Paragraph 1(a.) of Empire's Policy provides:

> We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages when the "underlying insurance" does not provide coverage or the limits of "underlying insurance" have been exhausted. When we have no duty to defend, we will have the right not to defend, or to participate in the defense of, the insured against any other "suit" seeking damages to which this insurance may apply.

A copy of the Policy is attached hereto as **Exhibit D**.

The Chapter 11 proceeding was, at least in part, the result of food poisonings at one of Chi-Chi's' restaurants, located in Monaca, Pennsylvania (hereinafter the "Beaver Valley Chi-Chi's") wherein over 650 people became ill, four of whom subsequently died.

The United States Center for Disease Control investigation revealed that the food poisonings were the result of human consumption of raw, green onions contaminated by Hepatitis A. The onions were contaminated with Hepatitis A prior to delivery to the Beaver Valley Chi-Chi's. The onions were delivered to the Beaver Valley Chi-Chi's by Sysco Corporation, a Delaware corporation in the business of shipping and supplying

- 3 -

produce for use in restaurants.

Upon information and belief, Sysco obtained the onions from Castellini Company, LLC (hereinafter "Castellini"), a limited liability company organized under the laws of the State of Delaware. Castellini is in the business of processing, supplying and shipping produce for use in restaurants. Castellini's supply of "adulterated green onions," caused Chi-Chi's to suffer immediate property damage, loss of profits at the Beaver Valley Chi-Chi's, loss of profits at other stores resulting from negative publicity, crisis management expenses, attorney's fees, payment of medical expenses and preventative care, and loss of goodwill.

On or about July 20, 2004, the Debtor filed an adversary action in the Bankruptcy Court. *See* Chi-Chi's Bankruptcy Court DI: 980. Named as parties in that action were Sysco/SYGMA and Castellini. That action sought recovery of lost profit claims, property damage, lost business value, loss of goodwill, crisis management expenses, breach of warranty claims, other indemnity and contribution from Sysco/SYGMA. That action was voluntarily dismissed on or about November 12, 2004.

On or about November 16, 2004, Empire filed an adversary action in the Bankruptcy Court. *See* Chi-Chi's Bankruptcy Court DI: 1259. Named as parties in that action were Sysco/SYGMA and Castellini. That action sought recovery of monies paid and to be paid by Empire under its insurance contract with Chi-Chi's from Sysco/SYGMA and others. That action was voluntarily dismissed on or about December 7, 2004. *See* Chi-Chi's Bankruptcy Court DI:1259. That dismissal was, in part, driven by Sysco/SYGMA's assertion of their arbitration rights under a contract existing between the Chi-Chi and Sysco/SYGMA. *See Affidavit of Frederic Gordon* [hereinafter referred to as the "Gordon Affidavit"] at paragraph 14 appearing as **Exhibit E** herein.

**ARGUMENT**

**A. <u>FRCP 41(a)(1) Is Inapplicable To This Matter</u>**

At page 4 of their Opening Brief, Sysco cites *Shapiro v. Shapiro* for the quote that

RULE 41 "leaves little to the imagination." No. CIV.A.95-CV-2408, 1995 WL 550635, 2

(E.D. Pa.). Empire agrees. An honest reading of RULE 41, leaves even a casual reader

with the undeniable conclusion that Sysco's action in the Bankruptcy Court and the

appeal in this Court are simply unsupported by the plain language of the RULE itself. As

though the language of the RULE itself were not enough, Sysco likewise fails to point to a

single case decided since the adoption of the FEDERAL RULES OF CIVIL PROCEDURE in

1938 that supports the position it advances in this appeal.

In pertinent part, FEDERAL RULE OF CIVIL PROCEDURE 41(a)(1)(ii) provides:

> Unless otherwise stated in the notice of dismissal or
> stipulation, the dismissal is without prejudice, except that a
> notice of dismissal operates as an adjudication upon the
> merits when filed by a plaintiff who has once dismissed in
> any Court of the United States or of any state, an action
> based on or including the same claim.

This provision of RULE 41 is ubiquitously referred to as the "two dismissal rule."

Pursuant to the two dismissal rule, a plaintiff may commence and pursue the same action

twice, but will be barred from pursuing it a third time against the same defendant(s) on

the same claim. *Island Stevedores, Inc., Barge CCBI*, 129 F.R.D. 430, 432 (D.P.R.

1990). RULE 41 is not broadly construed because it "is an exception to the general

principle, contained in RULE 41(a)(1) and honored in equity prior to the adoption of the

Federal Rules, that a voluntary dismissal of an action does not bar a new suit based upon

the same claim." *Poloron Products, Inc. v. Lybrand Ross Bros. & Montgomery*, 534 F.2d

1012, 1017 (2d Cir. 1976) (hereinafter referred to as *Poloron II*). Indeed, because the

two dismissal rule operates as an adjudication upon the merits, the RULE has been strictly

construed. *Sysco Corp. v. Chi-Chi's, Inc.*, 338 B.R. 618, 621 (Bankr. D. Del. 2006)(citing *Manze v. State Farm Insur. Co.*, 817 F.2d 1062, 1063 (3d Cir. 1987); *Janssen v. Harris*, 321 F.3d 998, 1001 (10th Cir. 2003); *Sulton Place Development Co. v. Abacus Mortgage Invest Co.*, 826 F.2d 637, 640 (7th Cir. 1987); *Seippel v. Jenkins & Gilchrist, P.C.*, 2004 WL 2809205, slip op. at 1 (S.D.N.Y.); *Muzikowski Paramount Pictures Corp.*, 2003 WL 22872117, slip op. at 3 (N.D. Ill.); *Kuhn v. Williamson*, 122 F.R.D. 192, 195 (E.D.N.C. 1988)).

To be applicable, the prior two dismissals must be given "*by a plaintiff*" who has dismissed in any appropriate court "*an action based upon or including the same claim.*" Plaintiffs' sophistry here cannot overcome the obvious problems presented by this action: the two dismissals at issue were not given by the same *plaintiff* and those dismissals were not *based upon or including the same claims.* Yet this is the Plaintiffs' position.

### 1.   The Prior Dismissals Were Not By The Same Plaintiffs

In construing the two dismissal rule, courts look to the plain language of the rule, read it as a whole and are "mindful of the linguistic choices made by the drafters." *ASX Investment Corp. v. Newton, III,* 183 F.3d 1265, 1267 (11th Cir. 1999)(citing *FDIC v. Lacentra Trucking, Inc.*, 157 F.3d 1292, 1302 (11th Cir. 1998), *cert. dismissed*, 526 U.S. 1083, 119 S.Ct. 1493, 143 L.Ed.2d 575 (1999)).

The plain language of the RULE requires that a dismissal must be given "*by a plaintiff.*" The RULE contemplates that the dismissal must be by the same plaintiff or someone in privity with the plaintiff because, as common sense ought to compel, one person should not have the ability, inadvertent or otherwise, to extinguish another person's potential claims against a putative defendant. For this reason, for the two dismissal rule to apply in a subsequent action, the plaintiff must be the same party in both prior actions or the plaintiff in the second suit must be in privity with the plaintiff in the

- 6 -

prior actions so dismissed. *See Huskey v. United States,* 29 F. Supp. 283, 284 (E.D. Tenn. 1939); *see generally, Cornell v. Chase Brass & Copper Co.*, 48 F. Supp. 979, (D.C.N.Y. 1943) *aff'd,* 142 F.2d 157 (2nd Cir.)(in dictum noting that the RULE applies only if both plaintiffs are the same real parties in interest).  This principle has been affirmed by numerous State courts applying similar two dismissal rules.  *See County of St. Louis v. Marchand*, 401 N.W.2d 449, 450-51 (Minn. Ct. App. 1987)(refusing to apply two dismissal rule where the prior two dismissals were by two different plaintiffs – former spouses); *Matter of Burley*, 658 P.2d 8 (Wash. App. (Div. 1) 1981)(same); *Crump v. Gold House Restaurants, Inc.*, 96 So. 2d 215 (Fla. 1957)(same).

Sysco inartfully morphs the base concept of a plaintiff's identity for RULE 41(a)(1) purposes by equating "a plaintiff" under the RULE with the damages that a party seeks.  Specifically, Sysco argues that the "Bankruptcy Court reached its conclusion [that Empire and Chi-Chi's were not the same plaintiffs] because it believed that Chi-Chi's and it subrogating insurers had sought different damages." *See Opening Brief of Sysco Corporation* at 5.[3]  Sysco's premise is fundamentally flawed because it confuses the meaning of "a plaintiff" under the RULE.  That confusion is based on a misconception of who the "plaintiff is" with what "a plaintiff" might recover in damages from the defendant.  There is no case law to support Sysco's myopic approach.  The correct approach, and that which was employed by the Bankruptcy Court, is to determine whether or not Chi-Chi's and Empire are the same real party in interest in the respective actions filed by them.  This is essentially the approach taken by those cases that Sysco cites.

In *Poloron Prods. Inc. v. Lybrand Ross Bros. & Montgomery*, relied upon

---

[3]  This conclusion was not a premise of the Bankruptcy Court's analysis and ultimate decision.  Rather it was one part of the foundation that supported the Bankruptcy Court's decision.

extensively by Sysco,[4] three separate suits were filed against essentially the same defendant. Two of those suits were previously dismissed – the second by notice of dismissal under RULE 41(a)(1). *Poloron Prods. Inc. v. Lybrand Ross Bros. & Montgomery*, 66 F.R.D. 610, 614, *rev'd*, 2nd Cir., 534 F.2d 1012 (1975). In each of the three actions the plaintiffs were, effectively pursuing the same claim albeit under different nominal names. Upon the filing of the third action the *Poloron* defendant moved to dismiss asserting that the claims were barred by *res judicata*. Importantly, the *Poloron* court essentially ignored the similarity of damages recoverable by the plaintiffs in each of the three suits. Rather, the *Poloron* decision rested upon the conclusion that claims for damages were raised and dismissed by essentially the same plaintiff – albeit under different names. The *Poloron* court went on to conclude "that the two-dismissal rule should not be defeated by a change in the nominal parties, without a change in the real party in interest." *Id.* Here is the crux of the problem with Sysco's argument. Dismissal and the resulting *res judicata* under RULE 41(a)(1) is not based solely on the similarity of the claims made against the defendant, but also on the similarity of the parties pursing those claims. Sysco has failed to account for the undisputed fact that Empire and Chi-Chi's are not the same parties or in privity with each other. *See, e.g., Brown v. Hartshorne Public School District*, 926 F.2d 959 (10th Cir. 1991)(same plaintiffs, different claims, same defendants - RULE 41 not applicable); *Lake at Las Vegas Investors Group, Inc. v. Pacific Malibu Development Corp.*, 933 F.2d 724 (9th Cir. 1991)(same plaintiffs, same claims, nominally different defendants - RULE 41 applicable); *Murray v. Sevier*, 145 F.R.D. 563 (D. Kan. 1993)(different plaintiffs, same claims, same defendant – RULE 41 not applicable); *Huskey v. United States*, 29 F. Supp.

- 8 -

283, 284-285 (E.D. Tenn. 1939)(same plaintiff in different legal capacities, same claims, same defendants – RULE 41 not applicable); *Robertshaw-Fulton Controls Co. v. Norma Electric Corp.*, 10 F.R.D. 32 (D. Md. 1950)(same plaintiff, same claims, different nominal defendants – RULE 41 applicable). What is clear from the case law is that, for RULE 41(a)(1) to apply to a third filed action, the prior dismissal must have been given by the same plaintiff(s), on the same claim(s).

