IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CHI-CHI'S, INC., et al., | ) | Case No. 03-13063 |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | Adv. Proc. No. 05-52726-RB |
| | ) | |
| SYSCO CORPORATION and | ) | Civil Action No. 06-169-KAJ |
| THE SYGMA NETWORK, INC., | ) | |
| | ) | |
| Appellants, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CHI-CHI'S, INC., | ) | |
| | ) | |
| Appellee. | ) | |
| | ) | |

**APPELLEE CHI-CHI'S, INC.'S ANSWERING BRIEF IN OPPOSITION TO SYSCO CORPORATION AND THE SYGMA NETWORK, INC.'S APPEAL OF THE BANKRUPTCY COURT'S JANUARY 18, 2006 ORDER FINDING THAT RULE 41 DOES NOT BAR FURTHER PROCEEDINGS AGAINST SYSCO CORPORATION AND THE SYGMA NETWORK, INC.**

GORDON & HOLMES
Frederic L. Gordon, Esq.
Rhonda J. Holmes, Esq.
Douglas J. Billings, Esq.
223 West Date Street
San Diego, CA 92101
Telephone: (619) 696-0444

PACHULSKI STANG ZIEHL YOUNG JONES
& WEINTRAUB LLP
Laura Davis Jones (DE Bar No. 2436)
Bruce Grohsgal (DE Bar No. 3583)
Rachel Lowy Werkheiser (DE Bar No. 3753)
Sandra G. M. Selzer (DE Bar No. 4283)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100

Counsel to Appellee, William Kaye, as Liquidating Trustee
for the Chi-Chi's, Inc., *et al*. Liquidating Trust

Dated: June 12, 2006

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ................................................................................................... 1

II.   FACTUAL HISTORY ............................................................................................ 3

III.  PROCEDURAL HISTORY .................................................................................... 5

IV.   THE CHI-CHI'S AND EMPIRE COMPLAINTS ............................................... 12

V.    THE TWO DISMISSAL RULE IS INAPPLICABLE TO CHI-CHI'S
      PRESENT ARBITRATION .................................................................................. 14

      A.    The Dismissals were by Different Parties and Involved Different Claims........... 15

      B.    The Purpose of Rule 41(a)(1) Would Not Be Advanced
            by Granting Sysco's Appeal ................................................................... 24

VI.   THE COURT'S DECISION IN THE PENNSYLVANIA ACTION
      HAS NO BEARING ON THE PRESENT APPEAL ............................................. 29

VII.  CONCLUSION...................................................................................................... 32

# TABLE OF AUTHORITIES

**Page**

## Cases

American Cyanamid Co. v. McGhee,
   317 F.2d 295 (5th Cir. 1963) ...................................................................................... 25

ASC Inv. Corp. v. Newton,
   183 F.3d 1265 (11th Cir. 1999) .................................................................................. 25

Asher v. G.F. Stearns Land & Lumber Co.,
   43 S.W.2d 1012 (Ky. 1931) ........................................................................................ 23

Brister v. A.W.I., Inc.,
   946 F.2d 350 (5th Cir. 1991) ...................................................................................... 30

Brown v. Hartshorne Pub. Sch. Dist.,
   926 F.2d 959 (10th Cir. 1991) ............................................................................... 20, 21

Copeland v. Merrill Lynch & Co., Inc.,
   47 F.3d 1415 (5th Cir. 1995) ...................................................................................... 30

EEOC v. Univ. of Pennsylvania,
   850 F.2d 969 (3rd Cir. 1988) ...................................................................................... 29

First Equity Fed., Inc. v. Phillips Dev., LC,
   52 P.3d 1137 (2002) .................................................................................................... 27

Glaspell v. Davis,
   2 F.R.D. 301 (D.Or.1942) ........................................................................................... 25

Huskey v. United States,
   29 F.Supp. 283 (E.D. Tenn. 1939) ........................................................................ 19, 20

In re Porter,
   295 B.R. 529 (Bankr. E.D.Pa. 2003) ......................................................................... 29

Island Stevedoring, Inc. v. Barge CCBI,
   129 F.R.D. 430 (D.P.R. 1990) .................................................................................... 27

Krueger v. Cartwright,
   996 F.2d 928 (7th Cir.1993) ....................................................................................... 22

Kuhn v. Williamson,
   122 F.R.D. 192 (E.D.N.C. 1988) ............................................................................... 27

Lake at Las Vegas Investors Group, Inc. v. Pacific Malibu Dev. Corp.,
   933 F.2d 724 (9th Cir. 1991) ............................................................................ 18, 19, 22

i

**Page**

Louisville & N.R. Co. v. Mack Mfg. Corp.,
269 S.W.2d 707 (Ky. 1954)................................................................................................. 23

Manning v. South Carolina Dept. of Highway and Public Transp.,
914 F.2d 44 (4th Cir. 1990) ......................................................................................... 18, 19

Murray v. Sevier,
145 F.R.D. 563 (D.Kansas. 1993)................................................................................. 17, 18

Nutrition & Fitness, Inc. v. Blue Stuff, Inc.,
264 F.Supp.2d 357 (W.D.N.C. 2003) ................................................................................. 30

Ogden Allied Sec. Servs., Inc. v. Draper & Kramer,
137 F.R.D. 259 (N.D.Ill. 1991)........................................................................................... 26

Orr v. Stuart,
32 F.R.D. 435 (W.D.Ark. 1963) ......................................................................................... 26

Peterson v. Clark Leasing Corp.,
451 F.2d 1291 (9th Cir. 1971) ........................................................................................... 30

Poloron Prods., Inc. v. Lybrand, Ross Bros. & Montgomery,
66 F.R.D. 610 (S.D.N.Y. 1975) ......................................................................................... 15

Poloron Products, Inc. v. Lybrand Ross Bros. & Montgomery,
534 F.2d 1012 (2nd Cir. 1976) ..................................................................................... 17, 25

Raytech Corp. v. White,
54 F.3d 187 (3rd Cir. 1995) ............................................................................................... 30

Smith, Kline & French Labs. v. A.H. Robins Co.,
61 F.R.D. 24 (E.D.Penn. 1973)........................................................................................... 26

Sovereign Bank v. Schwab,
414 F.3d 450 (3rd Cir. 2005) ............................................................................................... 1

St. Paul Fire and Marine Ins. Co. v. Universal Builders Supply,
409 F.3d 73 (2nd Cir. 2005) ......................................................................................... 22, 23

Surowitz v. Hilton Hotels Corp.,
383 U.S. 363 86 S.Ct. 845, 851, 15 L.Ed.2d 807, 814 (1966)................................................. 25

Sutton Place Dev. Co. v. Abacus Mortgage Inv. Co.,
826 F.2d 637 (7th Cir. 1987) ....................................................................................... 25, 26

TCW Special Credits v. Fishing Vessel Chloe Z,
2000 WL 1277922 (9th Cir. 2000) ..................................................................................... 28

United States v. Aetna Cas. & Surety Co.,
338 U.S. 366 (1949)............................................................................. 12, 16, 17, 21, 22

**Page**

Virginia Elec. and Power Co. v. Westinghouse Elec. Corp.,
    485 F.2d 78 (4th Cir. 1973) ................................................................................................... 24

Western Group Nurseries, Inc. v. Ergas,
    211 F.Supp.2d 1362 (S.D.Fla. 2002) ................................................................................. 26, 27

**Rules**

FED. R. CIV. PRO. 41(a) ..........................................................................................................*passim*

Appellee Chi-Chi's, Inc. ("Chi-Chi's")[1] respectfully submits its Answering Brief in Opposition to Sysco Corporation and The Sygma Network, Inc.'s Appeal of the Bankruptcy Court's January 18, 2006 Order Finding that Rule 41 Does Not Bar Further Proceedings Against Sysco Corporation and The Sygma Network, Inc.