This approach is consistent with RULE 17(a) which addresses "real party-in-interest" requirements. It states that every "action shall be prosecuted in the name of the real party in interest." RULE 17(a) "requires that the party who brings an action actually possesses, under the substantive law, the right sought to be enforced." *United HealthCare Corp. v. American Trade Insurance Co.*, 88 F.3d 563, 569 (8th Cir. 1996). In this matter Empire does not possess, under substantive law, the right to pursue Chi-Chi's claims for lost profit claims, property damage, lost business value, loss of goodwill, crisis management expenses, breach of warranty claims, other indemnity and contribution from Sysco/SYGMA. Empire and Chi-Chi's are not legally related. They are not in privity with each other in the context of their claims against Sysco and others. Neither Empire nor Chi-Chi's has the either legal right or the obligation to pursue the other's claims in any litigation. Indeed, the contrary is true – (a) Chi-Chi's has no legal right, obligation or ability to pursue Empire's subrogation claims; and (b) Empire has no legal right, obligation or ability to pursue Chi-Chi's many economic claims. Whatever recovery Chi-Chi's eventually secures through litigation against the Plaintiffs and others inures solely to Chi-Chi's. Likewise, whatever recovery Empire eventually secures through litigation against the Plaintiffs and others inures solely to Empire. These characteristics:

---

[4]  Sysco fails to explain why the Second Circuit reversed *Poloron*. The Second Circuit reversed the District Court based upon the latter's conclusion that RULE 41(a)(1) could be invoked no matter how the first dismissal occurred. The

A.    Empire and Chi-Chi's were different plaintiffs; and

B.    Empire and Chi-Chi's had different claims against Sysco

are fundamentally different from those that confronted the *Poloron* court.[5]

The facts presented here do not reflect a nominal change or difference in the plaintiff that confronted the *Poloron* court. What is more telling, however, is that no court has cited *Poloron* for the proposition that Sysco seeks to advance in this Court – applying the two dismissal rule to different plaintiffs, on different claims, against the same defendants. There is good reason for this. The consequence for breach of RULE 41(a)(1) is the application of *res judiciata* to a plaintiff's potential claims against the defendant. A defense of *res judicata* requires a showing of, among other things, that the parties to the prior action were the same as the parties, or their privies, in the pending action.[6] *See, e.g., Maldonado v. Flynn*, 417 A.2d 378, 383 (Del. Ch. 1980)(applying Delaware law); *Banker v. Valley Forge Insurance Co.*, 585 A.2d 504, 508 (Pa. Super. 1991), *allocatur den'd*, 529 Pa. 615, 600 A.2d 532 (1991)(applying Pennsylvania law).

In *Manning v. South Carolina Department of Highway & Public Transport*, 914 F.2d 44 (4th Cir. 1990) the court discussed RULE 41(a)(1) in the context of *res judicata*. There the plaintiff filed and dismissed two separate actions naming "John Doe" and subsequently a government official. The *Manning* court, rejecting the plaintiff's argument, noted:

> Manning's argument ignores the principle that *res judicata* extends not only to named parties to an action, but also to their privies. While privity is an elusive concept, [t]he term "privy", when applied to a judgment or decree, means one

---

reversal on that basis effectively eviscerates the remainder of District Court's RULE 41(a)(1) analysis.
[5]   The failure to acknowledge the difference in the underlying plaintiffs and their respective claims is at the heart of Sysco's misplaced reliance on the "splitting a cause of action" argument.

[6]   Empire and Chi-Chi's claims in the underlying action arise under state law. Accordingly, this Court would apply state law to a *res judicata* defense. Cases from Delaware and Pennsylvania are cited here for as representative of the common law of *res judicata*. By citing to Delaware and Pennsylvania cases, Empire does not concede that either Delaware or Pennsylvania law apply to the underlying claims.

- 10 -

> so identified in interest with another that he represents the
> same legal right.

*Manning, supra,* 914 F.2d at 48 (internal citations removed). Herein lies the rub. Empire

and Chi-Chi's do not maintain the same legal right in their actions against Sysco and are

not, therefore, privies to each other in that other litigation. Yet Sysco would have this

Court reward them with relief under RULE 41 that they would not otherwise be entitled to

were they to raise the *res judicata* defense independent of RULE 41. This is not the result

contemplated by *Poloron* or RULE 41. This principle is clearly illustrated in *Murray v.*

*Sevier,* D. Kan., 145 F.R.D. 563 (1993) where two different plaintiffs filed between them,

six different suits. Their intent in doing so was to judge-shop until one of the six cases

was assigned to a certain judge. When one of the cases was assigned to that judge, the

plaintiffs began the process of dismissing the other five cases. Despite a case that

deserved dismissal for any number of other reasons, the *Murray* court refused to do so.

After quoting *Manning,* the *Murray* court stated:

> The court is not persuaded that these cases justify
> application of the "two-dismissal" rule in this case. While
> it is arguable that Murray's and Neff's relationship to the
> subject matter of this case is similar, or even identical,
> neither *Lake at Las Vegas* nor *Manning* stand for the
> proposition that identical interests of *plaintiffs* trigger the
> application of Rule 41(a)(1).

*Murray,* 145 F.R.D. at 567. (emphasis original)

The Plaintiffs in this action have failed to satisfy the requirement of RULE 41 that

the prior dismissals were given "by a plaintiff." Accordingly, on this point the Court

should deny the relief requested.

**2.     The Prior Dismissal Was Not Based Upon Or Including The Same
         Claims**

To be applicable, RULE 41 requires that the prior dismissals be "based on or

include the same claims." The Plaintiffs do nothing to articulate how or why Empire and

- 11 -

Chi-Chi's claims are the same. For good reason, they are not the same. Sysco seems to rely upon the fact that each claim arises out of the same incident. This is akin to arguing that every person that suffered damage during a particular hurricane has the same claim; or that both passengers in a same car accident have the same claim; or that all creditors have the same claims against the debtor.

Empire's claims against the Plaintiffs arise from a contractual relationship with Chi-Chi's. *See* **Exhibit D** at § IV(9). That contractual relationship gives to Empire the right to recover by subrogation those monies paid by it as a result losses suffered by Chi-Chi's and occasioned by Sysco's conduct. This subrogation right is recognized as a legally protected right inuring to the insurance carrier. *United States v. Aetna Casualty & Surety Co.*, 338 U.S. 366, 380-381 (1949). Moreover, other courts have held that a party suing as a subrogee is only obligated to bring their own subrogation claims and not the claims of others. *See, e.g., St. Paul Fire and Marine Ins. Co. v. Universal Builders Supply*, 409 F.3d 73, 81 (2nd Cir. 2005). Empire's claim does not belong to the insured, Chi-Chi's or any other person or entity. Nor can Chi-Chi's or any other person or entity assert or otherwise dismiss that claim. Conversely, Chi-Chi's alleges property damage, loss of profits at the Beaver Valley Chi-Chi's, loss of profits at other stores resulting from negative publicity, crisis management expenses, attorney's fees, payment of medical expenses and preventative care and loss of goodwill.[7] The right to recover for these claims belong to Chi-Chi's.

---

[7]    This listing in not intended to be an exhaustive listing of the Defendant/Debtor's claims against the Plaintiffs and other. Nor could it be as Empire does not profess to speak for the Defendant/Debtors about the scope of their claims.

**B.      Dismissing This Action Would Not Serve The Purpose Intended By Rule 41**

The purpose of the two dismissals rule is to prevent harassment of the defendant or abuse by the plaintiff through repeated commencement and dismissal of an action based upon the same claims. *Poloron II,* 534 F.2d at 1017-18 (1975). The two dismissal provision in RULE 41(a)(1) is designed "to prevent abuse of the privilege of notice dismissal granted in RULE 41(a)(1). Multiple suits against the same defendant, withdrawn by the unilateral act of the plaintiff, without court intervention, could in some situations provide an opportunity for harassment." *Smith, Kline & French Laboratories v. A.H. Robins Co.,* 61 F.R.D. 24, 30 (E.D. Pa. 1973). By its very language the relief afforded by RULE 41(a)(1) is discretionary. Courts may, and have, denied relief under circumstances that did not comport with the underlying purpose supporting the RULE. *Murray, supra.; Poloron II, supra.*

No such harassment has occurred. Quite the contrary. What the Plaintiffs understandably fail to tell the Court is that both prior dismissals were prompted by the Plaintiffs' assertion of their contractual arbitration rights. *See Gordon Affidavit* at ¶ 7-9, 14 attached as **Exhibit B**. To now come into this Court, after the arbitration is filed, amounts to many things, none of which is an endearing quality. What is clear, however, is that it is not the Defendant/Debtor or Empire that have harassed the Plaintiffs.

- 13 -

## CONCLUSION

**WHEREFORE**, Empire respectfully requests that this Court deny Sysco

Corporation and the SYGMA Network, Inc.'s appeal to enjoin Chi-Chi's and Empire

from initiating, continuing and/or participating in any additional actions, including

arbitration against them in connection with Hepatitis claims, award Empire its attorneys'

fees and costs and award such further relief as this Court deems just and appropriate.

### FOX ROTHSCHILD LLP

*/S/  Bernard George Conaway, Esquire*
Francis G. X. Pileggi, Jr., Esquire (DE 2624)
Bernard George Conaway, Esquire (DE 2856)
919 N. Market Street, Suite 1300
P.O. Box 2323
Wilmington, DE 19899-2323
(302) 654-7444

- and -

Richard Dennis Abrams, Esquire (DE 2968)
Heckler & Frabizzio, PA
800 Delaware Avenue, Suite 200
Wilmington, DE 19801
(302) 573-4800

*Attorneys for Empire Indemnity Insurance*
*Company,* [8] *subrogee of the above-captioned*
*Debtors*

DATE: June 12, 2006

---

[8]    The firm of Heckler & Frabizzio represents Subrogee as to all claims against the Defendants, whereas Fox Rothschild LLP represents Subrogee as to claims arising solely against Defendant Castellini.

- 14 -

## CERTIFICATE OF SERVICE

I, Bernard George Conaway, do hereby certify that on the 12th day of June, 2006, I caused a copy of the foregoing to be served on the parties, through their counsel, as follows:

**ANSWERING BRIEF OF THE APPELLEE INTERVENOR EMPIRE INDEMNITY INSURANCE COMPANY'S, d/b/a ZURICH, TO SYSCO CORPORATION AND SYGMA NETWORK INC.'S APPEAL OF THE BANKRUPTCY COURT'S JANUARY 19, 2006 DECISION DENYING APPELLANT'S APPLICATION FOR INJUNCTIVE RELIEF**

Appellant's Counsel
Mark E. Felger, Esquire                      *By Regular Mail*
Jeffrey R. Waxman, Esquire
Cozen O'Connor
1201 N. Market Street, Suite 1400
Wilmington, DE 19801

Philip G. Kircher, Esquire                   *By Regular Mail*
Aaron Krauss, Esquire
Cozen O'Connor
1900 Market Street
Philadelphia, PA 19103

Debtor and Debtor In Possession Counsel
Laurie Davis Jones, Esquire                  *By Hand Delivery*
Bruce Grohsgal, Esquire
Rachel Lowy Werkheiser, Esquire
Sandra G.M. Selzer, Esquire
Pachulski Stang Ziehl Young Jones & Weintraub PC
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, DE 19801

Special Counsel to Debtor and Defendant Chi-Chi's
Frederic L. Gordon, Esquire                          *By Regular Mail*
Rhonda J. Holmes, Esquire
Douglas J. Billingsly, Esquire
Gordon & Holmes
223 W. Date Street
San Diego, CA 92101


William N. Lobel, Esquire                            *By Regular  Mail*
Alan Friedman, Esquire
Irel & Manella, LLP
840 Newport Center Drive, Suite 400
Newport Beach, CA 93660-6324