## I.
## INTRODUCTION

The present action and appeal[2], as well as the underlying arbitration, arise out of a 2003 outbreak of Hepatitis A illnesses traced to the consumption of contaminated green onions at debtor Chi-Chi's Monaca, Pennsylvania restaurant. The outbreak resulted in at least four deaths and more than 650 illnesses. It also devastated Chi-Chi's business.[3] By its appeal, Sysco[4] – which supplied and delivered the contaminated onions to Chi-Chi's – asks this Court to bar Chi-

---

[1] Pursuant to that certain order, dated December 15, 2005, confirming the First Amended Joint Plan of Liquidation Proposed by the Debtors and the Official Committee of Unsecured Creditors, As Modified (see Bankr. Docket No. 2244), which became effective on or about December 27, 2005, all rights and assets of Chi-Chi's, Inc. were transferred and vested in the William Kaye, as Liquidating Trustee for the Chi-Chi's, Inc., et al. Liquidating Trust (the "Liquidating Trust"), which is the Appellee in this action. All references herein to Chi-Chi's shall also mean the Liquidating Trust.

[2] On appeal from a Bankruptcy Court, the District Court reviews the Bankruptcy Court's legal decision de novo, but reviews its factual determinations for clear error. Sovereign Bank v. Schwab, 414 F.3d 450, 452, fn.3 (3rd Cir. 2005).

[3] Chi-Chi's, Inc. and certain related debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, 11 U.S.C. §101, et seq., on October 8, 2003, prior to learning of the outbreak. The matters were consolidated for joint administration in Case No. 03-13063. Ultimately, Chi-Chi's was unable to recover from the effects of the outbreak. On December 15, 2005, the Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), after having considered argument and evidence confirmed the First Amended Joint Plan of Liquidation Proposed by the Debtors and the Official Committee of Unsecured Creditors, as Modified, in its Finding of Facts, Conclusions of Law, and Order Confirming First Amended Joint Plan of Liquidation Proposed by the Debtors and the Office Committee of Unsecured Creditors.

[4] For ease of reference, and because both Appellants are identically situated as to the issues presented in the present appeal, Appellants Sysco Corporation and The Sygma Network, Inc. are collectively referred to herein as "Sysco."

Chi's from recovering more than $30 million in damages based on an unprecedented and unsupportable application of the "two dismissal rule."

The judgment from which Sysco appeals was issued by the Hon. Randolph Baxter on January 18, 2006, and was accompanied by a 15-page order refuting each of Sysco's arguments – the same arguments reasserted in this appeal – on a point by point basis.  See January 18, 2006 Memorandum of Opinion and Order and Judgment [App. at Tabs C and D].[5] As explained below, Sysco's appeal of Judge Baxter's ruling should be denied on the same basis upon which that ruling rests

The sole question before Judge Baxter, which is now before this Court, is whether the "two dismissal rule," as established by Rule 41(a) of the Federal Rule of Civil Procedure[6] (the "Rules"), applies to the present action.[7]  Sysco asserts that, under this rule, Empire Indemnity Insurance Company's ("Empire") December 7, 2004 dismissal of an adversary proceeding against Sysco should be deemed a dismissal with prejudice, that this "deemed" dismissal with prejudice should operate as a complete bar (as though there were an adjudication on the merits) of Chi-Chi's separate claims against Sysco and that, therefore, the result of Empire's dismissal of Sysco is a complete and total extinguishment of Chi-Chi's rights.  Based on this position, Sysco – which has never answered any complaint and which has never

---

[5]  The references to the Answering Brief, containing key portions of the record and unreported cases, are denoted herein as [App. at Tab _____].

[6]  Rule 41(a) is made applicable to the underlying proceeding by Rule 7041 of the Federal Rules of Bankruptcy Procedure.

[7]  Sysco does not dispute that Chi-Chi's underlying claims, unless barred by the two dismissal rule, are subject to the arbitration provision contained in the supply agreement between the parties.

2

responded in any fashion for supplying Hepatitis A contaminated green onions to Chi-Chi's and

not less than four deaths, countless other injuries, and causing tens of millions of dollars in

damages – asserts that the arbitration commenced by Chi-Chi's against Sysco in August 2005

should be enjoined and Chi-Chi's should be forever barred from initiating or pursuing any legal

action against Sysco.

In so arguing, Sysco seeks to expand the two dismissal rule to a degree that no

court has ever approached.  As elaborated below, the two dismissal rule does not apply to the

facts of this case, i.e., separate dismissals of a defendant by an insured (Chi-Chi's) and its

subrogated insurer (Empire), each pursuing their own claims.

## II.
## FACTUAL HISTORY

The facts giving rise to Chi-Chi's arbitration claim are largely undisputed and are

provided here solely for this Court's convenience and understanding.  Chi-Chi's was, at the time

of the events giving rise to this action in November 2003, the owner and operator of a chain of

approximately 122 Mexican-food restaurants.

On June 26, 2001, Chi-Chi's and Sysco entered into a "Distribution Service

Agreement," in which Sysco expressly agreed to comply with Chi-Chi's distributor quality

program.  See Gordon Declaration in Support of Defendant Chi-Chi's, Inc.'s Opposition to

Plaintiff's Sysco Corporation and The Sygma Network, Inc.'s Motion to Enjoin Defendant

Debtor Chi-Chi's, Inc. from Initiating, Continuing And/Or Participating in any Additional

Actions, Including Arbitration, Against Them in Connection with the Hepatitis Claims (the "Gordon Declaration")[App. at Tab A].

Under that program, Sysco was required to ensure that all products delivered to Chi-Chi's, including green onions, were "manufactured, stored and transported in accordance with all applicable local, state and federal requirements." These requirements specifically included that no article distributed to Chi-Chi's "shall be adulterated or misbranded within the meaning of the Federal Drug and Cosmetic Act." See Gordon Declaration and Exhibit 1 thereto [App. at Tab A.1]. The agreement, which also contained indemnity[8], attorney's fees, and arbitration provisions, permitted Chi-Chi's to select the vendors who would supply products to Sysco for distribution to Chi-Chi's restaurants.[9]

In November 2003, an outbreak of Hepatitis A occurred in western Pennsylvania. More than 650 people became ill and, to date, at least four individuals have died. Through epidemiological analyses, federal investigators traced the outbreak to the Monaca, Pennsylvania Chi-Chi's restaurant. Federal investigators further determined that the source of the outbreak was human consumption of Hepatitis A-contaminated green onions, supplied by Sysco and

---

[8] Sysco's appeal purports to describe the effect of these indemnity provisions. The application of the parties' indemnity agreements is an issue for the arbitrator, not for this Court. For present purpose, it is sufficient to note that Chi-Chi's does not concur with Sysco's interpretation of the agreement.

[9] Chi-Chi's in fact elected to select the vendor of the green onions. On December 12, 2002, Chi-Chi's entered into a pricing agreement with Castellini Company, LLC ("Castellini"). In connection with the agreement, Castellini sold green onions, at a negotiated price, to Sysco. Sysco, in turn, sold the product to Chi-Chi's on a specified cost-plus basis and transported and delivered the green onions directly to Chi-Chi's restaurants. The green onions implicated in the Hepatitis A outbreak, explained below, were supplied to Chi-Chi's by Castellini and Sysco pursuant to this agreement. Thus, Chi-Chi's has pursued both Sysco and Castellini in its effort to recover its substantial lost profits and other damages.

served by Chi-Chi's in raw form as an ingredient in salsa and as a garnish on other dishes. As

explained below, an avalanche of claims and litigation ensued, including Chi-Chi's claims

against Sysco for breach of express and implied warranties, indemnity and contribution.

## III.
## PROCEDURAL HISTORY

      While the facts concerning the outbreak and the parties' historical and contractual

relationships are relatively straightforward, the same cannot be said with respect to the

procedural history of litigation arising out of the outbreak. Because Chi-Chi's believes an

understanding of this broader history will assist this Court in ruling on Sysco's appeal, Chi-Chi's

provides the following chronological history of litigation between Chi-Chi's, its insurers, and the

green onion suppliers.