                              */S/ Bernard George Conaway*
                              Bernard George Conaway (#2856)


DATE: June 12, 2006

WM1A 80537v1 06/12/06

# EXHIBIT A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| CHI-CHI'S, INC., | : | Case No. 03-13063 (RB) |
| | : | |
| *Debtors.* | : | (Jointly Administered) |
| | : | |
| | : | |
| SYSCO CORPORATION and | : | |
| THE SYGMA NETWORK, INC., | : | |
| | : | |
| *Plaintiffs,* | : | Adv. Proc. No.: _____ |
| v. | : | |
| | : | |
| CHI-CHI'S, INC., | : | |
| | : | |
| *Defendant.* | : | |
| | : | |

**COMPLAINT OF SYSCO CORPORATION AND THE SYGMA NETWORK, INC.
TO ENJOIN DEFENDANT DEBTOR CHI-CHI'S FROM INITIATING,
CONTINUING AND/OR PARTICIPATING IN ANY ADDITIONAL ACTIONS,
INCLUDING ARBITRATION, AGAINST SYSCO AND SYGMA
IN CONNECTION WITH THE HEPATITIS CLAIMS**

This proceeding is brought by plaintiffs Sysco Corporation ("Sysco") and the SYGMA

Network, Inc. ("SYGMA") seeking to enjoin the above-captioned debtor Chi-Chi's, Inc. ("Chi-

Chi's"), from initiating, continuing and/or participating in any additional actions, including

arbitration, against Sysco and SYGMA in connection with the Hepatitis "A" outbreak at the Chi-

chi's restaurant in the Beaver Valley Mall in Monaca, Pennsylvania.  In support of their

Complaint plaintiffs aver as follows:

**Background**

1.    On October 8, 2003 (the "Petition Date"), Chi-Chi's and certain related debtors

filed petitions for bankruptcy in the Bankruptcy Court for the District of Delaware.

2.      Shortly after the Petition Date, over 650 people in Western Pennsylvania became ill with Hepatitis A.  It was later alleged that they became ill as a consequence of eating at one of Chi-Chi's restaurants, located in the Beaver Valley Mall in Monaco, Pennsylvania.

3.      A number of these people have brought claims (the "Hepatitis Claims") against Chi-Chi's.

4.      Chi-Chi's has claimed that Sysco and SYGMA must bear, in whole or in part, the costs Chi-Chi's incurred in settling the Hepatitis Claims, because Chi-Chi's alleges Sysco and SYGMA are the vendors from whom Chi-Chi's bought the food products that allegedly caused the Hepatitis outbreak.

5.      Chi-Chi's also claims that Castellini Company, LLC. ("Castellini") is liable because Castellini allegedly supplied the food products in question to Sysco and SYGMA.

6.      Chi-Chi's has brought, and voluntarily dismissed, two court actions against Sysco and SYGMA in connection with the Hepatitis Claims.

7.      Sysco and SYGMA bring the present Complaint seeking to enjoin Chi-Chi's from initiating, continuing and/or participating in any additional actions against Sysco and SYGMA in connection with the Hepatitis Claims, including arbitration, pursuant to Federal Rule of Civil Procedure 41(a)(1), as incorporated by Rule 7041 of the Federal Rules of Bankruptcy Procedure.

**The Parties**

8.      Plaintiff Sysco is a corporation that, *inter alia*, delivers food to restaurants through its wholly owned operating affiliates.

9.      Plaintiff SYGMA is in the business of, *inter alia*, supplying and shipping produce and other foods for use in restaurants.  SYGMA is a subsidiary of defendant Sysco.

10.    Defendant Chi-Chi's is a debtor in these proceedings. Defendant Chi-Chi's was at all relevant times the owner and operator of a chain of restaurants preparing, serving, and selling food to customers, primarily for on-site consumption.

11.    On or about June 26, 2001 Chi-Chi's and Sysco entered into a Distribution Services Agreement (the "Agreement") pursuant to which Sysco supplied certain food products to Chi-Chi's, including, Chi-Chi alleges, the food products that led to the Hepatitis Claims. As provided for in the Agreement, and in its capacity as Sysco's subsidiary, SYGMA performed the obligations set forth in the Agreement.

<u>**Jurisdiction and Venue**</u>

12.    This Court has jurisdiction over this controversy pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157, in that it arises out of an adversary proceeding previously before the Court.

13.    Venue in this jurisdiction is proper under 28 U.S.C. § 1409. An actual case and controversy of a justifiable nature exists between Sysco and Chi-Chi's, involving the parties' rights and liabilities arising from the Hepatitis Claims, and such controversy may be resolved by a judgment of this Court.

14.    All persons have been made parties to this action who have or claim to have any interest in the matter in controversy.

3

**The First Dismissed Action**

15.    On July 20, 2004, Chi Chi's commenced an adversary proceeding in this Court

(the "First Dismissed Action") [Adv. Pro. No. 04-54170-CGC], against Sysco, SYGMA, and

Castellini.

16.    In the First Dismissed Action, Chi-Chi's claimed that Sysco, SYGMA and

Castellini should be responsible for amounts Chi-Chi's has been required to pay to settle the

Hepatitis Claims. See Ex. "A" (Complaint in First Dismissed Action).

17.    By Notice of Voluntary Dismissal dated November 12, 2004, Chi-Chi's

voluntarily dismissed the First Dismissed Action, purportedly without prejudice, as to Sysco and

SYGMA. See Ex. "B" (Notice of Voluntary Dismissal).

**The Second Dismissed Action**

18.    On November 16, 2004, Chi-Chi's commenced a second adversary proceeding,

also in this Court, again attempting to hold Sysco, SYGMA and Castellini responsible for any

liability arising from the Hepatitis Claims which have been brought against Chi Chi's (the

"Second Dismissed Action") [Adv. Pro. No. 04-57064]. See Ex. "C" (Complaint in Second

Dismissed Action).  The Second Dismissed Action was filed by Chi-Chi's subrogee, Empire

Indemnity Insurance Company. See Ex. "C" at n.1.

19.    By Notice of Partial Dismissal filed December 7, 2004, the Second Dismissed

Action was dismissed, purportedly without prejudice, as to defendants Sysco and SYGMA. See

Ex. "D" (Notice of Partial Dismissal).

**The Arbitration**

20.    On September 8, 2005, Chi-Chi's filed a complaint in arbitration (the

"Arbitration") against Sysco and SYGMA, again alleging that Sysco and SYGMA should be

4

held liable for all liability arising from the Hepatitis Claims which have been brought against Chi-Chi's. See Ex. "E" (Arbitration Complaint).

21.    Chi-Chi's, Sysco and SYGMA agreed that, to the extent the Arbitration is to go forward at all, Thomas B. Rutter, Esquire shall be appointed as the sole arbitrator, and that the Arbitration shall be conducted in accordance with the Commercial Arbitration Rules of the American Arbitration Association, and, to the extent applicable, the Federal Arbitration Act. See Ex. "F" (Stipulation).

22.    Chi-Chi's, Sysco and SYGMA have entered in a stipulation (the "Stipulation") that provided that the Arbitration be stayed until such time as this Court issues "any ruling which has the effect of leaving any issue to be decided by the arbitrator." See Ex. "F" (Stipulation). The Stipulation further provides that, if this Court has not ruled on any motion filed by Sysco and SYGMA in connection with this Adversary Action within ninety days, Chi-Chi's may ask Arbitrator Rutter to lift the stay and hold a preliminary hearing.

23.    The arbitration, as well as all other actions, should be enjoined because Federal Rule 41(a)(1) prohibits Chi-Chi's from bringing a third action in connection with the Hepatitis Claims.

## COUNT ONE

### Injunction

24.    The allegations contained in paragraphs 1-23 hereof are incorporated in this count by reference.

25.    The assertion of the claims by Chi-Chi's in the Arbitration constitutes a violation of Federal Rule of Civil Procedure 41(a)(1), and should be enjoined.

26.     The First Dismissed Action and the Second Dismissed Action were dismissed voluntarily and with notice pursuant to Fed. R. Civ. P. 41(a)(1).

27.     The Arbitration, and any other such action, is therefore barred by the doctrine of res judicata, because the second dismissal acted as an adjudication on the merits of the Hepatitis Claims.

28.     This Court should issue an injunction to preclude Chi-Chi's from initiating, continuing and/or participating in any additional actions against Sysco and SYGMA in connection with the Hepatitis Claims, including arbitration.

## COUNT TWO

### Declaratory Judgment

29.     The allegations contained in paragraphs 1-28 hereof are incorporated in this count by reference.

30.     Sysco and SYGMA seek a declaration that the assertion of the claims by Chi-Chi's in the Arbitration constitutes a violation of Federal Rule of Civil Procedure 41(a)(1).

31.     Sysco and SYGMA seek a declaration that by initiating, continuing and/or participating in any actions against Sysco and SYGMA in connection with the Hepatitis Claims, including the Arbitration, debtor Chi-Chi's, Inc. is in violation of Rule 41(a)(1), and any such action must be dismissed, with prejudice.

WHEREFORE, Sysco Corporation and the SYGMA Network respectfully request that this Court enter an order, a copy of which is attached hereto:

1. enjoining Chi-Chi's from initiating, continuing and/or participating in any additional actions against Sysco and SYGMA in connection with the Hepatitis Claims, including arbitration, and

2. declaring that by initiating, continuing and/or participating in any additional actions against Sysco and SYGMA in connection with the Hepatitis Claims, including arbitration, debtor Chi-Chi's, Inc. is in violation of Rule 41(a)(1), and

3. that any action filed by Chi-Chi's, Inc. in any forum in connection with the Hepatitis Claims must be dismissed, with prejudice.

Dated: September 23, 2005

COZEN O'CONNOR

By: _____

Mark E. Felger (No. 3919)
Jeffrey R. Waxman (No. 4159)
1201 North Market Street, Suite 1400
Wilmington, DE 19801
Telephone: (302) 295-2000
Facsimile: (302) 295-2013

Philip G. Kircher
Aaron Krauss
1900 Market Street
Philadelphia, PA 19103-3508
Telephone: (215) 665-4181
Facsimile: (215) 701-2381

*Attorneys for Sysco Corporation and The SYGMA Network, Inc.*

7

# EXHIBIT B

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE


IN RE:                              . Case No. 03-13063(RB)
                                    . Chapter 11
                                    .
  CHI-CHI'S, INC., et al.,          .
                                    . 824 Market Street
                                    . Wilmington, Delaware  19801
                        Debtors.  .
                                    . November 16, 2005
. . . . . . . . . . . . . . . 1:34 p.m.



TRANSCRIPT OF HEARING
BEFORE HONORABLE RANDOLPH BAXTER
UNITED STATES BANKRUPTCY COURT JUDGE



APPEARANCES:

For the Debtors:              Irell & Manella LLP
                              By:  WILLIAM N. LOBEL, ESQ.
                              840 Newport Center Drive
                              Suite 400
                              Newport Beach, CA  92660

For the Debtors:              Pachulski, Stang, Ziehl, Young,
                                Jones & Weintraub, P.C.
                              By:  RACHEL L. WERKHEISER, ESQ.
                              919 North Market Street
                              17th Floor
                              P.O. Box 8705
                              Wilmington, DE  19899

Audio Operator:               Brandon J. McCarthy

Proceedings recorded by electronic sound recording, transcript
            produced by transcription service.