<u>November 2003</u>      The Hepatitis A outbreak occurs and is traced to Chi-Chi's Monaca,

            Pennsylvania restaurant. Bodily injury claimants begin filing the first of

            several hundred claims and/or complaints against Chi-Chi's. Over time,

            nearly all of these claims have been settled using funds from Chi-Chi's

            and/or its liability insurers, Empire, Scottsdale Insurance Company, and

            Federal Insurance Company.[10] Chi-Chi's understands that the total

            amount paid by the insurers to date is approximately $31,000,000. As

---

[10] Because of the large number of claims against Chi-Chi's, and because of the size of those claims, Chi-Chi's has relied upon both its primary liability insurance and multiple levels of excess insurance. Thus, several insurance carriers have made payments on Chi-Chi's behalf and have thereby asserted a right to seek recovery of such amounts based upon contractual subrogation.

5

|  | discussed herein, Chi-Chi's asserts its own separate damages of more than $30,000,000.  See Gordon Declaration and Exhibit 2 thereto [App. at Tab A.2]. |
|---|---|
| July 20, 2004 | Chi-Chi's files an adversary complaint in this Court (Adv. Proc. No. 04-54170) against Sysco and Castellini.  By its complaint, Chi-Chi's seeks to recover two broad elements of damages: (1) lost profits, property damage, etc.[11], and (2) indemnification for amounts Chi-Chi's paid to various third-party claimants, including individual bodily injury claimants (pursuant to Chi-Chi's self-insured retention limit of $500,000), a class of approximately 10,000 persons who alleged bodily injury as a result of receiving post-outbreak immune globulin shots, and reimbursement to the State of Pennsylvania for the costs of such shots.  See Gordon Declaration and Exhibit 3 thereto [App. at Tab A.3]. |
| July 2004-Nov 2004 | Castellini informs Chi-Chi's of its intention to seek a jury trial, and therefore to seek withdrawal of this Court's reference of the case to the Bankruptcy Court.  At or about the same time, Sysco's counsel has extensive communications with Chi-Chi's counsel, during which Sysco's counsel asserts the applicability of the parties' arbitration agreement. In light of these developments, Chi-Chi's enters a stipulation with Castellini, |

---

[11]  Although this aspect of Chi-Chi's damage claim includes many elements of damages beyond lost profits, it is referred to throughout this opposition, for ease of reference, as a claim for "lost profits."

6

by which Castellini is dismissed without prejudice, and by which

Castellini agrees to allow the complaint to be re-filed in the U.S. District

Court for the Central District of California. <u>See</u> Gordon Declaration [App.

at Tab A]. During this same period, Sysco's counsel informed Chi-Chi's

counsel that, if Chi-Chi's did not dismiss the action against his client,

Sysco would seek to compel arbitration pursuant an arbitration provision

contained in the Distribution Service Agreement between Chi-Chi's and

Sysco. Upon reviewing the arbitration provision and the applicable

authorities, Chi-Chi's determines that Sysco's could successfully compel

arbitration of Chi-Chi's action.

November 12, 2004    In the adversary proceeding, Chi-Chi's files the dismissal without

prejudice as to Sysco and Sygma and the stipulated dismissal as to

Castellini. <u>See</u> Gordon Declaration and Exhibits 4 and 5 thereto [App. at

Tabs A.4 and A.5].

November 16, 2004    Empire files, as a real party in interest, its own adversary action in the

Bankruptcy Court (Adv. Pro. No. 04-57064). <u>See</u> Gordon Declaration and

Exhibit 6 thereto [App. at Tab A.6]. The complaint, although nearly

identical to the complaint previously filed by Chi-Chi's, and although filed

in Chi-Chi's name, clearly states that "[t]his Complaint has been filed by

Empire Indemnity Insurance Company, subrogee of the Debtor

7

("Subrogee"), and its subrogation rights as they relate to Debtor are more fully set forth in the Complaint." See Exhibit 6 to Gordon Declaration, fn. 1 [App. at Tab A.6]. Moreover, the Bankruptcy Court recognized the true plaintiff by, in its docket, designating the plaintiff as follows: "Empire Indemnity Insurance Company, Subrogee of Debtors, Chi-Chi's, Inc." See Gordon Declaration and Exhibit 7 thereto [App. at Tab A.7]. Empire's complaint was filed by its own counsel acting completely independently of Chi-Chi's and its counsel. Chi-Chi's was not and has not ever been represented by Empire's litigation counsel. After Empire files its action, counsel for Sysco again contacts Chi-Chi's counsel, confirming Sysco's position regarding the mandatory contractual arbitration provision contained in the Distribution Service Agreement, particularly with respect to the Empire action. See Gordon Declaration [App. at Tab A].

November 22, 2004    Chi-Chi's files a new complaint in the U.S. District Court for the Central District of California, naming only Castellini as a defendant (Case No. 2:04-cv-09539-GPS-AJW). See Gordon Declaration and Exhibit 9 thereto [App. at Tab A.9].

December 7, 2004    After learning of Sysco's assertions of its contractual arbitration rights, Empire files, in its adversary proceeding, a dismissal without prejudice as to Sysco and Sygma. See Gordon Declaration and Exhibit 8 thereto [App.

8

|              | at Tab A.8].  The portion of Empire's complaint alleging claims against Castellini is not dismissed and remains pending at this time. |
|--------------|---|
| June 1, 2005 | The U.S. District Court for the Central District of California enters an order, over the objection of all parties (including insurers Scottsdale and Empire, who had sought to intervene), abstaining from hearing the Chi-Chi's v. Castellini matter pursuant to 28 U.S.C. §1334(c)(1).  See Gordon Declaration and Exhibit 10 thereto [App. at Tab A.10]. |
| June 6, 2005 | After the California District Court's abstention, Chi-Chi's re-files its lost profits and indemnity complaint against Castellini as a third party complaint in the U.S. District Court for the Western District of Pennsylvania.  The complaint is filed in Funkhouser v. Chi-Chi's (Case No. 2:05-cv-000638-TFM), a bodily injury case recently removed to the federal court by Chi-Chi's.  See Gordon Declaration and Exhibit 11 thereto [App. at Tab A.11]. |
| July 2005 | Chi-Chi's notifies Sysco that Chi-Chi's intends to commence arbitration against Sysco, asserting the same claims previously asserted in the dismissed Bankruptcy Court adversary proceeding.  The parties undertake negotiations concerning the arbitrator, the location, the process, and other related matters.  See Gordon Declaration [App. at Tab A]. |

9

| August 1, 2005 | Castellini files, in the Western District of Pennsylvania federal court action, a motion to dismiss Chi-Chi's third party complaint. In support, Castellini argues that Empire's complaint against Castellini, then pending in this Court, requires dismissal of Chi-Chi's Pennsylvania action pursuant to the "first-filed rule."[12] See Gordon Declaration and Exhibit 14 thereto [App. at Tab A.14]. |
|---|---|
| August 1, 2005 | In the Empire v. Castellini matter pending before the Bankruptcy Court, Castellini, citing its request for a jury trial, files a Motion for Withdrawal of Reference. See Gordon Declaration and Exhibit 15 thereto [App. at Tab A.15]. Empire subsequently filed a response, in which it took no position on the motion. See Gordon Declaration and Exhibit 16 thereto [App. at Tab A.16]. The motion ultimately came before this Court in Case No. 1:05-cv-00634-KAJ. (On November 22, 2005, this Court denied the motion and the matter thus remains pending before the Bankruptcy Court.) |
| September 2005 | Chi-Chi's and Sysco enter into a scheduling stipulation concerning Chi-Chi's arbitration claim and the complaint and motion underlying Sysco's present appeal. See Gordon Declaration and Exhibit 12 thereto [App. at Tab A.12]. |

---

[12] The "first filed rule" and the Pennsylvania court's ruling on Castellini's motion is discussed in greater detail below.