---

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@optonline.net**

**(609) 586-2311  Fax No.  (609) 587-3599**

6

1  representing Sysco and Sygma.  There are --

2          THE COURT:  Let me have your name again, sir.

3          MR. KRAUSS:  Aaron, A-a-r-o-n, Krauss, Kr-a-u-s-s.

4          THE COURT:  Mr. Krauss?

5          MR. KRAUSS:  Thank you, Your Honor.  There are three

6  related matters pending before you now.  First off is a request

7  for a pretrial conference in the adversary proceeding filed by

8  Sysco and Sygma.  That I suggest to the Court is not necessary.

9  This adversary proceeding presents a pure legal issue, whether

10 Rule 41 bars Chi-Chi's from bringing a third proceeding.  The

11 Court can resolve that issue on the motion that is before the

12 Court.  There would be no need, in any event, for any discovery

13 or further proceedings in this matter.  I have consulted with

14 counsel for Chi-Chi's and they agree that further proceedings

15 after the Court rules on the motion will not be necessary.

16         THE COURT:  Very well.  To what extent have you met

17 since the filing of these papers relative to the motion to

18 enjoin the defendant, debtor Chi-Chi's, to see if you could·

19 resolve it?

20         MR. KRAUSS:  Attempts have been made.  They were,

21 unfortunately, unsuccessful.

22         THE COURT:  All right.

23         MR. KRAUSS:  I also note for the record that although

24 it is not on the list for this morning, attorneys hired by

25 Empire have filed a response to the motion.  They have also

**J&J COURT TRANSCRIBERS, INC.**

7

1  filed intervention papers.  While obviously we do not concede

2  that Empire and Chi-Chi's are different parties or have

3  different claims, to the extent another member of the bar

4  wishes to offer argument, we would have no objection to the

5  argument.

6         THE COURT:  You have no objection to the intervention

7  of Empire?

8         MR. KRAUSS:  Without -- I cannot and do not concede,

9  Your Honor, that "Empire" and "Chi-Chi's" are in this matter

10 different parties.  We're asserting different claims.  In fact,

11 that's the whole basis of the Rule 41 motion.

12        THE COURT:  There was no opposition to the motion of

13 Empire to intervene, as I recall, is that correct?

14        MR. KRAUSS:  I believe that is correct.

15        THE COURT:  Very well.  I'm going to take that one

16 first.  And who is counsel for Empire?  Good afternoon.

17        MR. CONAWAY:  Good afternoon, Your Honor.  May it

18 please the Court, Bernard Conaway on behalf of the proposed

19 intervenor.

20        THE COURT:  Mr. Conaway, I have reviewed the papers

21 submitted.  Other than what is set forth, do you have further

22 comment?

23        MR. CONAWAY:  Nothing further, Your Honor.  I think

24 as Your Honor has correctly pointed out, there is no objection.

25 None was raised or made by any other party.


**J&J COURT TRANSCRIBERS, INC.**

8

1        THE COURT:  That motion is granted.

2        MR. CONAWAY:  Thank you.

3        THE COURT:  You may submit the entry.

4        MR. CONAWAY:  Thank you, Your Honor.

5        THE COURT:  Next, Mr. Krauss, this is the motion of

6   the plaintiff Sysco and Sygma Network to enjoin defendants from

7   specified activities.  You've indicated that the parties have

8   unsuccessfully sought to resolve this matter, and we are at

9   this point for a presentment of arguments by counsel.  I have

10  reviewed the papers submitted, so the extent you wish to

11  highlight any aspects of your presentment, feel free to do so.

12  You may proceed.

13       MR. KRAUSS:  Thank you, Your Honor.  Rule 41 has

14  three requirements:  that there be two prior dismissals, both

15  of which be by notice, that the dismissals be by the same

16  plaintiff, and that the dismissals either involve or include

17  the same claim.

18       To take these requirements slightly out of order, I

19  don't believe there is any dispute that there were two prior

20  dismissals by notice.  The first dismissal by notice was filed

21  on November 12th in 1994.  Four days later a complaint was

22  re-filed in this very court.  That was dismissed again by

23  notice as to Sysco and Sygma on December 7th.  So I believe

24  that requirement is clearly met.

25       As to whether or not these two lawsuits are or

# EXHIBIT C

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

In Re:

CHI-CHI'S, INC., *et al.*

Debtors.

In Proceedings Under Chapter 11

Case No.: 03-13063

---

SYSCO CORPORATION and
THE SYGMA NETWORK, INC.,

Plaintiffs,

v.

CHI-CHI'S, INC.,

Defendant.

Adv. Proc. No. 05-52726

JUDGE RANDOLPH BAXTER

## MEMORANDUM OF OPINION AND ORDER

Before the Court is the complaint of Sysco Corporation and the SYGMA Network (collectively, "Sysco") seeking to enjoin the Debtor Chi-Chi's Inc. ("Chi-Chi's") from initiating, continuing, and/or participating in any additional actions, including arbitration, against them in connection with certain hepatitis claims.

The Court acquires core matter jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157(a), (b) and 1334(b). Upon an examination of the parties' respective briefs and supporting documentation, and after conducting a trial on the matter, the following findings of fact and conclusions of law are hereby rendered:

\*

1.    **Factual History**

The present action arises out of a November 2003 outbreak of Hepatitis A illnesses attributed to the consumption of certain contaminated green onions at a Chi-Chi's restaurant in Monaca, Pennsylvania. The outbreak caused at least four deaths, and at least 650 illnesses. Chi-Chi's alleges that Sysco was the supplier of the contaminated onions. Sysco, in turn, allegedly obtained the onions from Castellini Company, LLC ("Castellini").

Bodily injury claimants have filed several hundred claims and/or complaints against Chi-Chi's (collectively, the "Hepatitis Claims"). To date, Chi-Chi's, through its own funds and those of its liability insurers, has paid approximately $31,000,000 in damages. Empire Indemnity Insurance Company ("Empire"), one of Chi-Chi's liability insurers, has paid, or will pay out, some $10,000,000 ("Empire costs").[1] Chi-Chi's also alleges that it has suffered its own damages of more than $30,000,000, including lost profits, property damage, self-insurance costs, indemnification, and other outbreak related costs (collectively, "lost profits damages").

2.    **Procedural History**

    a.    **Chi-Chi's Action**

In July 2004, Chi-Chi's filed an adversary proceeding in this Court against Sysco and Castellini (the "Chi-Chi's Action"). Castellini informed Chi-Chi's of its intention to demand a jury trial and to seek withdrawal of the District Court's reference. Chi-Chi's also asserts that Sysco indicated a desire to submit the matter to arbitration, pursuant to the Distribution Service Agreement executed by the parties. For these reasons, on November 12, 2004, Chi-Chi's filed 1) a stipulation of dismissal as to defendant Castellini, so that Chi-Chi's could initiate an action against Castellini in the United States District Court for the Central District of California

---

[1] Empire Response, at 2.

2

("California District Court"), and 2) a notice of dismissal as to defendants Sysco and SYGMA, allegedly upon Sysco's suggestion that they would pursue resolution of the dispute through arbitration.

On November 22, 2004, Chi-Chi's filed a complaint in the Central District of California against Castellini. On June 1, 2005, the California District Court abstained from hearing the matter pursuant to 28 U.S.C. § 1334(c)(1). On June 6, 2005, Chi-Chi's refiled its complaint against Castellini in the United States District Court for the Western District of Pennsylvania ("Pennsylvania District Court") as a third-party complaint in a bodily injury case filed against Chi-Chi's.[2] On October 7, 2005, the Pennsylvania District Court, citing the first filed rule, granted Castellini's motion to dismiss Chi-Chi's third party complaint in favor of the action currently pending in this Court prosecuted by Empire against Castellini (see below).

On September 8, 2005, Chi-Chi's filed an arbitration claim against Sysco with ADR Options in Philadelphia, Pennsylvania.

    b.    **Empire Action**

On November 16, 2004, Empire filed, as a real party in interest, its own adversary action in this Court (the "Empire Action"). Empire, naming Chi-Chi's as the plaintiff in the adversary action, noted that the complaint was filed by Empire, as subrogee of Chi-Chi's.[3] The complaint was brought by Empire's own litigation counsel. The complaint in the Empire Action is nearly word-for-word identical to the complaint in the Chi-Chi's Action.

Similar to the Chi-Chi's Action, Sysco also allegedly indicated to Empire that it would

---

[2] *Funkhouser v. Chi-Chi's*, 05-cv-00638, (W.D. Pa.) (McVerry, J.).

[3] Empire Complaint, at 1 n.1.

3

seek to invoke the mandatory arbitration provision contained in the Distribution Service Agreement. Accordingly, on December 7, 2004, Empire filed a notice of dismissal of its complaint, without prejudice, as to Sysco and SYGMA. Empire's complaint alleging claims against Castellini remains pending at this time.

**

The Court must determine whether FED. R. CIV. P. 41(a)(1) bars Chi-Chi's from bringing an arbitration claim and/or other proceedings against Sysco. Under the two dismissal rule, "if the plaintiff invokes Rule 41(a)(1) a second time for an 'action based on or including the same claim,' the action must be dismissed with prejudice." *Radogna v. Ashland, Inc.*, 2005 WL 736599, *1 n.2 (E.D. Pa. 2005) (citing *Cooter & Gell v. Hartmax Corp.*, 496 U.S. 384, 394 (1990)). The Court must determine whether Chi-Chi's is barred by Federal Rule of Civil Procedure 41(a)(1) from pursuing arbitration, as well as all other actions. Rule 41 states, in relevant part:

> (a) Voluntary Dismissal: Effect Thereof.
>
> (1) By Plaintiff; by Stipulation. . . . Unless otherwise stated in the notice of dismissal or stipulation, the dismissal is without prejudice, except that a notice of dismissal operates as an adjudication upon the merits when filed by a plaintiff who has once dismissed in any court of the United States or of any state an action based on or including the same claim.

FED. R. CIV. P. 41(a)(1).

Because it operates as an adjudication on the merits, the two dismissal rule has been strictly construed. *E.g., Manze v. State Farm Ins. Co.*, 817 F.2d 1062, 1066 (3d Cir. 1987) ("several other courts of appeals have strictly interpreted Rule 41(a)(1)"); *Janssen v. Harris*, 321 F.3d 998, 1001 (10th Cir. 2003); *Sutton Place Development Co. v. Abacus Mortg. Inv. Co.*, 826

4

F.2d 637, 640 (7th Cir. 1987) ("We should be especially careful not to extend the scope of such a narrow exception when the purpose for the exception would not be served."); *Seippel v. Jenkins & Gilchrist, P.C.*, 2004 WL 2809205, *1 (S.D.N.Y. 2004); *Muzikowski v. Paramount Pictures Corp.*, 2003 WL 22872117, *3 (N.D. Ill. 2003); *Kuhn v. Williamson*, 122 F.R.D. 192, 195 (E.D.N.C. 1988) ("Since the two dismissal rule is in derogation of previously existing right and thus is to be strictly construed . . .").

Sysco argues that arbitration, as well as all other actions against Sysco, should be enjoined because the two dismissal rule prohibits Chi-Chi's from bringing a third action in connection with the Hepatitis Claims. Sysco argues that two dismissals have already occurred: 1) the Chi-Chi's Action, which was dismissed by notice as to Sysco and SYGMA on November 12, 2004, and 2) the Empire Action, which was also dismissed by notice as to Sysco and SYGMA on December 7, 2004. Therefore, pursuant to Rule 41(a)(1), the Empire Action would serve as an adjudication on the merits, and Chi-Chi's should be enjoined from pursuing arbitration at this stage.

As the party seeking to invoke Rule 41(a)(1), Sysco bears the burden of proving the applicability of the two dismissal rule by a preponderance of the evidence. *Marques v. Federal Reserve Bank of Chicago*, 286 F.3d 1014, 1017 (7th Cir. 2002) (placing the burden under Rule 41(a)(1) on the defendant, "since it is the defendant that is asserting the right to prevent the plaintiff from dismissing the suit.").