| | |
|---|---|
| September 8, 2005 | Pursuant to the stipulation, Chi-Chi's files its arbitration claim against Sysco before ADR Options in Philadelphia, Pennsylvania.  See Gordon Declaration and Exhibit 13 thereto [App. at Tab A.13]. |
| September 23, 2005 | Also pursuant to the stipulation, Sysco files the underlying complaint and motion before the Bankruptcy Court.  See Gordon Declaration [App. at Tab A]. |
| October 7, 2005 | The U.S. District Court for the Western District of Pennsylvania grants Castellini's motion to dismiss Chi-Chi's third party complaint pursuant to the first filed rule (discussed in greater detail below).  See Gordon Declaration and Exhibit 17 thereto [App. at Tab A.17]. |
| October 24, 2005 | Empire files a motion to intervene in the underlying Bankruptcy Court action, which motion is not opposed and is ultimately granted.  As a result, Empire files opposition to Sysco's motion. |
| November 1, 2005 | Empire files a motion pursuant to Federal Rule of Civil Procedure 60, requesting that its December 7, 2005 dismissal of Sysco and Sygma be vacated.  See Gordon Declaration [App. at Tab A].  The motion, which formed the basis of this Court's denial of Sysco's Motion for Withdraw of Reference, has not yet been heard by any Court. |

| November 16, 2005 | Sysco's Rule 41 motion is argued in the Bankruptcy Court before the Hon. Randolph Baxter. See Transcript of November 16, 2005 Proceedings. [App. at Tab B]. |
| January 18, 2006 | The Hon. Randolph Baxter issues a Memorandum of Opinion and Order and Judgment, in which the Court denies Sysco's motion and grants judgment in favor of Chi-Chi's, Inc.[13] See January 18, 2006 Memorandum of Opinion and Order and Judgment. [App. at Tabs C and D]. |

## IV.
## THE CHI-CHI'S AND EMPIRE COMPLAINTS

Chi-Chi's acknowledges that the two complaints at issue in the dismissed actions are facially similar. As explained above, Empire's complaint, which was filed after Chi-Chi's had dismissed its own complaint, was filed as the result of Empire's counsel's own independent acts on behalf – and only on behalf – of Empire. See Gordon Declaration [App. at Tab A]. Empire confirmed this fact in its own opposition to Sysco's motion in the underlying action.[14]

---

[13] Following the issuance of Judge Baxter's ruling, arbitration proceedings commenced and a trial date was set for August 2006. Subsequently, Chi-Chi's was temporarily enjoined from pursuing the arbitration by the Ventura County District Court in California, where the litigation against Castellini is currently pending. That injunction will expire on June 30, 2006, at which time Chi-Chi's intends to continue with the arbitration against Sysco. None of the issues related to the injunction are relevant to the question, however, of whether Rule 41's two dismissal provisions bar Chi-Chi's or Empire from asserting claims against Sysco.

[14] In the underlying action, Sysco half-heartedly argued that, because both Chi-Chi's and Empire's complaints were filed in the name of Chi-Chi's, both complaints were filed by Chi-Chi's. Sysco appears to have abandoned this particular argument on appeal. For good reason. As discussed below, Empire, as a subrogated insurer, is a real party in interest to the extent of its subrogation claims. United States v. Aetna Casualty & Surety Co., 338 U.S. 366, 380-381 (1949). Empire has no authority to sue for claims belonging to Chi-Chi's and there is no showing before this Court that Empire was purporting to sue in any capacity other than that of subrogated insurer. Accordingly, the fact that Empire chose to file its complaint in Chi-Chi's name, whether or not such an action was technically proper, is of no consequence with respect to the present appeal.

12

Regardless of how the claims were originally pled, it is vital to understand the precise nature and limits of the parties' respective losses. Empire's claim is simple. As a liability insurer of Chi-Chi's, Empire has made payments to bodily injury victims. By its now-dismissed complaint, Empire sought indemnity for such payments from Sysco, which was alleged to have been responsible for the outbreak.

Chi-Chi's claims, as pled in its original complaint against Sysco and in its pending arbitration claim, are broader and include, without limitation, lost profits, property damage, loss of business enterprise value, loss of goodwill, crises management expenses, and attorney's fees. Chi-Chi's also sought (and seeks in arbitration) indemnification for amounts paid by Chi-Chi's to third-parties, including payments made to individual bodily injury claimants pursuant to Chi-Chi's $500,000 self-insured retention limit, payments made to members of a class consisting of approximately 10,000 persons claiming bodily injury as a result of receiving Immune Globulin shots from the State of Pennsylvania, and payments made to the State of Pennsylvania to settle its administrative claim seeking reimbursement of the cost of the Immune Globulin. See Gordon Declaration [App. at Tab A.].

Importantly, Empire had and has no right whatsoever to seek recovery of any of *Chi-Chi's* lost profit damages, nor to recover in indemnity or otherwise for payments made *by Chi-Chi's* (or, for that matter, by any other Chi-Chi's insurer) to third parties. Empire is limited to *its* subrogation claims, based on the monies it paid out, regardless of the allegations and claims contained in its complaint.

13

## V.
## THE TWO DISMISSAL RULE IS INAPPLICABLE
## TO CHI-CHI'S PRESENT ARBITRATION

Rule 41(a)(1) provides that a party may, as a matter of right and without leave of court, file a notice of dismissal of any action prior to the service of an answer or motion for summary judgment. With respect to whether such a dismissal is with or without prejudice, Rule 41(a)(1) provides:

> Unless otherwise stated in the notice of dismissal or stipulation, the dismissal is without prejudice, except that a notice of dismissal operates as an adjudication upon the merits when filed by *a plaintiff* who has once dismissed in any court of the United States or of any state an action based on or including the *same claim*.

FED. R. CIV. PRO. 41(a) (emphasis added).

Thus, Rule 41's "two dismissal rule" arises only where the two prior dismissals involved (1) the same plaintiff *and* (2) the same claim. As demonstrated below, the dismissals at issue in the present action involved both different plaintiffs and different claims. Accordingly, the purported "second" dismissal, by a separate party pursuing its separate claims for monies it separately paid out, does not implicate the two dismissal rule.

Moreover, the purpose for the dismissals in this case is significant. Both Chi-Chi's and Empire filed unilateral dismissals without prejudice of Sysco in response to Sysco's assertions of rights under the binding arbitration provision contained in the Chi-Chi's-Sysco supply agreement. See Gordon Declaration [App. at Tab A]. Under these circumstances, the purpose of Rule 41 – to prevent harassment of defendants and abuse of the right to voluntary

14

dismissal – would not be served by a broad application of Rule 41(a)(1). In fact, it is precisely for these reasons that courts have consistently held that the two dismissal rule as set fort in Rule 41(a)(1) must be strictly construed. Viewed in the context of this case, the two dismissal rule does not and cannot operate to forever bar Chi-Chi's claims against Sysco.

A.    The Dismissals were by Different Parties and Involved Different Claims

In support of its appeal, Sysco relies primarily upon the general rule that an insured and its subrogated insurer may not split a cause of action and argues, accordingly, that Chi-Chi's and Empire must be one party for the purposes of Rule 41. Even assuming that the rule against splitting a cause of action applied to elements of Chi-Chi's and Empire's claims against Sysco, however, there is simply no authority which holds, or even suggests, that such a result causes the insured and its insurer to become one party seeking one claim under Rule 41.

Empire utilizes most its appellate brief to attempt to convince this Court that Chi-Chi's and Empire have improperly split a cause of action. But Sysco practically ignores the more pertinent question, i.e., assuming the parties have split a cause of action, does such a result make Chi-Chi's and Empire one "party" pursuing one "claim" for purposes of Rule 41. In fact, Sysco cites only three cases and dedicates only one paragraph to this vital issue. See Sysco Opening Brief, pp. 7-8.

To the extent Sysco addresses the issue, it primarily relies upon Poloron Prods., Inc. v. Lybrand, Ross Bros. & Montgomery, 66 F.R.D. 610, 614 (S.D.N.Y. 1975) ("Poloron I"), which held that a "nominal change" of plaintiffs does not defeat the two-dismissal rule, so long

15

as the same party-in-interest is involved. While Sysco has accurately cited the holding of

Poloron I, it has failed (1) to apply the Poloron I decision correctly to the facts at bar, (2) to

recognize the significance of the Second Circuit Court of Appeal's subsequent decision in the

same case, and (3) to recognize various more pertinent judicial authorities.