***

Initially, Sysco asserts that if applicable, this Court has the authority to enjoin arbitration proceedings in order to enforce Rule 41(a)(1). This assertion is not disputed by Chi-Chi's, since

Chi-Chi's believes that Rule 41(a)(1) is inapplicable. Sysco argues that pursuant to Rule 41(a)(1), the dismissal of the Empire Action in this Court would operate as an adjudication on the merits of Chi-Chi's complaint. In the event that this Court determines that Rule 41(a)(1) would apply in this manner, this Court would have the power to enjoin arbitration in order to protect its prior judgment. *See John Hancock Mut. Life Ins. Co. v. Olick*, 151 F.3d 132, 138 (3d Cir. 1998) ("[A] realistic concern for the finality and integrity of judgments would arise if parties were free to ignore federal court decisions that have conclusively settled claims or issues now sought to be arbitrated. . . . When a federal court is presented with the contention that a prior federal judgment determined issues now sought to be relitigated in an arbitral forum it must first determine the effect of the judgment." ); *In re American Honda Motor Co., Inc., Dealerships Relations Litigation*, 315 F.3d 417, 443 (4th Cir. 2003).

****

The express language of Rule 41(a)(1) requires that the second action be filed by a "plaintiff who has once dismissed." The Court must determine whether the Chi-Chi's Action and the Empire Action were filed by the same real party in interest.

The complaints in both actions are captioned with Chi-Chi's as the named plaintiff. The fact that the same plaintiff is named in the case caption, however, is not sufficient, alone, to invoke the two dismissal rule. The Empire complaint states that it was filed by Empire, as subrogee of the Debtor.[4] At oral argument the Court noted, and counsel for Sysco acknowledged, that it is not uncommon for a subrogated action by an insurer to be captioned in the name of the

---

[4] Empire Complaint, at 1 n.1.

insured.[5] *Michigan Alkali Co. v. Bankers Indemnity Ins. Co.*, 103 F.2d 345, 348 (2d Cir. 1939) ("Even when a suit is for the benefit of an insurer, it may be brought in the insured's name.); *see also Link Aviation, Inc. v. Downs*, 325 F.2d 613, 615 (D.C. Cir. 1963) ("We are of like opinion, that is to say that though brought in the name of the insureds, this suit was not a nullity, since, as we hold, it was brought for the use of the real parties in interest."); *In re Profile Systems, Inc.*, 1996 WL 26258, *6 n.2 (Bankr. D. Minn. 1996) ("[S]ubrogation claims are generally brought in the name of the insured rather than the insurer so that the controversy appears as a dispute between the insured and third parties. When, such as in this case, an insurer has paid only part of the loss and the insured continues to have a beneficial interest in the cause of action, such a practice can be further justified.").

Similarly, "the two-dismissal rule should not be defeated by a change in the nominal parties, without a change in the real party in interest." *Poloron Prods. Inc. v. Lybrand Ross Bros. & Montgomery*, 66 F.R.D. 610, 614 (S.D.N.Y. 1975) (hereinafter "*Poloron I*"), *rev'd on other grounds*, 534 F.2d 1012 (2d Cir. 1975)) (hereinafter "*Poloron II*"). In *Poloron I*, the district court found that three separate actions, although involving nominally different plaintiffs, were filed by the same real party in interest, and therefore the two dismissal rule could be applied.[6]

Therefore, the Court must determine whether the Chi-Chi's Action and the Empire Action were brought by the same real parties in interest. It is clear in this case, however, that

---

[5] Transcript of November 16, 2005 Hearing, at 10.

[6] *Poloron I* was reversed by the Second Circuit in *Poloron II* on the basis that a stipulated dismissal did not operate as a first "strike" under the two dismissal rule. *Poloron II*, 534 F.2d at 1017-18. In this case, both actions were dismissed by notice as to Sysco and SYGMA.

7

Empire and Chi-Chi's are separate real parties as required by the two dismissal rule. Empire seeks to assert its own rights, as subrogee. It is well settled that where there is partial subrogation, both the insured and the insurer are real parties in interest. *Virginia Elec. & Power Co. v. Westinghouse Elec. Corp.*, 485 F.2d 78, 84 (4th Cir. 1973) (citing *United States v. Aetna Casualty & Surety Co.*, 338 U.S. 366, 381-82 (1949)) ("Where there is partial subrogation, there are two real parties in interest under Rule 17."); *Gannett v. Pettegrow*, 224 F.R.D. 293, 294 (D. Me. 2004) (citing *State Farm Mut. Liab. Ins. Co. v. United States*, 172 F.2d 737, 739 (1st Cir.1949)); *Hancotte v Sears, Roebuck & Co.*, 93 F.R.D. 845, 846 (E.D. Pa. 1982) ("It is settled law that an insurer, whether it has paid all of the loss or only part of the loss, is a real party in interest under Rule 17(a)."); *St. Paul Fire & Marine Ins. Co. v. Peoples Natural Gas Co.*, 166 F. Supp. 11, 12 (W.D. Pa. 1958) ("a partial subrogee may maintain an action in a federal court alone without joining other real parties in interest, i.e., the indemnitee and other subrogees."). Further, there has been no allegation that Empire is in privity with Chi-Chi's, or that Chi-Chi's assigned its rights to Empire.

At oral argument, Sysco argued that an insured may have the right to pursue the entire claim, citing *Catalfano v. Higgins*, 188 A.2d 357 (Del. 1962).[7] This proposition, while uncontroversial, is misguided. The fact that Chi-Chi's *may* have been able to pursue the entire claim, does not mean that Chi-Chi's *did*, in fact, pursue the entire claim. *E.g., Virginia Elec. & Power Co. v. Westinghouse Elec. Corp.*, 485 F.2d 78, 84 (4th Cir. 1973) ("Either party may bring suit-the insurer-subrogee to the extent it has reimbursed the subrogor, or the subrogor for either the entire loss or only its unreimbursed loss."). The two dismissal rule does not operate as an

---

[7] Transcript of November 16, 2005 Hearing, at 9.

8

adjudication on the merits for any claims that Chi-Chi's could have brought, but operates only on causes of action which were actually pursued by Chi-Chi's. Accordingly, it is hereby determined that the Chi-Chi's and Empire Actions were not filed by the same plaintiff. Thusly, the two dismissal rule is inapplicable.

*****

Because the two actions were not brought by the same plaintiffs, it is unnecessary to make a determination on whether the other requirements of the two dismissal rule have been met. As determined above, it is an unsupported contention that the Chi-Chi's Action and the Empire Action involve the same claims. It is true that the Chi-Chi's complaint and the Empire complaint arise from the same underlying facts, the hepatitis outbreak. Chi-Chi's, however, seeks recovery for lost profits, and other amounts paid in connection with the hepatitis claims. Empire seeks only to recover part or all of the $10,000,000 that it paid as Chi-Chi's insurer. Empire cannot, and does not, seek to recover for Chi-Chi's lost profits, and brings its own, distinct causes of action. *See Jackson Nat. Life Ins. Co. v. Greycliff Partners, Ltd.*, 226 B.R. 407, 417 (E.D. Wis. 1998) ("The argument is meritless because the two Delaware actions do not involve the same claims. . . . Thus, the actions were brought by legally-distinct plaintiffs asserting two completely different sets of legal rights."). The fact that Empire chose to use language in its complaint that is quite similar to Chi-Chi's complaint is insufficient, alone, to place the actions within the scope of the two dismissal rule.

Second, even though both dismissals were accomplished by notice as to Sysco, courts have declined to apply the two dismissal rule under similar circumstances. Chi-Chi's alleges that its complaint was allegedly dismissed due to Chi-Chi's belief that Sysco would seek arbitration.

9

As stated by the District of Puerto Rico in *Island Stevedoring*:

> Even were we to find that the second dismissal was voluntary or by notice as
> required by the language of Rule 41(a)(1), we would still find the two dismissal
> rule inapplicable. A second dismissal as contemplated by this provision preceded
> by a dismissal by stipulation knowingly consented to by all the parties does not
> trigger the two dismissal rule. The rationale for this exception stems from the
> underlying policy of the rule. The primary purpose of the "two dismissal" rule is
> to prevent an unreasonable use of the plaintiff's unilateral right to dismiss an
> action prior to the filing of defendant's responsive pleading. However, the danger
> of abuse of this right lessens when the original dismissal stems from mutual
> agreement.
>
> While the parties did not file a formal stipulation, the record in the case clearly
> indicates that the first dismissal resulted from negotiations and a consent
> agreement among the parties. BORDELON, however, by insisting on a formal
> stipulation, asks this court to swear allegiance to the language of Rule 41(a)(1) at
> the expense of its underlying policy. This we refuse to do.
>
> . . . Consequently, we find that the first dismissal was in essence, if not in form, by
> stipulation. The two dismissal rule, therefore, does not apply.

*Island Stevedoring, Inc. v. Barge CCBI*, 129 F.R.D. 430, 432 (D. P.R. 1990); *TCW Special
Credits v. FISHING VESSEL CHLOE Z*, 2000 WL 1277922, *2 (9th Cir. 2000) (holding that
although a prior dismissal "was not formally 'stipulated,' it was not unilateral as all parties tacitly
agreed to the dismissal in favor of litigating the action" elsewhere, and that there was "no
evidence that the filings and dismissals were part of a strategy to harass" the defendant);
*Ater ex rel. Ater v. Follrod*, 238 F. Supp. 2d 928, 953-54 (S.D. Ohio 2002) (finding that
application of the two dismissal rule was not warranted because the "dismissals were not
completely unilateral, and there is no evidence in the record that Plaintiffs acted with the intent of
harassing Defendants.").

* * * * * *

Further, the purpose of the two dismissal rule would not be served if applied in this

10

instance. "The purpose of the 'two dismissal' rule, 'pointed out in numerous decisions, is to prevent unreasonable abuse and harassment,' 'by plaintiff securing numerous dismissals without prejudice.'" *E.g., Sutton Place Development Co. v. Abacus Mortg. Inv. Co.*, 826 F.2d 637, 640 (7th Cir. 1987) (citations omitted); *ASX Inv. Corp. v. Newton*, 183 F.3d 1265, 1268 (11th Cir. 1999) (citing *Poloron II*, 534 F.2d at 1017) ("[T]he primary purpose of the 'two dismissal' rule is to prevent an unreasonable use of the plaintiff's unilateral right to dismiss an action prior to the filing of the defendant's responsive pleading."); *American Cyanamid Co. v. McGhee*, 317 F.2d 295, 297-98 (5th Cir. 1963); *Western Group Nurseries, Inc. v. Ergas*, 211 F.Supp.2d 1362, 1370 (S.D. Fla. 2002) ("The purpose of the two dismissal rule is to prevent duplicative, wasteful and harassing litigation."). There has been no allegation or indication from the record that Chi-Chi's actions have been taken in bad faith to harass Sysco, or to otherwise abuse the judicial system. The record does not reflect whether Sysco filed a responsive pleading in any of the subject proceedings. While the two dismissal rule exists to protect Sysco from harassment, it would not be served by penalizing Chi-Chi's for the unilateral decisions of Empire to bring an action against Sysco and Castellini, inserting Chi-Chi's as the nominal plaintiff, and incorporating the language of the complaint in the Chi-Chi's Action. Empire is represented by separate counsel, which has acted to protect its own interests without the consultation or collaboration of Chi-Chi's. Instead, application of the two dismissal rule would serve to operate as an adjudication on the merits of Chi-Chi's claim, leaving Chi-Chi's without its first opportunity to litigate its claims. *See Poloron II*, 534 F.2d at 1017 ("Where the purpose behind the 'two dismissal' exception would not appear to be served by its literal application, and where that application's effect would be to close the courthouse doors to an otherwise proper litigant, a court should be most careful

11

not to construe or apply the exception too broadly.").