       As explained, the two dismissed actions at issue here involved two separate

plaintiffs pursuing two separate claims. It is well settled that an insurer which pays a claim and

thereby receives a subrogation interest becomes a "real party in interest," whether the insurer is

fully or, as here, partially subrogated. United States v. Aetna Cas. & Surety Co., 338 U.S. 366,

380-381 (1949). Empire is therefore a real party in interest to the extent it has subrogated claims

arising out of payment of monies on behalf of Chi-Chi's to bodily injury claimants.

       In Poloron I, the court found that all three actions at issue were filed by the same

"real party in interest," an entity which was entitled to a seventy-five percent share of the

recovery in all three actions. 66 F.R.D. at 614. Thus, even though the second and third actions

were filed in the name of a different, nominal plaintiff, the court found that the two dismissal

rule mandated the plaintiff's dismissal of the second action be deemed with prejudice. Id. at

614-615.

       The present case presents an opposite set of facts. Here, Empire and Chi-Chi's

each filed an action against Sysco for purposes of recovering their own separate damages. That

is, Empire was the real party in interest with respect to its subrogated claims for amounts Empire

paid to claimants, and Chi-Chi's was the real party in interest with respect to its lost profits and

its distinct indemnity claims.  Unlike the plaintiff in Poloron I, neither Chi-Chi's nor Empire was a nominal plaintiff with respect to any claim.[15]

Even if Poloron I were factually similar, the subsequent history of that case calls into question the validity of its holding.  The Poloron I court founded its ruling not only on the basis that the plaintiffs were in fact a single party, but on the basis that a dismissal by stipulation operates as one "strike" under Rule 41's two dismissal rule.  In Poloron Products, Inc. v. Lybrand Ross Bros. & Montgomery, 534 F.2d 1012, 1017-1018 (2nd Cir. 1976) ("Poloron II"), the Second Circuit reversed Poloron I on the basis that the lower court had erred in ruling that a stipulated dismissal counts as a strike under the two dismissal rule.  Because this holding provided a sufficient basis for reversal of the district court, the Second Circuit did not address the propriety of the district court's ruling with respect to the fact that the underlying actions had been filed by, at least in name, different plaintiffs.[16]  For all of these reasons, Sysco's reliance on Poloron I is misplaced.

While Poloron I has no application to the facts of this case, several other decisions have applied facts similar to the present case and found the two dismissal rule to be inapplicable. For instance, in Murray v. Sevier, 145 F.R.D. 563 (D.Kansas. 1993), the court was faced with "a

---

[15] It could be argued, as a result of Empire's filing of its action in the name of Chi-Chi's, that Chi-Chi's was a nominal plaintiff in the Empire action.  Even if this were true, it would not present the Poloron I situation, as the real parties in interest were different in both cases, i.e., Empire is the real party in interest with respect to the subrogation claims asserted in its action and Chi-Chi's is the real party in interest with respect to the separate claims for separate damages asserted in its action.

[16] In electing to address only the issue of the stipulated dismissal, the Poloron II court merely stated that the plaintiff's argument as to that issue "is the more persuasive." Id. at 1017.

17

deliberate effort to circumvent [the] court's random selection process and secure a trial before" a particular judge. Id. at 564. As part of this effort, two separate plaintiffs each filed three separate actions, for a total of six lawsuits, i.e., (1) P1 v. D1; (2) P1 v. D2; (3) P1 v. D3; (4) P2 v. D1; (5) P2 v. D2; and (6) P2 v. D3. The allegations in each of the complaints against each defendant were, for all intents and purposes, identical. Id. at 564-565. When counsel determined that one of the cases had been assigned to the favored judge, plaintiffs immediately dismissed, pursuant to Rule 41, the remaining five actions and filed a first amended complaint in the favored action. Id. at 565. The first amended complaint included both plaintiffs and all three defendants who previously had been named in the original complaints. Id.

The Murray defendants contended that the plaintiffs' complaint should be dismissed under the two dismissal rule. While acknowledging that neither plaintiff had twice dismissed against any of the defendants, the defendants argued that Rule 41(a)(1) should apply because the two plaintiffs and all of the defendants "may be considered to be privies, thereby providing the two dismissals necessary to trigger" the rule. Id. at 566. In support of their motion, the defendants cited to two authorities – Lake at Las Vegas Investors Group, Inc. v. Pacific Malibu Dev. Corp., 933 F.2d 724 (9th Cir. 1991) and Manning v. South Carolina Dept. of Highway and Public Transp., 914 F.2d 44, 48 (4th Cir. 1990) – that had held Rule 41(a)(1) applicable where separate *defendants* were deemed privies. The Lake at Las Vegas and Manning decisions are the sole two remaining cases cited by Sysco in support of its supposition that Chi-

Chi's and Empire were the same party seeking the same claim.  The <u>Murray</u> court rightfully

rejected this argument:

> The court is not persuaded that these cases justify application of
> the 'two-dismissal" rule in this case.  While it is arguable that [the
> two plaintiffs'] relationship to the subject matter of this case is
> similar, or even identical, neither <u>Lake at Las Vegas</u> nor <u>Manning</u>
> stand for the proposition that identical interests of *plaintiffs* trigger
> the application of Rule 41(a)(1).

<u>Id</u>. at 567 (emphasis in original).[17]

The holding of the <u>Murray</u> decision is supported by <u>Huskey v. United States</u>, 29

F.Supp. 283, 284-285 (E.D. Tenn. 1939), where the court found the two dismissal rule

inapplicable when one individual filed and dismissed two separate actions as (1) the

administrator of a deceased's estate, and (2) the executor of the same deceased's will.  When the

plaintiff brought a third action, this time again as executor, the court refused to dismiss it

pursuant to the two-dismissal rule.  Rather, the court:

> reached the conclusion that since the rules are procedural and do
> not undertake to operate upon vested substantive rights of parties
> litigant, that the construction sought by the defendant of said rule is
> not justified.  ***The [second dismissal] was the first voluntary
> dismissal of a suit in which the actually beneficially interested
> plaintiff in the present suit was a party.***  While the suit [as
> administrator] was a suit on the same claim ... it was not instituted
> for the benefit of the present named beneficiary under the will, the
> actually beneficially interested plaintiff in the present suit. ¶ To
> construe the rule as urged by defendant would be to deny the
> present beneficially interested plaintiff a right under the terms of

---

[17]  The case of <u>Lake at Las Vegas Investors Group, Inc. v. Pacific Malibu Dev. Corp.</u>, 933 F.2d 724 (9th Cir.
1991)was cited by Sysco in its motion.  The <u>Murray</u> court effectively distinguished <u>Lake at Las Vegas</u> in a manner
that is equally applicable to the present action, finding that the case merely held that the relationship between
multiple defendants was "sufficient to render them 'substantially the same' for purposes of" the two dismissal rule.
<u>Murray</u>, 145 F.R.D. at 566.

> the contract and the applicable statutes. She has had but one suit
> prior to the present one, and under the rule is entitled to maintain
> the present suit....

Id. (emphasis added).

The analyses of the Murray and Huskey courts certainly apply to the present

action. Here, there are two distinct plaintiffs, each seeking to recover their own losses in

separate actions. Although Empire filed its action in Chi-Chi's name, Empire explicitly stated in

its complaint that it was suing solely in its capacity as a subrogee. This is precisely the

circumstance in which Huskey holds that this Court should look past the caption to determine the

beneficial party. Murray goes even further. Under Murray, the two dismissal rule is inapplicable

even if Chi-Chi's and Empire's interests are deemed identical (which they are not), simply

because they are distinct parties.

While Murray and Huskey establish that the plaintiff in both dismissed actions

must be identical (both in name *and* interest), the two dismissal rule also requires that the *claims*

be identical. In Brown v. Hartshorne Pub. Sch. Dist., 926 F.2d 959 (10th Cir. 1991), the Tenth

Circuit Court of Appeals held that two prior voluntary dismissals of an employment

discrimination action did not bar a third action under Rule 41(a)(1) where the new action

asserted discrimination during a different time period than had been alleged in the prior actions.