Sysco also notes that Chi-Chi's arguments would allow Sysco to be sued by Chi-Chi's, and then individually by each of Chi-Chi's insurers and creditors. Other protections, however, exist to protect Sysco against this hypothetical scenario. Sysco's arguments may have been more persuasive in a motion seeking to join Empire or Chi-Chi's as a necessary party. *Arkwright-Boston Mfrs. Mut. Ins. Co. v. City of New York*, 762 F.2d 205, 209 (2d Cir.1985) ("In a subrogation case the insurer and the insured are 'necessary' parties, but clearly they are not indispensable parties."); *St. Paul Fire & Marine Ins. Co. v. Peoples Natural Gas Co.*, 166 F. Supp. 11, 12 (W.D. Pa. 1958) (citing *Yorkshire Ins. Co. v. United States*, 171 F.2d 374 (3d Cir. 1948)) ("the defendant is protected from a multiplicity of suits by its opportunity under the rules to join the necessary parties."). Neither Sysco nor Castellini filed motions seeking to join Empire or Chi-Chi's as necessary parties in either action. Accordingly, Sysco cannot now attempt to utilize Rule 41(a)(1) to extinguish Chi-Chi's ability to litigate its claims.

*******

Sysco also cites language contained in the order of the Pennsylvania District Court, which states that

> In addition to both claims being brought solely in the name of Chi-Chi's, Inc., both assert the "same rights" through the same six contractually based theories of recovery, both assert the "same facts" and claim the same harm, and both demand the same "relief" from Castellini. The Court, therefore, concludes that pursuant to the first filed rule, the Third-Party Complaint filed against Castellini in this Court should be dismissed.

*Funkhouser v. Chi-Chi's Inc.*, 2005 WL 2545300, at *2 (W.D. Pa. 2005) (citations omitted). Initially, it should be noted that the Pennsylvania District Court found only that under the first filed rule, the suits were both brought solely in the name of Chi-Chi's. It did not make a

12

determination as to the real party in interest in each action, as required by the two dismissal rule. The findings of the Pennsylvania District Court, moreover, were made under different procedural circumstances, and are not necessarily binding in this matter. Further, the preclusive effect of the Pennsylvania District Court's findings may be defeated where the difference in legal standards applied are significantly different. *E.g., Raytech Corp. v. White*, 54 F.3d 187, 191 (3d Cir. 1995) ("To defeat a finding of identity of the issues for preclusion purposes, the difference in the applicable legal standards must be 'substantial.'"); *Peterson v. Clark Leasing Corp.*, 451 F.2d 1291 (9th Cir. 1971) ("Issues not identical [for collateral estoppel purposes] if the second action involves application of a different legal standard, even though the factual setting of both suits be the same.").

"The first-filed rule is a judicial construct aimed at conserving judicial resources and safeguarding litigants by preventing concurrent duplicative litigation of the same issues between the same parties in more than one federal court." *APV North America, Inc. v. Sig Simonazzi North America, Inc.*, 295 F. Supp. 2d 393, 396 (D. Del. 2002). As stated by the Pennsylvania District Court, the "first-filed rule has been employed by the courts in the Third Circuit to enjoin, where appropriate, 'the subsequent prosecution of 'similar cases . . . in different federal district courts.'" *Funkhouser*, 2005 WL 2545300 at *1 (quoting *EEOC v. University of Pennsylvania*, 850 F.2d 969, 971 (3d Cir. 1988)); *Hay Acquisition Co., I, Inc. v. Schneider*, 2005 WL 1017804, *12 (E.D. Pa. 2005); *see also Ellenby Technologies, Inc. v. AT Systems Inc.*, 2002 WL 356686, *2 (D. Del. 2002) (the first filed rule applies "where two federal courts have concurrent jurisdiction over sufficiently similar issues and parties."). "The decision to invoke the first-filed rule is an equitable determination that is made on a case-by-case, discretionary basis." *Nutrition*

13

*& Fitness, Inc. v. Blue Stuff, Inc.*, 264 F.Supp.2d 357, 360 (W.D. N.C. 2003). The Pennsylvania

District Court made a determination based on considerations of judicial economy and

convenience that the plaintiffs in the actions were sufficiently similar to invoke the first-filed

rule. Accordingly, Chi-Chi's third party complaint was dismissed in favor of the Empire Action

being prosecuted in this Court against Castellini.

  The legal standards applied under the first-filed rule are significantly different from the

requirements under Rule 41(a)(1). As noted above, because it operates as an adjudication on the

merits, the two dismissal rule is a statutory rule that has been strictly construed. Adherence to

the statutory language of Rule 41(a)(1) overrides a doctrine judicially created for reasons of

convenience and economy. *See Applied Concepts, Inc. v. Olympia Indus., Inc.*, 15 Fed. Appx.

793, 799 (Fed. Cir. 2001) ("Moreover, the judicially created doctrine of claim differentiation

cannot override the statutory requirements of § 112 . . . ."); *Coohey v. U.S.*, 172 F.3d 1060, 1063

(8th Cir. 1999) ("These provisions override and displace judicially-created doctrines in cases

where the statutory provisions apply."). The Pennsylvania District Court's findings should not

be given preclusive effect in this proceeding, where the policy of the two dismissal rule would

not be served, and the narrow requirements of Rule 41(a)(1) are not present. *See Bath Iron*

*Works Corp. v. Director, Office of Workers' Compensation Programs, U.S. Department of*

*Labor*, 125 F.3d 18, 22 (1st Cir. 1997) ("Certainly a difference in the legal standards pertaining

to two proceedings may defeat the use of collateral estoppel. . . . But this is so only where the

difference undermines the rationale of the doctrine."); *Copeland v. Merrill Lynch & Co., Inc.*, 47

F.3d 1415, 1422 (5th Cir. 1995) (citing *Brister v. A.W.I., Inc.*, 946 F.2d 350, 354 & n. 1 (5th Cir.

1991)) ("[E]ven when issues are stated in 'nearly identical language,' collateral estoppel is

14

unavailable when there are disparate policies underlying each inquiry which result in definite differences in application and result."); *City of Cleveland v. Cleveland Elec. Illuminating Co.*, 538 F. Supp. 1227, 1231 n.3 (N.D. Ohio 1980) ("Where, as here, the legal standards of two statutes are significantly different, the decision of issues under one statute does not give rise to collateral estoppel in the litigation of similar issues under a different statute.").

*********

Sysco has not met its burden of showing that Rule 41(a)(1) should be applied to bar Chi-Chi's arbitration claim, since this case involves separate real parties in interest, represented by separate counsel, prosecuting distinct causes of action. Accordingly, judgment is hereby rendered in favor of Debtor-Defendant Chi-Chi's, and the complaint is hereby DISMISSED. Each party is to bear its respective costs.

**IT IS SO ORDERED.**

Dated, this ___ day of
January, 2006

JUDGE RANDOLPH BAXTER
**UNITED STATES BANKRUPTCY COURT**

# EXHIBIT D

# Commercial Lines Policy

EMPIRE INDEMNITY INSURANCE COMPANY

Oklahoma City, Oklahoma

Executive Office: 13810 FNB Parkway, PO Box 542003 · Omaha, Nebraska 68154-8003

THIS POLICY CONSISTS OF:
- DECLARATIONS
- COMMON POLICY CONDITIONS
- ONE OR MORE COVERAGE PARTS

A COVERAGE PART CONSISTS OF:
- ONE OR MORE COVERAGE FORMS
- APPLICABLE FORMS AND ENDORSEMENTS



EMPIRE
INDEMNITY INSURANCE COMPANY

*A member of the* Ⓩ *Zurich Financial Services Group*

A STOCK COMPANY

EM 35 88 (06-02)

CHI06535

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

POLICY CHANGE ENDORSEMENT

This endorsement modifies insurance under the following:

UMBRELLA POLICY
OTHER LIABILITY POLICY

With respect to coverage provided by this endorsement, the provisions of the coverage form apply unless modified by this endorsement.

| Endorsement Effective Date 07/01/03 | Policy No. XS20011B - End. #2 |
|---|---|
| Named Insured Prandium, Inc. | Countersigned by |
| | (Authorized Representative) |

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated above.

Changes

☐ Additional Premium    $
☐ Return Premium        $
☒ Non-Premium           $

            Total    $

Endorsement for the following reason:

☐ Audit                    ☐ Named Insured Change
☐ Mid-term change          ☐ Address
☐ Limits change            ☐ Inception date change
☒ Expiration date change   ☐ Coverage cancelled
                              ☐ Short Rate
                              ☐ Pro Rate
                              ☐ Minimum Premium Applies

☒ Is amended to read as follows:

07/01/04

EM 43 52 (09-02)                                    Page 1 of 1

CHI06536

Empire Fire and Marine Insurance Company • Empire Indemnity Insurance Company
Executive Offices: 13810 FNB Parkway, P.O. Box 542003 • Omaha, NE 68154-8003

☐ Empire Fire and Marine
☒ Empire Indemnity

## FOLLOWING FORM EXCESS LIABILITY POLICY DECLARATIONS

Renewal of Number: _____      Policy No.: __XS200118___
Producer
  Westrope & Associates
  801 W. 47th St., Suite 500
  Kansas City, MO 64112

Item 1.
Named Insured
  Prandium, Inc.

Item 2.
Mailing Address
  c/o Debbie Nichols
  2701 Alton Parkway
  Irvine, CA 92606

Item 3.
Policy Period:      From:  07/01/03        To:  07/01/03
                    At 12:01 A.M. Standard Time at the address of the Named Insured

Item 4. Limit of Insurance:
        A. Occurrence                    $10,000,000
        B. Aggregate                     $10,000,000

Item 5. Premium:
        Terrorism Premium               $N/A

        Advance Premium                 $35,000
        Policy Minimum Earned Premium   $8,750

Item 6. Underlying Insurance:

A. Controlling Underlying Policy:

  Insurance Company:  Scottsdale

  Policy Number: On File

  Policy Period:   From: 07/01/03      To: 07/01/04

  Limits of Insurance:  $10,000,000      Occurrence
                        $10,000,000      Aggregate

EM 43 73 (02-03)

Page 1 of 2

CHI06537

B. Total Limits of All Underlying Insurance, Including The Controlling Underlying Policy Which
   This Policy Applies Excess Of:

   Limits of Insurance:   $11,000,000     Occurrence
                          $12,000,000     Aggregate

Item 7.
Forms and Endorsements applying to this coverage part and made a part of this policy at the time of
issuance.
   See Endorsement #1


Issue Date:     07/23/03                Countersigned by: _____

CHI06538

# FOLLOWING FORM EXCESS LIABILITY POLICY

There are provisions in this policy that restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such in the Controlling Underlying Policy, but only to the extent and within the scope for which such "insureds" qualify for coverage in the Controlling Underlying Policy.

In consideration of the payment of the premium and in reliance upon the statements in the Declarations and in accordance with the provisions of this policy we agree with you to provide coverage as follows:

## INSURING AGREEMENTS

### SECTION I. COVERAGE

A.  We will pay on behalf of the insured the sums in excess of the total Controlling Underlying Policy of Insurance shown in Item 6. A. of the Declarations that the insured becomes legally obligated to pay as damages.

B.  This insurance applies only to damages covered by the Controlling Underlying Policy as shown in Item 6. A. of the Declarations. Except as otherwise provided by this policy, the coverage follows the definitions, terms, conditions, limitations, and exclusions of the Controlling Underlying Policy in effect at the inception of this policy.