The court therefore held that, although the plaintiff was identical in all cases, "the first two

dismissals were not 'based on or including the same claim' as the third and present actions

20

within the meaning of Rule 41(a)(1)." Id. at 961. The court concluded that the earlier dismissals "are therefore irrelevant for purposes of the two dismissal rule." Id.

Any other application of the two dismissal rule would be punitive to Chi-Chi's, confer an extraordinary windfall on Sysco based on the acts of a third party, and be an anomaly. Allowing Sysco to block Chi-Chi's arbitration by virtue of a dismissal by a subrogated insurer would open the doors to all types of mischief. Any party could simply assert a claim that is not its own and then twice dismiss such claim, to the detriment of the real party in interest.

Here, Chi-Chi's and Empire's status as insured and partially subrogated insurer fully support Chi-Chi's argument. Under long-standing United States Supreme Court precedent, an insured and its partially subrogated insurer each have a right to pursue their own action. Such was the precise holding of United States v. Aetna Cas. & Surety Co., 338 U.S. 366, 381 (1949), which held that an insurer-subrogee, who has substantial equitable rights, qualifies as a "real party in interest." The court further analyzed how such a subrogee can pursue its rights:

> In cases of partial subrogation the question arises whether suit may be brought by the insurer alone, whether suit must be brought in the name of the insured for his own use and for the use of the insurance company, or whether all parties in interest must join in the action.... No reason appears why [the "use" practice] should now be required in cases of partial subrogation, since both insured and insurer 'own' portions of the substantive right and should appear in the litigation in their own names.... [¶] [E]ither party may sue.

Id. at 381-382.

The <u>Aetna</u> court further held, under the predecessor to Rule 41, Rule 19, that while both an insured and its partially subrogated insurer are necessary parties to an action brought by either

> they are clearly not 'indispensable' parties under the familiar test ... that such parties 'have an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience.

<u>Id</u>. at 382 (fn. 19).[18]

The <u>Aetna</u> rule thus primarily manifests itself in the context of a defendant, faced with a lawsuit by either an insured or partially subrogated insurer, seeking to join the other. Similarly, the court in <u>Krueger v. Cartwright</u>, 996 F.2d 928 (7th Cir.1993) held that a partially subrogated insurer could not join litigation by its insured against a tortfeasor where such joinder would destroy diversity jurisdiction. This application of the rule was summarized in <u>St. Paul Fire and Marine Ins. Co. v. Universal Builders Supply</u>, 409 F.3d 73, 81 (2nd Cir. 2005), where the court, citing <u>Aetna</u>, concluded that in partial subrogation circumstances, either party may sue "without the presence of the other." Further, where joinder of the absent insured or insurer would deprive a court of jurisdiction, the court "may adjudicate the rights of the suing party alone; the consequence is that the defendant 'may have to defend two or more actions on the

---

[18] Thus, the <u>Aetna</u> court left the burden of moving to join the missing party under Rule 19 to the defendant. <u>Id</u>. at 382.

22

same tort.'" Id. Thus, an insurer or insured may, if not joined in an original action, properly bring a second action to recover its unique damages.

In the instant case, Sysco suggests (for the first time on appeal) that, because of the parties' contractual choice of law agreement, Kentucky law should control the issue of real party in interest. This, however, is a distinction without a difference, as a review of the authorities cited by Sysco confirms that Kentucky is fully in accord with the federal decisions discussed above.

For instance, Louisville & N.R. Co. v. Mack Mfg. Corp., 269 S.W.2d 707 (Ky. 1954), is a leading Kentucky case repeatedly cited by Sysco. The Louisville court expressly adopted the U.S. Supreme Court's Aetna holding, confirming that under Kentucky law both an assignee and assignor, in the event of a partial assignment, are real parties in interest as to that portion of the claim which they hold. Id. at 709. While the rule against splitting a cause of action applies to such claims, it is, as under Aetna, incumbent upon the defendant to insist upon its application. Id. Moreover, the court "emphasize[d]" that the rule is "not a matter of defense, and if for any reason the court cannot obtain jurisdiction of one of the owners whom the defendants desires be made a party, the action may proceed by the other owner for such part of the claim as he owns." Id. at 710 (emphasis added). Consistently, a Kentucky defendant may waive his right to the splitting of a cause of action. Asher v. G.F. Stearns Land & Lumber Co., 43 S.W.2d 1012, 1016 (Ky. 1931).

Accordingly, the Aetna/Louisville rule is applicable and relevant here. Chi-Chi's and Empire are both "real parties in interest" as to the claims they asserted in their respective complaints. As summarized in Virginia Elec. and Power Co. v. Westinghouse Elec. Corp.:

> Where there is partial subrogation, there are two real parties in interest under Rule 17. Either party may bring suit – the insurer-subrogee to the extent it has reimbursed the subrogor, or the subrogor for either the entire loss or only its unreimbursed loss. If either the subrogor or subrogee brings suit, joinder is often appropriate upon proper motion by the defendant.

485 F.2d 78, 84 (4th Cir. 1973). Both Chi-Chi's and Empire have the right to sue "without the presence of the other" to pursue "their own substantive rights." That is exactly what each did. Because the parties were pursuing *their own* substantive rights, and because they are each a real party in interest, the two dismissal rule cannot be applied.

B.   The Purpose of Rule 41(a)(1) Would Not Be Advanced by Granting Sysco's Appeal

In addition to the fact that Rule 41 does not apply because Chi-Chi's and Empire are separate parties with separate claims, the rule should not apply because its purpose would not be advanced. The Poloron II decision, discussed above, is instructive here:

> It seems to be universally accepted that the primary purpose of the 'two dismissal' rule is to prevent an unreasonable use of the plaintiff's unilateral right to dismiss an action prior to the filing of defendant's responsive pleading. [Citation omitted.] . . .
>
> The 'two dismissal' rule is an exception to the general principle, contained in Rule 41(a)(1) and honored in equity prior to the adoption of the Federal Rules, that a voluntary dismissal of an action does not bar a new suit based upon the same claim. [Citation omitted.] Where the purpose behind the 'two dismissal' exception would not appear to be served by its literal application, and where that application's effect would be to close the courthouse doors to an otherwise proper litigant, a court should be most careful not to

24

> construe or apply the exception too broadly. '[T]he entire purpose
> of the rules was to strike from judges and litigants useless shackles
> of procedure to the end that a fair trial of the essential questions
> could be had.' *Glaspell v. Davis*, 2 F.R.D. 301, 304 (D.Or.1942).
> 'The basic purpose of the Federal Rules is to administer justice
> through fair trials not through summary dismissals as necessary as
> they may be on occasion.' *Surowitz v. Hilton Hotels Corp.*, 383
> U.S. 363, 373, 86 S.Ct. 845, 851, 15 L.Ed.2d 807, 814 (1966).

Poloron II, 534 F.2d at 1017 (emphasis added).

On this basis, the Poloron II court held that the two dismissal rule does not apply where one of two dismissals is by stipulation. 534 F.2d at 1017-1018. Several other courts have also cited the purpose behind the two dismissal rule while strictly construing the rule. For example, in American Cyanamid Co. v. McGhee, 317 F.2d 295, 297-298 (5th Cir. 1963), the court, relying upon the fact that the two dismissal rule is intended "to prevent unreasonable abuse and harassment," determined that a court-ordered dismissal does not count as a Rule 41(a)(1) strike.

A similar result was reached in ASC Inv. Corp. v. Newton, 183 F.3d 1265, 1268 (11th Cir. 1999), which cited the fact that the "primary purpose of the 'two dismissal' rule is to prevent an unreasonable use of the plaintiff's unilateral right to dismiss an action prior to the filing of the defendant's responsive pleading" to support its decision that a dismissal by order of the court is not a Rule 41 strike (citing Poloron II). In Sutton Place Dev. Co. v. Abacus Mortgage Inv. Co., 826 F.2d 637, 640-641 (7th Cir. 1987), the court again ruled that a court-ordered dismissal does not constitute a strike under Rule 41(a)(1). Citing the general principle that a voluntary dismissal does not bar a new suit, the Sutton Place court further held, with

respect to the exception to the general principle embodied in the two dismissal rule that "[w]e should be especially careful not to extend the scope of such a narrow exception when the purpose of the exception would not be served." Id. at 640. Thus, the court did not feel the two dismissal rule should be applied where the plaintiff had dismissed its action "not to harass [the defendant] but to consolidate its Chicago-based litigation." Id. at 641. Here, similarly, Chi-Chi's and Empire dismissed Sysco, not for purposes of harassment, but to comply with the provisions of the parties' binding arbitration agreement.