C.  The amount we will pay for damages is limited as described in SECTION II. LIMITS OF INSURANCE.

### SECTION II. LIMITS OF INSURANCE

A.  The Limits of Insurance shown in the Declarations and the rules below describe the most we will pay regardless of the number of:

   1.  Insured's;

   2.  Claims made or suits brought; or

   3.  Persons or organizations making claims or bringing suits.

B.  The Limits of Insurance of this policy will apply as follows:

   1.  This policy applies only in excess of the Controlling Underlying Policy shown in Item 6. A. of the Declarations.

   2.  The Occurrence Limit stated in Item 4. A. of the Declarations is the most we will pay for all damages arising out of any one occurrence to which this policy applies.

   3.  The Aggregate Limit stated in Item 4.B. of the Declarations is the most we will pay for all damages. The Aggregate Limit applies separately and in the same manner as the aggregate limits provided by the Controlling Underlying Policy.

   4.  Subject to Paragraphs B. 2., and B. 3., above, if the underlying Limits of Insurance stated in Item 6. of the Declarations are reduced or exhausted solely by payment of damages to which this policy applies, such insurance provided by this policy will apply in excess of the reduced Underlying Limits or, if all Underlying Limits are exhausted, will apply as underlying insurance subject to the same terms, conditions, definitions and exclusions of the Controlling Underlying Policy, except for the terms, conditions, definitions and exclusions of this policy.

   5.  The Limits of Insurance of this policy apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional

CHI06540

period of less than 12 months. In that case, the additional period will be deemed part of the preceding period for purposes of determining the Limits of Insurance.

## SECTION III. DEFENSE

A. We will not be required to assume charge of the investigation of any claim or defense of any suit against you.

B. We will have the right, but not the duty, to be associated with you or your underlying insurer or both in the investigation of any claim or defense of any suit which in our opinion may create liability on us for payment under this policy.

C. If all Underlying Limits of Insurance stated in Item 6. of the Declarations are exhausted solely by payment of damages, we shall have the right but not the duty to investigate and settle any claim or assume the defense of any suit which in our opinion may give rise to a payment under this policy. We may, however, withdraw from the defense of such suit and tender the continued defense to you if our applicable Limits of Insurance stated in Item 4. of the Declarations are exhausted by payment of damages.

If we exercise our rights under Paragraphs B. or C. above, we will do so at our own expense, and any such expense payments will not reduce the Limits of Insurance provided by this policy.

## SECTION IV. EXCLUSIONS

This policy does not apply to any liability, damage, loss, cost or expense:

### ASBESTOS

A. Arising out of;

1. The mining, processing, manufacturing, use, testing, ownership, sale or removal of asbestos, asbestos fibers or materials containing asbestos;

2. Exposure to asbestos, asbestos fibers, or material containing asbestos; or

3. Any error or omission in supervision, instructions, recommendations, notices, warnings or advice given, or which should have been given, in connection with asbestos fibers or material containing asbestos.

### POLLUTION

B. 1. Arising directly or indirectly out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

This exclusion does not apply to bodily injury or property damage arising out of heat, smoke or fumes from a "hostile fire" unless that "hostile fire" occurred or originated:

a. At any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste; or

b. At any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to, or assess the effects of, "pollutants".

2. Arising out of any:

a. Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

b. Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "pollutants".

CHI06541

As used in this exclusion:

1. A "hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

2. "Pollutants" means any solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acid, alkalis, chemicals and waste. Waste includes material to be recycled, reconditioned or reclaimed.

NUCLEAR

C. 1. With respect to which any insured under this policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic, Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its Limits of Insurance; or

2. Resulting from the "hazardous properties" of "nuclear material" and with respect to which:

    a. A person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof; or

    b. Any insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization; or

3. Any injury or "nuclear property damage" resulting from the "hazardous properties" of "nuclear material", if:

    a. The "nuclear material":

        (i) Is at any "nuclear facility" owned by, or operated by or on behalf of, any insured; or

        (ii) Has been discharged or dispersed therefrom;

    b. The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of any insured; or

    c. The injury or "nuclear property damage" arises out of the furnishing by any insured of services, materials, parts or equipment in connection with the planning, construction, maintenance operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this subparagraph c. applies only to "nuclear property damage" to such "nuclear facility" and any property thereat.

As used in this exclusion:

1. "Hazardous properties" include radioactive, toxic or explosive properties.

2. "Nuclear Facility" means:

    a. Any "nuclear reactor";

    b. Any equipment or device designed or used for:

        (i) Separating the isotopes of uranium or plutonium,

        (ii) Processing or utilizing "spent fuel", or

        (iii) Handling, processing or packaging "waste";

    c. Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235; or

EM 43 50 (10-02)

Page 3 of 6

CHI06542

    d. Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste", and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

3. "Nuclear material" means "source material", "special nuclear material" or "by-product material";

4. "Nuclear property damage" includes all forms of radioactive contamination of property;

5. "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

6. "Source material", "special nuclear material" and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

7. "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

8. "Waste" means any waste material;

    a. Containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and

    b. Resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

## SECTION V. CONDITIONS

### A. Appeals

In the event you or any underlying insurer elects not to appeal a judgment in excess of the amount of the Underlying Insurance, we may elect to appeal at our expense. If we do so elect, we will be liable for the costs and additional interest accruing during this appeal. In no event will this provision increase our liability beyond the applicable Limits of Insurance described in **SECTION II.** of this policy.

### B. Bankruptcy or Insolvency

The bankruptcy, insolvency or inability to pay of any insured will not relieve us from our obligation to pay damages covered by this policy.

In the event of bankruptcy, insolvency or refusal or inability to pay, of any underlying insurer, the insurance afforded by this policy will not replace such underlying insurance, but will apply as if all the limits of any underlying insurance is fully available and collectible.

### C. Cancellation

1. You may cancel this policy. You must mail or deliver advance written notice to us stating when the cancellation is to take effect.

2. We may cancel this policy. If we cancel because of non-payment of premium, we will mail or deliver to you not less than ten (10) days advance written notice when the cancellation is to take effect. If we cancel for any other reason, we will mail or deliver to you not less than thirty (30) days advance written notice stating when the cancellation is to take effect. Mailing notice to you at your mailing address shown in Item 2. of the Declarations will be sufficient to prove notice.

3. The policy period will end on the day and hour stated in the cancellation notice.

4. If we cancel, final premium will be calculated pro rata based on the time this policy was in force.

5. If you cancel, final premium will be more than pro rata; it will be based on the time this policy was in force and our short rate cancellation table and procedure.

6. Premium adjustment may be made at the time of cancellation or as soon as practicable thereafter but the cancellation will be effective even if we have not made or offered any refund due you. Our

CHI06543

check or our representative's check, mailed or delivered, will be sufficient tender of any refund due you.

7.  The Named Insured in Item 1. of the Declarations will act on behalf of all other insureds with respect to the giving and receiving of notice of cancellation and the receipt of any premium refund that may become payable under this policy.

D.  Maintenance of Underlying Insurance

During the period of this policy, you agree:

1.  To keep the policies making up the Controlling Underlying Policy in Item 6.A. of the Declarations in full force and effect;

2.  That the Limits of Insurance of the Controlling Underlying Policy will be maintained except for any reduction or exhaustion of aggregate limits by payment of claims or suits for damages covered by Underlying Insurance;

3.  The Underlying Insurance policies may not be canceled or not renewed by you without notifying us, and you agree to notify us in the event an insurance company cancels or declines to renew any Underlying Insurance policy;

4.  Renewals or replacements of the Controlling Underlying Policy will not be materially changed without our agreement.

If you fail to comply with these requirements, we will only be liable to the same extent that we would have been had you fully complied with these requirements.

E.  Notice of Occurrence

1.  You must see to it that we are notified as soon as practicable of an occurrence which may result in damages covered by this policy. To the extent possible, notice will include:

    a.  How, when and where the occurrence took place;

    b.  The names and addresses of any injured persons and witnesses;

    c.  The nature and location of any injury or damage arising out of the occurrence.

2.  If a claim or suit against any Insured is reasonably likely to involve this policy you must notify us in writing as soon as practicable.

3.  You and any other involved insured must:

    a.  Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or suit;

    b.  Authorize us to obtain records and other information;

    c.  Cooperate with us in the investigation, settlement or defense of the claim or suit; and

    d.  Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

4.  The insureds will not, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

F.  Other Insurance

If other insurance applies to damages that are also covered by this policy, this policy will apply excess of the other insurance. Nothing herein will be construed to make this policy subject to the terms, conditions and limitations of such other insurance. However, this provision will not apply if the other insurance is written to be excess of this policy.

Other insurance includes any type of self-insurance or other mechanism by which an insured arranges for funding of legal liabilities.

CHI06544

G.  Terms Conformed to Statute

The terms of this policy which are in conflict with the statutes of the state where this policy is issued are amended to conform to such statutes. If we are prevented by law or statute from paying on behalf of the insured, then we will, where permitted by law or statute, indemnify the insured.

H.  When Damages are Payable

Coverage under this policy will not apply unless and until the insured or the insured's underlying insurance has paid or is obligated to pay the full amount of the Controlling Underlying Policy stated in Item 6. A. of the Declarations.

When the amount of damages is determined, we will promptly pay on behalf of the insured the amount of damages covered under the terms of this policy.

EM 43 50 (10-02)

CHI06545

# EXHIBIT E

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CHI-CHI'S, INC., et al., | ) | Case No. 03-13063 (RB) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | Adv. Proc. No. 05-52726-RB |
| | ) | |
| SYSCO CORPORATION and | ) | |
| THE SYGMA NETWORK, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CHI-CHI'S, INC., | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

**DECLARATION OF FREDERIC L. GORDON IN SUPPORT OF DEFENDANT CHI-CHI'S, INC.'S OPPOSITION TO PLAINTIFFS SYSCO CORPORATION AND THE SYGMA NETWORK, INC.'S MOTION TO ENJOIN DEFENDANT DEBTOR CHI-CHI'S, INC. FROM INITIATING, CONTINUING AND/OR PARTICIPATING IN ANY ADDITIONAL ACTIONS, INCLUDING ARBITRATION, AGAINST THEM IN CONNECTION WITH THE HEPATITIS CLAIMS**

I, Frederic L. Gordon, declare as follows:

1.      I am an attorney at law duly admitted to practice before all the courts of the State of California, admitted pro hac vice for purposes of the present action in Delaware, and am a partner with the law firm of Gordon & Holmes, special litigation counsel and attorneys of record herein for Debtor/Defendant Chi-Chi's, Inc. I have represented Chi-Chi's in this capacity at all times relevant to this motion.

DOCS_DE:112479.1

2.      I make this declaration based upon my own personal knowledge and if called as a witness could and would competently testify thereto, except as to those matters stated upon information and belief, and as to those matters, I believe them to be true.

3.      I am informed and believe that on or about June 26, 2001, debtor/defendant Chi-Chi's and plaintiff Sysco entered into a "Distribution Service Agreement." In the agreement, Sysco expressly agreed to comply with claimant Chi-Chi's Distributor Quality Program. Under that program, Sysco was required to ensure that all green onions were "manufactured, stored and transported in accordance with all applicable local, state and federal requirements." These requirements specifically included that no article distributed to Chi-Chi's "shall be adulterated or misbranded within the meaning of the Federal Drug and Cosmetic Act." The agreement also contained indemnity provisions, attorney's fees provisions, and an arbitration provision. A true and correct copy of relevant portions of the June 26, 2001 Distribution Service Agreement is attached hereto as Exhibit 1.

4.      In November 2003, an outbreak of Hepatitis A occurred in western Pennsylvania. More than 650 people became ill and, to date, at least four individuals have died. Through epidemiological analyses, federal investigators traced the outbreak to the Monaca, Pennsylvania Chi-Chi's. The reports of their analyses, with which I am familiar, further led to a determination that the source of the outbreak was human consumption of Hepatitis A-contaminated green onions, served by Chi-Chi's in raw form as an ingredient in salsa and as a garnish on other dishes.