Many other courts have reached similar conclusions and results. See Ogden Allied Sec. Servs., Inc. v. Draper & Kramer, 137 F.R.D. 259, 260-261 (N.D.Ill. 1991) (citing purpose of two dismissal rule as basis for ruling that defendants must be the same, substantially the same, or in privity); Orr v. Stuart, 32 F.R.D. 435, 440-441 (W.D.Ark. 1963) (holding that second dismissal by court is not a Rule 41(a)(1) strike and stating that "the two dismissal rule should be strictly construed"); and Smith, Kline & French Labs. v. A.H. Robins Co., 61 F.R.D. 24, 30-31 (E.D.Penn. 1973) (refusing to apply two dismissal rule to individual claims where entire complaint not dismissed, citing to policy reasons – to prevent abuse of the privilege of notice dismissal and to avoid harassment – as basis).

Another example is found in Western Group Nurseries, Inc. v. Ergas, 211 F.Supp.2d 1362, 1368-1371 (S.D.Fla. 2002), where the court cited the purpose of the two dismissal rule to "prevent duplicative, wasteful and harassing litigation." The court further found that the purposes of res judicata – which it identified as "(a) to protect the defendant's

interest in avoiding the burdens of twice defending a suit; and (b) to avoid unnecessary judicial waste" – would not be well served where defendant had failed to raise the two dismissal rule for ten years. The court further stated that it "is clear that the two dismissal rule does not apply where the defendant consents to one or more of the voluntary dismissals." Id. at 1371.[19]

Among the many decisions that have strictly construed the two dismissal rule, two cases stand out with respect to the present action. In Island Stevedoring, Inc. v. Barge CCBI, 129 F.R.D. 430, 431-432 (D.P.R. 1990), the court held that Rule 41(a)(1)'s two dismissal rule did not apply where the first dismissal resulted from negotiations and a consent agreement among the parties. In reaching this holding, the court stated the now-universally followed rule that "a dismissal by stipulation knowingly consented to by all the parties does not trigger the two dismissal rule." Id. at 432. Importantly, the court also stated that "[w]hile the parties did not file a formal stipulation, the record in the case clearly indicates that the first dismissal resulted from negotiations and a consent agreement among the parties." Id. Citing the purpose of the two dismissal rule as stated in Poloron II, the Island Stevedoring court therefore rejected the defendant's argument that a formal stipulation was required, finding that the first dismissal "was in essence, if not in form, by stipulation." Id.

---

[19] Some courts have also examined state statutes that are identical or nearly identical to Rule 41(a)(1). For example, in Kuhn v. Williamson, 122 F.R.D. 192, 194-195 (E.D.N.C. 1988), the court applied North Carolina's identical version of the two dismissal rule, holding that it must be "strictly construed" and that dismissal of a third action was inappropriate where one prior case had been dismissed before the defendant likely even knew about it. Similarly, in First Equity Fed., Inc. v. Phillips Dev., LC, 52 P.3d 1137, 1140-1141 (2002), the Utah Supreme Court analyzed Utah's nearly identical version of Rule 41(a)(1). The court held that Utah's Rule 41(a)(1) is a "dispositive procedural rule [that] should be applied narrowly" and that "a broad application of the two-dismissal rule is not warranted because its underlying purpose is less than compelling.... [T]he ostensible purpose behind the two-dismissal rule is to 'prevent vexatious suits and delays in litigation by repetitious filings and dismissals.'" Id. at 1141.

The Ninth Circuit Court of Appeals reached a similar result in an unpublished decision, <u>TCW Special Credits v. Fishing Vessel Chloe Z</u>, 2000 WL 1277922 (9th Cir. 2000) [App. at Tab E], which applied Hawaii's parallel two dismissal rule. The <u>TCW</u> court, relying upon the oft-cited purposes of Rule 41, found that "strict application of the two dismissal rule is not warranted" where the notice dismissal of a Hawaii case "was preceded by discussions between the parties about litigating the action in Guam." <u>Id</u>. at *2. Thus, the court found that although the dismissal was not by formal stipulation, it "was not unilateral as all parties tacitly agreed to the dismissal in favor of litigating the action in Guam." <u>Id</u>.

A similar result should be reached here. It is undisputed that Chi-Chi's and Empire both dismissed their court actions in response to Sysco's assertion of its arbitration rights. Indeed, the dismissals occurred only after counsel for Sysco raised the specter of mandatory arbitration. <u>See</u> Gordon Declaration [App. at Tab A]. There was no harassment of Sysco. Neither party abused its right to notice dismissal. There was no waste of judicial resources. To the contrary, both Chi-Chi's and Empire took appropriate steps to minimize the burden on the courts and to satisfy Sysco. Sysco is now exactly where it demanded its rights to be adjudicated, i.e., in arbitration. Under these circumstances, there is no basis for "closing the courthouse doors" on two proper and separate litigants who merely dismissed separate actions that asserted separate claims to comply with a contractual obligation to arbitrate. Under these circumstances, a "strictly construed" two dismissal rule cannot be applied to bar Chi-Chi's arbitration proceeding.

28

## VI.
## THE COURT'S DECISION IN THE PENNSYLVANIA
## ACTION HAS NO BEARING ON THE PRESENT APPEAL

All but ignoring the vital differences between the two dismissal rule and the first

filed rule, Sysco argues that this Court should follow the decision of the U.S. District Court for

the Western District of Pennsylvania. As discussed above, that court granted Castellini's motion

to dismiss Chi-Chi's complaint in that court under the so-called first filed rule, based on the

existence of Empire's action against Castellini pending in Delaware. But, in so doing, the

Pennsylvania court was applying a substantially different standard than that applicable to the

present appeal.

Specifically, as stated by Judge McVerry in his opinion in Chi-Chi's Pennsylvania

action, the first filed rule is employed by courts to enjoin "the subsequent prosecution of '*similar*

*cases* ... in different federal district courts.'" (Citing EEOC v. Univ. of Pennsylvania, 850 F.2d

969, 971 (3rd Cir. 1988)). For an action to be deemed duplicative under the first-filed rule, it is

not necessary that litigants be the "same parties," but rather merely that they "at least such as

represent the same interest." In re Porter, 295 B.R. 529, 543 (Bankr. E.D.Pa. 2003). In fact,

Judge McVerry made no finding as to the real party in interest in each action. Moreover, the

first-filed rule mandates that in cases of concurrent jurisdiction, "the court which first has

possession of the *subject* must decide it." EEOC, 850 F.2d at 971. A court is to enjoin the

subsequent prosecution of *similar cases* in different federal courts." Id. (emphasis added). The

decision "to invoke the first-filed rule is an equitable determination that is made on a case-by-

case discretionary basis." <u>Nutrition & Fitness, Inc. v. Blue Stuff, Inc.</u>, 264 F.Supp.2d 357, 360

(W.D.N.C. 2003).

      It is under the above standards, not the standards applicable to the Rule 41 two

dismissal rule, which were applied by the Pennsylvania District Court.  A court's ruling can have

no preclusive effect where, as here, the legal standards to be applied are substantially different.

<u>Raytech Corp. v. White</u>, 54 F.3d 187, 191 (3rd Cir. 1995); <u>Peterson v. Clark Leasing Corp.</u>, 451

F.2d 1291 (9th Cir. 1971) ("Issue not identical [for collateral estoppel purposes] if the second

action involves application of a different legal standard, even though the factual setting of both

suits be the same."); <u>Copeland v. Merrill Lynch & Co., Inc.</u>, 47 F.3d 1415, 1422 (5th Cir. 1995)

(citing <u>Brister v. A.W.I., Inc.</u>, 946 F.2d 350, 354, fn. 1 (5th Cir. 1991) ("[E]ven when issues are

stated in 'nearly identical language,' collateral estoppel is unavailable when there are disparate

policies underlying each inquiry which result in definite differences in application and result.")