5.      As a result of the 2003 Hepatitis A outbreak traced to debtor Chi-Chi's Monaca, Pennsylvania restaurant, several hundred claims have been filed against Chi-Chi's. I am informed and believe that nearly all of these claims have been settled and that the total amount of

DOCS_DE:112479.1

2

bodily injury claims paid to date is approximately $31 million. As a result of the size of these claims, Chi-Chi's tendered claims to its primary insurer as well as several excess carriers. These carriers include Empire Indemnity Insurance Company ("Empire"), Scottsdale Insurance Company, and Federal Insurance Company. I am informed and believe that Empire has paid the full amount of its $10,000,000 policy. A true and correct copy of relevant provisions of the subject "Commercial Lines Policy" issued to Chi-Chi's parent, Prandium, Inc., by Empire is attached hereto as Exhibit 2. Each of the insurers identified herein has asserted a right in subrogation to recover amounts paid to bodily injury claimants on Chi-Chi's behalf.

6.      On July 20, 2004, I filed, on behalf of Chi-Chi's, an adversary complaint against Castellini Company, LLC ("Castellini"), Sysco Corporation, and Sygma Network, Inc. (hereafter collectively "Sysco") for the purpose of recovering losses suffered by Chi-Chi's as a result of the Hepatitis A outbreak (Adv. Proc. No. 04-54170). The complaint sought to recover two primary elements of damage on behalf of Chi-Chi's: (1) Chi-Chi's direct losses, including lost profits, property damage, loss of business value, loss of goodwill, crises management expenses, and attorney's fees, and (2) indemnity for amounts paid to various third parties, including self-insured retention limits Chi-Chi's was required to pay to bodily injury victims under its liability policies. Chi-Chi's present arbitration claim against Sysco is substantively identical to Chi-Chi's prior complaint, and includes claims for Chi-Chi's direct losses (as described above) as well as for indemnity arising out of (1) Chi-Chi's payments to bodily injury claimants pursuant to Chi-Chi's $500,000 self-insured retention limit, (2) a class of persons who alleged injury as a result of receiving Immune Globulin shots administered by the State of Pennsylvania, and (3) payment to the State of Pennsylvania for the costs of such shots. The July 20, 2004 complaint contained several theories for recovery of Chi-Chi's damages, including breach of express and implied

DOCS_DE:112479.1

3

dismissal of Sysco without prejudice is attached hereto as Exhibit 4.  A true and correct copy of

the November 12, 2004 stipulated dismissal of Castellini is attached hereto as Exhibit 5.

      10.    I am informed and believe that on or about November 16, 2004, Empire filed

Adversary Proceeding No. 04-57064 in this Court against the same three defendants Chi-Chi's

had dismissed days earlier.  A true and correct copy of Empire's complaint in Adversary

Proceeding No. 04-57064 is attached hereto as Exhibit 6.  I was unaware, prior to receiving the

filed subrogation complaint, that Empire intended to file its own complaint.  Upon review of

Empire's complaint, I discovered that Empire had filed the complaint in Chi-Chi's name and had

copied Chi-Chi's prior complaint nearly verbatim.  However, I also noted that Empire had

clearly stated in its complaint that "[t]his Complaint has been filed by Empire Indemnity

Insurance Company, subrogee of the Debtor ("Subrogee"), and its subrogation rights as they

relate to Debtor are more fully set forth in the Complaint."  The fact that Empire was the real

party in interest, as a subrogee of debtor Chi-Chi's, was recognized by this Court, which, in its

docket, designated the plaintiff in the Empire action as "Empire Indemnity Insurance Company,

Subrogee of Debtors, Chi-Chi's, Inc."  Attached hereto as Exhibit 7 is a true and correct copy of

the on-line docket, as of October 20, 2005, for Delaware Bankruptcy Court Adversary

Proceeding No. 04-57064-RB.

      11.    Despite the fact that Empire, for reasons unknown to me or to Chi-Chi's, filed a

complaint superficially containing the same claims as had been asserted by Chi-Chi's, it was and

is inherently true that Empire's claims must be limited to its asserted rights as a subrogee of Chi-

Chi's.  In this respect, not only did Empire's complaint explicitly state that it had been filed by

Empire solely as a Chi-Chi's subrogee, but Empire simply had and has no right to assert any

other claim.  Aside from the $10,000,000 in insurance payments made by Empire on Chi-Chi's

DOCS_DE:112479.1

5

warranties, contractual indemnity, implied indemnity, and contribution. A true and correct copy

of the Complaint filed by Chi-Chi's in this Court on July 20, 2004 is attached hereto as Exhibit 3.

      7.    Following the filing of the complaint, I began a series of conversations and

negotiations with counsel for Sysco, Aaron Krauss, and counsel for Castellini, Gary Becker,

which negotiations continued for several weeks. During several conversations I had with Mr.

Krauss between July 2004 and November 2004, we extensively discussed the arbitration

provision and I formed the clear belief that, if Chi-Chi's did not dismiss the action against his

client, Sysco would seek to compel arbitration pursuant to the arbitration provision contained in

the June 26, 2001 Distribution Service Agreement between Chi-Chi's and Sysco. Upon my

review of the arbitration provision and the applicable authorities, I agreed with Mr. Krauss's

position that Sysco could successfully compel arbitration of Chi-Chi's claims.

      8.    Also during these negotiations, in or about July to November 2004, I was

informed by Mr. Becker, Castellini's counsel, that Castellini intended to request a jury trial and,

as a result, move to have the District Court withdraw its reference of Chi-Chi's adversary

proceeding that had been filed with this Court. Again, my review of the applicable authorities

led me to believe that any such motion by Castellini was likely to succeed.

      9.    In light of Sysco's insistence that it intended to compel arbitration, and in light of

Castellini's intended motion, I agreed to dismiss Sysco without prejudice, with the intention, if

necessary, to commence a later arbitration proceeding. I also executed, on Chi-Chi's behalf, a

stipulation providing that the Chi-Chi's v. Castellini matter would be dismissed by stipulation

and re-filed in the U.S. District Court for the Central District of California. The dismissals were

in fact filed on November 12, 2004. A true and correct copy of the November 12, 2004

DOCS_DE:112479.1

4

behalf, Empire, to my knowledge, does not contend Chi-Chi's has assigned any other claim to Empire. Chi-Chi's retains, and has always retained, its own right to recover for its own losses.

12.     Empire's complaint was filed by its own counsel acting solely on behalf of Empire, and entirely independent of Chi-Chi's. Chi-Chi's was not and has never been represented by Empire's litigation counsel.

13.     On or about November 22, 2004, Chi-Chi's filed a new complaint in the U.S. District Court for the Central District of California, naming only Castellini as a defendant (Case No. 2:04-cv-09539-GPS-AJW). A true and correct copy of Chi-Chi's November 22, 2004 complaint is attached hereto as Exhibit 9.

14.     Consistent with his previously stated positions regarding arbitration, I was contacted by Sysco's counsel, Mr. Kruass, following the November 16, 2004 filing of Empire's complaint. Mr. Krauss again referenced the existence of the parties' arbitration agreement and I again understood Sysco would seek to compel arbitration if the Empire complaint was not dismissed as against Mr. Krauss's clients. In light of this circumstance, I contacted, on or about December 2, 2004, counsel for Empire. At that time, I relayed Mr. Krauss's intention to compel arbitration. I am informed and believe that, on or about December 7, 2004, Empire filed a dismissal of its litigation claims against Sysco and Sygma without prejudice. I am further informed and believe that the reason Empire filed its dismissal of Sysco was the Empire's recognition of the fact that claims against Sysco must be arbitrated. A true and correct copy of Empire's December 7, 2004 dismissal of Sysco and Sygma without prejudice is attached hereto as Exhibit 8.

15.     On or about June 1, 2005, the U.S. District Court for the Central District of California entered an order, over the objection of all parties (including insurers Scottsdale and

DOCS_DE:112479.1

6

Empire, who had sought to intervene), abstaining from hearing the Chi-Chi's v. Castellini matter pursuant to 28 U.S.C. §1334(c)(1). A true and correct copy of the court's June 1, 2005 order is attached hereto as Exhibit 10.

16.    In light of the California court's abstention, Chi-Chi's, on or about June 6, 2005, re-filed its lost profits and indemnity complaint against Castellini as a third party complaint in the U.S. District Court for the Western District of Pennsylvania. The complaint was filed in Funkhouser v. Chi-Chi's (Case No. 2:05-cv-000638-TFM), a bodily injury case recently removed to the federal court by Chi-Chi's. A true and correct copy of Chi-Chi's June 6, 2005 complaint is attached hereto as Exhibit 11.

17.    In or about mid-July 2005, I contacted Mr. Krauss to inform him that Chi-Chi's intended to commence an arbitration proceeding against his clients. Following a series of communications between Mr. Krauss and my office, a scheduling stipulation was reached (a true and correct copy of the Chi-Chi's-Sysco stipulation is attached hereto as Exhibit 12), Chi-Chi's filed an arbitration claim with ADR Options in Philadelphia, Pennsylvania (a true and correct copy of Chi-Chi's September 8, 2005 Arbitration Claim is attached hereto as Exhibit 13), and, on September 23, 2005, Sysco instituted the present action was filed the instant motion.

18.    Meanwhile, on or about August 1, 2005, Castellini filed, in the Western District of Pennsylvania, a motion to dismiss Chi-Chi's third party complaint in Case No. 2:05-cv-000638-TFM. In support, Castellini argued that Empire's complaint against Castellini, then pending in this Court, requires dismissal of Chi-Chi's Pennsylvania action pursuant to the "first-filed rule." A true and correct copy of Castellini's brief in support of its Motion to Dismiss is attached hereto as Exhibit 14.

19.     I am informed and believe that also on or about August 1, 2005, Castellini, citing

its request for a jury trial, filed a Motion for Withdrawal of Reference in the Empire v. Castellini

matter pending before this Court.  A true and correct copy of Castellini's brief in support of its

August 1, 2005 Motion for Withdrawal of Reference is attached hereto as Exhibit 15.  I am

informed and believe Empire subsequently filed a response, in which it took no position on the

motion.  A true and correct copy of Empire's brief is attached hereto as Exhibit 16.  I am

informed and believe that Castellini's motion was fully submitted to the District Court on

September 19, 2005, where it is now pending under Case No. 1:05-cv-00634-KAJ.

20.     On or about October 7, 2005, the U.S. District Court for the Western District of

Pennsylvania granted Castellini's motion to dismiss Chi-Chi's third party complaint, pursuant to

the first filed rule, in Case No. 2:05-cv-000638-TFM.  A true and correct copy of the court's

October 7, 2005 order is attached hereto as Exhibit 17.

21.     My office has been informed that Empire intends to file, within the next several

days, a motion pursuant to Federal Rule of Civil Procedure 60, requesting that Empire's

December 7, 2005 dismissal of Sysco and Sygma be vacated.  It is my belief that Empire's Rule

60 motion, if granted, would entirely moot the issues raised by Sysco in the instant motion.

22.     Subsequent to the filing of the instant motion, Sysco and Chi-Chi's agreed to an

extension for the filing of opposition and reply briefs.  Pursuant to the stipulation, it was agreed

that Chi-Chi's opposition was to be filed on or before October 21, 2005 and Sysco's reply brief

was to be filed on or before October 31, 2005.

I declare under penalty of perjury according to the laws of the States of Delaware and California that the facts stated in this Declaration are true, and that this declaration was executed by me on October 20, 2005 in San Diego, California.

FREDERIC L. GORDON

9