      Not only is the standard on a first-filed motion different, so is the result.  The

first-filed rule is, in substance and effect, a rule of consolidation.  The result of a successful

motion filed pursuant to the first-filed rule is not – in contrast to the two dismissal rule – an

adjudication on the merits forever barring a party's claims.  To the contrary, a party which loses

a first filed motion must merely join or otherwise participate in the earlier filed action.  The

effect of the Rule 41(a)(1) two dismissal rule is far more draconian.  When applied, it results in a

dismissal with prejudice.  Therefore, because the outcome of the first-filed rule is less harsh, and

in fact involves preservation of the claim, courts are more lenient in applying the rule than are

courts in applying the two dismissal rule (where courts are instructed, as demonstrated above, to consider the underlying purpose of the rule).

For these reasons, Judge McVerry's findings in the context of the first-filed rule are of no precedential value, and should be of no persuasive value, to this Court.

*[Remainder of page intentionally left blank]*

31

**VII.**

**CONCLUSION**

Based on the foregoing, appellee Chi-Chi's, Inc. respectfully requests that this

Court deny defendants Sysco Corporation and The Sygma Network, Inc.'s Appeal of the

Bankruptcy Court's January 18, 2006 Order Finding that Rule 41 Does Not Bar Further

Proceedings Against Sysco Corporation and The Sygma Network, Inc.


Dated: June 12, 2006

GORDON & HOLMES
Frederic L. Gordon, Esq.
Rhonda J. Holmes, Esq.
Douglas J. Billings, Esq.
223 West Date Street
San Diego, CA 92101
Telephone: (619) 696-0444
Facsimile: (619) 696-1144

- and -

PACHULSKI STANG ZIEHL YOUNG JONES
& WEINTRAUB LLP


*Rachel L. Werkheiser*

Laura Davis Jones (DE Bar No. 2436)
Bruce Grohsgal (DE Bar No. 3583)
Rachel Lowy Werkheiser (DE Bar No. 3753)
Sandra G. M. Selzer (DE Bar No. 4283)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

Counsel to Appellee, William Kaye, as Liquidating
Trustee for the Chi-Chi's, Inc., *et al.* Liquidating
Trust


32

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) Case No. 03-13063 (KJC) |
|  | ) |
| CHI-CHI'S INC., | ) Jointly Administered |
| a Delaware corporation, et al., [1] | ) |
|  | ) Chapter 11 |
| Debtors. | ) |
| ———————————————— | ) |
|  | ) |
| SYSCO CORPORATION and | ) |
| THE SYGMA NETWORK, INC., | ) |
|  | ) |
| Appellant, | ) |
|  | ) |
| vs. | ) Civil Action No. 06-169 (KAJ) |
|  | ) Adversary Proc. No. 05-52726 |
| CHI-CHI'S, INC.,, | ) |
|  | ) |
| Appellee. | ) |
| ———————————————— | ) |

## **AFFIDAVIT OF SERVICE**

|  |  |
|---|---|
| STATE OF DELAWARE | ) |
|  | ) ss |
| COUNTY OF NEW CASTLE | ) |

    Kathleen Forte Finlayson, being duly sworn according to law, deposes and says

that she is employed by the law firm of Pachulski Stang Ziehl Young Jones & Weintraub LLP,

counsel for the Debtors/Appellee, in the above-captioned action, and that on the 12th day of June

2006, she caused a copy of the following documents to be served upon the attached service lists

in the manner indicated:

---

[1] The Debtors consist of the following entities: Chi-Chi's, Inc., CCMR of Cantonsville, Inc., CCMR of Cumberland, Inc., CCMR of Frederick, Inc., CCMR of Greenbelt, Inc., CCMR of Harford County, Inc., CCMR of Maryland, Inc., CCMR of Ritchie Highway, Inc., CCMR of Timonium, Inc., Chi-Chi's of West Virginia, Inc., CMM Dissolution, Inc., Koo Koo Roo, Inc., Maintenance Support Group, Inc., Koo Koo Roo Licensing Systems, Inc., the Hamlet Group, Inc., H.H. of Maryland, Inc. and H.H.K. of Virginia.

(1)  APPELLEE CHI-CHI'S INC.'S ANSWERING BRIEF IN OPPOSITION TO
SYSCO CORPORATION AND THE SYGMA NETWORK, INC.'S APPEAL OF THE
BANKRUPTCY COURT'S JANUARY 18, 2006 ORDER FINDING THAT RULE 41
DOES NOT BAR FURTHER PROCEEDINGS AGAINST SYSCO CORPORATION
AND THE SYGMA NETWORK, INC.

and

(2)  APPENDIX OF EXHIBITS AND UNREPORTED CASE TO
APPELLEE CHI-CHI'S, INC.'S ANSWERING BRIEF

Kathleen Forte Finlayson

Sworn to and subscribed before
me this 12th day of June 2006

Notary Public
My Commission Expires  4/4/07

MARY E. CORCORAN
Notary Public
State of Delaware
My Commission Expires Nov. 4, 2007

## SPECIAL SERVICE LIST
### JUNE 12, 2006

*Via Hand Delivery*
*(counsel for Sysco Corporation)*
Mark E. Felger, Esquire
Jeffrey R. Waxman, Esquire
Cozen O'Connor
1201 North Market Street, Ste 1400
Wilmington, DE  19801

*Via Hand Delivery*
*(counsel for Empire Indemnity Insurance*
*  Company, d/b/a Zurich)*
Bernard George Conaway, Esquire
L. Jason Cornell, Esquire
Fox Rothschild LLP
919 N. Market St., Ste 1300
Wilmington, DE  19801

*Via Hand Delivery*
*(counsel for Empire Indemnity Insurance*
*  Company, d/b/a Zurich)*
Richard Dennis Abrams, Esquire
Heckler & Frabizzio, PA
800 Delaware Avenue
Wilmington, DE  19801

*Via Overnight Delivery*
*(counsel for Sysco Corporation)*
Philip G. Kircher, Esquire
Aaron Krauss, Esquire
Cozen O'Connor
1900 Market Street
Philadelphia, PA  19103

*Via Overnight Delivery*
Gary Becker, Esquire
Dinsmore & Shol LLP
255 East Fifth Street
Cincinnati, OH  45202

13894-001\DOCS_DE:112382.1

Chi-Chi's Core Group Service List
Case No. 03-13063
June 12, 2006
Document No. 81488
003 – Hand Delivery
002 – First Class Mail


(Counsel to Liquidating Trustee)
Laura Davis Jones, Esquire
Bruce Grohsgal, Esquire
Rachel Lowy Werkheiser, Esquire
Sandra Selzer, Esquire
Pachulski Stang Ziehl Young Jones &
Weintraub LLP
919 Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE  19899-8705

**Hand Delivery**
(Parcels)
Vito I. DiMaio
Parcels, Inc.
4 East 7th Street
Wilmington, DE  19801

**Hand Delivery**
(United States Trustee)
David Klauder, Esquire
844 North King Street, Room 2207
Wilmington, DE  19801

**Hand Delivery**
(Counsel to the OCUC)
Frederick B. Rosner, Esquire
Jaspan Schlesinger Hoffman LLP
913 N. Market Street, 12th Floor
Wilmington, DE  19801

**First Class Mail**
(Former Counsel to Debtors)
William N. Lobel, Esquire
Alan J. Friedman, Esquire
Michael D. Neue, Esquire
Evan Borges, Esquire
Irell & Manella LLP
840 Newport Center Drive, Ste 400
Newport Beach, CA  92660

**First Class**
(Counsel to Liquidating Trustee)
Charles R. Gibbs, Esquire
Akin Gump Strauss Hauer & Feld LLP
1700 Pacific Avenue Suite 4100
Dallas, TX  75201-4675


13894-001\DOCS_DE:81488.1