IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CHI-CHI'S, INC., et al., | ) | Case No. 03-13063 |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | Adv. Proc. No. 05-52726-RB |
| | ) | |
| SYSCO CORPORATION and | ) | Civil Action No. 06-169-KAJ |
| THE SYGMA NETWORK, INC., | ) | |
| | ) | |
| Appellants, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CHI-CHI'S, INC., | ) | |
| | ) | |
| Appellee. | ) | |
| | ) | |

**APPENDIX OF EXHIBITS AND UNREPORTED CASE TO
APPELLEE CHI-CHI'S, INC.'S ANSWERING BRIEF IN OPPOSITION
TO SYSCO CORPORATION AND THE SYSCO NETWORK, INC.'S
APPEAL OF THE BANKRUPTCY COURT'S JANUARY 18, 2006
ORDER FINDING THAT RULE 41 DOES NOT BAR FURTHER PROCEEDINGS
AGAINST SYSCO CORPORATION AND THE SYGMA NETWORK, INC.**

# INDEX OF EXHIBITS

Title _____    Tab No.

Declaration of Frederic L. Gordon in Support of Defendant Chi-Chi's, Inc.'s
Opposition to Plaintiff's Sysco Corporation and The Sygma Network, Inc.'s
Motion to Enjoin Defendant Debtor Chi-Chi's, Inc. from Initiating, Continuing
And/Or Participating in any Additional Actions, Including Arbitration, Against
Them in Connection with the Hepatitis Claims (Adv. Docket No. 16)...........................    A

    Exhibit 1 – Distribution Service Agreement.................................................    1
    Exhibit 2 – Commercial Lines Policy, Empire Indemnity Insurance Co..................    2
    Exhibit 3 – Chi-Chi's, Inc. Complaint...................................................    3
    Exhibit 4 – Notice of Voluntary Dismissal of Defendants...................................    4
    Exhibit 5 – Stipulation of Dismissal........................................................    5
    Exhibit 6 – Complaint.......................................................................    6
    Exhibit 7 – Bankruptcy Court Adversary Proceeding 04-57064 Docket Sheet..........    7
    Exhibit 8 – Notice of Partial Dismissal.....................................................    8
    Exhibit 9 – Complaint and Demand for Jury Trial.........................................    9
    Exhibit 10 – Order Re Abstention..........................................................    10
    Exhibit 11 – Amended Third Party Complaint in Civil Action and
        Demand for Trial by Jury..........................................................    11
    Exhibit 12 – Stipulation and Order..........................................................    12
    Exhibit 13 – Arbitration Claim..............................................................    13
    Exhibit 14 – Memorandum of Law in Support of Motion to Dismiss....................    14
    Exhibit 15 – Motion and Incorporated Memorandum of Law of
        Defendant Castellini Company, LLC to Withdraw the Reference...............    15
    Exhibit 16 – Plaintiff's Response to Defendant Castellini's Motion for a
        Determination that the Adversary Proceeding is a Non-Core
        Proceeding and Motion to Withdraw the Reference................................    16
    Exhibit 17 – Memorandum Order..........................................................    17

In re Chi-Chi's, Inc., Case No. 03-13063, transcript of hearing on Nov. 16, 2005 (Del.
Bankr. Nov. 22, 2005) (Docket No. 2113).........................................................    B

## INDEX OF UNREPORTED CASES

| Title | Tab No. |
| --- | --- |
| Sysco Corp. v. Chi-Chi's (*In re* Chi-Chi's, Inc.), Ch. 11 Case No. 03-13063, Adv. Case No. 05-52726, mem. op. (Del.Bankr. Jan. 19, 2006).................................... | C |
| Sysco Corp. v. Chi-Chi's (*In re* Chi-Chi's, Inc.), Ch. 11 Case No. 03-13063, Adv. Case No. 05-52726 (Del.Bankr. Jan. 19, 2006)........................................... | D |
| TCW Special Credits v. Fishing Vessel Chloe Z, 238 F.3d 431, 2000 WL 1277922 (9th Cir. 2000)................................................................ | E |

Dated: June 12, 2006

GORDON & HOLMES
Frederic L. Gordon, Esq.
Rhonda J. Holmes, Esq.
Douglas J. Billings, Esq.
223 West Date Street
San Diego, CA 92101
Telephone: (619) 696-0444
Facsimile: (619) 696-1144

and

PACHULSKI STANG ZIEHL YOUNG JONES &
WEINTRAUB LLP

*Rachel L. Werkheiser*

Laura Davis Jones (DE Bar No. 2436)
Bruce Grohsgal (DE Bar No. 3583)
Rachel Lowy Werkheiser (DE Bar No. 3753)
Sandra G. M. Selzer (DE Bar No. 4283)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

Counsel to Appellee, William Kaye, as Liquidating
Trustee for the Chi-Chi's, Inc., et al. Liquidating
Trust

# A - Declaration

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CHI-CHI'S, INC., et al., | ) | Case No. 03-13063 (RB) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | Adv. Proc. No. 05-52726-RB |
| | ) | |
| SYSCO CORPORATION and | ) | |
| THE SYGMA NETWORK, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CHI-CHI'S, INC., | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

**DECLARATION OF FREDERIC L. GORDON IN SUPPORT OF DEFENDANT CHI-CHI'S, INC.'S OPPOSITION TO PLAINTIFFS SYSCO CORPORATION AND THE SYGMA NETWORK, INC.'S MOTION TO ENJOIN DEFENDANT DEBTOR CHI-CHI'S, INC. FROM INITIATING, CONTINUING AND/OR PARTICIPATING IN ANY ADDITIONAL ACTIONS, INCLUDING ARBITRATION, AGAINST THEM IN CONNECTION WITH THE HEPATITIS CLAIMS**

I, Frederic L. Gordon, declare as follows:

1.      I am an attorney at law duly admitted to practice before all the courts of the State of California, admitted pro hac vice for purposes of the present action in Delaware, and am a partner with the law firm of Gordon & Holmes, special litigation counsel and attorneys of record herein for Debtor/Defendant Chi-Chi's, Inc. I have represented Chi-Chi's in this capacity at all times relevant to this motion.

DOCS_DE:112479.1

1

Date 10.21.05
Docket # 10

2.    I make this declaration based upon my own personal knowledge and if called as a witness could and would competently testify thereto, except as to those matters stated upon information and belief, and as to those matters, I believe them to be true.

3.    I am informed and believe that on or about June 26, 2001, debtor/defendant Chi-Chi's and plaintiff Sysco entered into a "Distribution Service Agreement." In the agreement, Sysco expressly agreed to comply with claimant Chi-Chi's Distributor Quality Program. Under that program, Sysco was required to ensure that all green onions were "manufactured, stored and transported in accordance with all applicable local, state and federal requirements." These requirements specifically included that no article distributed to Chi-Chi's "shall be adulterated or misbranded within the meaning of the Federal Drug and Cosmetic Act." The agreement also contained indemnity provisions, attorney's fees provisions, and an arbitration provision. A true and correct copy of relevant portions of the June 26, 2001 Distribution Service Agreement is attached hereto as Exhibit 1.

4.    In November 2003, an outbreak of Hepatitis A occurred in western Pennsylvania. More than 650 people became ill and, to date, at least four individuals have died. Through epidemiological analyses, federal investigators traced the outbreak to the Monaca, Pennsylvania Chi-Chi's. The reports of their analyses, with which I am familiar, further led to a determination that the source of the outbreak was human consumption of Hepatitis A-contaminated green onions, served by Chi-Chi's in raw form as an ingredient in salsa and as a garnish on other dishes.

5.    As a result of the 2003 Hepatitis A outbreak traced to debtor Chi-Chi's Monaca, Pennsylvania restaurant, several hundred claims have been filed against Chi-Chi's. I am informed and believe that nearly all of these claims have been settled and that the total amount of

DOCS_DE:112479.1

2

bodily injury claims paid to date is approximately $31 million. As a result of the size of these claims, Chi-Chi's tendered claims to its primary insurer as well as several excess carriers. These carriers include Empire Indemnity Insurance Company ("Empire"), Scottsdale Insurance Company, and Federal Insurance Company. I am informed and believe that Empire has paid the full amount of its $10,000,000 policy. A true and correct copy of relevant provisions of the subject "Commercial Lines Policy" issued to Chi-Chi's parent, Prandium, Inc., by Empire is attached hereto as Exhibit 2. Each of the insurers identified herein has asserted a right in subrogation to recover amounts paid to bodily injury claimants on Chi-Chi's behalf.

6.       On July 20, 2004, I filed, on behalf of Chi-Chi's, an adversary complaint against Castellini Company, LLC ("Castellini"), Sysco Corporation, and Sygma Network, Inc. (hereafter collectively "Sysco") for the purpose of recovering losses suffered by Chi-Chi's as a result of the Hepatitis A outbreak (Adv. Proc. No. 04-54170). The complaint sought to recover two primary elements of damage on behalf of Chi-Chi's: (1) Chi-Chi's direct losses, including lost profits, property damage, loss of business value, loss of goodwill, crises management expenses, and attorney's fees, and (2) indemnity for amounts paid to various third parties, including self-insured retention limits Chi-Chi's was required to pay to bodily injury victims under its liability policies. Chi-Chi's present arbitration claim against Sysco is substantively identical to Chi-Chi's prior complaint, and includes claims for Chi-Chi's direct losses (as described above) as well as for indemnity arising out of (1) Chi-Chi's payments to bodily injury claimants pursuant to Chi-Chi's $500,000 self-insured retention limit, (2) a class of persons who alleged injury as a result of receiving Immune Globulin shots administered by the State of Pennsylvania, and (3) payment to the State of Pennsylvania for the costs of such shots. The July 20, 2004 complaint contained several theories for recovery of Chi-Chi's damages, including breach of express and implied

DOCS_DE:112479.1

3

dismissal of Sysco without prejudice is attached hereto as Exhibit 4. A true and correct copy of the November 12, 2004 stipulated dismissal of Castellini is attached hereto as Exhibit 5.

10.    I am informed and believe that on or about November 16, 2004, Empire filed Adversary Proceeding No. 04-57064 in this Court against the same three defendants Chi-Chi's had dismissed days earlier. A true and correct copy of Empire's complaint in Adversary Proceeding No. 04-57064 is attached hereto as Exhibit 6. I was unaware, prior to receiving the filed subrogation complaint, that Empire intended to file its own complaint. Upon review of Empire's complaint, I discovered that Empire had filed the complaint in Chi-Chi's name and had copied Chi-Chi's prior complaint nearly verbatim. However, I also noted that Empire had clearly stated in its complaint that "[t]his Complaint has been filed by Empire Indemnity Insurance Company, subrogee of the Debtor ("Subrogee"), and its subrogation rights as they relate to Debtor are more fully set forth in the Complaint." The fact that Empire was the real party in interest, as a subrogee of debtor Chi-Chi's, was recognized by this Court, which, in its docket, designated the plaintiff in the Empire action as "Empire Indemnity Insurance Company, Subrogee of Debtors, Chi-Chi's, Inc." Attached hereto as Exhibit 7 is a true and correct copy of the on-line docket, as of October 20, 2005, for Delaware Bankruptcy Court Adversary Proceeding No. 04-57064-RB.

11.    Despite the fact that Empire, for reasons unknown to me or to Chi-Chi's, filed a complaint superficially containing the same claims as had been asserted by Chi-Chi's, it was and is inherently true that Empire's claims must be limited to its asserted rights as a subrogee of Chi-Chi's. In this respect, not only did Empire's complaint explicitly state that it had been filed by Empire solely as a Chi-Chi's subrogee, but Empire simply had and has no right to assert any other claim. Aside from the $10,000,000 in insurance payments made by Empire on Chi-Chi's

warranties, contractual indemnity, implied indemnity, and contribution. A true and correct copy of the Complaint filed by Chi-Chi's in this Court on July 20, 2004 is attached hereto as Exhibit 3.

7.      Following the filing of the complaint, I began a series of conversations and negotiations with counsel for Sysco, Aaron Krauss, and counsel for Castellini, Gary Becker, which negotiations continued for several weeks. During several conversations I had with Mr. Krauss between July 2004 and November 2004, we extensively discussed the arbitration provision and I formed the clear belief that, if Chi-Chi's did not dismiss the action against his client, Sysco would seek to compel arbitration pursuant to the arbitration provision contained in the June 26, 2001 Distribution Service Agreement between Chi-Chi's and Sysco. Upon my review of the arbitration provision and the applicable authorities, I agreed with Mr. Krauss's position that Sysco could successfully compel arbitration of Chi-Chi's claims.

8.      Also during these negotiations, in or about July to November 2004, I was informed by Mr. Becker, Castellini's counsel, that Castellini intended to request a jury trial and, as a result, move to have the District Court withdraw its reference of Chi-Chi's adversary proceeding that had been filed with this Court. Again, my review of the applicable authorities led me to believe that any such motion by Castellini was likely to succeed.

9.      In light of Sysco's insistence that it intended to compel arbitration, and in light of Castellini's intended motion, I agreed to dismiss Sysco without prejudice, with the intention, if necessary, to commence a later arbitration proceeding. I also executed, on Chi-Chi's behalf, a stipulation providing that the Chi-Chi's v. Castellini matter would be dismissed by stipulation and re-filed in the U.S. District Court for the Central District of California. The dismissals were in fact filed on November 12, 2004. A true and correct copy of the November 12, 2004

behalf, Empire, to my knowledge, does not contend Chi-Chi's has assigned any other claim to Empire. Chi-Chi's retains, and has always retained, its own right to recover for its own losses.

12.    Empire's complaint was filed by its own counsel acting solely on behalf of Empire, and entirely independent of Chi-Chi's. Chi-Chi's was not and has never been represented by Empire's litigation counsel.

13.    On or about November 22, 2004, Chi-Chi's filed a new complaint in the U.S. District Court for the Central District of California, naming only Castellini as a defendant (Case No. 2:04-cv-09539-GPS-AJW). A true and correct copy of Chi-Chi's November 22, 2004 complaint is attached hereto as Exhibit 9.

14.    Consistent with his previously stated positions regarding arbitration, I was contacted by Sysco's counsel, Mr. Kruass, following the November 16, 2004 filing of Empire's complaint. Mr. Krauss again referenced the existence of the parties' arbitration agreement and I again understood Sysco would seek to compel arbitration if the Empire complaint was not dismissed as against Mr. Krauss's clients. In light of this circumstance, I contacted, on or about December 2, 2004, counsel for Empire. At that time, I relayed Mr. Krauss's intention to compel arbitration. I am informed and believe that, on or about December 7, 2004, Empire filed a dismissal of its litigation claims against Sysco and Sygma without prejudice. I am further informed and believe that the reason Empire filed its dismissal of Sysco was the Empire's recognition of the fact that claims against Sysco must be arbitrated. A true and correct copy of Empire's December 7, 2004 dismissal of Sysco and Sygma without prejudice is attached hereto as Exhibit 8.

15.    On or about June 1, 2005, the U.S. District Court for the Central District of California entered an order, over the objection of all parties (including insurers Scottsdale and

DOCS_DE:112479.1

6

Empire, who had sought to intervene), abstaining from hearing the Chi-Chi's v. Castellini matter pursuant to 28 U.S.C. §1334(c)(1). A true and correct copy of the court's June 1, 2005 order is attached hereto as Exhibit 10.

16.     In light of the California court's abstention, Chi-Chi's, on or about June 6, 2005, re-filed its lost profits and indemnity complaint against Castellini as a third party complaint in the U.S. District Court for the Western District of Pennsylvania. The complaint was filed in Funkhouser v. Chi-Chi's (Case No. 2:05-cv-000638-TFM), a bodily injury case recently removed to the federal court by Chi-Chi's. A true and correct copy of Chi-Chi's June 6, 2005 complaint is attached hereto as Exhibit 11.

17.     In or about mid-July 2005, I contacted Mr. Krauss to inform him that Chi-Chi's intended to commence an arbitration proceeding against his clients. Following a series of communications between Mr. Krauss and my office, a scheduling stipulation was reached (a true and correct copy of the Chi-Chi's-Sysco stipulation is attached hereto as Exhibit 12), Chi-Chi's filed an arbitration claim with ADR Options in Philadelphia, Pennsylvania (a true and correct copy of Chi-Chi's September 8, 2005 Arbitration Claim is attached hereto as Exhibit 13), and, on September 23, 2005, Sysco instituted the present action was filed the instant motion.

18.     Meanwhile, on or about August 1, 2005, Castellini filed, in the Western District of Pennsylvania, a motion to dismiss Chi-Chi's third party complaint in Case No. 2:05-cv-000638-TFM. In support, Castellini argued that Empire's complaint against Castellini, then pending in this Court, requires dismissal of Chi-Chi's Pennsylvania action pursuant to the "first-filed rule." A true and correct copy of Castellini's brief in support of its Motion to Dismiss is attached hereto as Exhibit 14.

19.     I am informed and believe that also on or about August 1, 2005, Castellini, citing its request for a jury trial, filed a Motion for Withdrawal of Reference in the Empire v. Castellini matter pending before this Court. A true and correct copy of Castellini's brief in support of its August 1, 2005 Motion for Withdrawal of Reference is attached hereto as Exhibit 15. I am informed and believe Empire subsequently filed a response, in which it took no position on the motion. A true and correct copy of Empire's brief is attached hereto as Exhibit 16. I am informed and believe that Castellini's motion was fully submitted to the District Court on September 19, 2005, where it is now pending under Case No. 1:05-cv-00634-KAJ.

20.     On or about October 7, 2005, the U.S. District Court for the Western District of Pennsylvania granted Castellini's motion to dismiss Chi-Chi's third party complaint, pursuant to the first filed rule, in Case No. 2:05-cv-000638-TFM. A true and correct copy of the court's October 7, 2005 order is attached hereto as Exhibit 17.

21.     My office has been informed that Empire intends to file, within the next several days, a motion pursuant to Federal Rule of Civil Procedure 60, requesting that Empire's December 7, 2005 dismissal of Sysco and Sygma be vacated. It is my belief that Empire's Rule 60 motion, if granted, would entirely moot the issues raised by Sysco in the instant motion.

22.     Subsequent to the filing of the instant motion, Sysco and Chi-Chi's agreed to an extension for the filing of opposition and reply briefs. Pursuant to the stipulation, it was agreed that Chi-Chi's opposition was to be filed on or before October 21, 2005 and Sysco's reply brief

was to be filed on or before October 31, 2005.

I declare under penalty of perjury according to the laws of the States of Delaware and California that the facts stated in this Declaration are true, and that this declaration was executed by me on October 20, 2005 in San Diego, California.

FREDERIC L. GORDON

# EXHIBIT 1



## DISTRIBUTION SERVICE AGREEMENT

THIS DISTRIBUTION SERVICE AGREEMENT ("Agreement") is made as of the 26th day of June 2001, by and between Chi-Chi's, Inc., a Delaware corporation, (hereinafter "CC") and SYSCO Corporation, a Delaware Corporation and certain of its operating subsidiaries and/or divisions or units listed in Exhibit A attached hereto (collectively, "SYSCO"). The SYSCO operating subsidiaries, divisions and/or units listed on Exhibit A shall be referred to herein collectively as "Participating Operating Companies" and individually as "Participating Operating Company", and the facilities of the operating company The SYGMA Network, Inc. ("SYGMA") are referred to herein as "SYGMA Distribution Centers." Prandium, Inc., ("PDM"), the parent company of CC, is also a party to this Agreement for the purposes of its specific obligations and agreements hereunder, including, without limitation, those specified in Paragraphs V.C., VI, XV.D., and XVIII.

## RECITALS

A. CC and its subsidiaries and affiliated entities are the owners, licensors, operators and managers of the Chi-Chi's Mexican Restaurants (the "Restaurants"). A list of the Restaurants owned, licensed, operated and managed by CC and/or its subsidiaries and affiliated entities (hereinafter "CC Restaurants"), as of the Effective Date, is attached as Exhibit B.

B. CC desires to designate SYSCO as its primary distributor for certain products to all of the Restaurants within the geographic service areas (the "Service Area") designated by the shaded areas in Exhibit C.

## X.    COMPLIANCE WITH CC DISTRIBUTION QUALITY PROGRAM

A.    Compliance with CC Distributor Quality Program - SYSCO agrees to
comply with CC's Distributor Quality Program as referenced in Exhibit H .

## XI.    SUCCESSORS AND ASSIGNS

This Agreement shall be binding upon and inure to the benefit of the successors and
assigns of the parties hereto; provided, however, that neither party may assign this
Agreement without the prior written consent of the other party which approval shall not
be unreasonably withheld or delayed.

## XII.    NOTICES

All notices required or permitted to be given hereunder shall be in writing and sent
by facsimile (to be followed by any of the following) and personal delivery, overnight
delivery service or United States registered or certified mail, postage prepaid, return
receipt requested, addressed to the parties as follows:

> SYSCO:    SYSCO Corporation
> c/o The SYGMA Network, Inc.
> 7125 West Jefferson Avenue #400
> Lakewood, CO  80235
> Attention: Gregory K. Marshall
>                Senior Vice President
> Facsimile: (303) 988-4057
> Facsimile: (303-988-4057

## XIX.  ARBITRATION AND WAIVER OF JURY TRIAL RIGHT

A.  <u>Arbitration</u> - Disputes, claims or controversy of any kind now existing or hereafter arising between the parties to this Agreement, including, but not limited to any action, dispute, claim or controversy arising out of this Agreement or the delivery by SYSCO of any Products to CC (a "Dispute") shall be resolved by binding arbitration in Kentucky , in accordance with the Commercial Arbitration Rules of the American Arbitration Association and, to the maximum extent applicable, the Federal Arbitration Act. Arbitrations shall be conducted before one arbitrator mutually agreeable to CC and SYSCO. If the parties cannot agree on an arbitrator within thirty (30) days after the request for an arbitration, then each party will select an arbitrator and the two arbitrators will select upon a third. Judgment of any award rendered by an arbitrator may be entered in any court having jurisdiction. All fees of the arbitrator and other costs and expenses of the arbitration shall be paid by SYSCO and CC equally unless otherwise awarded by the arbitrator; provided, however, that the non-prevailing party in an arbitration shall pay all reasonable attorneys' fees and expenses incurred by the prevailing party in connection with the Dispute and the arbitration.

B.  <u>Waiver of Jury Trial Right</u> — CC and SYSCO each affirmatively waives their right to jury trial with respect to any disputes, claims or controversies of any kind whatsoever; CC and SYSCO having agreed to submit to arbitration any of such disputes, claims or controversies as set out above.

## XX.  GOVERNING LAW

This Agreement shall be governed by the internal law, and not the law of conflicts in

Executed as of the date set forth at the beginning of this Agreement.

Chi-Chi's, Inc.

By: _____

Kevin S. Relyea

President


SYSCO Corporation

By: _____

Gregory K. Marshall

Senior Vice President


For purposes of PDM's specific agreements under the Agreement, including, without limitation, its agreements under Paragraphs V.C., VI, XV.D., and XVIII.


Prandium, Inc.

By: _____

Kevin S. Relyea

Chief Executive Officer and Chairman

EXHIBIT H

PDM Distribution
Quality Program

# Distributor Quality Program

The Prandium (PDIM) Distributor Quality Program outlines the criteria, minimum quality standards, and expectation for our distributors.

PDIM has the highest commitment to quality and service. Our commitment is to provide the best dining experience possible to our Guests. To that end, we will do our utmost to protect the safety of our customers and the concepts that are part of PDIM. PDIM expects our distributors to hold the same standards.

Following is a summary of the minimum distributor requirements.

## APPROVED DISTRIBUTOR STATUS

All potential distributors must meet the requirement outlined in this document and be in full compliance with all applicable local, state and federal regulations prior to approval.

Distributors must continually demonstrate compliance via performance and inspections in accordance with Prandium Distribution Center Audit in order to maintain approved status. Approvals are specific to distribution center locations.

Any action, in violation of the standards set forth herein, will be grounds for immediate disapproval.

All approved distribution center locations will be listed in the PDIM Approved Distribution Center Directory.

## GENERAL REQUIREMENTS

### Confidentiality

All PDIM distributors and potential distributors must have on file a signed PDIM Confidentially Agreement in the form of Appendix 2 attached hereto.

### Good Manufacturing Practices (GMP's)

All distributors shall receive, store, and transport products in accordance with the applicable sections of The United States Code of Federal Regulations, "Current Good Manufacturing Practice (Sanitation) in Manufacturing, Processing, Packing, or Holding Human Food".

### Quality Assurance Programs/Systems

All distribution centers must have an established and effective quality assurance program to monitor incoming product quality, specification compliance, receiving, storage and delivery risk points, employee hygiene, and sanitation throughout the chain of distribution.

Upon request of PDIM Quality Assurance, routine quality control records shall be made available for inspection.

All distributors must have in place established and effective quality programs/systems which minimally address the following (non inclusive):

- Pest Control
- Sanitation
- Calibration
- Self-inspection Audit Program
- Preventative Maintenance
- Temperature Control
- Inventory Management (receipt, storage, transportation, rotation of ingredients)
- Hazard Analysis & Critical Control Points
- Document Control

Specific requirements are outlined in the following documents:

1. PDIM Distributor inspection. (Refer to Appendix 3)
2. Title 21, Part 100 of the United States Code of Federal Regulations, as applicable.
3. Local, State, and Federal Regulations, as applicable.

All programs will be verified through facility inspections by PDIM personnel, or their designated representatives, and document review of routine quality control records.

<u>PDIM Distribution Inspections</u>

All potential or approved distributors must have a passing score of 85% or greater on the PDIM Distributor Inspections. All facilities utilized in the transport/storage of products to be used in PDIM restaurants shall be open to PDIM management or authorized representatives for review.

The PDIM Distributor Quality Inspection outlines criteria for pest control, temperature control, sanitation/GMPs, inventory management, transport, and programs.

Note: Conditions for an automatic "Unsatisfactory Rating" include, but are not limited to:
- An overall score of less than 85%
- An unsatisfactory rating in any of the 6 inspection areas
- An observed critical violation (examples include):
  - Product adulteration/contamination
  - No pest control/observed infestation
  - Temperature violation; storage, transport of potentially hazardous foods exceeding specified temperature requirements
- Storage, holding or distribution of products from unapproved locations or facilities
- Storage, holding or distribution of products from unapproved sources

### Storage/Transportation

All distributors shall receive, hold, and transport products in a manner to ensure they are:

- Protected from contamination at all times
- Rotated and distributed by FIFO (first in, first out rotation)
- At the specified temperatures to prevent temperature abuse such as thawing, overheating, water damage, dehydration, etc.

All finished product shall be transported in trucks/trailers which are clean and in good working order and that have effective refrigeration (where applicable), meeting the temperature requirements outlined in the detailed product specifications.

### Packaging

All distribution centers are responsible for insuring that product packaging is intact.

### Labels

Distribution centers shall have responsibility that package labels comply with all applicable laws and contain the following information: product name, net weight, name and address of supplier or distributor, location (if required by applicable law), and product identity.

### Restaurant Performance/Acceptability

It is critical that the product delivered to PDIM restaurants must meet all reasonable PDIM restaurant performance, flavor and appearance requirements. Variance to this requirement is a critical defect and grounds for product rejection.

For any Product that is unacceptable to PDIM in its reasonable discretion and PDIM gives distributor notice within 24 hours of delivery of such Product, distributor will arrange for pick-up of Product and will credit PDIM for same as long as the product is in the same condition as delivered.

### Inventory Management

The distributor shall ensure inventory is rotated according to FIFO and in accordance with PDIM shelf life matrices. Damaged/unusable product shall be segregated from usable product.

The distributor shall immediately notify PDIM Purchasing of any potential supply issues and PDIM Quality Assurance of any shelf life or other quality issues.

## APPROVED SUPPLIERS AND INGREDIENTS

PDIM has developed extensive specification for our ingredients (both food and non-food) and standards for our suppliers. In accordance with these requirements, only approved products from approved suppliers can be used in the PDIM system. The approved products and suppliers are monitored regularly by the PDIM Quality Assurance Department in order to assure compliance to standards of quality.

PDIM approved suppliers and approved ingredients are listed in the PDIM Approved Supplier Directory. Any amendments to this list must be given in writing to distributor.

**Note:** Approved suppliers and approved ingredients are restaurant concept specific and may vary in different geographic areas.

Standard non-proprietary items must be approved by designated PDIM management personnel prior to distribution to PDIM restaurants.

The distributor shall be responsible to ensure that all standard non-proprietary are manufactured, stored and transported in accordance with all applicable local, state and federal regulations. These regulations include, but are not limited to:

- Title 21, Part 110 of The United States Code of Federal Regulations, "Current Good Manufacturing Practice (Sanitation) in Manufacturing, Processing, Packing, or Holding Human Food", as applicable.
- No article distributed to PDIM shall be adulterated or misbranded within the meaning of the Federal Drug and Cosmetic Act.

<u>Shelf Life Matrices</u>

All distributors shall receive, store, and distribute products in accordance with established PDIM shelf life matrices. Distributors must guarantee PDIM restaurants adequate shelf life at the time of delivery. Any variance to established shelf life guidelines will require the approval of PDIM Quality Assurance.

<u>PRODUCT TRACKING/RECALL/SENSITIVE SITUATIONS</u>

All distributors must have an established and effective program for tracking product codes/quantities upon receipt and during storage. All distributors shall have a formal recall program in place. Its effectiveness shall be verified via periodic mock recalls.

Emergency after-hour contact numbers for key PDIM personnel shall be maintained at all distribution facilities. Likewise, the distributor will provide PDIM with emergency contact names and numbers. These lists will be updated as appropriate (Appendix 5).

In the event that the distributor becomes aware of a situation which could possibly dictate a product recovery, withdrawal, or recall, or any situation in which there may be potential damage to the reputation of PDIM, PDIM Quality Assurance shall be notified immediately. No action or communication shall be taken on the part of the distributor prior to notification given to PDIM

management, except in extreme emergency unless (i) the distributor has attempted to contact the persons on the emergency contact list, attached hereto as Appendix 5, and such persons are unavailable, and (ii) there is an extreme emergency situation.

## PDIM APPROVED CONCEPTS AND RESTAURANTS

PDIM distributors shall sell only approve products to Chi-Chi's and other Prandium Restaurants. Any amendment to such list must be given in writing to distributor.

## VARIANCE REQUESTS

Any variances to the standards outlined in this document must be submitted in writing to the PDIM Quality Assurance Department for approval.

PDIM Quality Assurance Department management reserves the right to make reasonable changes to the PDIM Distributor Quality Program requirements, as long as the changes are agreed upon by distributor.

# EXHIBIT 2

# Commercial Lines Policy

## EMPIRE INDEMNITY INSURANCE COMPANY

Oklahoma City, Oklahoma

Executive Office: 13810 FNB Parkway, PO Box 542003 · Omaha, Nebraska 68154-8003

THIS POLICY CONSISTS OF:
- DECLARATIONS
- COMMON POLICY CONDITIONS
- ONE OR MORE COVERAGE PARTS

A COVERAGE PART CONSISTS OF:
- ONE OR MORE COVERAGE FORMS
- APPLICABLE FORMS AND ENDORSEMENTS



EMPIRE
INDEMNITY INSURANCE COMPANY

A member of the Zurich Financial Services Group

EM 35 88 (06-02)

A STOCK COMPANY

CHI06535

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## POLICY CHANGE ENDORSEMENT

This endorsement modifies insurance under the following:

UMBRELLA POLICY
OTHER LIABILITY POLICY

With respect to coverage provided by this endorsement, the provisions of the coverage form apply unless modified by this endorsement.

| Endorsement Effective Date 07/01/03 | Policy No. XS20011B - End. #2 |
|---|---|
| Named Insured Prandium, Inc. | Countersigned by |

(Authorized Representative)

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated above.

Changes

☐ Additional Premium   $
☐ Return Premium    · $
☒ Non-Premium    $

Total   $

Endorsement for the following reason:
☐ Audit                    ☐ Named Insured Change
☐ Mid-term change          ☐ Address
☐ Limits change            ☐ Inception date change
☒ Expiration date change   ☐ Coverage cancelled
                              ☐ Short Rate
                              ☐ Pro Rate
                              ☐ Minimum Premium Applies

☒ Is amended to read as follows:

07/01/04

EM 43 52 (09-02)

CHI06536

Empire Fire and Marine Insurance Company • Empire Indemnity Insurance Company
Executive Offices: 13810 FNB Parkway, P.O. Box 542003 • Omaha, NE 68154-8003

☐ Empire Fire and Marine
☒   Empire Indemnity

## FOLLOWING FORM EXCESS LIABILITY POLICY DECLARATIONS

Renewal of Number: _____    Policy No.: __XS200118__

Producer
Westrope & Associates
801 W. 47ᵗʰ St., Suite 500
Kansas City, MO 64112

**Item 1.**
Named Insured
  Prandium, Inc.

**Item 2.**
Mailing Address
  c/o Debbie Nichols
  2701 Alton Parkway
  Irvine, CA 92606

**Item 3.**
Policy Period:   From: __07/01/03__    To: __07/01/03__
          At 12:01 A.M. Standard Time at the address of the Named Insured

**Item 4. Limit of Insurance:**
A. Occurrence    $10,000,000
B. Aggregate    $10,000,000

**Item 5. Premium:**
Terrorism Premium    $N/A

Advance Premium    $35,000
Policy Minimum Earned Premium    $8,750

**Item 6. Underlying Insurance:**

A. Controlling Underlying Policy:

Insurance Company: Scottsdale

Policy Number: On File

Policy Period:   From: 07/01/03    To: 07/01/04

Limits of Insurance:   $10,000,000    Occurrence
              $10,000,000    Aggregate

EM 43 73 (02-03)                             Page 1 of 2

CHI06537

B. Total Limits of All Underlying Insurance, Including The Controlling Underlying Policy Which This Policy Applies Excess Of:

Limits of Insurance: $11,000,000    Occurrence
$12,000,000    Aggregate

Item 7.
Forms and Endorsements applying to this coverage part and made a part of this policy at the time of issuance.

See Endorsement #1

Issue Date:    07/23/03            Countersigned by: _____

EM 43 73 (02-03)                                    Page 2 of 2

CHI06538

# FOLLOWING FORM EXCESS LIABILITY POLICY

There are provisions in this policy that restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such in the Controlling Underlying Policy, but only to the extent and within the scope for which such "insureds" qualify for coverage in the Controlling Underlying Policy.

In consideration of the payment of the premium and in reliance upon the statements in the Declarations and in accordance with the provisions of this policy we agree with you to provide coverage as follows:

### INSURING AGREEMENTS

SECTION I. COVERAGE

A. We will pay on behalf of the insured the sums in excess of the total Controlling Underlying Policy of Insurance shown in Item 6. A. of the Declarations that the insured becomes legally obligated to pay as damages.

B. This insurance applies only to damages covered by the Controlling Underlying Policy as shown in Item 6. A. of the Declarations. Except as otherwise provided by this policy, the coverage follows the definitions, terms, conditions, limitations, and exclusions of the Controlling Underlying Policy in effect at the inception of this policy.

C. The amount we will pay for damages is limited as described in SECTION II. LIMITS OF INSURANCE.

SECTION II. LIMITS OF INSURANCE

A. The Limits of Insurance shown in the Declarations and the rules below describe the most we will pay regardless of the number of:

1. Insured's;

2. Claims made or suits brought; or

3. Persons or organizations making claims or bringing suits.

B. The Limits of Insurance of this policy will apply as follows:

1. This policy applies only in excess of the Controlling Underlying Policy shown in Item 6. A. of the Declarations.

2. The Occurrence Limit stated in Item 4. A. of the Declarations is the most we will pay for all damages arising out of any one occurrence to which this policy applies.

3. The Aggregate Limit stated in Item 4.B. of the Declarations is the most we will pay for all damages. The Aggregate Limit applies separately and in the same manner as the aggregate limits provided by the Controlling Underlying Policy.

4. Subject to Paragraphs B. 2., and B. 3., above, if the underlying Limits of Insurance stated in Item 6. of the Declarations are reduced or exhausted solely by payment of damages to which this policy applies, such insurance provided by this policy will apply in excess of the reduced Underlying Limits or, if all Underlying Limits are exhausted, will apply as underlying insurance subject to the same terms, conditions, definitions and exclusions of the Controlling Underlying Policy, except for the terms, conditions, definitions and exclusions of this policy.

5. The Limits of Insurance of this policy apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional

CHI06540

period of less than 12 months. In that case, the additional period will be deemed part of the preceding period for purposes of determining the Limits of Insurance.

SECTION III. DEFENSE

A. We will not be required to assume charge of the investigation of any claim or defense of any suit against you.

B. We will have the right, but not the duty, to be associated with you or your underlying insurer or both in the investigation of any claim or defense of any suit which in our opinion may create liability on us for payment under this policy.

C. If all Underlying Limits of Insurance stated in Item 6. of the Declarations are exhausted solely by payment of damages, we shall have the right but not the duty to investigate and settle any claim or assume the defense of any suit which in our opinion may give rise to a payment under this policy. We may, however, withdraw from the defense of such suit and tender the continued defense to you if our applicable Limits of Insurance stated in Item 4. of the Declarations are exhausted by payment of damages.

If we exercise our rights under Paragraphs B. or C. above, we will do so at our own expense, and any such expense payments will not reduce the Limits of Insurance provided by this policy.

SECTION IV. EXCLUSIONS

This policy does not apply to any liability, damage, loss, cost or expense:

ASBESTOS

A. Arising out of:

1. The mining, processing, manufacturing, use, testing, ownership, sale or removal of asbestos, asbestos fibers or materials containing asbestos;

2. Exposure to asbestos, asbestos fibers, or material containing asbestos; or

3. Any error or omission in supervision, instructions, recommendations, notices, warnings or advice given, or which should have been given, in connection with asbestos fibers or material containing asbestos.

POLLUTION

B. 1. Arising directly or indirectly out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

This exclusion does not apply to bodily injury or property damage arising out of heat, smoke or fumes from a "hostile fire" unless that "hostile fire" occurred or originated:

a. At any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste; or

b. At any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to, or assess the effects of, "pollutants".

2. Arising out of any:

a. Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

b. Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "pollutants".

CHI06541

As used in this exclusion:

1. A "hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

2. "Pollutants" means any solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acid, alkalis, chemicals and waste. Waste includes material to be recycled, reconditioned or reclaimed.

## NUCLEAR

C. 1. With respect to which any insured under this policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic, Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its Limits of Insurance; or

2. Resulting from the "hazardous properties" of "nuclear material" and with respect to which:

    a. A person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof; or

    b. Any insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization; or

3. Any injury or "nuclear property damage" resulting from the "hazardous properties" of "nuclear material", if:

    a. The "nuclear material":

        (i) Is at any "nuclear facility" owned by, or operated by or on behalf of, any insured; or

        (ii) Has been discharged or dispersed therefrom;

    b. The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of any insured; or

    c. The injury or "nuclear property damage" arises out of the furnishing by any insured of services, materials, parts or equipment in connection with the planning, construction, maintenance operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this subparagraph c. applies only to "nuclear property damage" to such "nuclear facility" and any property thereat.

As used in this exclusion:

1. "Hazardous properties" include radioactive, toxic or explosive properties.

2. "Nuclear Facility" means:

    a. Any "nuclear reactor";

    b. Any equipment or device designed or used for:

        (i) Separating the isotopes of uranium or plutonium,

        (ii) Processing or utilizing "spent fuel", or

        (iii) Handling, processing or packaging "waste";

    c. Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235; or

CHI06542

    d.  Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste", and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

3.  "Nuclear material" means "source material", "special nuclear material" or "by-product material";

4.  "Nuclear property damage" includes all forms of radioactive contamination of    property;

5.  "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

6.  "Source material", "special nuclear material" and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

7.  "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

8.  "Waste" means any waste material;

    a.  Containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and

    b.  Resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

## SECTION V. CONDITIONS

### A. Appeals

In the event you or any underlying insurer elects not to appeal a judgment in excess of the amount of the Underlying Insurance, we may elect to appeal at our expense. If we do so elect, we will be liable for the costs and additional interest accruing during this appeal. In no event will this provision increase our liability beyond the applicable Limits of Insurance described in SECTION II. of this policy.

### B. Bankruptcy or Insolvency

The bankruptcy, insolvency or inability to pay of any insured will not relieve us from our obligation to pay damages covered by this policy.

In the event of bankruptcy, insolvency or refusal or inability to pay, of any underlying insurer, the insurance afforded by this policy will not replace such underlying insurance, but will apply as if all the limits of any underlying insurance is fully available and collectible.

### C. Cancellation

1.  You may cancel this policy. You must mail or deliver advance written notice to us stating when the cancellation is to take effect.

2.  We may cancel this policy. If we cancel because of non-payment of premium, we will mail or deliver to you not less than ten (10) days advance written notice when the cancellation is to take effect. If we cancel for any other reason, we will mail or deliver to you not less than thirty (30) days advance written notice stating when the cancellation is to take effect. Mailing notice to you at your mailing address shown in Item 2. of the Declarations will be sufficient to prove notice.

3.  The policy period will end on the day and hour stated in the cancellation notice.

4.  If we cancel, final premium will be calculated pro rata based on the time this policy was in force.

5.  If you cancel, final premium will be more than pro rata; it will be based on the time this policy was in force and our short rate cancellation table and procedure.

6.  Premium adjustment may be made at the time of cancellation or as soon as practicable thereafter but the cancellation will be effective even if we have not made or offered any refund due you. Our

CHI06543

check or our representative's check, mailed or delivered, will be sufficient tender of any refund due you.

7. The Named Insured in Item 1. of the Declarations will act on behalf of all other insureds with respect to the giving and receiving of notice of cancellation and the receipt of any premium refund that may become payable under this policy.

D. Maintenance of Underlying Insurance

During the period of this policy, you agree:

1. To keep the policies making up the Controlling Underlying Policy in Item 6.A. of the Declarations in full force and effect;

2. That the Limits of Insurance of the Controlling Underlying Policy will be maintained except for any reduction or exhaustion of aggregate limits by payment of claims or suits for damages covered by Underlying Insurance;

3. The Underlying Insurance policies may not be canceled or not renewed by you without notifying us, and you agree to notify us in the event an insurance company cancels or declines to renew any Underlying Insurance policy;

4. Renewals or replacements of the Controlling Underlying Policy will not be materially changed without our agreement.

If you fail to comply with these requirements, we will only be liable to the same extent that we would have been had you fully complied with these requirements.

E. Notice of Occurrence

1. You must see to it that we are notified as soon as practicable of an occurrence which may result in damages covered by this policy. To the extent possible, notice will include:

   a. How, when and where the occurrence took place;

   b. The names and addresses of any injured persons and witnesses;

   c. The nature and location of any injury or damage arising out of the occurrence.

2. If a claim or suit against any insured is reasonably likely to involve this policy you must notify us in writing as soon as practicable.

3. You and any other involved insured must:

   a. Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or suit;

   b. Authorize us to obtain records and other information;

   c. Cooperate with us in the investigation, settlement or defense of the claim or suit; and

   d. Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

4. The insureds will not, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

F. Other Insurance

If other insurance applies to damages that are also covered by this policy, this policy will apply excess of the other insurance. Nothing herein will be construed to make this policy subject to the terms, conditions and limitations of such other insurance. However, this provision will not apply if the other insurance is written to be excess of this policy.

Other insurance includes any type of self-insurance or other mechanism by which an insured arranges for funding of legal liabilities.

EM 43 50 (10-02)                                                        Page 5 of 6

CHI06544

G. **Terms Conformed to Statute**

The terms of this policy which are in conflict with the statutes of the state where this policy is issued are amended to conform to such statutes. If we are prevented by law or statute from paying on behalf of the insured, then we will, where permitted by law or statute, indemnify the insured.

H. **When Damages are Payable**

Coverage under this policy will not apply unless and until the insured or the insured's underlying insurance has paid or is obligated to pay the full amount of the Controlling Underlying Policy stated in Item 6. A. of the Declarations.

When the amount of damages is determined, we will promptly pay on behalf of the insured the amount of damages covered under the terms of this policy.

CHI06545

# EXHIBIT 3

7|20

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CHI-CHI'S, INC., et al., | ) | Case No. 03-13063 (CGC) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | Related Docket Nos. 252 and 272 |
| | ) | |
| CHI-CHI'S, INC., et al. | ) | |
| | ) | Adversary No.: 04-_____ |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CASTELLINI COMPANY, LLC; SYSCO | ) | |
| CORPORATION; and SYGMA | ) | |
| NETWORK, INC. | ) | |
| | ) | |
| Defendants. | ) | |

## CHI-CHI'S, INC. COMPLAINT

Plaintiff CHI-CHI'S, INC. et al.[1], by and through its attorneys of record, Gordon

and Holmes, hereby alleges as follows:

## I.   PARTIES AND JURISDICTION

1.     Plaintiff CHI-CHI'S, INC. ("CHI-CHI'S") and certain related debtors

filed Voluntary Petitions for relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §101, et

---

[1] The related debtors consist of the following entities: Chi-Chi's, Inc., CCMR of Catonsville, Inc., CCMR of Cumberland, Inc., CCMR of Frederick, Inc., CCMR of Greenbelt, Inc., CCMR of Harford County, Inc., CCMR of Maryland, Inc., CCMR of Ritchie Highway, Inc., CCMR of Timonium, Inc., Chi-Chi's of West Virginia, Inc., CMM Dissolution, Inc., Koo Koo Roo, Inc., Maintenance Support Group, Inc., Koo Koo Roo Licensing Systems, Inc., the Hamlet Group, Inc., H.H. of Maryland, Inc., and H.H.K. of Virginia.

1

seq., on October 8, 2003. The matters have been consolidated for joint administration in Case

No. 03-13063.

    2.       This proceeding arises under or in, or is related to, the Chapter 11 case.

    3.       This court has jurisdiction over this proceeding pursuant to 28 U.S.C.

§157(a) and 1334(b), 11 U.S.C. §105, and Federal Rule of Bankruptcy Procedure 7001.

    4.       Venue is proper in this district pursuant to 28 U.S.C. §1409(a).

    ·5.       Plaintiff CHI-CHI'S is a corporation organized and existing under the

laws of the State of Delaware, with its principal place of business in Irvine, California. Plaintiff

CHI-CHI'S is, and at all relevant times herein was, the owner and operator of a chain of

restaurants preparing, serving, and selling food to consumers, primarily for in-restaurant

consumption.

    6.       Plaintiff is informed and believes and thereon alleges that defendant

CASTELLINI COMPANY, LLC ("CASTELLINI") is a limited liability company organized and

existing under the laws of the State of Delaware, with its principal place of business in Wilder,

Kentucky. At all times relevant herein, defendant CASTELLINI was in the business of

processing, supplying, and shipping produce and other foods for use in restaurants.

    7.       Plaintiff is informed and believes and thereon alleges that defendant

·SYSCO CORPORATION is a corporation organized and existing under the laws of the State of

Delaware, with its principal place of business in Houston, Texas. At all times relevant herein,

defendant SYSCO CORPORATION was in the business of supplying and shipping produce and

2

other foods for use in restaurants.

       8.     Plaintiff is informed and believes and thereon alleges that defendant

SYGMA NETWORK, INC. is a corporation organized and existing under the law of the State of

Delaware, with its principal place of business in Lakewood, Colorado. Plaintiff is further

informed and believes and thereon alleges that defendant SYGMA NETWORK, INC.

("SYGMA") is an operating company/subsidiary of defendant SYSCO CORPORATION and is

in the business of supplying and shipping produce and other foods for use in restaurants. Except

as otherwise noted, defendants SYSCO CORPORATION and SYGMA NETWORK, INC. are

collectively referred to herein as "SYSCO."

## FACTUAL ALLEGATIONS

       9.     In or about November 2003, an outbreak of Hepatitis A occurred in

western Pennsylvania. More than 650 people became ill and, to date, four individuals have died.

Through epidemiological and statistical analyses, the outbreak was traced to a CHI-CHI'S

restaurant located in Monaca, Pennsylvania ("the Beaver Valley Chi-Chi's"). More specifically,

the analyses led to a determination that the source of the outbreak was human consumption of

Hepatitis A-contaminated green onions which had been used in raw form as an ingredient in

salsa and as a garnish on other dishes served to CHI-CHI'S customers in or about early October

2003. The green onions, which were (unknowingly to CHI-CHI's) contaminated with Hepatitis

A prior to their delivery to CHI-CHI's, had been supplied and delivered to the Beaver Valley

Chi-Chi's by defendants CASTELLINI and SYSCO.

3

10.    The presence of Hepatitis A in the green onions rendered the product adulterated, unsafe, and unfit for human consumption.

11.    As a direct and proximate result of defendants' supply of adulterated green onions, CHI-CHI's suffered immediate property damage including, but not limited to, contamination of other food products and contamination of surfaces and other areas within the Beaver Valley Chi-Chi's. As a further direct and proximate result of defendants' supply of adulterated green onions, the Beaver Valley Chi-Chi's was closed from on or about November 2, 2003 to on or about January 15, 2004.

12.    The outbreak received, and continues to receive, considerable media attention, both in Western Pennsylvania and throughout the nation. At the time the outbreak was first publicly reported in or about November 2003, CHI-CHI's owned and operated approximately 122 restaurants throughout the Midwest, mid-Atlantic and Northeast. CHI-CHI's currently owns and operates 65 restaurants.

13.    As a direct and proximate result of the outbreak and the attendant publicity, plaintiff CHI-CHI's has suffered, and continues to suffer, damages, including but not limited to, property damage, lost profits (both relating to the closure of the Beaver Valley Chi-Chi's and the impact of the publicity on CHI-CHI's other restaurants), costs directly related to the closure and cleaning of the Beaver Valley Chi-Chi's, crisis management expenses, attorney's fees, payment of medical expenses and preventative care, and loss of goodwill.

14.    In addition, CHI-CHI's has received more than 300 claims, has been

4

named as a defendant in numerous lawsuits, and anticipates being subjected to future claims and

lawsuits, seeking damages from CHI-CHI's as a result of bodily injury and death allegedly

caused by human consumption of Hepatitis A-contaminated green onions at the Beaver Valley

Chi-Chi's ("the bodily injury actions"). As a result, CHI-CHI's has incurred, and continues to

incur, additional expenses, including but not limited to payment of claims, attorney's fees, and

other litigation costs and expenses.

## II.    HISTORICAL AND CONTRACTUAL RELATIONSHIPS OF THE PARTIES

15.    Beginning in or about June 1999, defendant CASTELLINI and Prandium,

Inc. ("Prandium"), the parent company of plaintiff CHI-CHI'S, began discussing the possibility

of CASTELLINI becoming a supplier of produce and other products to various restaurants

operating as subsidiaries or affiliates of Prandium, including plaintiff CHI-CHI'S.

16.    As part of the negotiations and in order for CASTELLINI to bid the

project, Prandium provided CASTELLINI with a variety of documents, including, but not

limited to, product specifications for green onions and a document entitled "Supplier General

Requirements Master Food Specification for Whole Produce ("Supplier General Requirements").

The Supplier General Requirements and product specifications required suppliers, including

CASTELLINI, to provide Prandium and CHI-CHI's with unadulterated, safe, and wholesome

green onions. Specifically, CASTELLINI was required to and in fact did warrant as follows:

> "§1.2.1 - The supplier hereby guarantees that no article sold to Prandium for use
> in any Prandium restaurant is adulterated or misbranded within the meaning of the
> Federal, Drug and Cosmetic Act, or is an article which may, under the provisions
> of Section 404, 505, or 512 of the Act be introduced into interstate commerce.

§1.2.2 - The article comprising each shipment or other delivery hereafter made by
the supplier is hereby guaranteed, as of the date of such shipment or delivery, to
be on such date, not adulterated or misbranded within the meaning of the Federal
.Food, Drug and Cosmetic Act, and not an article which may not, under the
provisions of Sections 404, 505 or 512 of the Act, be introduced into interstate
commerce."

A true and correct copy of the Supplier General Requirements and green onion

specifications are attached hereto as Exhibit "1".

17.    On or about July 28, 1999, and in connection with the negotiations

described above, defendant CASTELLINI executed a document entitled "Confidentiality

Agreement," in which CASTELLINI agreed to, in part, "indemnify, protect, defend, and hold

harmless [Prandium], its subsidiaries, related and affiliate companies and entities ... from and

against any and all claims, causes of action, demands, losses, costs, expenses (including

reasonable attorneys' fees), obligations, liabilities, damages, and deficiencies of any kind that

arise out of, result from, or in any way relate to" the parties' "business relationship." A true and

correct copy of the July 28, 1999 agreement is attached hereto as Exhibit "2"

18.    Before defendant CASTELLINI was permitted to bid as a potential

supplier to CHI-CHI's, CASTELLINI was required to agree to comply with the Supplier General

Requirements and product specifications, including the green onion specifications, alleged in

paragraph 16 above. In or about late summer 1999, representatives of defendant CASTELLINI

made a presentation to plaintiff in which CASTELLINI did in fact further warrant that it would

and could comply with Prandium and CHI-CHI's general requirements and product

specifications. The parties thereafter entered into a pricing agreement for various products,

6

including green onions.

19.     On or about December 12, 2002, plaintiff and defendant CASTELLINI

entered into a revised pricing agreement in which CASTELLINI agreed to sell green onions

(among other products) to CHI-CHI's at an established price. As a condition to the revised

pricing agreement, plaintiff CHI-CHI's continued to require defendant CASTELLINI to, and

CASTELLINI agreed to, supply green onions that met the Supplier General Requirements and

green onion specifications provided to CASTELLINI in 1999.

20.     In connection with the CASTELLINI pricing agreements, the parties

agreed that defendant CASTELLINI would sell the green onions, at the negotiated price, to

defendant SYSCO. Defendant SYSCO, in turn, would sell the product to plaintiff CHI-CHI's

(on a specified cost-plus basis) and would transport and deliver the green onions directly to CHI-

CHI's restaurants. The green onions that were contaminated with Hepatitis A and sold to CHI-

CHI's customers in or about September and/or October 2003 were supplied to CHI-CHI's

pursuant to the agreements described in paragraphs 15 through 20 herein.

21.     Defendant CASTELLINI had been doing business with defendant SYSCO

for many years. On or about January 26, 1997, CASTELLINI and SYSCO had entered into an

agreement entitled "Hold Harmless Agreement and Guaranty/Warranty of Product" (hereafter

"Hold Harmless Agreement"). A true and correct copy of the Hold Harmless agreement is

attached hereto as Exhibit "3".

22.     The Hold Harmless Agreement provided that "[t]his Guaranty and

7

Agreement is continuing and shall be in full force and effect and shall be binding upon

[CASTELLINI] with respect to each and every Product shipped or delivered to [SYSCO] by

[CASTELLINI] before the receipt of [SYSCO] of written notice of revocation thereof." Plaintiff

is informed and believes and thereon alleges that defendant CASTELLINI never provided

SYSCO with revocation of any aspect of the Hold Harmless Agreement with respect to the

contaminated green onions supplied to plaintiff in or about September or October of 2003.

      23.    In the Hold Harmless Agreement, defendant CASTELLINI agreed to

"defend, indemnify, and hold harmless [SYSCO, its subsidiaries, affiliates or divisions] and its

employees, officers, directors and customers ... from all actions, suits, claims, and proceedings ...

and from any judgments, damages, fines, costs and expenses (including reasonable attorney's

fees) resulting therefrom ... brought or commenced by any person or entity against any

indemnitee for the recovery of damages for the injury, illness and/or death of any person or

damage to property arising out of or alleged to have arisen out of (a) the delivery, sale, resale,

labeling, use or consumption of any Product ...."

      24.    In addition, defendant CASTELLINI warranted, in the Hold Harmless

Agreement, that "articles contained in any shipment or delivery made by [CASTELLINI] to or

on the order of [SYSCO] is hereby guaranteed, as of the date of such shipment or delivery, (a) to

not be adulterated or misbranded within the meaning of the Federal Food, Drug and Cosmetic

Act (the 'Act'), (b) to not be an article which cannot be introduced into interstate commerce

under the provisions of Sections 404 and 505 of the Act, and (c) to be in compliance with all

applicable federal, state and local laws." This warranty was consistent with the separate oral

representations made by defendant CASTELLINI to plaintiff CHI-CHI'S during the negotiations

between the parties in the summer of 1999, as alleged in paragraph 18 above.

25.     On or about June 26, 2001, plaintiff CHI-CHI's and defendant SYSCO

entered into an agreement entitled "Distribution Service Agreement." A true and correct copy of

the June 26, 2001 Distribution Service Agreement is attached hereto as Exhibit 4. In the

Distribution Service Agreement, defendant SYSCO expressly agreed to comply with plaintiff

CHI-CHI's Distributor Quality Program (see Exhibit 4, ¶ X, and Exhibit H thereto).

26.     Under plaintiff CHI-CHI's Distributor Quality Program, with which

defendant SYSCO agreed to comply, SYSCO was required to ensure that all green onions were

"manufactured, stored and transported in accordance with all applicable local, state and federal

requirements. These requirements include, but are not limited to ... No article distributed to

[CHI-CHI's] shall be adulterated or misbranded within the meaning of the Federal Drug and

Cosmetic Act." (Exhibit H to Exhibit 4, pp. 3-4).

27.     Plaintiff is informed and believes and thereon alleges that defendant

CASTELLINI shipped the contaminated green onions from the states of Kentucky and/or Ohio

to defendant SYSCO's distribution center in Pennsylvania, from which the green onions were

subsequently transported by SYSCO to the Beaver Valley Chi-Chi's.

9

## COUNT I

## BREACH OF EXPRESS WARRANTY AGAINST DEFENDANT CASTELLINI

28.     Plaintiff hereby incorporates paragraphs 1 through 27, inclusive, of this Complaint as if fully set forth herein.

29.     Defendant CASTELLINI, by agreeing to meet plaintiff's General Supplier Requirements and Green Onion Specifications (Exhibit "1"), by executing the January 26, 1997 Hold Harmless Agreement (Exhibit "1"), and when making an oral presentation to plaintiff in or about late summer 1999 (as alleged in paragraph 3 herein), made express warranties that the green onions it supplied for use in CHI-CHI'S restaurants would be safe and wholesome, would not be "adulterated" within the meaning of the Federal Food, Drug and Cosmetic Act ("the Act"), and would be a product capable of being introduced into interstate commerce under the Act.

30.     The presence of the Hepatitis A virus in or on the green onions supplied by defendant CASTELLINI to plaintiff CHI-CHI'S rendered the product adulterated under the Act.

31.     Plaintiff relied upon CASTELLINI's express warranties.

32.     The express warranties was breached when CASTELLINI supplied green onions that contained the Hepatitis A virus to plaintiff in or about September and October of 2003.

33.     As a direct and proximate cause of defendant CASTELLINI's breach,

DOCS_DE:96711.1

plaintiff CHI-CHI'S has suffered incidental and consequential damages in an amount to be proven at trial.

## COUNT II

## BREACH OF EXPRESS WARRANTY AGAINST DEFENDANT SYSCO AND SYGMA

34.    Plaintiff hereby incorporates paragraphs 1 through 33, inclusive, of this Complaint as if fully set forth herein.

35.    By agreeing to comply with plaintiff's Distributor Quality Program as an obligation under the June 26, 2001 Distribution Service Agreement (Exhibit "4"), defendants SYSCO and SYGMA made an express warranty that no product distributed to CHI-CHI'S, including green onions, would be "adulterated" within the meaning of the Federal Food, Drug and Cosmetic Act ("the Act").

36.    The presence of the Hepatitis A virus in or on the green onions supplied by defendants SYSCO and SYGMA to plaintiff CHI-CHI'S rendered the product adulterated under the Act.

37.    Plaintiff relied upon SYSCO's and SYGMA's express warranty.

38.    The express warranty was breached when SYSCO and SYGMA supplied green onions that contained the Hepatitis A virus to plaintiff in or about September and October of 2003.

39.    As a direct and proximate cause of defendants SYSCO's and SYGMA's breach, plaintiff CHI-CHI'S has suffered incidental and consequential damages in an amount to

11

be proven at trial.

40.    Pursuant to paragraph XIX.A of the Distribution Service Agreement,

plaintiff CHI-CHI's is entitled to reasonable attorney's fees and other expenses incurred in this

action.

## COUNT III

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY AGAINST ALL DEFENDANTS

41.    Plaintiff hereby incorporates paragraphs 1 through 40, inclusive, of this

Complaint as if fully set forth herein.

42.    Defendants, and each of them, impliedly warranted that their products

would be merchantable, safe, wholesome, and fit for human consumption.

43.    Plaintiff CHI-CHI's relied upon these implied warranties.

44.    Defendants' implied warranties of merchantability were breached when

defendants, and each of them, supplied plaintiff, in or about September and/or October 2003,

with green onions contaminated with Hepatitis A.

45.    As a direct and proximate cause of defendants' breach of the implied

warranty of merchantability, plaintiff CHI-CHI's has suffered incidental and consequential

damages in an amount to be proven at trial.

46.    Pursuant to paragraph XIX.A of the Distribution Service Agreement,

plaintiff CHI-CHI's is entitled to recover from defendant SYSCO all reasonable attorney's fees

and other expenses incurred in this action.

12

## COUNT IV

### BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE AGAINST ALL DEFENDANTS

47.    Plaintiff hereby incorporates paragraphs 1 through 46, inclusive, of this Complaint as if fully set forth herein.

48.    At all relevant times, defendants, and each of them, had reason to know of the particular purpose for which the subject green onions would be used by plaintiff. Specifically, defendants, and each of them, were aware that plaintiff CHI-CHI'S intended to serve the green onions in raw form without cooking or further processing as an ingredient in salsa and as garnish on other dishes to be served to plaintiff's customers. Defendants, and each of them, were further aware that plaintiff was relying on the skill and judgment of defendants to supply suitable green onions (that is, green onions that were safe, wholesome, and free of adulteration) for this particular purpose.

49.    In supplying, processing, packaging, marketing, selling, and distributing the subject green onions, defendants, and each of them, impliedly represented that the green onions were fit for the particular purpose described herein, i.e., that the green onions would not cause human illness when used for the particular purpose intended by plaintiff.

50.    Plaintiff did in fact use the subject green onions for this particular purpose.

51.    Defendants' implied warranties of fitness for a particular purpose were breached when defendants, and each of them, supplied plaintiff CHI-CHI'S, in or about September and/or October 2003, with green onions which was not fit for plaintiff's particular

13

purpose, in that the green onions were contaminated with Hepatitis A.

52.    As a direct and proximate cause of defendants' breach of the implied

warranty of fitness for a particular purpose, plaintiff CHI-CHI'S has suffered incidental and

consequential damages in an amount to be proven at trial.

53.    Pursuant to paragraph XIX.A of the Distribution Service Agreement,

plaintiff CHI-CHI's is entitled to recover from defendant SYSCO all reasonable attorney's fees

and other expenses incurred in this action.

### COUNT V

### CONTRACTUAL INDEMNITY AGAINST DEFENDANT CASTELLINI

54.    Plaintiff hereby incorporates paragraphs 1 through 53, inclusive, of this

Complaint as if fully set forth herein.

55.    Pursuant to defendant CASTELLINI's July 28, 1999 Confidentiality

Agreement with plaintiff CHI-CHI's, as alleged in paragraph 17 herein, defendant CASTELLINI

is required to indemnify plaintiff from and against any and all claims, causes of action, demands,

losses, costs, expenses (including attorney's fees), obligations, liabilities, damages and

deficiencies arising out of or related to the parties' relationship.

56.    Further, pursuant to defendant CASTELLINI's January 26, 1997 Hold

Harmless Agreement with defendant SYSCO, as alleged in paragraph 22, defendant

CASTELLINI is required to indemnify plaintiff from all actions, suits, claims and proceedings

arising out of or alleged to have arisen out of the delivery, sale or consumption of the Hepatitis

14

A-contaminated green onions.

57.    As a direct and proximate result of defendant CASTELLINI's supply of contaminated green onions, plaintiff CHI-CHI's has suffered and incurred, and continues to suffer and incur, claims, causes of action, demands, losses, costs, expenses (including attorney's fees), obligations, liabilities, damages, deficiencies, actions, suits, and proceedings, as to all of which defendant CASTELLINI is obligated to indemnify plaintiff CHI-CHI's under the agreements alleged in paragraphs 17 and 22 above.

58.    Plaintiff CHI-CHI's is therefore entitled to judgment against defendant CASTELLINI for all such losses suffered and expenses incurred, including attorney's fees, in an amount to be proven at trial.

59.    Pursuant to the July 28, 1999 Confidentiality Agreement, plaintiff CHI-CHI's is entitled to reasonable attorney's fees and other expenses incurred in this action.

## COUNT VI

### IMPLIED EQUITABLE INDEMNITY AGAINST ALL DEFENDANTS

60.    Plaintiff hereby incorporates paragraphs 1 through 59, inclusive, of this Complaint as if fully set forth herein.

61.    Plaintiff CHI-CHI'S has received more than 300 claims, has been named as a defendant in numerous lawsuits, and anticipates being subjected to future claims and lawsuits, seeking damages from CHI-CHI's as a result of bodily injury and death allegedly

15

resulting from Hepatitis A in relation to consumption of green onions at the Beaver Valley Chi-Chi's.

62.     To the extent plaintiffs in the bodily injury actions have suffered damages, such damages were caused, entirely or in part, by defendants herein, and each of them.

63.     By reason of the foregoing, to the extent plaintiff CHI-CHI's incurs any expenses, fees, costs or attorneys fees in the defense of bodily injury claims relating to the consumption of Hepatitis A-contaminated green onions, or enters into a settlement in any such claim or action, plaintiff is entitled to judgment against defendants, and each of them, for all or part of any such sums incurred by reason of said judgment or settlement and for expenses of investigation, attorney's fees, court costs and other fees incurred in the defense of those claims.

64.     Pursuant to paragraph XIX.A of the Distribution Service Agreement, plaintiff CHI-CHI's is entitled to recover from defendant SYSCO all reasonable attorney's fees and other expenses incurred in this action.

## COUNT VII

## CONTRIBUTION AGAINST ALL DEFENDANTS

65.     Plaintiff hereby incorporates paragraphs 1 through 64, inclusive, of this Complaint as if fully set forth herein.

66.     Plaintiff CHI-CHI's has received more than 300 claims, has been named as a defendant in numerous lawsuits, and anticipates being subjected to future claims and lawsuits, seeking damages from CHI-CHI's as a result of bodily injury and death allegedly

DOCS_DB-96711.1

16

resulting from Hepatitis A in relation to consumption of green onions at the Beaver Valley Chi-Chi's.

67.    To the extent plaintiff CHI-CHI's is legally responsible for any of the damages claimed in bodily injury actions, and assuming plaintiff is not entitled to total indemnity for all such sums which plaintiff may be required to pay, plaintiff would be only partially responsible for the alleged injuries, damages and other detriment allegedly suffered or sustained by the bodily injury claimants.

68.    Any loss, injury, damages or detriment allegedly suffered or sustained by the bodily injury claimants was directly and proximately caused and contributed to by the primary, active and direct responsibility of each of the defendants herein.

69.    Any damages or other detriment allegedly suffered or sustained by the bodily injury plaintiffs should therefore be apportioned among plaintiff and defendants herein on the basis of their respective percentage of fault, if any, in contributing to such damage or detriment.

70.    Based on the foregoing, defendants, and each of them, have a duty to contribute to and indemnify plaintiff CHI-CHI's for any recovery any bodily injury plaintiff may realize as against plaintiff CHI-CHI's in excess of that part of the damages directly proportionate to plaintiff CHI-CHI's percentage of fault, if any.

71.    Pursuant to paragraph XIX.A of the Distribution Service Agreement, plaintiff CHI-CHI's is entitled to recover from defendant SYSCO all reasonable attorney's fees

17

and other expenses incurred in this action.

WHEREFORE, plaintiff CHI-CHI'S, INC prays for judgment against defendants

. CASTELLINI COMPANY, SYSCO CORPORATION, and SYGMA NETWORK, INC. as

follows:

1.     For past and future general, incidental and consequential damages in a

sum not yet fully ascertained and according to proof at trial;

2.     For attorneys' fees and costs;

3.     For pre- and post-judgment interest;

4.     For indemnity;

5.     For contribution;

6.     For costs of suit; and

*[Remainder of page intentionally left blank]*

18

7.    For such other and further relief as the Court may deem just.

Dated: July 2D, 2004                    GORDON & HOLMES
                                        Frederic L. Gordon, Esq.
                                        Rhonda J. Holmes, Esq.
                                        Joice B. Nidy, Esq.
                                        Douglas J. Billings, Esq.
                                        223 West Date Street
                                        San Diego, CA 92101
                                        Telephone: (619) 696-0444
                                        Facsimile: (619) 696-1144

                                        Counsel for Plaintiff CHI-CHI'S, INC.

                                        and

                                        IRELL & MANELLA, LLP
                                        William N. Nobel
                                        Alan J. Friedman
                                        Mike D. Neue
                                        John P. Schafer
                                        840 Newport Center Drive
                                        Suite 400
                                        Newport Beach, CA 92660-6324
                                        Telephone: (949) 760-0991
                                        Facsimile: (949) 760-5200

                                        and

                                        PACHULSKI, STANG, ZIEHL, YOUNG, JONES,
                                        & WEINTRAUB P.C.

                                        _____
                                        Laura Davis Jones (DE Bar No. 2436)
                                        Bruce Grohsgal (DE Bar No. 3583)
                                        Rachel Lowy Werkheiser (DE Bar No. 3753)
                                        Sandra G. McLamb (DE Bar No. 4283)
                                        919 North Market Street, 16th Floor
                                        P.O. Box 8705
                                        Wilmington, Delaware 19899-8705 (Courier 19801)
                                        Telephone: (302) 652-4100
                                        Facsimile: (302) 652-4400

                                        Counsel for Debtors and Debtors in Possession

                                        19

DOCS_DB:96711.1

# **EXHIBIT 4**

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CHI-CHI'S, INC., et al., | ) | Case No. 03-13063 (JLP) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | |
| CHI-CHI'S, INC., et al. | ) | |
| | ) | |
| Plaintiffs | ) | Adversary No.: 04-54170 (JLP) |
| | ) | |
| v. | ) | |
| | ) | |
| CASTELLINI COMPANY, LLC; SYSCO | ) | |
| CORPORATION; and SYGMA NETWORK, INC. | ) | |
| | ) | |
| Defendants. | ) | |

## NOTICE OF VOLUNTARY DISMISSAL OF DEFENDANTS

NOTICE IS HEREBY GIVEN THAT, pursuant to FRCP 41(a), plaintiff CHI-CHI'S,

INC. voluntarily dismisses the above-captioned action without prejudice as to defendants

SYSCO CORPORATION and SYGMA NETWORK, INC.

DATED: November 1ᵀ, 2004          PACHULSKI, STANG, ZIEHL, YOUNG,
                                   JONES & WEINTRAUB P.C.


                                   Laura Davis Jones (DE Bar No. 2346)
                                   Rachel Lowy Werkheiser (DE Bar No. 3753)
                                   919 Market Street, 16th Floor
                                   Wilmington, DE 19801
                                   Telephone: (302) 652-4100
                                   Fax: (302) 652-4400
                                   Attorneys for CHI-CHI'S, INC.

# EXHIBIT 5

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| CHI-CHI'S, INC., et al., | Case No. 03-13063 (JLP) |
| Debtors. | (Jointly Administered) |
| CHI-CHI'S, INC., et al. | |
| Plaintiffs | Adversary No.: 04- 54170 (JLP) |
| v. | |
| CASTELLINI COMPANY, LLC; SYSCO CORPORATION; and SYGMA NETWORK, INC. | |
| Defendants. | |

## STIPULATION OF DISMISSAL

IT IS HEREBY STIPULATED by and between plaintiff CHI-CHI'S, INC. and defendant

CASTELLINI COMPANY, LLC (constituting all parties having appeared in this action),

through their designated counsel and pursuant to FRCP 41(a)(1), that the above-captioned

adversary action be and hereby is dismissed as to defendant CASTELLINI COMPANY, LLC.

IT IS HEREBY FURTHER STIPULATED that this action, as against defendant

CASTELLINI COMPANY, LLC, may and shall be re-filed by plaintiff CHI-CHI'S, INC. in the

United States District Court for the Central District of California, Southern Division ("the

Orange County action") and that defendant CASTELLINI COMPANY, LLC shall not seek to

DOCS_DE:102444.1

dismiss (or otherwise object to) the Orange County action on the basis of venue, personal

jurisdiction, or forum non conveniens.

Dated:  November ⟨12⟩, 2004

PACHULSKI, STANG, ZIEHL, YOUNG,
JONES & WEINTRAUB P.C.

Laura Davis Jones (DE Bar No. 2346)
Rachel Lowy Werkheiser (DE Bar No. 3753)
919 Market Street, 16th Floor
Wilmington, DE 19801
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

Attorneys for CHI-CHI'S, INC.

ROSENTHAL, MONHAIT, GROSS
& GODDESS, P.A.

Kevin Gross (DE Bar No. 209)
919 Market Street, Suite 1401
Wilmington, DE 19801
Telephone: (302) 656-4433
Facsimile: (302) 658-7567

Attorneys for CASTELLINI COMPANY,
LLC

DOCS_DE:102444.1

# <u>EXHIBIT 6</u>

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CHI-CHI'S, INC., | ) | Case No. 03-13063(JLP) |
| | ) | (Jointly Administered) |
| Debtors | ) | |
| | ) | |
| | ) | |
| | ) | |
| CHI-CHI'S, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | Adv. No. 04– _____ |
| | ) | |
| CASTELLINI COMPANY, LLC, | ) | |
| SYSCO CORPORATION and | ) | |
| SYGMA NETWORK, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff Chi-Chi's, Inc. ( the "Debtor" and/or "Chi-Chi's"),  by and through the

undersigned counsel[1],  hereby files this Complaint[2] and alleges as follows:

### PARTIES AND JURISDICTION

1.     Chi-Chi's and its related entities  filed voluntary petitions for relief under Chapter

11 of the United States Bankruptcy Code (the "Bankruptcy Code"),  on or about October 8,

2003.  Debtors' matters have been consolidated for joint administration into Case No. 03-13063.

2.     This adversary proceeding (the "Adversary Proceeding"),  is related to  the

Debtors' Chapter 11 case.  Jurisdiction is proper before this court pursuant to 28 U.S.C. § 157(a)

---

[1] This Complaint has been filed by Empire Indemnity Insurance Company, subrogee of the Debtor ("Subrogee"), and its subrogation rights as they relate to Debtor are more fully set forth in the Complaint. Empire's policy was issued to Prandium, Inc., the parent of Chi Chi's, Inc.

[2] Many of the allegations contained in this Complaint arise from allegations contained in Debtors' Complaint filed with this Court on July 20, 2004,  Adversary Proceeding No. 04-54170(JLP)(the "Adversary Proceeding"). Subrogor originally intended to file a Motion to Intervene in the Adversary Proceeding, however,  Debtors filed a Notice of Dismissal in the Adversary Proceeding on or about November 14, 2004.

and 1334(b), 11 U.S.C. § 105, and Federal Rule of Bankruptcy Procedure 7001. Venue is

proper in this district pursuant to 28 U.S.C. § 1409(a).

3.    Empire Indemnity Insurance Company, (hereinafter "Empire") is a commercial

liability insurer with operations throughout the United States. Prior to the Petition Date, Empire

and Prandium, Inc., the parent company of ChiChi's, (hereinafter "Debtors" refers to Prandium,

Inc. and/or Chi-Chi's) entered into a Commercial Liability Umbrella Coverage Form (the

"Policy"), whereby Empire agreed to provide Debtors with Bodily Injury and Property Damage

Liability Coverage in the amount of $10 million dollars.

4.    Section IV(9) (the "Subrogation Clause") of the Policy provides Empire with the

following interest in the Adversary Proceeding:

> If the insured has rights to recover all or part of any payment we have made
> under this Coverage Part, those rights are transferred to us. The insured must
> do nothing after loss to impair them. At our request, the insured will bring
> "suit" *or transfer those rights to us* and help us enforce them. (Emphasis added.)

The Subrogation Clause provides Empire with its right of subrogation to proceed on behalf of

Debtors against the named defendants in this Adversary Proceeding.

5.    Chi-Chi's is a corporation organized and existing under the laws of the State of

Delaware, with its principal place of business in Irvine, California. Chi-Chi's owns and

operates a chain of restaurants preparing, serving, and selling food to consumers, primarily for

in-restaurant consumption.

6.    Upon information and belief, defendant Castellini Company, LLC ("Castellini"),

is a limited liability company organized and existing under the laws of the State of Delaware,

with its principal place of business in Wilder, Kentucky. At all times relevant herein, defendant

Castellini was in the business of processing, supplying, and shipping produce and other foods for use in restaurants.

7.    Upon information and belief, defendant Sysco Corporation is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Houston, Texas. At all times relevant herein, defendant Sysco Corporation was in the business of supplying and shipping produce and other foods for use in restaurants.

8.    Upon information and belief, defendant Sygma Network, Inc. is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Lakewood, Colorado. Chi-Chi's is further informed and believes that defendant SYGMA Network, Inc. ("Sygma") is an operating company/subsidiary of defendant Sysco Corporation and is in the business of supplying and shipping produce and other foods for use in restaurants. Except as otherwise noted, defendants Sysco Corporation and Sygma Network, Inc., are collectively referred to herein as "Sysco".

## FACTUAL ALLEGATIONS

9.    In or about November 2003, an outbreak of Hepatitis A occurred in Western Pennsylvania. More than 650 people became ill and, to date, five individuals have died. Through epidemiological and statistical analyses, the outbreak was traced to a Chi-Chi's restaurant located in Monaca, Pennsylvania (the "Beaver Valley Chi Chi's"). More specifically, the analyses led to a determination that the source of the outbreak was human consumption of Hepatitis A contaminated green onions which had been used in raw form as an ingredient in salsa and as a garnish on other dishes served to Chi-Chi's customers in or about early October 2003. The green onions were (unknowingly to Chi-Chi's) contaminated by Hepatitis A prior to their

delivery to Chi-Chi's and had been supplied and delivered to the Beaver Valley Chi-Chi's by defendants Castellini and Sysco.

10.    The presence of Hepatitis A in the green onions rendered the product adulterated, unsafe, and unfit for human consumption.

11.    As a direct and proximate result of Castellini and Sysco's (collectively "Defendants") supply of adulterated green onions, Chi-Chi's suffered immediate property damage including, but not limited to, contamination of other food products and contamination of surfaces and other areas within the Beaver Valley Chi-Chi's.

12.    The outbreak received, and continues to receive, considerable media attention, both in Western Pennsylvania and throughout the nation.

13.    As a direct and proximate result of the outbreak, Chi-Chi's has received more than 650 claims, has been named as defendant in numerous lawsuits, and anticipates being subjected to future claims and lawsuits, seeking damages from Chi-Chi's as a result of bodily injury and death allegedly caused by human consumption of Hepatitis A contaminated green onions at the Beaver Valley Chi-Chi's (the "Bodily Injury Actions"). As a result, Chi-Chi's has incurred, and continues to incur, additional expenses, including but not limited to payment of claims, attorney's fees, and other litigation costs and expenses.

### HISTORICAL AND CONTRACTUAL RELATIONSHIPS OF THE PARTIES

14.    Beginning in or about June 1999, Castellini and Prandium Inc. ("Prandium"), the parent company of Chi-Chi's, began discussing the possibility of Castellini becoming a supplier of produce and other products to various restaurants operating as subsidiaries or affiliates of Prandium, including Chi-Chi's.

15.     As part of the negotiations and in order for Castellini to bid the project, Prandium provided Castellini with a variety of documents, including, but not limited to, product specification for green onions and a document entitled "Supplier General Requirements Master Food Specification for Whole Produce" (the "Supplier General Requirements"). The Supplier General Requirements and product specifications required suppliers, including Castellini, to provide Prandium and Chi-Chi's with unadulterated, safe and wholesome green onions. Specifically, Castellini was required to and in fact did warrant as follows:

§1.2.1 – The supplier hereby guarantees that no article sold to Prandium for use in any Prandium restaurant is adulterated or misbranded within the meaning of the Federal Drug and Cosmetic Act, or is an article which may, under the provisions of Section 404, 505, or 512 of the Act be introduced into interstate commerce.

§1.2.2 – The article comprising each shipment or other delivery hereafter made by the supplier is hereby guaranteed, as of the date of such shipment or delivery to be on such date, not adulterated or misbranded within the meaning of the Federal Food, Drug and Cosmetic Act, and not an article which may not, under the provisions of Sections 404, 505 or 512 of the Act, be introduced into interstate commerce.

A true and correct copy of the Supplier General Requirements and green onion specifications are attached hereto as Exhibit "1".

16.     On or about July 28, 1999, and in connection with the negotiations described above, Castellini executed a document entitled "Confidentiality Agreement" in which Castellini agreed to, in part, to "indemnify, protect, defend, and hold harmless [Prandium], its subsidiaries, related and affiliate companies and entities … from and against any and all claims, causes of action, demands, losses, costs, expenses (including reasonable attorney's fees), obligations, liabilities, damages, and deficiencies of any kind that arise out of, result from, or in any way relate to" the parties' "business relationship".

17.     Before Castellini was permitted to bid as a potential supplier to Chi-Chi's, Castellini was required to agree to comply with the Supplier General Requirements and product

specifications, including the green onion specifications, alleged in paragraph 16 above. In or about late summer 1999, representatives of Castellini made a presentation to Chi-Chi's in which Castellini did in fact further warrant that it would and could comply with Prandium and Chi-Chi's general requirements and produce specifications. The parties thereafter entered into a pricing agreement for various products, including green onions. A true and correct copy of the July 28, 1999 agreement is attached hereto as Exhibit "2".

18.    On or about December 12, 2002, Chi-Chi's and Castellini entered into a revised pricing agreement in which Castellini agreed to sell green onions (among other products) to Chi-Chi's at an established price. As a condition to the revised pricing agreement, Chi-Chi's continued to require Castellini to, and Castellini agreed to, supply green onions that met the Supplier General Requirements and green onion specifications provided to Castellini in 1999.

19.    In connection with the Castellini pricing agreements, the parties agreed that Castellini would sell green onions, at the negotiated price, to Sysco. Sysco, in turn, would sell the product to Chi-Chi's (on a specified cost-plus basis) and would transport and deliver the green onions directly to Chi-Chi's restaurants. The green onions that were contaminated with Hepatitis A and sold to Chi-Chi's customers in or about September and/or October 2003 were supplied to Chi-Chi's pursuant to agreements described in paragraphs 15 through 20 herein.

20.    Castellini had been doing business with Sysco for many years. On or about January 26, 1997, Castellini and Sysco had entered into an agreement entitled "Hold Harmless Agreement and Guaranty/Warranty of Product" (hereinafter the "Hold Harmless Agreement"). A true and correct copy of the Hold Harmless Agreement is attached hereto as Exhibit "3".

21.    The Hold Harmless Agreement provided that "[t]his Guaranty and Agreement is continuing and shall be in full force and effect and shall be binding upon [Castellini] with respect

to each and every Product shipped or delivered to [Sysco] by [Castellini] before the receipt of [Sysco] of written notice of revocation thereof." Chi-Chi's is informed and believes and thereon alleges that Castellini never provided Sysco with revocation of any aspect of the Hold Harmless Agreement with respect to contaminated green onions supplied to Chi-Chi's in or about September or October of 2003.

22.     Castellini warranted in the Hold Harmless Agreement that "articles contained in any shipment or delivery made to [Castellini] to or on the order of [Sysco] is hereby guaranteed, as of the date of such shipment or delivery, (a.) not be adulterated or misbranded within the meaning of the Federal Food, Drug and Cosmetic Act (the "Act"), (b.) to not be an article which cannot be introduced into interstate commerce under the provisions of Sections 404 and 505 of the Act, and (c.) to be in compliance with all applicable federal, state and local laws." This warranty was consistent with the separate oral representations made by Castellini to Chi-Chi's during the negotiations between the parties in the summer of 1999, as alleged in paragraph 18 above.

23.     On or about June 26, 2001, Chi-Chi's and Sysco entered into an agreement entitled "Distribution Service Agreement". In the Distribution Service Agreement, Sysco expressly agreed to comply with Chi-Chi's Distributor Quality Program. A true and correct copy of the June 26, 2001 Distribution Service Agreement is attached hereto as Exhibit "4".

24.     Under Chi-Chi's Distributor Quality Program, with which Sysco agreed to comply, Sysco was required to ensure that all green onions were "manufactured, stored and transported in accordance with all applicable local, state and federal requirements. These requirements include, but are not limited to ... No article distributed to [Chi-Chi's] shall be adulterated or misbranded within the meaning of the Federal Drug and Cosmetic Act."

25.    Upon information and belief, Castellini shipped the contaminated green onions from the states of Kentucky and/or Ohio to Sysco's distribution center in Pennsylvania, from which the green onions were subsequently transported by Sysco to the Beaver Valley Chi-Chi's.

## COUNT I

### BREACH OF EXPRESS WARRANTY AGAINST DEFENDANT CASTELLINI

26.    Chi-Chi's hereby incorporates paragraphs 1 through 25, inclusive, of this Complaint as if fully set forth herein.

27.    Castellini, by agreeing to meet Chi-Chi's General Supplier Requirements and Green Onion Specifications (Exhibit "1"), by executing the January 26, 1997 Hold Harmless Agreement (Exhibit "1"), and when making an oral presentation to Chi-Chi's in or about late summer 1999 (as alleged in paragraph 3 herein), made express warranties that the green onions it supplied for use in Chi-Chi's restaurants would be safe and wholesome, would not be "adulterated" within the meaning of the Federal Food, Drug and Cosmetic Act ("the Act"), and would be a product capable of being introduced into interstate commerce under the Act.

28.    The presence of the Hepatitis A virus in or on the green onions supplied by defendant Castellini to Chi-Chi's rendered the product adulterated under the Act.

29.    Chi-Chi's relied upon Castellini's express warranties.

30.    The express warranties were breached when Castellini supplied green onions that contained the Hepatitis A virus to Chi-Chi's in or about September and October of 2003.

31.    As a direct and proximate cause of Castellini's breach, Chi-Chi's has suffered incidental and consequential damages in an amount to be proven at trial.

## COUNT II

### BREACH OF EXPRESS WARRANTY AGAINST DEFENDANT SYSCO AND SYGMA

32.    Chi-Chi's hereby incorporates paragraphs 1 through 31, inclusive, of this Complaint as if fully set forth herein.

33.    By agreeing to comply with Chi-Chi's Distributor Quality Program as an obligation under the June 26, 2001 Distribution Service Agreement (Exhibit "4"), Defendants Sysco and Sygma made an express warranty that no product distributed to Chi-Chi's, including green onions, would be "adulterated" within the meaning of the Federal Food, Drug and Cosmetic Act ("the Act").

34.    The presence of the Hepatitis A virus in or on the green onions supplied by defendants Sysco and Sygma to Chi-Chi's rendered the product adulterated under the Act.

35.    Chi-Chi's relied upon Sysco's and Sygma's express warranty.

36.    The express warranty was breached when Sysco and Sygma supplied green onions that contained the Hepatitis A virus to plaintiff in or about September and October of 2003.

37.    As a direct and proximate cause of defendants Sysco's and Sygma's breach, Chi-Chi's has suffered incidental and consequential damages in an amount to be proven at trial.

38.    Pursuant to paragraph XIX.A of the Distribution Service Agreement, Chi-Chi's is entitled to reasonable attorney's fees and other expenses incurred in this action.

## COUNT III

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### AGAINST ALL DEFENDANTS

39.    Chi-Chi's hereby incorporates paragraphs 1 through 38, inclusive, of this Complaint as if fully set forth herein.

40.    Defendants, and each of them, impliedly warranted that their products would be merchantable, safe, wholesome, and fit for human consumption.

41.    Chi-Chi's relied upon these implied warranties.

42.    Defendants' implied warranties of merchantability were breached when defendants supplied plaintiff, in or about September and/or October 2003, with green onions contaminated with Hepatitis A.

43.    As a direct and proximate cause of Defendants' breach of the implied warranty of merchantability, Chi-Chi's has suffered incidental and consequential damages in an amount to be proven at trial.

44.    Pursuant to paragraph XIX.A of the Distribution Service Agreement, Chi-Chi's is entitled to recover from defendant Sysco all reasonable attorney's fees and other expenses incurred in this action.

## COUNT IV

### BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE AGAINST ALL DEFENDANTS

45.    Chi-Chi's hereby incorporates paragraphs 1 through 44, inclusive, of this Complaint as if fully set forth herein.

46.    At all relevant times, Defendants had reason to know of the particular purpose for which the subject green onions would be used by Chi-Chi's. Specifically, Defendant were aware that Chi-Chi's intended to serve the green onions in raw form without cooking or further processing as an ingredient in salsa and as garnish on other dishes to be served to Chi-Chi's customers. Defendants were further aware that Chi-Chi's was relying on the skill and judgment of Defendants to supply suitable green onions (that is, green onions that were safe, wholesome, and free of adulteration)

for this particular purpose.

47.    In supplying, processing, packaging, marketing, selling, and distributing the subject green onions, Defendants impliedly represented that the green onions were fit for the particular purpose described herein, i.e., that the green onions would not cause human illness when used for the particular purpose intended by plaintiff.

48.    Chi-Chi's did in fact use the subject green onions for this particular purpose.

49.    Defendants' implied warranties of fitness for a particular purpose were breached when Defendants supplied Chi-Chi's, in or about September and/or October 2003, with green onions which was not fit for Chi-Chi's particular purpose, in that the green onions were contaminated with Hepatitis A.

50.    As a direct and proximate cause of Defendants' breach of the implied warranty of fitness for a particular purpose, Chi-Chi's has suffered incidental and consequential damages in an amount to be proven at trial.

51.    Pursuant to paragraph XIX.A of the Distribution Service Agreement, Chi-Chi's is entitled to recover from Sysco all reasonable attorney's fees and other expenses incurred in this action.

**COUNT V**

**CONTRACTUAL INDEMNITY AGAINST DEFENDANT CASTELLINI**

52.    Chi-Chi's hereby incorporates paragraphs 1 through 51, inclusive, of this Complaint as if fully set forth herein.

53.    Pursuant to defendant Castellini's July 28, 1999 Confidentiality Agreement with Chi-Chi's, as alleged in paragraph 17 herein, defendant Castellini is required to indemnify Chi-Chi's from and against any and all claims, causes of action, demands, losses, costs, expenses

(including attorney's fees), obligations, liabilities, damages and deficiencies arising out of or related to the parties' relationship.

54.    Further, pursuant to defendant Castellini's January 26, 1997 Hold Harmless Agreement with defendant Sysco, as alleged in paragraph 22, defendant Castellini is required to indemnify Chi-Chi's from all actions, suits, claims and proceedings arising out of or alleged to have arisen out of the delivery, sale or consumption of the Hepatitis A-contaminated green onions.

55.    As a direct and proximate result of defendant Castellini's supply of contaminated green onions, Chi-Chi's has suffered and incurred, and continues to suffer and incur, claims, causes of action, demands, losses, costs, expenses (including attorney's fees), obligations, liabilities, damages, deficiencies, actions, suits, and proceedings, as to all of which defendant Castellini is obligated to indemnify Chi-Chi's under the agreements alleged in paragraphs 17 and 22 above.

56.    Chi-Chi's is therefore entitled to judgment against defendant Castellini for all such losses suffered and expenses incurred, including attorney's fees, in an amount to be proven at trial.

57.    Pursuant to the July 28, 1999 Confidentiality Agreement, Chi-Chi's is entitled to reasonable attorney's fees and other expenses incurred in this action.

COUNT VI

IMPLIED EQUITABLE INDEMNITY AGAINST ALL DEFENDANTS

58.    Chi-Chi's hereby incorporates paragraphs 1 through 57, inclusive, of this Complaint as if fully set forth herein.

59.    Chi-Chi's has received more than hundreds of claims, has been named as a defendant in numerous lawsuits, and anticipates being subjected to future claims and lawsuits, seeking damages from Chi-Chi's as a result of bodily injury and death allegedly resulting from Hepatitis A in relation to consumption of green onions at the Beaver Valley Chi-Chi's.

60.     To the extent the plaintiffs in the bodily injury actions have suffered damages, such damages were caused, entirely or in part, by Defendants herein, and each of them.

61.     By reason of the foregoing, to the extent Chi-Chi's incurs any expenses, fees, costs or attorneys fees in the defense of bodily injury claims relating to the consumption of Hepatitis A-contaminated green onions, or enters into a settlement in any such claim or action, Chi-Chi's is entitled to judgment against Defendants for all or part of any such sums incurred by reason of said judgment or settlement and for expenses of investigation, attorney's fees, court costs and other fees incurred in the defense of those claims.

62.     Pursuant to paragraph XIX.A of the Distribution Service Agreement, Chi-Chi's is entitled to recover from Defendant Sysco all reasonable attorney's fees and other expenses incurred in this action.

**COUNT VII**

**CONTRIBUTION AGAINST ALL DEFENDANTS**

63.     Chi-Chi's hereby incorporates paragraphs 1 through 62, inclusive, of this Complaint as if fully set forth herein.

64.     Chi-Chi's has received hundreds of claims, has been named as a defendant in numerous lawsuits, and anticipates being subjected to future claims and lawsuits, seeking damages from Chi-Chi's as a result of bodily injury and death allegedly resulting from Hepatitis A in relation to consumption of green onions at the Beaver Valley Chi-Chi's.

65.     To the extent Chi-Chi's is legally responsible for any of the damages claimed in bodily injury actions, and assuming Chi-Chi's is not entitled to total indemnity for all such sums which Chi-Chi's may be required to pay, Chi-Chi's would be only partially responsible for the

alleged injuries, damages and other detriment allegedly suffered or sustained by the bodily injury claimants.

66.    Any loss, injury, damages or detriment allegedly suffered or sustained by the bodily injury claimants was directly and proximately caused and contributed to by the primary, active and direct responsibility of each of the defendants herein.

67.    Any damages or other detriment allegedly suffered or sustained by the bodily injury plaintiffs should therefore be apportioned among the Defendants herein on the basis of their respective percentage of fault, if any, in contributing to such damage or detriment.

68.    Based on the foregoing, Defendants have a duty to contribute to and indemnify Chi-Chi's for any recovery any bodily injury plaintiff may realize as against Chi-Chi's in excess of that part of the damages directly proportionate to Chi-Chi's percentage of fault, if any.

69.    Pursuant to paragraph XIX.A of the Distribution Service Agreement, Chi-Chi's is entitled to recover from defendant Sysco all reasonable attorney's fees and other expenses incurred in this action.

WHEREFORE, Chi-Chi's prays for judgment against defendants Castellini Company, Sysco Corporation, and Sygma Network, Inc. as follows:

1.    For past and future general, incidental and consequential damages in a sum not yet fully ascertained and according to proof at trial;

[The remainder of this page intentionally left blank.]

2.    For attorneys' fees and costs;

3.    For pre- and post-judgment interest;

4.    For indemnity;

5.    For contribution;

6.    For costs of suit; and

7.    For such other and further relief as the Court may deem just.

FOX ROTHSCHILD LLP

By:/s/ Francis G. X. Pileggi, Esquire
Francis G. X. Pileggi, Esquire (Del. Bar No. 2624)
L. Jason Cornell, Esquire (Del. Bar No. 3821)
919 N. Market Street, Suite 1300
P.O. Box 2323
Wilmington, DE 19899-2323
(302) 654-7444

and

Richard Dennis Abrams, Esquire
Heckler & Frabizzio, PA
800 Delaware Avenue, Suite 200
Wilmington, DE 19801
(302) 573-4800

Attorneys for Empire Indemnity Insurance Company,[3]
subrogee of the above-captioned Debtors

---

[3] The firm of Heckler & Frabizzio represents Subrogee as to all claims against the Defendants, whereas Fox Rothschild LLP represents Subrogee as to claims arising solely against Defendant Castellini.

# EXHIBIT 7

NONPREF

# U.S. Bankruptcy Court
## District of Delaware (Delaware)
## Adversary Proceeding #: 04-57064-RB

*Assigned to:* Randolph Baxter
*Related BK Case:* 03-13063
*Related BK Title:* Chi-Chi's, Inc.                    *Date Filed:* 11/16/04
*Demand:*
*Nature of Suit:* 498

**Plaintiff**
-----------------------

**Empire Indemnity Insurance Company,**         represented by   **Bernard George Conaway**
**Subrogee of Debtors, Chi-Chi's, Inc.**                         Fox Rothschild LLP
Fox Rothschild LLP                                               919 North Market Street, Suite 1300
919 N. Market Street                                            PO Box 2323
Suite 1300                                                      Wilmington, DE 19899-2323
P.O. Box 2323                                                   302-622-4209
Wilmington, DE 19899-2323                                       Email: bconaway@foxrothschild.com
(302) 654-7444

                                                                **Francis G. X. Pileggi**
                                                                Fox Rothschild LLP
                                                                919 N. Market Street
                                                                Suite 1300
                                                                Wilmington, DE 19801
                                                                usa
                                                                302-654-7444
                                                                Fax : 302-656-8920
                                                                Email: fpileggi@foxrothschild.com

                                                                **L. Jason Cornell**
                                                                Fox Rothschild O'Brien & Frankel, L
                                                                824 N. Market Street, suite 810
                                                                P.O. Box 2323
                                                                Wilmington, DE 19899-2323
                                                                302-654-7444
                                                                Fax : 302-656-8920
                                                                Email: jcornell@frof.com

V.

**Defendant**
-----------------------

**Castellini Company, LLC**                     represented by   **Kevin Gross**
                                                                Rosenthal Monhait Gross & Goddess
                                                                919 Market Street, Suite 1401

P.O. Box 1070
Wilmington, DE 19899-1070
usa
302 656-4433
Fax : 302-658-7567
Email: kgross@rmgglaw.com

**Sysco Corporation**
*TERMINATED: 12/07/2004*

**Sygma Network, Inc.**
*TERMINATED: 12/07/2004*

| Filing Date | # | Docket Text |
|---|---|---|
| 11/16/2004 | 1 | Complaint by Empire Indemnity Insurance Company, Subrogee of Debtors, Chi-Chi's, Inc. against Castellini company, LLC, Sysco Corporation and Sygma Network, Inc.. Fee Amount $150 Nature of Suit: 498(Other). AP Summons Served due date: 3/16/2005. (Attachments: # 1 Exhibit 1# 2 Exhibit 2# 3 Exhibit 3# 4 Exhibit 4-1# 5 Exhibit 4-2) (Pileggi, Francis) Modified on 11/17/2004 (SDA, ). (Entered: 11/16/2004) |
| 11/16/2004 | 2 | *ENTERED IN ERROR* [See docket number 5]. Summons Service Executed on Castellini company, LLC, Sysco Corporation and Sygma Network, Inc. 11/16/2004. (Attachments: # 1 Certificate of Service) (Cornell, L.) Modified on 12/8/2004 (BMG, ). (Entered: 11/16/2004) |
| 11/18/2004 | 4 | Receipt of filing fee for Complaint(04-57064-JLP) [cmp,cmp] ( 150.00). Receipt Number 1774681, amount $ 150.00. (U.S. Treasury) (Entered: 11/18/2004) |
| 11/30/2004 | 5 | Notice of Document Entered in Error (related document(s)2 ) Filed by Empire Indemnity Insurance Company, Subrogee of Debtors, Chi-Chi's, Inc. (related document(s)2). (Cornell, L.) (Entered: 11/30/2004) |
| 11/30/2004 | 6 | Summons and Notice of Pretrial Conference Served on Defendant Castellini company, LLC, Sysco Corporation and Sygma Network, Inc.. (related document1 ) Pretrial Conference set for 2/10/2005 at 01:30 PM at US Bankruptcy Court, 824 Market St., 6th Floor, Wilmington, DE. Answer due date: 12/30/2004. (Attachments: # 1 Certificate of Service) (Cornell, L.) (Entered: 11/30/2004) |
| 12/07/2004 | 7 | Notice of Dismissal *[Notice of Partial Dismissal]* Filed by Empire Indemnity Insurance Company, Subrogee of Debtors, Chi-Chi's, Inc.. (Cornell, L.) (Entered: 12/07/2004) |
| 02/08/2005 | 8 | Answer to Complaint Filed by Castellini Company, LLC (Gross, Kevin) (Entered: 02/08/2005) |
| 05/06/2005 | 9 | Order Reassigning Adversary Proceeding to the Honorable Randolph Baxter. |

|  |  | Order Signed on 5/5/2005. (Attachments: #(1) Exhibit A). (LCN, ) (Entered: 05/06/2005) |
|---|---|---|
| 05/06/2005 |  | Judge Randolph Baxter added to case. Involvement of Judge Charles G. Case Terminated (LCN, ) (Entered: 05/06/2005) |
| 08/01/2005 | 10 | Notice of Service *of Defendant's First Set of Interrogatories and Requests for Production of Documents to Chi-Chi's, Inc.* Filed by Castellini Company, LLC. (Gross, Kevin) (Entered: 08/01/2005) |
| 08/01/2005 | 11 | Motion for Withdrawal of Reference *Motion and Incorporated Memorandum of Law of Defendant Castellini Company, LLC, to Withdraw the Reference.* Fee Amount $150. Filed by Castellini Company, LLC. (Attachments: # (1) Proposed Form of Order # 2 Certificate of Service) (Gross, Kevin) Additional attachment(s) added on 8/9/2005 (KPB, ). (Entered: 08/01/2005) |
| 08/01/2005 | 12 | Memorandum of Law *Motion and Incorporated Memorandum of Law of Defendant Castellini Company, LLC for a Determination that the Adversary Proceeding is a Non-Core Proceeding* Filed by Castellini Company, LLC (Attachments: # 1 Motion# 2 Proposed Form of Order # 3 Certificate of Service) (Gross, Kevin) (Entered: 08/01/2005) |
| 08/02/2005 | 13 | Receipt of filing fee for Motion for Withdrawal of Reference (A)(04-57064-RB) [motion,mwdrefad] ( 150.00). Receipt Number 2164443, amount $ 150.00. (U.S. Treasury) (Entered: 08/02/2005) |
| 08/08/2005 | 14 | Motion to Extend Time *FOR EMPIRE INDEMNITY INSURANCE CO TO RESPOND TO CASTELLINI'S MOTION FOR A DETERMINATION THAT THE ADVERSARY PROCEEDING IS A NON-CORE PROCEEDING AND MOTION TO WITHDRAW THE REFERENCE* Filed by Empire Indemnity Insurance Company, Subrogee of Debtors, Chi-Chi's, Inc.. (Attachments: # 1 Proposed Form of Order AND STIPULATION# 2 Certificate of Service) (Pileggi, Francis) (Entered: 08/08/2005) |
| 08/12/2005 | 15 | Order Approving Stipulation and Order Extending the Objection Deadline for Castellini's Motion to Withdraw the Reference and Motion for Determination That the Adversary Proceeding is Non-Core. (related document(s)14 ) Order Signed on 8/12/2005. (LCN, ) (Entered: 08/12/2005) |
| 08/24/2005 | 16 | Response to *DEFENDANT CASTELLINI?S MOTION FOR A DETERMINATION THAT THE ADVERSARY PROCEEDING IS A NON-CORE PROCEEDING AND MOTION TO WITHDRAW THE REFERENCE* (related document(s)11 ) Filed by Empire Indemnity Insurance Company, Subrogee of Debtors, Chi-Chi's, Inc. (Attachments: # 1 Proposed Form of Order # 2 Certificate of Service) (Conaway, Bernard) (Entered: 08/24/2005) |
| 08/30/2005 | 17 | Transmittal of Motion to Withdraw the Reference to U.S.D.C. for the District of Delaware. (related document(s)11 ) (BMG, ) (Entered: 08/30/2005) |
| 09/06/2005 | 18 | Notice of Docketing of the Motion to Withdraw Reference at the U.S. |

| | | District Court, District of Delaware, (Civil Action No. 05-634) . (related document(s)11, 17 ) (BMG, ) (Entered: 09/07/2005) |
|---|---|---|
| 09/19/2005 | <u>19</u> | Certification of Counsel *re docket nos 12, 16 and* (related document(s)11 ) Filed by Castellini Company, LLC (Gross, Kevin) (Entered: 09/19/2005) |

<table>
<tr><td colspan="5" align="center"><b>PACER Service Center</b></td></tr>
<tr><td colspan="5" align="center"><b>Transaction Receipt</b></td></tr>
<tr><td colspan="5" align="center">10/20/2005 17:09:13</td></tr>
<tr><td><b>PACER Login:</b></td><td>gh0881</td><td><b>Client Code:</b></td><td colspan="2">10100.1</td></tr>
<tr><td><b>Description:</b></td><td>Docket Report</td><td><b>Search Criteria:</b></td><td colspan="2">04-57064-RB Fil or Ent: Fil From: 8/19/2004 To: 10/20/2005 Doc From: 0 Doc To: 99999999 Term: y Links: n Format: HTMLfmt</td></tr>
<tr><td><b>Billable Pages:</b></td><td>2</td><td><b>Cost:</b></td><td colspan="2">0.16</td></tr>
</table>

# EXHIBIT 8

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CHI-CHI'S, INC., | ) | Case No. 03-13063(JLP) |
| | ) | (Jointly Administered) |
| Debtors | ) | |

| | | |
|---|---|---|
| | ) | |
| | ) | |
| CHI-CHI'S, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | Adv. No. 04- 57064 (JLP) |
| | ) | |
| CASTELLINI COMPANY, LLC, | ) | |
| SYSCO CORPORATION and | ) | |
| SYGMA NETWORK, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## NOTICE OF PARTIAL DISMISSAL

PLEASE TAKE NOTICE that the Plaintiff, Chi-Chi's, Inc.[1], by and through its

undersigned counsel, hereby dismisses Defendants Sysco Corporation and Sygma Network, Inc.,

from the above-captioned adversary proceeding, without prejudice.


FOX ROTHSCHILD LLP


By:   /s/ L. Jason Cornell, Esquire
      Francis G. X. Pileggi, Esquire (Del. Bar No. 2624)
      L. Jason Cornell, Esquire (Del. Bar No. 3821)
      919 N. Market Street, Suite 1300
      P.O. Box 2323
      Wilmington, DE 19899-2323
      (302) 654-7444

      and

---

[1] The Complaint was filed by Empire Indemnity Insurance Company, subrogee of the Debtor. Empire's policy was issued to Prandium, Inc., the parent of Chi Chi's Inc..

Richard Dennis Abrams, Esquire
Heckler & Frabizzio, PA
800 Delaware Avenue, Suite 200
Wilmington, DE 19801
(302) 573-4800

Attorneys for Empire Indemnity Insurance Company,[2]
subrogee of the above-captioned Debtors

---

[2] The firm of Heckler & Frabizzio represents Subrogee as to all claims against the Defendants, whereas Fox Rothschild LLP represents Subrogee as to claims arising solely against Defendant Castellini.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that one (1) copy of the attached was served upon the

following this 7th day of December, 2004, in the manner designated below:

*Via First Class Mail*
(Counsel for Castellini Company, LLC)
Gary E. Becker
Dinsmore & Shohl, LLP
1900 Chemed Center
255 East Fifth Street
Cincinnati, OH  45202

*Via Hand Delivery*
Kevin Gross, Esquire
Rosenthal Monhait Gross
   & Goddess, P.A.
919 Market Street, Suite 1401
Wilmington, DE  19801

*Via First Class Mail*
(Counsel for Sysco Corporation and Sygma Network, Inc.)
Aaron Krauss
Cozen & O'Connor
1900 Market Street
Philadelphia, PA  19103

/s/ L. Jason Cornell,  Esquire
L. Jason Cornell,  Esquire

# **<u>EXHIBIT 9</u>**

1  Frederic L. Gordon, Esq., SBN 98994
   Rhonda J. Holmes, Esq., SBN 157017
2  Joice B. Nidy, Esq., SBN 209735
   Douglas J. Billings, Esq., SBN 169881
3  GORDON & HOLMES
   223 West Date Street
4  San Diego, CA 92101
   Telephone: (619) 696-0444
5  Facsimile: (619) 696-1144

6  Attorneys for Plaintiff
   CHI-CHI's, INC.

7

8                    UNITED STATES DISTRICT COURT

9               FOR THE CENTRAL DISTRICT OF CALIFORNIA

10                         SOUTHERN DIVISION

11  CHI-CHI's, INC.,                    )  Case No.
                                        )
12            Plaintiff,                )  **COMPLAINT AND DEMAND FOR**
                                        )  **JURY TRIAL**
13      vs.                             )
                                        )
14  CASTELLINI COMPANY, LLC,            )
                                        )
15            Defendants.               )
                                        )
16  _____ )

17      Plaintiff CHI-CHI'S, INC., by and through its attorneys of record, Gordon and Holmes,

18  hereby alleges as follows:

19                   **I.  PARTIES AND JURISDICTION**

20      1.    On or about October 8, 2003, Plaintiff CHI-CHI'S, INC. ("CHI-CHI'S") and

21  certain related debtors filed, in the United States Bankruptcy Court, District of Delaware,

22  Voluntary Petitions for relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §101, et seq.

23  The matters have been consolidated for joint administration in Case No. 03-13063.

24      2.    This proceeding arises under or in, or is related to, the Chapter 11 case.  This court

25  has jurisdiction over this proceeding pursuant to 28 U.S.C. §1334(b).

26      3.    Venue is proper in this district pursuant to 28 U.S.C. §1391(b)(2) and pursuant to a

27  stipulation between plaintiff CHI-CHI'S and defendant CASTELLINI COMPANY, LLC..

28

@PPDesktop\::ODMA/PCDOCS/GH/19155/1              - 1 -
COMPLAINT

*(left margin vertical text)*
GORDON & HOLMES
223 West Date Street San Diego, CA  92101
(619) 696-0444  Fax (619) 696-1144

Frederic L. Gordon, Esq., SBN 98994
Rhonda J. Holmes, Esq., SBN 157017
Joice B. Nidy, Esq., SBN 209735
Douglas J. Billings, Esq., SBN 169881
GORDON & HOLMES
223 West Date Street
San Diego, CA 92101
Telephone: (619) 696-0444
Facsimile: (619) 696-1144

Attorneys for Plaintiff
CHI-CHI's, INC.

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| CHI-CHI's, INC., | Case No. |
| Plaintiff, | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| vs. | |
| CASTELLINI COMPANY, LLC, | |
| Defendants. | |

Plaintiff CHI-CHI'S, INC., by and through its attorneys of record, Gordon and Holmes, hereby alleges as follows:

## I.  PARTIES AND JURISDICTION

1.    On or about October 8, 2003, Plaintiff CHI-CHI'S, INC. ("CHI-CHI'S") and certain related debtors filed, in the United States Bankruptcy Court, District of Delaware, Voluntary Petitions for relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §101, et seq. The matters have been consolidated for joint administration in Case No. 03-13063.

2.    This proceeding arises under or in, or is related to, the Chapter 11 case.  This court has jurisdiction over this proceeding pursuant to 28 U.S.C. §1334(b).

3.    Venue is proper in this district pursuant to 28 U.S.C. §1391(b)(2) and pursuant to a stipulation between plaintiff CHI-CHI'S and defendant CASTELLINI COMPANY, LLC..

@PFDesktop\::ODMA/PCDOCS/GH/19155/1                    -1-
COMPLAINT

*(left margin, vertical)* GORDON & HOLMES  223 West Date Street San Diego, CA  92101  (619) 696-0444  Fax (619) 696-1144

4.    Plaintiff CHI-CHI'S is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Irvine, California. Plaintiff CHI-CHI'S is, and at all relevant times herein was, the owner and operator of a chain of restaurants preparing, serving, and selling food to consumers, primarily for in-restaurant consumption.

5.    Plaintiff is informed and believes and thereon alleges that defendant CASTELLINI COMPANY, LLC ("CASTELLINI") is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business in Wilder, Kentucky. At all times relevant herein, defendant CASTELLINI was in the business of processing, supplying, and shipping produce and other foods for use in restaurants.

## FACTUAL ALLEGATIONS

6.    In or about November 2003, an outbreak of Hepatitis A occurred in western Pennsylvania. More than 650 people became ill and, to date, four individuals have died. Through epidemiological and statistical analyses, the outbreak was traced to a CHI-CHI'S restaurant located in Monaca, Pennsylvania ("the Beaver Valley Chi-Chi's"). More specifically, the analyses led to a determination that the source of the outbreak was human consumption of Hepatitis A-contaminated green onions which had been used in raw form as an ingredient in salsa and as a garnish on other dishes served to CHI-CHI'S customers in or about early October 2003. The green onions, which were (unknowingly to CHI-CHI's) contaminated with Hepatitis A prior to their delivery to CHI-CHI's, had been supplied to the Beaver Valley Chi-Chi's by defendant CASTELLINI.

7.    The presence of Hepatitis A in the green onions rendered the product adulterated, unsafe, and unfit for human consumption.

8.    As a direct and proximate result of defendants' supply of adulterated green onions, CHI-CHI's suffered immediate property damage including, but not limited to, contamination of other food products and contamination of surfaces and other areas within the Beaver Valley Chi-Chi's. As a further direct and proximate result of defendants' supply of adulterated green onions, the Beaver Valley Chi-Chi's was closed from on or about November 2, 2003 to on or about January 15, 2004. All of CHI-CHI'S damages described herein resulted because of this property

GORDON & HOLMES
223 West Date Street San Diego, CA 92101
(619) 696-0444  Fax (619) 696-1144

1    damage and loss of use of property, and/or because of the bodily injuries described in paragraph

2    6 above.

3        9.    The outbreak received, and continues to receive, considerable media attention, both

4    in Western Pennsylvania and throughout the nation.  At the time the outbreak was first publicly

5    reported in or about November 2003, CHI-CHI's owned and operated approximately 122

6    restaurants throughout the Midwest, mid-Atlantic and Northeast.  As a direct and proximate

7    result of the events described herein, all CHI-CHI's restaurants have now been permanently

8    closed, causing CHI-CHI's loss of use of all its restaurants.

9        10.    As a direct and proximate result of the outbreak and the attendant publicity,

10    plaintiff CHI-CHI's has suffered, and continues to suffer, damages, including but not limited to,

11    property damage, lost profits (both relating to the closure of the Beaver Valley Chi-Chi's and the

12    impact of the publicity on CHI-CHI's other restaurants), lost value, costs directly related to the

13    closure and cleaning of the Beaver Valley Chi-Chi's, crisis management expenses, attorney's

14    fees, payment of medical expenses and preventative care, and loss of goodwill.

15        11.    In addition, CHI-CHI's has received more than 300 claims, has been named as a

16    defendant in numerous lawsuits, and anticipates being subjected to future claims and lawsuits,

17    seeking damages from CHI-CHI's as a result of bodily injury and death allegedly caused by

18    human consumption of Hepatitis A-contaminated green onions at the Beaver Valley Chi-Chi's

19    ("the bodily injury actions").  As a result, CHI-CHI's has incurred, and continues to incur,

20    additional expenses, including but not limited to payment of claims, attorney's fees, and other

21    litigation costs and expenses.

22    II.    HISTORICAL AND CONTRACTUAL RELATIONSHIPS OF THE PARTIES

23        12.    Beginning in or about June 1999, defendant CASTELLINI and Prandium, Inc.

24    ("Prandium"), the parent company of plaintiff CHI-CHI'S, began discussing the possibility of

25    CASTELLINI becoming a supplier of produce and other products to various restaurants

26    operating as subsidiaries or affiliates of Prandium, including plaintiff CHI-CHI'S.

27        13.    As part of the negotiations and in order for CASTELLINI to bid the project,

28    Prandium provided CASTELLINI with a variety of documents, including, but not limited to,

GORDON & HOLMES
223 West Date Street San Diego, CA    92101
(619) 696-0444    Fax (619) 696-1144.

@PFDesktop\::ODMA/PCDOCS/GH/19155/1    - 3 -
COMPLAINT

1   product specifications for green onions and a document entitled "Supplier General Requirements

2   Master Food Specification for Whole Produce ("Supplier General Requirements"). The Supplier

3   General Requirements and product specifications required suppliers, including CASTELLINI, to

4   provide Prandium and CHI-CHI's with unadulterated, safe, and wholesome green onions.

5   Specifically, CASTELLINI was required to and in fact did warrant as follows:

6          §1.2.1 - The supplier hereby guarantees that no article sold to

7          Prandium for use in any Prandium restaurant is adulterated or

8          misbranded within the meaning of the Federal, Drug and Cosmetic

9          Act, or is an article which may, under the provisions of Section 404,

10         505, or 512 of the Act be introduced into interstate commerce.

11

12         §1.2.2 - The article comprising each shipment or other delivery

13         hereafter made by the supplier is hereby guaranteed, as of the date of

14         such shipment or delivery, to be on such date, not adulterated or

15         misbranded within the meaning of the Federal Food, Drug and

16         Cosmetic Act, and not an article which may not, under the provisions

17         of Sections 404, 505 or 512 of the Act, be introduced into interstate

18         commerce."

19   A true and correct copy of the Supplier General Requirements and green onion specifications are

20   attached hereto as Exhibit "1".

21         14.     On or about July 28, 1999, and in connection with the negotiations described above,

22   defendant CASTELLINI executed a document entitled "Confidentiality Agreement," in which

23   CASTELLINI agreed to, in part, "indemnify, protect, defend, and hold harmless [Prandium], its

24   subsidiaries, related and affiliate companies and entities ... from and against any and all claims,

25   causes of action, demands, losses, costs, expenses (including reasonable attorneys' fees),

26   obligations, liabilities, damages, and deficiencies of any kind that arise out of, result from, or in

27   any way relate to" the parties' "business relationship." A true and correct copy of the July 28,

28   1999 agreement is attached hereto as Exhibit "2"

GORDON & HOLMES
223 West Date Street San Diego, CA  92101
(619) 696-0444  Fax (619) 696-1144

@PFDesktop\::ODMA/PCDOCS/GH/19155/1                    -4-
COMPLAINT

15.    Before defendant CASTELLINI was permitted to bid as a potential supplier to CHI-CHI's, CASTELLINI was required to agree to comply with the Supplier General Requirements and product specifications, including the green onion specifications, alleged in paragraph 13 above. In or about late summer 1999, representatives of defendant CASTELLINI made a presentation to plaintiff in which CASTELLINI did in fact further warrant that it would and could comply with Prandium and CHI-CHI's general requirements and product specifications. The parties thereafter entered into a pricing agreement for various products, including green onions.

16.    On or about December 12, 2002, plaintiff and defendant CASTELLINI entered into a revised pricing agreement in which CASTELLINI agreed to sell green onions (among other products) to CHI-CHI's at an established price. As a condition to the revised pricing agreement, plaintiff CHI-CHI's continued to require defendant CASTELLINI to, and CASTELLINI agreed to, supply green onions that met the Supplier General Requirements and green onion specifications provided to CASTELLINI in 1999.

17.    In connection with the CASTELLINI pricing agreements, the parties agreed that defendant CASTELLINI would sell the green onions, at the negotiated price, to Sysco Corporation ("Sysco"). Sysco, in turn, would sell the product to plaintiff CHI-CHI's (on a specified cost-plus basis) and would transport and deliver the green onions directly to CHI-CHI's restaurants. The green onions that were contaminated with Hepatitis A and sold to CHI-CHI's customers in or about September and/or October 2003 were supplied to CHI-CHI's pursuant to the agreements described in paragraphs 12 through 17 herein.

18.    Defendant CASTELLINI had been doing business with Sysco for many years. On or about January 26, 1997, CASTELLINI and Sysco had entered into an agreement entitled "Hold Harmless Agreement and Guaranty/Warranty of Product" (hereafter "Hold Harmless Agreement"). A true and correct copy of the Hold Harmless agreement is attached hereto as Exhibit "3".

19.    The Hold Harmless Agreement provided that "[t]his Guaranty and Agreement is continuing and shall be in full force and effect and shall be binding upon [CASTELLINI] with

GORDON & HOLMES
223 West Date Street San Diego, CA   92101
(619) 696-0444   Fax (619) 696-1144

@PFDesktop\::ODMA/PCDOCS/GH/19155/1                    - 5 -
COMPLAINT

1    respect to each and every Product shipped or delivered to [Sysco] by [CASTELLINI] before the

2    receipt of [Sysco] of written notice of revocation thereof." Plaintiff is informed and believes and

3    thereon alleges that defendant CASTELLINI never provided Sysco with revocation of any aspect

4    of the Hold Harmless Agreement with respect to the contaminated green onions supplied to

5    plaintiff in or about September or October of 2003.

6         20.    In the Hold Harmless Agreement, defendant CASTELLINI agreed to "defend,

7    indemnify, and hold harmless [Sysco] and its employees, officers, directors and customers ...

8    from all actions, suits, claims, and proceedings ... and from any judgments, damages, fines, costs

9    and expenses (including reasonable attorney's fees) resulting therefrom ... brought or commenced

10   by any person or entity against any indemnitee for the recovery of damages for the injury, illness

11   and/or death of any person or damage to property arising out of or alleged to have arisen out of

12   (a) the delivery, sale, resale, labeling, use or consumption of any Product ...."

13        21.    In addition, defendant CASTELLINI warranted, in the Hold Harmless Agreement,

14   that "articles contained in any shipment or delivery made by [CASTELLINI] to or on the order of

15   [Sysco] is hereby guaranteed, as of the date of such shipment or delivery, (a) to not be adulterated

16   or misbranded within the meaning of the Federal Food, Drug and Cosmetic Act (the 'Act'), (b) to

17   not be an article which cannot be introduced into interstate commerce under the provisions of

18   Sections 404 and 505 of the Act, and (c) to be in compliance with all applicable federal, state and

19   local laws." This warranty was consistent with the separate oral representations made by

20   defendant CASTELLINI to plaintiff CHI-CHI'S during the negotiations between the parties in

21   the summer of 1999, as alleged in paragraph 15 above.

22        22.    Plaintiff is informed and believes and thereon alleges that defendant CASTELLINI

23   shipped the contaminated green onions from the states of Kentucky and/or Ohio to defendant

24   Sysco's distribution center in Pennsylvania, from which the green onions were subsequently

25   transported by Sysco to the Beaver Valley Chi-Chi's.

26   ////

27   ////

28   ////

GORDON & HOLMES
223 West Date Street San Diego, CA 92101
(619) 696-0444 Fax (619) 696-1144

**COUNT I**

**BREACH OF EXPRESS WARRANTY AGAINST DEFENDANT CASTELLINI**

23.    Plaintiff hereby incorporates paragraphs 1 through 22, inclusive, of this Complaint as if fully set forth herein.

24.    Defendant CASTELLINI, by agreeing to meet plaintiff's General Supplier Requirements and Green Onion Specifications (Exhibit "1"), by executing the January 26, 1997 Hold Harmless Agreement (Exhibit "1"), and when making an oral presentation to plaintiff in or about late summer 1999 (as alleged in paragraph 15 herein), made express warranties that the green onions it supplied for use in CHI-CHI'S restaurants would be safe and wholesome, would not be "adulterated" within the meaning of the Federal Food, Drug and Cosmetic Act ("the Act"), and would be a product capable of being introduced into interstate commerce under the Act.

25.    The presence of the Hepatitis A virus in or on the green onions supplied by defendant CASTELLINI to plaintiff CHI-CHI'S rendered the product adulterated under the Act.

26.    Plaintiff relied upon CASTELLINI's express warranties.

27.    The express warranties was breached when CASTELLINI supplied green onions that contained the Hepatitis A virus to plaintiff in or about September and October of 2003.

28.    As a direct and proximate cause of defendant CASTELLINI's breach, plaintiff CHI-CHI'S has suffered incidental and consequential damages in an amount to be proven at trial.

**COUNT II**

**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY AGAINST DEFENDANT CASTELLINI**

29.    Plaintiff hereby incorporates paragraphs 1 through 28, inclusive, of this Complaint as if fully set forth herein.

30.    Defendant CASTELLINI impliedly warranted that its products would be merchantable, safe, wholesome, and fit for human consumption.

31.    Plaintiff CHI-CHI's relied upon these implied warranties.

GORDON & HOLMES
223 West Date Street San Diego, CA 92101
(619) 696-0444   Fax (619) 696-1144

@PFDesktop\::ODMA/PCDOCS/GH/19155/1                    -7-
COMPLAINT

1    32.    Defendant's implied warranties of merchantability were breached when

2    CASTELLINI supplied plaintiff, in or about September and/or October 2003, with green onions

3    contaminated with Hepatitis A.

4    33.    As a direct and proximate cause of defendant CASTELLINI's breach of the implied

5    warranty of merchantability, plaintiff CHI-CHI's has suffered incidental and consequential

6    damages in an amount to be proven at trial.

7                                           **COUNT III**

8    **BREACH OF IMPLIED WARRANTY OF FITNESS FOR A**
9    **PARTICULAR PURPOSE AGAINST DEFENDANT CASTELLINI**

10   34.    Plaintiff hereby incorporates paragraphs 1 through 33, inclusive, of this Complaint

11   as if fully set forth herein.

12   35.    At all relevant times, defendant CASTELLINI had reason to know of the particular

13   purpose for which the subject green onions would be used by plaintiff.  Specifically, defendant

14   was aware that plaintiff CHI-CHI'S intended to serve the green onions in raw form without

15   cooking or further processing as an ingredient in salsa to be served to plaintiff's customers.

16   Defendant CASTELLINI was further aware that plaintiff was relying on the skill and judgment

17   of defendant to supply suitable green onions (that is, green onions that were safe, wholesome,

18   and free of adulteration) for this particular purpose.

19   36.    In supplying, processing, packaging, marketing, selling, and distributing the subject

20   green onions, defendant CASTELLINI impliedly represented that the green onions were fit for

21   the particular purpose described herein, i.e., that the green onions would not cause human illness

22   when used for the particular purpose intended by plaintiff.

23   37.    Plaintiff did in fact use the subject green onions for this particular purpose.

24   38.    Defendant CASTELLINI's implied warranties of fitness for a particular purpose

25   were breached when defendant supplied plaintiff CHI-CHI'S, in or about September and/or

26   October 2003, with green onions which was not fit for plaintiff's particular purpose, in that the

27   green onions were contaminated with Hepatitis A.

28

@PFDesktop\::ODMA/PCDOCS/GH/19155/1          -8-
COMPLAINT

GORDON & HOLMES
223 West Date Street San Diego, CA  92101
(619) 696-0444  Fax (619) 696-1144

39.    As a direct and proximate cause of defendant CASTELLINI's breach of the implied warranty of fitness for a particular purpose, plaintiff CHI-CHI'S has suffered incidental and consequential damages in an amount to be proven at trial.

## COUNT IV

### CONTRACTUAL INDEMNITY AGAINST DEFENDANT CASTELLINI

40.    Plaintiff hereby incorporates paragraphs 1 through 39, inclusive, of this Complaint as if fully set forth herein.

41.    Pursuant to defendant CASTELLINI's July 28, 1999 Confidentiality Agreement with plaintiff CHI-CHI's, as alleged in paragraph 14 herein, defendant CASTELLINI is required to indemnify plaintiff from and against any and all claims, causes of action, demands, losses, costs, expenses (including attorney's fees), obligations, liabilities, damages and deficiencies arising out of or related to the parties' relationship.

42.    Further, pursuant to defendant CASTELLINI's January 26, 1997 Hold Harmless Agreement with Sysco, as alleged in paragraphs 18-20, defendant CASTELLINI is required to indemnify plaintiff from all actions, suits, claims and proceedings arising out of or alleged to have arisen out of the delivery, sale or consumption of the Hepatitis A-contaminated green onions.

43.    As a direct and proximate result of defendant CASTELLINI's supply of contaminated green onions, plaintiff CHI-CHI's has suffered and incurred, and continues to suffer and incur, claims, causes of action, demands, losses, costs, expenses (including attorney's fees), obligations, liabilities, damages, deficiencies, actions, suits, and proceedings, as to all of which defendant CASTELLINI is obligated to indemnify plaintiff CHI-CHI's under the agreements alleged in paragraphs 14 and 18-20 above.

44.    Plaintiff CHI-CHI's is therefore entitled to judgment against defendant CASTELLINI for all such losses suffered and expenses incurred, including attorney's fees, in an amount to be proven at trial.

45.    Pursuant to the July 28, 1999 Confidentiality Agreement, plaintiff CHI-CHI's is entitled to reasonable attorney's fees and other expenses incurred in this action.

GORDON & HOLMES
223 West Date Street San Diego, CA  92101
(619) 696-0444   Fax (619) 696-1144

@PFDesktop\:ODMA/PCDOCS/GH/19155/1        - 9 -
COMPLAINT

# COUNT V

## IMPLIED EQUITABLE INDEMNITY AGAINST DEFENDANT CASTELLINI

46.    Plaintiff hereby incorporates paragraphs 1 through 45, inclusive, of this Complaint as if fully set forth herein.

47.    Plaintiff CHI-CHI'S has received more than 300 claims, has been named as a defendant in numerous lawsuits, and anticipates being subjected to future claims and lawsuits, seeking damages from CHI-CHI's as a result of bodily injury and death allegedly resulting from Hepatitis A in relation to consumption of green onions at the Beaver Valley Chi-Chi's.

48.    To the extent plaintiffs in the bodily injury actions have suffered damages, such damages were caused, entirely or in part, by defendant CASTELLINI.

49.    By reason of the foregoing, to the extent plaintiff CHI-CHI's incurs any expenses, fees, costs or attorneys fees in the defense of bodily injury claims relating to the consumption of Hepatitis A-contaminated green onions, or enters into a settlement in any such claim or action, plaintiff is entitled to judgment against defendant CASTELLINI for all or part of any such sums incurred by reason of said judgment or settlement and for expenses of investigation, attorney's fees, court costs and other fees incurred in the defense of those claims.

# COUNT VI

## CONTRIBUTION AGAINST ALL DEFENDANTS

50.    Plaintiff hereby incorporates paragraphs 1 through 49, inclusive, of this Complaint as if fully set forth herein.

51.    Plaintiff CHI-CHI's has received more than 300 claims, has been named as a defendant in numerous lawsuits, and anticipates being subjected to future claims and lawsuits, seeking damages from CHI-CHI's as a result of bodily injury and death allegedly resulting from Hepatitis A in relation to consumption of green onions at the Beaver Valley Chi-Chi's.

52.    To the extent plaintiff CHI-CHI's is legally responsible for any of the damages claimed in bodily injury actions, and assuming plaintiff is not entitled to total indemnity for all such sums which plaintiff may be required to pay, plaintiff would be only partially responsible

GORDON & HOLMES
223 West Date Street San Diego, CA  92101
(619) 696-0444  Fax (619) 696-1144

1 for the alleged injuries, damages and other detriment allegedly suffered or sustained by the bodily

2 injury claimants.

3     53.      Any loss, injury, damages or detriment allegedly suffered or sustained by the bodily

4 injury claimants was directly and proximately caused and contributed to by the primary, active

5 and direct responsibility of defendant CASTELLINI.

6     54.      Any damages or other detriment allegedly suffered or sustained by the bodily injury

7 plaintiffs should therefore be apportioned among plaintiff and defendant CASTELLINI on the

8 basis of their respective percentage of fault, if any, in contributing to such damage or detriment.

9     55.      Based on the foregoing, defendant CASTELLINI has a duty to contribute to and

10 indemnify plaintiff CHI-CHI's for any recovery any bodily injury plaintiff may realize as against

11 plaintiff CHI-CHI's in excess of that part of the damages directly proportionate to plaintiff CHI-

12 CHI's percentage of fault, if any.

13     **WHEREFORE,** plaintiff CHI-CHI'S, INC prays for judgment against defendant

14 CASTELLINI COMPANY, LLC as follows:

15     1.      For past and future general, incidental and consequential damages in a sum not yet

16             fully ascertained and according to proof at trial;

17     2.      For attorneys' fees and costs;

18     3.      For pre- and post-judgment interest;

19     4.      For indemnity;

20     5.      For contribution;

21     6.      For costs of suit; and

22 ////

23 ////

24 ////

25 ////

26 ////

27 ////

28 ////

GORDON & HOLMES
223 West Date Street San Diego, CA 92101
(619) 696-0444 Fax (619) 696-1144

7.    For such other and further relief as the Court may deem just.

FURTHER, Plaintiff CHI-CHI's hereby demands trial by jury.

Dated:  November 19, 2004

Respectfully submitted,

GORDON & HOLMES

By: _____
FREDERIC L. GORDON, ESQ.
RHONDA J. HOLMES, ESQ.
JOICE B. NIDY, ESQ.
DOUGLAS J. BILLINGS, ESQ.
Attorneys for Plaintiff
CHI-CHI's, INC.

GORDON & HOLMES
223 West Date Street San Diego, CA  92101
(619) 696-0444  Fax (619) 696-1144

@PFDesktop\::ODMA/PCDOCS/GH/19155/1
COMPLAINT

- 12 -

# **EXHIBIT 10**



1
✓ Priority
✓ Send
__ Clsd
✓ Enter
__ JS-5/JS-6
__ JS-2/JS-3

FILED
CLERK, U.S. DISTRICT COURT

MAY 3 1 2005

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| CHI-CHI's, INC., | ) | NO. CV 04-9539 GPS (AWx) |
| Plaintiff, | ) | |
| | ) | ORDER RE ABSTENTION |
| v. | ) | |
| CASTELLINI COMPANY, LLC, | ) | |
| Defendant. | ) | |

ENTERED
CLERK, U.S. DISTRICT COURT

JUN 1 2005

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP RULE 77(d).

    This action was filed on November 22, 2004. On March 10, 2005, the parties were ordered
to show cause as to why the Court, in its discretion, should not abstain from further proceeding
in this case pursuant to 28 U.S.C. § 1334(c)(1). The Court has read and considered the parties'
responses, and for the reasons that follow, the Court finds that it should abstain from this
proceeding.

                                    BACKGROUND

    On October 8, 2003, Chi-Chi's, Inc. ("Chi-Chi's") and several related debtors filed voluntary
petitions for relief under Chapter 11 of Bankruptcy Code (11 U.S.C. § 101, *et seq.*) in the
Bankruptcy Court in Delaware. At the time of the filing, Chi-Chi's owned approximately 122
restaurants throughout the Midwest, mid-Atlantic and Northeast parts of the United States. In or

36

1  about November, 2003, an outbreak of Hepatitis A occurred in Western Pennsylvania. This

2  outbreak was traced to a Chi-Chi's restaurant located in Monaca, Pennsylvania. Investigators,

3  through epidemiological and statistical analysis, were able to determine that the source of the

4  outbreak was human consumption of green onions contaminated with Hepatitis A. The onions

5  had been used as an ingredient in salsa and as a garnish on dishes served to Chi-Chi's

6  customers in October 2003.

7         On July 20, 2004, Chi-Chi's filed a post-petition adversary proceeding in the bankruptcy

8  court against the supplier of the contaminated onions, Castellini Company, LLC ("Castellini"). The

9  adversary case was filed as a "non-core proceeding" related to the Title 11 case. Two additional

10  defendants, Sysco Corporation and Sygma Network, were also named in the complaint.[1] The

11  complaint alleged that Chi-Chi's entered into a green onion pricing agreement with Castellini.

12  Pursuant to the agreement, Castellini sold green onions, at a price negotiated by Chi-Chi's, to

13  Sysco/Sygma. Sysco/Sygma, in turn, sold and delivered the onions to Chi-Chi's.

14         Following the filing of the adversary complaint, the parties discussed jurisdictional and

15  venue issues. A number of concerns were raised with respect to proceeding in Delaware. For

16  instance, the agreement between Chi-Chi's and Sysco/Sygma required all disputes between the

17  parties be arbitrated in Kentucky and under Kentucky law. Moreover, Castellini's processing

18  facilities, from which it allegedly supplied the contaminated onions, were located in Kentucky.

19  While all four parties to the adversary proceeding were incorporated in Delaware, none had its

20  principal place of business in that state. Furthermore, the contaminated green onions were

21  allegedly obtained from multiple suppliers in various states, including California. Finally, as noted,

22  the outbreak occurred at a Chi-Chi's restaurant in Pennsylvania.

23         Ultimately, the parties agreed that Delaware was not the appropriate venue for the

24  adversary proceeding. On November 12, 2004, Chi-Chi's and Castellini entered into a stipulation

25  regarding the dismissal and re-filing of the action in California. Pursuant to the stipulation, Chi-

26

27         _____

    [1] Sygma is a subsidiary of Sysco. The two companies will be collectively referred to as
28  "Sysco/Sygma."

1  Chi's dismissed the Delaware action without prejudice and re-filed its case in this Court.

2  Consistent with the agreement, Castellini has not sought to dismiss or otherwise object to the

3  action on the basis of venue, personal jurisdiction, or forum non-conveniens.

4        On March 10, 2005, the parties were ordered to show cause as to why the Court, in its

5  discretion, should not abstain from hearing the case pursuant to 28 U.S.C. § 1334(c)(1).

6                              **ABSTENTION**

7        Subject matter jurisdiction to hear bankruptcy cases and proceedings is conferred by 28

8  U.S.C. § 1334. Section 1334(b) states that "the district courts shall have original but not exclusive

9  jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title

10  11. 28 U.S.C. § 1334(b).

11        Although this Court has jurisdiction over this matter, 28 U.S.C. § 1334(c) sets forth

12  provisions for both mandatory and discretionary abstention. Under section 1334(c)(2), a court

13  *must* abstain from exercising jurisdiction where all of the following elements are present: (1) a

14  party files a timely motion; (2) the proceeding is based on a state law claim or cause of action; (3)

15  the matter is "related to" a case under chapter 11 (and is not a proceeding "arising under" title 11

16  or "arising in" a case under title 11); (4) the action could not have been commenced in federal

17  court absent bankruptcy; (5) a state court action has been commenced; and (6) the state court

18  action can be timely adjudicated. *Williams v. Shell Oil Co.*, 169 B.R. 684, 692 (D. Cal., 1994); *see*

19  *also Schwarzer, Tashima & Wagstaffe, CAL. PRAC. GUIDE: FED. CIV. PRO. BEFORE TRIAL,*

20  PP 2.846.1 - 2.846.11 (The Rutter Group 2005). In this case, mandatory abstention does not

21  apply because neither party has filed a motion and no state court action has been commenced.[2]

22  Nevertheless, the Court considers whether this matter is appropriate for discretionary abstention

23  pursuant to section 1334(c)(1).

24        Section 1334(c)(1) governs permissive abstention and provides:

25

26        [2] The Court notes that with exception of a timely motion and a related state action, all other
    elements of mandatory abstention are present. In situations such as this where most of the
27  criteria that Congress established for mandatory abstention have been met, courts should
    consider whether it would be appropriate to exercise discretionary abstention under section
28  1334(c)(1). *In re Titan Energy, Inc.*, 837 F.2d 325, 333 (8th Cir., 1988)

1    Nothing in this section prevents a district court in the interest of justice, or in the

2    interest of comity with State courts or respect for State law, from abstaining from

3    hearing a particular proceeding arising under title 11 or arising in or related to a

4    case under title 11.

5        The Ninth Circuit in *In re Tucson Estates, Inc.* 912 F.2d 1162, 1167 (9th Cir. 1990),

6    enumerated factors a court should consider in deciding whether to abstain under section

7    1334(c)(1):

8        (1) the effect or lack thereof on the efficient administration of the estate if a Court

9        recommends abstention, (2) the extent to which state law issues predominate over

10       bankruptcy issues, (3) the difficulty or unsettled nature of the applicable law, (4) the

11       presence of a related proceeding commenced in state court or other nonbankruptcy

12       court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree

13       of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the

14       substance rather than form of an asserted "core" proceeding, (8) the feasibility of

15       severing state law claims from core bankruptcy matters to allow judgments to be

16       entered in state court with enforcement left to the bankruptcy court, (9) the burden

17       of the court's docket, (10) the likelihood that the commencement of the proceeding

18       in bankruptcy court involves forum shopping by one of the parties, (11) the

19       existence of a right to a jury trial, and (12) the presence in the proceeding of

20       nondebtor parties. *Id. citing In re Republic Reader's Serv., Inc.,* 81 Bankr. 422, 429

21       (Bankr. S.D. Tex. 1987).

22       In balancing the above factors, this Court concludes that it should abstain from hearing this

23   proceeding. First, the extent to which state law issues predominate over bankruptcy issues

24   strongly suggests that abstention is proper. The claims raised by Chi-Chi's are based upon the

25   Uniform Commercial Code and state law. The complaint states three causes of action: (1) breach

26   of express warranty; (2) breach of implied warranty of merchantability; and (3) breach of implied

27   warranty of fitness for a particular purpose. In addition, Chi-Chi's claims contractual indemnity,

28

4

1  implied equitable indemnity and contribution.[3] There are no bankruptcy issues involved in this

2  matter.

3      Second, this is a "non-core proceeding" since it does not depend on bankruptcy laws for

4  its existence. *See* 28 U.S.C. § 157(b). Third, this case could *not* have been commenced in

5  federal court absent bankruptcy jurisdiction. No diversity jurisdiction exists between Chi-Chi's and

6  Castellini, nor does the claim raise any federal question entitling the parties to proceed in federal

7  court. Fourth, this Court has a heavy caseload and would be unable to set a trial date any earlier

8  than the middle of 2006. Thus, the burden on this Court's docket weighs in favor of abstention.

9  Finally, the twelfth factor, the presence of nondebtor parties, also favors abstention.

10     In response to the Court's order to show cause, Chi-Chi's asserts that a number of *Tucson*

11 *Estates* factors weigh against abstention. Chi-Chi's primary contention is that a lack of a related

12 proceeding commenced in state court or other non-bankruptcy court weighs against abstention.

13 It appears that the only litigation related to this case is the pending bankruptcy proceeding in

14 Delaware. Thus, as Chi-Chi's correctly points out, the lack of a related state court action is a

15 factor weighing against abstention. *See In re Eastport Assoc.,* 935 F.2d 1071, 1078 (9th Cir.,

16 1991).

17     Chi-Chi's further argues that the present case is closely related to the bankruptcy

18 proceeding and will therefore affect the administration of the estate. Through this action, Chi-

19 Chi's seeks property and economic damages in excess of $30 million as well as indemnity for

20 payments made to victims of the Hepatitis A outbreak. While the resolution of these issues may

21 affect the *value* of the estate, Chi-Chi's fails to explain how it will affect the *administration* of the

22 estate. *See In re Tucson Estates, Inc.* 912 F.2d at 1169; *see also In re Eastport Assoc.,* 935 F.2d

23 at 1078 (holding that because the adversary proceeding concerned debtor's sole asset, the

24

25     [3] "Congress has made it plain that, in respect to noncore proceedings such as this (i.e., cases

26 which assert purely state law causes of action), the federal courts should not rush to usurp the
   traditional precincts of the state court." *Drexel Burnham Lambert Group, Inc. v. Vigilant Ins. Co.,*

27 130 B.R. 405, 409 (D.N.Y., 1991) *quoting Mattingly v. Newport Offshore, Ltd.,* 57 Bankr. 797, 799-
   800 (D.R.I. 1986)

28

5

1  resolution of the case substantially affected the administration of the bankruptcy estate.)

2  Therefore, the Court concludes that the first *Tucson Estates* factor does not weigh against

3  abstention.

4      Chi-Chi's contends that the third factor, the difficulty or unsettled nature of the law, also

5  weighs against abstention because the applicable law is well settled. In addition, Chi-Chi's points

6  out that the tenth factor, the likelihood of forum shopping, is not an issue in this case because the

7  parties stipulated to proceed in this Court. Thus, factors three and ten appear to weigh against

8  abstention.

9      Finally, Chi-Chi's contends that Castellini's right to a jury trial suggests that the Court

10  should not permissively abstain. However, the eleventh factor, the existence of a right to a jury

11  trial, is neutral inasmuch as both the state court and the district court can provide Castellini a jury

12  trial.

13      While the Court recognizes that certain factors are either neutral or weigh against

14  abstention, the Court does not find those factors sufficient to justify retaining this matter.

15  Moreover, there is no reason to believe this case cannot be timely adjudicated in state court.

16  Under all circumstances, the Court concludes that it should abstain from the exercise of

17  jurisdiction and allow the parties to proceed in a forum where they could have filed if the

18  bankruptcy case never existed.

19                              **CONCLUSION**

20      For the foregoing reasons, the Court hereby abstains from the above captioned case

21  pursuant to 28 U.S.C. § 1334(c)(1). The Clerk of the Court shall close this case.

22

23  **IT IS SO ORDERED.**

24

25  Dated this **30th** day of May, 2005.

26

27                                      _____
                                        HON. GEORGE P. SCHIAVELLI
28                                      UNITED STATES DISTRICT JUDGE

# **EXHIBIT 11**



IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MARTHA J. FUNKHOUSER,          )
                               )
            Plaintiff          )
                               )
      vs.                      ) . No. C.A. 05-638
                               )
CHI-CHI'S, INC.,               )
                               )
            Defendant          )
                               )
      vs.                      )
                               )
                               )
CASTELLINI COMPANY             )
                               )
      Third Party Defendant.   )
                               )

## AMENDED THIRD PARTY COMPLAINT IN CIVIL ACTION AND DEMAND FOR TRIAL BY JURY

AND NOW, comes the Third Party Plaintiff, Chi Chi's, Inc. ("Chi Chi's"), by and through its attorneys, Dickie, McCamey & Chilcote, P.C., and James R. Miller, Esquire and Gordon & Holmes, and Frederic L. Gordon, Esquire, of counsel, hereby files the within Amended Third Party Complaint and sets forth as follows:

### I.   INTRODUCTION

1.   . This is a Third Party Complaint seeking damages, including lost profits, property damage, contribution, indemnification, and other incidental and consequential damages, from a grower and supplier of green onions to Third Party Plaintiff's Beaver County Restaurant.

2.     At all times material hereto, Third Party Plaintiff owned and operated the Chi Chi's restaurant located at 600 Beaver Valley Mall, Monaca, Pennsylvania ("Beaver County Restaurant").

3.     On November 3, 2003, the Pennsylvania Department of Health issued a Health Alert, stating that it was investigating an alleged outbreak of Hepatitis A among patrons and staff of a Chi-Chi's Beaver County Restaurant ("Hepatitis A Outbreak").

4.     Ultimately, on November 21, 2003, the United States Center for Disease Control ("CDC") reported that tainted green onions were the cause of the Hepatitis A Outbreak.

5.     As a result of the Hepatitis A Outbreak, Chi Chi's has received notice of several hundred claims for personal injuries and damages by individuals claiming that they were infected with Hepatitis A, including the Plaintiff herein. In addition, Chi Chi's has suffered damages including, without limitation, lost profits, property damage, and loss of use of property.

## II.    JURSIDICTION AND VENUE

6.     On or about October 8, 2003, Third Party Plaintiff and certain related debtors filed, in the United States Bankruptcy Court, District of Delaware, Voluntary Petitions for relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §101, et seq. The matters have been consolidated for joint administration in Case No. 03-13063. This proceeding arises under or in, or is related to, the Chapter 11 case. This court has jurisdiction over this proceeding pursuant to 28 U.S.C. §1334(b).

7.     Venue is proper under 28 U.S.C. § 1391 as a substantial part of the events giving rise to the claim occurred in Beaver County, Pennsylvania which is located in the Western District of Pennsylvania.

2

## III.  PARTIES

8.    Original Plaintiff is a resident of Beaver County, Pennsylvania.

9.    Third Party Plaintiff Chi Chi's, Inc. is a Delaware corporation with its principal place of business in Irvine, California. At all times material hereto, Chi Chi's was in the business of the preparation, service, and sale of food to restaurant customers at the Beaver County Restaurant.

10.    Third Party Defendant Castellini Company ("Castellini") is a Delaware Limited Liability Company with its principal place of business in Wilder, Kentucky. At all times material hereto, Castellini was in the business of growing, shipping, wholesaling and brokering green onions to restaurant customers in Beaver County, Pennsylvania.

## IV.  FACTS

11.    In or about October and November 2003, an outbreak of Hepatitis A occurred in western Pennsylvania. More than 650 people became ill and, to date, four individuals have died. Through epidemiological and statistical analyses, the United States Centers for Disease Control ("the CDC") traced the outbreak to Chi Chi's Beaver County Restaurant, located in Monaca, Pennsylvania. More specifically, the CDC's analyses led to a determination that the source of the outbreak was human consumption of Hepatitis A-contaminated green onions which had been used in raw form as an ingredient in salsa and as a garnish on other dishes served to CHI-CHI'S customers in or about early October 2003. The green onions, which were (unknowingly to Chi Chi's) contaminated with Hepatitis A prior to their delivery to Chi Chi's, had been supplied to the Beaver County Restaurant by Third Party Defendant Castellini.

3

12.     The presence of Hepatitis A in the green onions when delivered to Chi Chi's rendered the product adulterated, unsafe, and unfit for human consumption.

13.     Plaintiff herein filed this action against Chi Chi's alleging that she suffered injuries and damages as a result of the alleged consumption of food from Chi Chi's containing onions contaminated with the Hepatitis A virus. (See Plaintiff's Complaint Attached hereto as Exhibit A.)

14.     Chi Chi's has denied all liability to the Plaintiffs. (See Chi Chi's Answer and Affirmative Defenses attached hereto as Exhibit B.)

15.     As a direct and proximate result of third party defendant Castellini's supply of adulterated green onions, Chi Chi's suffered property damage including, but not limited to contamination of other food products and contamination of surfaces and other areas within the Beaver County Restaurant. As a further direct and proximate result of Castellini's supply of adulterated green onions, the Beaver County Restaurant was closed from on or about November 2, 2003 to on or about January 15, 2004. All of CHI-CHI'S damages described herein resulted because of this property damage and loss of use of property, and/or because of the bodily injuries described in paragraph 11 above.

16.     The Hepatitis A outbreak received, and continues to receive, considerable media attention, both in Beaver County, Pennsylvania and throughout the nation. At the time the outbreak was first publicly reported in or about November 2003, Chi Chi's owned and operated approximately 122 restaurants throughout the Midwest, mid-Atlantic and Northeast. As a direct and proximate result of the events described herein, all Chi Chi's restaurants have now been permanently closed, causing Chi Chi's loss of use of all its restaurants.

4

17.    As a direct and proximate result of the outbreak and the attendant publicity, Third Party Plaintiff Chi Chi's has suffered, and continues to suffer, damages, including but not limited to, property damage, lost profits (both relating to the closure of the Beaver County Restaurant and the impact of the publicity on Chi Chi's other restaurants), lost value, costs directly related to the closure and cleaning of the Beaver County Restaurant, crisis management expenses, attorney's fees, payment of medical expenses and preventative care, and loss of goodwill.

18.    In addition, Chi Chi's has received more than 800 claims, has been named as a defendant in numerous lawsuits, and anticipates being subjected to future claims and lawsuits, seeking damages from Chi Chi's as a result of bodily injury and death allegedly caused by human consumption of Hepatitis A-contaminated green onions at the Beaver County Restaurant ("the bodily injury actions"). As a result, Chi Chi's has incurred, and continues to incur, additional expenses, including but not limited to payment of claims, attorney's fees, and other litigation costs and expenses.

## V.    HISTORICAL AND CONTRACTUAL RELATIONSHIPS OF THE PARTIES

19.    Beginning in or about June 1999, Third Party Defendant Castellini and Prandium, Inc. ("Prandium"), the parent company of Chi Chi's, began discussing the possibility of Castellini becoming a supplier of produce and other products to various restaurants operating as subsidiaries or affiliates of Prandium, including Third Party Plaintiff Chi Chi's.

20.    As part of the negotiations and in order for Castellini to bid the project, Prandium provided Castellini with a variety of documents, including, but not limited to, product specifications for green onions and a document entitled "Supplier General Requirements Master Food Specification

5

for Whole Produce ("Supplier General Requirements"). The Supplier General Requirements and

product specifications required suppliers, including Castellini, to provide Prandium and Chi Chi's

with unadulterated, safe, and wholesome green onions. Specifically, Castellini was required to and

in fact did warrant as follows:

> "§1.2.1 - The supplier hereby guarantees that no article sold to Prandium for use
> in any Prandium restaurant is adulterated or misbranded within the meaning of the
> Federal, Drug and Cosmetic Act, or is an article which may, under the provisions
> of Section 404, 505, or 512 of the Act be introduced into interstate commerce.
>
> §1.2.2 - The article comprising each shipment or other delivery hereafter made by the
> supplier is hereby guaranteed, as of the date of such shipment or delivery, to be on
> such date, not adulterated or misbranded within the meaning of the Federal Food,
> Drug and Cosmetic Act, and not an article which may not, under the provisions of
> Sections 404, 505'or 512 of the Act, be introduced into interstate commerce."

A true and correct copy of the Supplier General Requirements and green onion specifications are

attached hereto as Exhibit C.

21.    On or about July 28, 1999, and in connection with the negotiations described above,

Third Party Defendant Castellini executed a document entitled "Confidentiality Agreement," in

which Castellini agreed to, in part, "indemnify, protect, defend, and hold harmless [Prandium], its

subsidiaries, related and affiliate companies and entities ... from and against any and all claims,

causes of action, demands, losses, costs, expenses (including reasonable attorneys' fees), obligations,

liabilities, damages, and deficiencies of any kind that arise out of, result from, or in any way relate

to" the parties' "business relationship." A true and correct copy of the July 28, 1999 agreement is

attached hereto as Exhibit D.

22.    Before Third Party Defendant Castellini was permitted to bid as a potential supplier to

Chi Chi's, Castellini was required to agree to comply with the Supplier General Requirements and

6

product specifications, including the green onion specifications, alleged in paragraph 20 above. In or about late summer 1999, representatives of Castellini made a presentation to Third Party Plaintiff in which Castellini did in fact further warrant that it would and could comply with Prandium and Chi Chi's general requirements and product specifications. The parties thereafter entered into a pricing agreement for various products, including green onions.

23.    On or about December 12, 2002, Third Party Plaintiff Chi Chi's and Third Party Defendant Castellini entered into a revised pricing agreement in which Castellini agreed to sell green onions (among other products) to Chi Chi's at an established price. As a condition to the revised pricing agreement, Chi Chi's continued to require Third Party Defendant Castellini to, and Castellini agreed to, supply green onions that met the Supplier General Requirements and green onion specifications provided to Castellini in 1999.

24.    In connection with the Castellini pricing agreements, the parties agreed that Third Party Defendant Castellini would sell the green onions, at the negotiated price, to Sysco Corporation ("Sysco"). Sysco, in turn, would sell the product to Third Party Plaintiff Chi Chi's (on a specified cost-plus basis) and would transport and deliver the green onions directly to Chi Chi's restaurants. The green onions that were contaminated with Hepatitis A and sold to Chi Chi's customers in or about September and/or October 2003 were supplied to Chi Chi's pursuant to the agreements described in paragraphs 19 through 24 herein.

25.    Third Party Defendant Castellini had been doing business with Sysco for many years. On or about January 26, 1997, Castellini and Sysco had entered into an agreement entitled "Hold

7

Harmless Agreement and Guaranty/Warranty of Product" (hereafter "Hold Harmless Agreement").
A true and correct copy of the Hold Harmless agreement is attached hereto as Exhibit E.

26.    The Hold Harmless Agreement provided that "[t]his Guaranty and Agreement is
continuing and shall be in full force and effect and shall be binding upon [Castellini] with respect to
each and every Product shipped or delivered to [Sysco] by [Castellini] before the receipt of [Sysco]
of written notice of revocation thereof." Third Party Plaintiff Chi Chi's is informed and believes and
thereon alleges that Third Party Defendant Castellini never provided Sysco with revocation of any
aspect of the Hold Harmless Agreement with respect to the contaminated green onions supplied to
plaintiff in or about September or October of 2003.

27.    In the Hold Harmless Agreement, Third Party Defendant Castellini agreed to "defend,
indemnify, and hold harmless [Sysco] and its employees, officers, directors and customers ... from all
actions, suits, claims, and proceedings ... and from any judgments, damages, fines, costs and
expenses (including reasonable attorney's fees) resulting therefrom ... brought or commenced by any
person or entity against any indemnitee for the recovery of damages for the injury, illness and/or
death of any person or damage to property arising out of or alleged to have arisen out of (a) the
delivery, sale, resale, labeling, use or consumption of any Product ...."

28.    In addition, Third Party Defendant Castellini warranted, in the Hold Harmless
Agreement, that "articles contained in any shipment or delivery made by [Castellini] to or on the
order of [Sysco] is hereby guaranteed, as of the date of such shipment or delivery, (a) to not be
adulterated or misbranded within the meaning of the Federal Food, Drug and Cosmetic Act (the
'Act'), (b) to not be an article which cannot be introduced into interstate commerce under the

8

provisions of Sections 404 and 505 of the Act, and (c) to be in compliance with all applicable federal, state and local laws." This warranty was consistent with the separate oral representations made by Third Party Defendant Castellini to Third Party Plaintiff Chi Chi's during the negotiations between the parties in the summer of 1999, as alleged in paragraph 22 above.

29.     Chi Chi's is informed and believes and thereon alleges that Third Party Defendant Castellini shipped the contaminated green onions from the states of Kentucky and/or Ohio to defendant Sysco's distribution center in Pennsylvania, from which the green onions were subsequently transported by Sysco to Chi Chi's Beaver County Restaurant.

### COUNT I

### BREACH OF EXPRESS WARRANTY AGAINST THIRD PARTY DEFENDANT CASTELLINI

30.     Chi Chi's hereby incorporates paragraphs 1 through 29, inclusive, of this Third Party Complaint as if fully set forth herein.

31.     Third Party Defendant Castellini, by agreeing to meet Chi Chi's General Supplier Requirements and Green Onion Specifications (Exhibit C), by executing the January 26, 1997 Hold Harmless Agreement (Exhibit E), and when making an oral presentation to plaintiff in or about late summer 1999 (as alleged in paragraph 22 herein), made express warranties that the green onions it supplied for use in Chi Chi's restaurants would be safe and wholesome, would not be "adulterated" within the meaning of the Federal Food, Drug and Cosmetic Act ("the Act"), and would be a product capable of being introduced into interstate commerce under the Act.

32.     The presence of the Hepatitis A virus in or on the green onions supplied by Third Party Defendant Castellini to Third Party Plaintiff Chi Chi's rendered the product adulterated

9

under the Act.

33.     Chi Chi's relied upon Castellini's express warranties.

34.     The express warranties was breached when Castellini supplied green onions that contained the Hepatitis A virus to Chi Chi's in or about September and October of 2003.

35.     As a direct and proximate cause of Third Party Defendant Castellini's breach, Third Party Plaintiff Chi Chi's has suffered incidental and consequential damages in an amount to be proven at trial.

## COUNT II

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY AGAINST THIRD PARTY DEFENDANT CASTELLINI

36.     Chi Chi's hereby incorporates paragraphs 1 through 35, inclusive, of this Third Party Complaint as if fully set forth herein.

37.     Third Party Defendant Castellini impliedly warranted that its products would be merchantable, safe, wholesome, and fit for human consumption.

38.     Third Party Plaintiff Chi Chi's relied upon these implied warranties.

39.     Third Party Defendant Castellini's implied warranties of merchantability were breached when Castellini supplied Third Party Plaintiff Chi Chi's, in or about September and/or October 2003, with green onions contaminated with Hepatitis A.

40.     As a direct and proximate cause of Third Party Defendant Castellini's breach of the implied warranty of merchantability, Chi Chi's has suffered incidental and consequential damages in an amount to be proven at trial.

**COUNT III**

## BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE AGAINST THIRD PARTY DEFENDANT CASTELLINI

41.    Chi Chi's hereby incorporates paragraphs 1 through 40, inclusive, of this Third Party Complaint as if fully set forth herein.

42.    At all relevant times, Third Party Defendant Castellini had reason to know of the particular purpose for which the subject green onions would be used by Third Party Plaintiff. Specifically, Castellini was aware that Chi Chi's intended to serve the green onions in raw form without cooking or further processing as an ingredient in salsa and as a garnish to be served to plaintiff's customers. Third Party Defendant Castellini was further aware that Chi Chi's was relying on the skill and judgment of Castellini to supply suitable green onions (that is, green onions that were safe, wholesome, and free of adulteration) for this particular purpose.

43.    In supplying, processing, packaging, marketing, selling, and distributing the subject green onions, Third Party Defendant Castellini impliedly represented that the green onions were fit for the particular purpose described herein, i.e., that the green onions would not cause human illness when used for the particular purpose intended by Third Party Plaintiff.

44.    Third Party Plaintiff Chi Chi's did in fact use the subject green onions for this particular purpose.

45.    Third Party Defendant Castellini's implied warranties of fitness for a particular purpose were breached when Castellini supplied Chi Chi's, in or about September and/or October 2003, with green onions which was not fit for Chi Chi's particular purpose, in that the green onions were contaminated with Hepatitis A.

11

46.     As a direct and proximate cause of Third Party Defendant Castellini's breach of the

implied warranty of fitness for a particular purpose, Third Party Plaintiff Chi Chi's has suffered

incidental and consequential damages in an amount to be proven at trial.

### COUNT IV

#### CONTRACTUAL INDEMNITY AGAINST THRID PARTY DEFENDANT CASTELLINI

47.     Chi Chi's hereby incorporates paragraphs 1 through 46, inclusive, of this Third

Party Complaint as if fully set forth herein.

48.     Pursuant to Third Party Defendant Castellini's July 28, 1999 Confidentiality

Agreement with Third Party Plaintiff Chi Chi's, as alleged in paragraph 21 herein, Castellini is

required to indemnify Chi Chi's from and against any and all claims, causes of action, demands,

losses, costs, expenses (including attorney's fees), obligations, liabilities, damages and

deficiencies arising out of or related to the parties' relationship.

49.     Further, pursuant to Third Party Defendant Castellini's January 26, 1997 Hold

Harmless Agreement with Sysco, as alleged in paragraphs 25-28, Castellini is required to

indemnify Third Party Plaintiff from all actions, suits, claims and proceedings arising out of or

alleged to have arisen out of the delivery, sale or consumption of the Hepatitis A-contaminated

green onions.

50.     As a direct and proximate result of Third Party Defendant Castellini's supply of

contaminated green onions, Third Party Plaintiff Chi Chi's has suffered and incurred, and

continues to suffer and incur, claims, causes of action, demands, losses, costs, expenses

(including attorney's fees), obligations, liabilities, damages, deficiencies, actions, suits, and

12

proceedings, as to all of which Third Party Defendant Castellini is obligated to indemnify Chi Chi's under the agreements alleged in paragraphs 121and 25-28 above.

51.    Third Party Plaintiff Chi Chi's is therefore entitled to judgment against Third Party Defendant Castellini for all such losses suffered and expenses incurred, including attorney's fees, in an amount to be proven at trial.

52.    Pursuant to the July 28, 1999 Confidentiality Agreement, Third Party Plaintiff Chi Chi's is entitled to reasonable attorney's fees and other expenses incurred in this action.

## COUNT V

### INDEMNIFICATION AGAINST THIRD PARTY DEFENDANT CASTELLINI

53.    Chi Chi's hereby incorporates paragraphs 1 through 52, inclusive, of this Third Party Complaint as if fully set forth herein.

54.    In addition to the action brought by plaintiff herein, Third Party Plaintiff Chi Chi's has received more than 800 claims, has been named as a defendant in numerous lawsuits, and anticipates being subjected to future claims and lawsuits, seeking damages from Chi Chi's as a result of bodily injury and death allegedly resulting from Hepatitis A in relation to consumption of green onions at the Beaver County Restaurant.

55.    To the extent plaintiffs in the bodily injury actions, including this action, have suffered injury and/or damages, such injury and/or damages were proximately caused, entirely or in part, by Third Party Defendant Castellini as aforementioned. Alternatively, if Chi Chi's is ultimately held liable to the Plaintiff or other bodily injury claimants, then Third Party Defendant Castellini is liable to Chi Chi's for indemnification.

13

56.    By reason of the foregoing, to the extent Third Party Plaintiff Chi Chi's incurs any expenses, fees, costs or attorneys fees in the defense of bodily injury claims relating to the consumption of Hepatitis A-contaminated green onions, or enters into a settlement in any such claim or action, Chi Chi's is entitled to judgment against Third Party Defendant Castellini for all or part of any such sums incurred by reason of said judgment or settlement and for expenses of investigation, attorney's fees, court costs and other fees incurred in the defense of those claims.

## COUNT VI

### CONTRIBUTION AGAINST THIRD PARTY DEFENDANT CASTELLINI

57.    Chi Chi's hereby incorporates paragraphs 1 through 56, inclusive, of this Third Party Complaint as if fully set forth herein.

58.    In addition to the action brought by Plaintiff herein, Third Party Plaintiff Chi Chi's has received more than 800 claims, has been named as a defendant in numerous lawsuits, and anticipates being subjected to future claims and lawsuits, seeking damages from Chi Chi's as a result of bodily injury and death allegedly resulting from Hepatitis A in relation to consumption of green onions at the Beaver County Restaurant.

59.    To the extent Third Party Plaintiff Chi Chi's is legally responsible for any of the damages claimed in bodily injury actions, including this action, and assuming Chi Chi's is not entitled to total indemnity for all such sums which Chi Chi's may be required to pay, Chi Chi's would be only partially responsible for the alleged injuries, damages and other detriment allegedly suffered or sustained by the bodily injury claimants.

60.    Any loss, injury, damages or detriment allegedly suffered or sustained by the

14

bodily injury claimants, including Plaintiff herein, was directly and proximately caused and
contributed to by the primary, active and direct responsibility of Third Party Defendant
Castellini.

61.     Any damages or other detriment allegedly suffered or sustained by the bodily
injury plaintiffs, including Plaintiff herein, should therefore be apportioned among Chi Chi's and
Third Party Defendant Castellini on the basis of their respective percentage of fault, if any, in
contributing to such damage or detriment.

62.     Based on the foregoing, Third Party Defendant Castellini has a duty to contribute to
and indemnify Third Party Plaintiff Chi Chi's for any recovery any bodily injury plaintiff, including
Plaintiff herein, may realize as against Chi Chi's in excess of that part of the damages directly
proportionate to Third Party Plaintiff Chi Chi's percentage of fault, if any.

**WHEREFORE,** Third Party Plaintiff Chi Chi's, Inc. prays for judgment against Third
Party Defendant Castellini Company, LLC as follows:

1.      For past and future general, incidental and consequential damages in a sum not yet
        fully ascertained and according to proof at trial;

2.      For attorneys' fees and costs;

3.      For pre- and post-judgment interest;

15

4.      For indemnity;

5.      For contribution;

6.      For costs of suit; and

7.      For such other and further relief as the Court may deem just.

FURTHER, Third Party Plaintiff Chi Chi's hereby demands trial by jury.

Respectfully submitted,

DICKIE, McCAMEY & CHILCOTE, P.C.

By:_____
                James R. Miller, Esquire
                PA. I.D. #16190

                Christopher T. Lee, Esquire
                PA I.D. #62422

Two PPG Place, Suite 400
Pittsburgh, PA 15222
(412) 392-5395

*Attorneys for Third Party Plaintiff, Chi Chi's, Inc.*

GORDON & HOLMES

                Frederic L. Gordon, Esquire
                Rhonda J. Holmes, Esquire
                Douglas J. Billings, Esquire
                A. Michael Nalu, Esquire.

223 West Date Street
San Diego, CA 92101
(619) 696-0444

*Of Counsel for Third Party Plaintiff, Chi-Chi's, Inc.*

16

# EXHIBIT 12

ADR OPTIONS

ARBITRATION NO. _____

| | |
|---|---|
| CHI-CHI'S, INC., ) | STIPULATION AND ORDER |
| ) | |
| Claimant ) | |
| ) | |
| v. ) | |
| ) | |
| SYSCO CORPORATION; and SYGMA ) | |
| NETWORK, INC. ) | |
| ) | |
| Respondents. ) | |

Claimant Chi-Chi's, Inc. ("Chi-Chi's") and Respondents Sysco Corporation and Sygma

Network, Inc. (collectively "Sysco"), by and through their respective counsel, stipulate as

follows:

WHEREAS claimant Chi-Chi's has commenced a contractual, binding arbitration

proceeding against Sysco; and

WHEREAS Sysco contends that Chi-Chi's arbitration proceeding is barred by the "two

dismissal rule" of Federal Rule of Civil Procedure 41(a)(1); and

WHEREAS Chi-Chi's contends that the "two dismissal rule" has no application to the

present proceeding; and

WHEREAS Sysco has indicated its intent to commence an action in U.S. federal court for

the purpose of seeking dismissal pursuant to Rule 41(a)(1); and

WHEREAS, the parties wish to expedite the procedure by which the motion and

STIPULATION AND ORDER

arbitration, if necessary, proceed;

IT IS HEREBY STIPULATED, AGREED AND ORDERED AS FOLLOWS:

1.    Chi-Chi's shall file and serve a Complaint in Arbitration within five days of the execution of this agreement by all signatories. The parties agree that Thomas B. Rutter, Esq. shall be appointed as the sole arbitrator. The parties further acknowledge that their contractual agreement requires the arbitration be conducted in accordance with the Commercial Arbitration Rules of the American Arbitration Association ("AAA") "and, to the maximum extent applicable, the Federal Arbitration Act."

2.    Sysco shall, within 15 days of service of the Complaint in Arbitration and for the sole purpose of seeking relief pursuant to the FRCP 41(a)(1) "two dismissal rule," file (1) an adversary proceeding in the U.S. Bankruptcy Court, District of Delaware and (2) any necessary motions to have the FRCP 41(a)(1) matter decided by the court. Chi-Chi's specifically reserves the right to argue that any determination of the applicability of the "two dismissal rule" is properly made by the arbitrator, rather than by the Bankruptcy Court. Sysco specifically reserves all other defenses to Chi-Chi's claims, including, but not limited to, the failure to state a claim upon which relief can be granted.

3.    The parties shall cooperate to ensure that all motions filed by Sysco in the U.S. Bankruptcy Court are heard by the court at the earliest possible time.

4.    The arbitration of this action shall be stayed until such time as the Bankruptcy Court issues any ruling which has the effect of leaving any issue to be decided by the arbitrator. However, to the extent the Bankruptcy Court has issued no ruling on Sysco's motion(s) within 90 days of the executiion of this Stipulation and Order by Arbitrator Rutter, Chi-Chi's shall have the right, at any time thereafter, to request a hearing before Arbitrator Rutter for the purpose of

STIPULATION AND ORDER

seeking (1) an immediate lifting of the stay imposed by this paragraph, and (2) the holding of a preliminary hearing, pursuant to paragraph 5 below. The parties understand that Sysco intends to strenuously oppose any request by Chi-Chi's to lift the stay prior to a ruling from the bankruptcy court.

5.    A preliminary hearing, as that term is used in AAA Rule L-3, shall be held before Arbitrator Rutter within 10 days of the expiration or termination, for any reason, of the stay established by paragraph 4 above (including, if applicable, any lifting of the stay granted pursuant to Chi-Chi's request). The preliminary hearing shall be held pursuant to, and shall include those topics set forth in, Rule L-3 of the American Arbitration Association Commercial Arbitration Rules (Procedures for Large, Complex Commercial Disputes). The preliminary hearing shall also address the arbitration hearing date and whether it would be appropriate for the arbitrator to hear dispositive motions prior to the arbitration hearing. The parties understand that Chi-Chi's intends to strenuously oppose any request by Sysco that dispositive motions be heard prior to the arbitration hearing.

6.    For timing purposes related to this stipulation, service on counsel by either e-mail or fax shall be deemed sufficient. Chi-Chi's counsel shall be responsible for promptly notifying the arbitrator of any decision by the U.S. Bankruptcy Court which affects the provisions of this stipulation and/or the arbitrator's jurisdiction.

7.    The parties acknowledge that their contractual agreement provides as follows: "All fees of the arbitrator and other costs and expenses of the arbitration shall be paid by" Sysco and Chi-Chi's "equally unless otherwise awarded by the arbitrator; provided, however, that the non-prevailing party in an arbitration shall pay all reasonable attorneys' fees and expenses incurred by the prevailing party in connection with the Dispute and the arbitration."

STIPULATION AND ORDER

IT IS SO STIPULATED

Dated: August 31, 2005

GORDON & HOLMES
Frederic L. Gordon, Esq.
Rhonda J. Holmes, Esq.
Douglas J. Billings, Esq.
A. Michael Nalu, Esq.
223 West Date Street
San Diego, CA 92101
Telephone: (619) 696-0444
Facsimile: (619) 696-1144

Counsel for Claimant CHI-CHI'S, INC.

Dated: _September 1_, 2005

COZEN O'CONNOR
Philip G. Kircher, Esq.
Aaron Krauss, Esq.
1900 Market Street
Philadelphia, PA 19103
Telephone: (215) 665-2000
Facsimile: (215) 665-2013

Counsel for Respondents SYSCO CORPORATION
and SYGMA NETWORK, INC.

IT IS SO ORDERED

Dated: _6 SEPT._, 2005

Thomas B. Rutter, Esq.
Arbitrator

STIPULATION AND ORDER

# EXHIBIT 13

**ADR OPTIONS**

**ARBITRATION**

| | |
|---|---|
| CHI-CHI'S, INC., | ) |
| | ) |
| Claimant | ) |
| | ) |
| v. | ) |
| | ) |
| SYSCO CORPORATION; and SYGMA | ) |
| NETWORK; INC. | ) |
| | ) |
| Respondents. | ) |
| | ) |

**ARBITRATION CLAIM**

Claimant Chi-Chi's, Inc., by and through its attorneys of record, Gordon and Holmes,

hereby alleges as follows:

**I. FACTUAL ALLEGATIONS**

1.    Claimant Chi-Chi's, Inc. ("Chi-Chi's") was at all relevant times the owner and

operator of a chain of restaurants preparing, serving, and selling food to consumers, primarily for

on-site consumption.[1]

2.    At all times relevant herein, respondent SYSCO CORPORATION ("SYSCO")

was in the business of supplying and shipping produce and other foods for use in restaurants.

_____

[1]    On or about October 8, 2003, Claimant CHI-CHI'S and certain related debtors filed, in the United States Bankruptcy Court, District of Delaware, Voluntary Petitions for relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §101, et seq. The matters, which remain pending, have been consolidated for joint administration in Case No. 03-13063.

Claimant is informed and believes and thereon alleges that respondent SYGMA NETWORK, INC. ("SYGMA") is an operating company/subsidiary of respondent SYSCO CORPORATION and is also in the business of supplying and shipping produce and other foods for use in restaurants.

3.    In or about November 2003, an outbreak of Hepatitis A occurred in western Pennsylvania. More than 650 people became ill and, to date, four individuals have died. Through epidemiological and statistical analyses, the outbreak was traced to a CHI-CHI'S restaurant located in Monaca, Pennsylvania ("the Beaver Valley Chi-Chi's"). More specifically, the analyses led to a determination that the source of the outbreak was human consumption of Hepatitis A-contaminated green onions which had been used in raw form as an ingredient in salsa and as a garnish on other dishes served to CHI-CHI'S customers in or about early October 2003. The green onions, which were (unknowingly to CHI-CHI'S) contaminated with Hepatitis A prior to their delivery to CHI-CHI'S, had been supplied and delivered to the Beaver Valley Chi-Chi's by respondents SYSCO and SYGMA.

4.    The presence of Hepatitis A in the green onions rendered the product adulterated, unsafe, and unfit for human consumption.

5.    As a direct and proximate result of respondents' supply of adulterated green onions, CHI-CHI'S suffered immediate property damage including, but not limited to, contamination of other food products and contamination of surfaces and other areas within the Beaver Valley Chi-Chi's. As a further direct and proximate result of respondents' supply of adulterated green onions, the Beaver Valley Chi-Chi's was closed from on or about November 2, 2003 to on or about January 15, 2004.

20268.1

2

6.      The outbreak received, and continues to receive, considerable media attention, both in western Pennsylvania and throughout the nation. At the time the outbreak was first publicly reported in or about November 2003, CHI-CHI'S owned and operated approximately 122 restaurants throughout the Midwest, mid-Atlantic and Northeast. As a direct and proximate result of the events described herein, all CHI-CHI'S restaurants have now been permanently closed, causing CHI-CHI'S loss of use of all its restaurants and related damages.

7.      As a direct and proximate result of the outbreak and the attendant publicity, claimant CHI-CHI'S has suffered, and continues to suffer, damages, including but not limited to, property damage, lost profits (relating to the closure of the Beaver Valley Chi-Chi's, the impact of the publicity on CHI-CHI'S other restaurants prior to their closure, and the ultimate closure of all CHI-CHI'S restaurants), costs directly related to the closure and cleaning of the Beaver Valley Chi-Chi's, crisis management expenses, management expenses, attorney's fees, payment of third-party claims and expenses, and loss of goodwill.

8.      In addition, CHI-CHI's has received more than 300 claims, has been named as a defendant in numerous lawsuits, and may be subjected to future claims and lawsuits, seeking damages from CHI-CHI's as a result of bodily injury and death allegedly caused by human consumption of Hepatitis A-contaminated green onions at the Beaver Valley Chi-Chi's ("the bodily injury actions"). As a result, CHI-CHI's has incurred, and continues to incur, additional expenses, including but not limited to payment of claims, attorney's fees, and other litigation costs and expenses.

## II. HISTORICAL AND CONTRACTUAL RELATIONSHIPS OF THE PARTIES

9.      Beginning in or about June 1999, Castellini Company, LLC ("Castellini") and Prandium, Inc. ("Prandium"), the parent company of claimant CHI-CHI'S, began discussing the

20268.1                    3

possibility of Castellini becoming a supplier of produce and other products to various restaurants operating as subsidiaries or affiliates of Prandium, including claimant CHI-CHI'S.

10.    On or about December 12, 2002, claimant CHI-CHI'S and Castellini entered into a pricing agreement in which Castellini agreed to sell green onions (among other products) to CHI-CHI's at an established price.

11.    In connection with the Castellini pricing agreement, the parties agreed that Castellini would sell the green onions, at the negotiated price, to respondents SYSCO and SYGMA. Respondents SYSCO and SYGMA, in turn, would sell the product to claimant CHI-CHI's (on a specified cost-plus basis) and would transport and deliver the green onions directly to CHI-CHI's restaurants. The green onions that were contaminated with Hepatitis A and sold to CHI-CHI's customers in or about September and/or October 2003 were supplied to CHI-CHI's pursuant to the agreements described in paragraphs 9 through 11 herein.

12.    Castellini had been doing business with respondent SYSCO for many years. On or about January 26, 1997, Castellini and SYSCO had entered into an agreement entitled "Hold Harmless Agreement and Guaranty/Warranty of Product" (hereafter "Hold Harmless Agreement"). The Hold Harmless Agreement provided that "[t]his Guaranty and Agreement is continuing and shall be in full force and effect and shall be binding upon [Castellini] with respect to each and every Product shipped or delivered to [SYSCO] by [Castellini] before the receipt of [SYSCO] of written notice of revocation thereof." Castellini further agreed to "defend, indemnify, and hold harmless [SYSCO], its subsidiaries, affiliates or divisions] and its employees, officers, directors and customers ... from all actions, suits, claims, and proceedings ... and from any judgments, damages, fines, costs and expenses (including reasonable attorney's fees) resulting therefrom ... brought or commenced by any person or entity against any

20268.1                                    4

indemnitee for the recovery of damages for the injury, illness and/or death of any person or damage to property arising out of or alleged to have arisen out of (a) the delivery, sale, resale, labeling, use or consumption of any Product ...."

13.     On or about June 26, 2001, claimant CHI-CHI'S and respondents SYSCO and SYGMA entered into an agreement entitled "Distribution Service Agreement." A true and correct copy of the June 26, 2001 Distribution Service Agreement is attached hereto as Exhibit 1. In the Distribution Service Agreement, respondents SYSCO and SYGMA expressly agreed to comply with claimant CHI-CHI's Distributor Quality Program (see Exhibit 1, ¶ X, and Exhibit H thereto).

14.     Under claimant CHI-CHI's Distributor Quality Program, with which respondents SYSCO and SYGMA agreed to comply, SYSCO and SYGMA were required to ensure that all green onions were "manufactured, stored and transported in accordance with all applicable local, state and federal requirements. These requirements include, but are not limited to ... No article distributed to [CHI-CHI's] shall be adulterated or misbranded within the meaning of the Federal Drug and Cosmetic Act." (Exhibit H to Exhibit 1, pp. 3-4).

15.     Paragraph IX of the parties' June 26, 2001 Distribution Service Agreement requires respondents SYSCO and SYGMA to "indemnify, defend, and save harmless [CHI-CHI'S] ... from and against any and all claims, losses, damages, liability or liens arising out of injury to or death of persons ... or loss of or damage to property, resulting directly from [SYSCO and SYGMA's] negligence ...."

16.     Paragraph IX of the parties' June 26, 2001 Distribution Service Agreement further provides that "[s]uch indemnification shall include all costs of suit and reasonable attorney's fees incurred in defending against, or negotiating settlement of any claim or suit ...."

17.    The Distribution Service Agreement further contains, at ¶ XIX, a requirement that the parties' submit all "[d]isputes, claims or controversy of any kind ... arising between the parties to this Agreement" to binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association and, to the maximum extent applicable, the Federal Arbitration Act" and that "the non-prevailing party in an arbitration shall pay all reasonable attorneys' fees and expenses incurred by this prevailing party in connection with the Dispute and the arbitration." The Distribution Service Agreement further mandates that the Agreement be "governed by the internal law, and not the law of conflicts in accordance with the laws of the State of Kentucky." The parties have stipulated to hold the arbitration before Arbitrator Thomas B. Rutter, Esq. of ADR Options in Philadelphia, Pennsylvania.

COUNT I

**BREACH OF EXPRESS WARRANTY**

18.    Claimant hereby incorporates paragraphs 1 through 17, inclusive, of this Claim as if fully set forth herein.

19.    By agreeing to comply with claimant's Distributor Quality Program as an obligation under the June 26, 2001 Distribution Service Agreement (Exhibit "1"), respondents SYSCO and SYGMA made an express warranty that no product distributed to CHI-CHI'S, including green onions, would be "adulterated" within the meaning of the Federal Food, Drug and Cosmetic Act ("the Act").

20.    The presence of the Hepatitis A virus in or on the green onions supplied by respondents SYSCO and SYGMA to claimant CHI-CHI'S rendered the product adulterated under the Act.

21.    CHI-CHI'S relied upon SYSCO's and SYGMA's express warranty.

22.    The express warranty was breached when SYSCO and SYGMA supplied green onions that contained the Hepatitis A virus to claimant in or about September and October of 2003.

23.    As a direct and proximate cause of respondents SYSCO's and SYGMA's breach, claimant CHI-CHI'S has suffered incidental and consequential damages in an amount to be proven at arbitration.

24.    Pursuant to paragraph XIX.A of the Distribution Service Agreement, claimant CHI-CHI's is entitled to reasonable attorney's fees and other expenses incurred in this arbitration.

## COUNT II

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

25.    Claimant hereby incorporates paragraphs 1 through 24, inclusive, of this Claim as if fully set forth herein.

26.    Respondents SYSCO and SYGMA impliedly warranted that their products would be merchantable, safe, wholesome, and fit for human consumption.

27.    Claimant CHI-CHI's relied upon these implied warranties.

28.    Respondents' implied warranties of merchantability were breached when respondents supplied claimant, in or about September and/or October 2003, with green onions contaminated with Hepatitis A.

29.    As a direct and proximate cause of respondents' breach of the implied warranty of merchantability, claimant CHI-CHI's has suffered incidental and consequential damages in an amount to be proven at arbitration.

30. Pursuant to paragraph XIX.A. of the Distribution Service Agreement, claimant CHI-CHI's is entitled to reasonable attorney's fees and other expenses incurred in this arbitration.

### COUNT III

## BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE

31. Claimant hereby incorporates paragraphs 1 through 30, inclusive, of this Claim as if fully set forth herein.

32. At all relevant times, respondents SYSCO and SYGMA had reason to know of the particular purpose for which the subject green onions would be used by claimant. Specifically, respondents were aware that claimant CHI-CHI'S intended to serve the green onions in raw form without cooking or further processing as an ingredient in salsa to be served to claimant's customers. Respondents SYSCO and SYGMA were further aware that claimant was relying on the skill and judgment of respondents to supply suitable green onions (that is, green onions that were safe, wholesome, and free of adulteration) for this particular purpose.

33. In supplying, processing, packaging, marketing, selling, and distributing the subject green onions, respondents SYSCO and SYGMA impliedly represented that the green onions were fit for the particular purpose described herein, i.e., that the green onions would not cause human illness when used for the particular purpose intended by claimant.

34. Claimant CHI-CHI'S did in fact use the subject green onions for this particular purpose.

35. Respondents' implied warranties of fitness for a particular purpose were breached when respondents supplied claimant CHI-CHI'S, in or about September and/or October 2003,

20268.1

8

with green onions which was not fit for claimant's particular purpose, in that the green onions were contaminated with Hepatitis A.

36.     As a direct and proximate cause of respondents' breach of the implied warranty of fitness for a particular purpose, claimant CHI-CHI'S has suffered incidental and consequential damages in an amount to be proven at arbitration.

37.     Pursuant to paragraph XIX.A of the Distribution Service Agreement, claimant CHI-CHI's is entitled to reasonable attorney's fees and other expenses incurred in this arbitration.

## COUNT IV

### CONTRACTUAL INDEMNITY

38.     Claimant hereby incorporates paragraphs 1 through 37, inclusive, of this Claim as if fully set forth herein.

39.     Pursuant to paragraph IX of the parties' June 26, 2001 Distribution Service Agreement, as alleged in paragraphs 15 and 16 above, respondents SYSCO and SYGMA are required to "indemnify, defend, and save harmless [CHI-CHI'S] ... from and against any and all claims, losses, damages, liability or liens arising out of injury to or death of persons ... or loss of or damage to property, resulting directly from [SYSCO and SYGMA's] negligence ...." Further, "[s]uch indemnification shall include all costs of suit and reasonable attorney's fees incurred in defending against, or negotiating settlement of any claim or suit...."

40.     As a direct and proximate result of respondents SYSCO and SYGMA's supply of contaminated green onions, claimant CHI-CHI's has in fact suffered and incurred, and continues to suffer and incur, claims, losses, damages, liabilities, costs and attorney's fees.

20268.1                                   9

41.     By supplying green onions contaminated with Hepatitis A, as alleged herein,

SYSCO and SYGMA were negligent as a matter of law, i.e. negligent per se. Furthermore,

SYSCO and SYGMA otherwise failed in their duty to exercise ordinary case in their supply of

green onions to claimant and thereby negligently supplied claimant CHI-CHI'S with adulterated

green onions. Accordingly, respondents SYSCO and SYGMA are obligated to indemnify

claimant CHI-CHI's under the terms of the Distribution Service Agreement and claimant CHI-

CHI's is entitled to judgment against respondents SYSCO and SYGMA for all such claims,

losses, damages, liability or liens, including attorney's fees and costs, in an amount to be proven

at arbitration.

42.     Claimant CHI-CHI'S is also entitled to reasonable attorney's fees and other

expenses incurred in this arbitration pursuant to paragraph XIX.A of the Distribution Service

Agreement.

## COUNT V

## IMPLIED EQUITABLE INDEMNITY

43.     Claimant hereby incorporates paragraphs 1 through 42, inclusive, of this Claim as

if fully set forth herein.

44.     Claimant CHI-CHI'S has received more than 300 claims, has been named as a

defendant in numerous lawsuits, and may be subjected to future claims and lawsuits, seeking

damages from CHI-CHI's as a result of bodily injury and death allegedly resulting from Hepatitis

A in relation to consumption of green onions at the Beaver Valley Chi-Chi's.

45.     To the extent claimants in the bodily injury claims or actions have suffered

damages, such damages were caused, entirely or in part, by respondents herein.

20268.1                                  10

46.    By reason of the foregoing, to the extent claimant CHI-CHI's has incurred or incurs any future expenses, fees, costs or attorneys fees in the defense of bodily injury claims relating to the consumption of Hepatitis A-contaminated green onions, or has entered or does enter into a settlement in any such claim or action, claimant is entitled to judgment against respondents SYSCO and SYGMA for all or part of any such sums incurred by reason of such judgment or settlement and for expenses of investigation, attorney's fees, arbitration costs and other fees incurred in the defense of those claims.

47.    Pursuant to paragraph XIX.A of the Distribution Service Agreement, claimant CHI-CHI's is entitled to all reasonable attorney's fees and other expenses incurred in this arbitration.

## COUNT VI

### CONTRIBUTION

48.    Claimant hereby incorporates paragraphs 1 through 47, inclusive, of this Claim as if fully set forth herein.

49.    Claimant CHI-CHI's has received more than 300 claims, has been named as a defendant in numerous lawsuits, and may be subjected to future claims and lawsuits, seeking damages from CHI-CHI's as a result of bodily injury and death allegedly resulting from Hepatitis A in relation to consumption of green onions at the Beaver Valley Chi-Chi's.

50.    To the extent claimant CHI-CHI's is legally responsible for any of the damages claimed in bodily injury actions, and assuming claimant is not entitled to total indemnity for all such sums which claimant may be required to pay, claimant would be only partially responsible for the alleged injuries, damages and other detriment allegedly suffered or sustained by the bodily injury claimants.

20268.1                                11

51.    Any loss, injury, damages or detriment allegedly suffered or sustained by the bodily injury claimants was directly and proximately caused and contributed to by the primary, active and direct responsibility of respondents herein.

52.    Any damages or other detriment allegedly suffered or sustained by the bodily injury plaintiffs should therefore be apportioned among claimant and respondents herein on the basis of their respective percentage of fault, if any, in contributing to such damage or detriment.

53.    Based on the foregoing, respondents SYSCO and SYGMA have a duty to contribute to and indemnify claimant CHI-CHI's for any recovery any bodily injury plaintiff may realize as against claimant CHI-CHI's in excess of that part of the damages directly proportionate to claimant CHI-CHI's percentage of fault, if any.

54.    Pursuant to paragraph XIX.A of the Distribution Service Agreement, claimant CHI-CHI's is entitled to reasonable attorney's fees and other expenses incurred in this arbitration.

WHEREFORE, claimant CHI-CHI'S, INC prays for judgment against respondents SYSCO CORPORATION and SYGMA NETWORK, INC. as follows:

1.    For past and future general, incidental and consequential damages in a sum not yet fully ascertained and according to proof at arbitration;

2.    For attorneys' fees and costs;

3.    For pre- and post-judgment interest;

4.    For indemnity;

5.    For contribution;

///

///

20268.1                                        12

6.    For costs of suit; and

7.    For such other and further relief as the Arbitrator may deem just.

Dated: September 8, 2005

GORDON & HOLMES
Frederic L. Gordon, Esq.
Rhonda J. Holmes, Esq.
Douglas J. Billings, Esq.
A. Michael Nalu, Esq.
223 West Date Street
San Diego, CA 92101
Telephone: (619) 696-0444
Facsimile: (619) 696-1144

Counsel for Claimant CHI-CHI'S, INC.

20268.1                                13

# EXHIBIT 14

## IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MARTHA J. FUNKHOUSER,

                  Plaintiff,

   vs.

CHI-CHI'S, INC.,                                       No. C.A. 05-638

                  Defendant,

   vs.

CASTELLINI COMPANY,

              Third-Party Defendant.

### MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

### I.    INTRODUCTION

Pursuant to the federal anti-duplicative litigation and first-filed rules, Third-Party Defendant Castellini Company LLC hereby requests this Court dismiss the Amended Third-Party Complaint of Defendant/Third-Party Plaintiff Chi-Chi's, Inc. (Exhibit A). Simply put, Chi-Chi's already has a virtually identical Complaint pending against Castellini in the United States Bankruptcy Court for the District of Delaware. *See* November 16, 2004 Complaint filed by Plaintiff Chi-Chi's, Inc. in Case No. 03-13063 (Del. Bkrtcy. November 16, 2004) (Exhibit B).[1] The Third-Party Complaint and the Delaware Complaint allege the exact same facts/claims and seek the exact same damages. Specifically, in both cases, Chi-Chi's alleges that in the fall of 2003, contaminated green onions were distributed by Castellini, which resulted in an outbreak of Hepatitis A. Because the Delaware Complaint was filed first, and pursuant to the federal anti-

---

[1] In deciding this Motion to Dismiss, in addition to Chi-Chi's Third-Party Complaint itself, the Court may properly consider "matters of public record[] and documents that form the basis of a claim." *Lum v. Bank of America*, 361 F.3d 217, 222 n. 3 (3d Cir.2004). The only documents that Castellini cites herein are filed pleadings and unreported case law, all of which are part of the public record.

duplicative-litigation and first-filed doctrines, this Court should dismiss Chi-Chi's Third-Party
Complaint.

## II.    HISTORY OF THE LITIGATION

In November 2003, Chi-Chi's initiated Chapter 11 bankruptcy proceedings in the
Delaware Court. Thereafter, Western Pennsylvania experienced a large outbreak of Hepatitis A
claims, which the Pennsylvania Health Department and the CDC traced back to a Chi-Chi's, Inc.
restaurant in Beaver County, Pennsylvania.    With Delaware Bankruptcy Court approval,
Chi-Chi's then began settling the multitude of personal injury claims which arose following the
Hepatitis A outbreak.

Thereafter, on or about July 20, 2004, Chi-Chi's filed an adversary proceeding against
Castellini in the Delaware Bankruptcy Court, the first of what would become a series of
duplicative Complaints asserting claims and seeking damages identical to those now being
proffered in the instant action. *See* July 20, 2004 Complaint filed by Plaintiff Chi-Chi's, Inc. in
Case No. 03-13063, Adversary No. 54170 (Del. Bkrtcy. July 20, 2004) (Exhibit C).    When
Castellini responded by demanding a jury trial in the Delaware Bankruptcy Court (which would
have ultimately moved the case to Delaware District Court), Chi-Chi's and Castellini submitted a
Stipulation of Dismissal, which contained the express condition that Chi-Chi's would thereafter
re-file its Complaint against Castellini only in the United States District Court for the Central
District of California, Southern Division. *See* November 12, 2004 Stipulation of Dismissal filed
in Case No. 03-13063, Adversary No. 54170 (Del. Bkrtcy. November 12, 2004) (Exhibit D).

In direct contravention of this stipulation, four days later Chi-Chi's (through counsel
retained by its insurance carrier) initiated the same adversarial action against Castellini in the
Delaware Bankruptcy Court, alleging the exact same breach of contract and implied warranty

claims against Castellini, and seeking the exact same damages, including, but not limited to, indemnity and contribution. *See* Delaware Complaint (Exhibit B).

Less than one week later, and per the parties' prior Stipulation of Dismissal of the first Delaware Complaint, Chi-Chi's filed essentially the same Complaint against Castellini in California District Court. *See* November 19, 2004 Complaint filed by Plaintiff Chi-Chi's, Inc. in Case No. CV04-9539 GPS (C.D. Cal. November 19, 2004) (Exhibit E). However, on May 30, 2005, and pursuant to 28 U.S.C. § 1334(c)(1), Judge Schiavelli of the California District Court abstained from hearing the case. *See* Order Re: Abstention in Case No. CV04-9539 GPS (C.D. Cal. May 30, 2005) (Exhibit F). Immediately following this decision, and despite already having the same claims pending in Delaware Bankruptcy Court, Chi-Chi's filed a Third-Party Complaint against Castellini in this Court that mirrors all of the other aforementioned Complaints, including the still pending Delaware Complaint.

### III.    ARGUMENT

**A.    THE FEDERAL ANTI-DUPLICATIVE-LITIGATION PRINCIPLE PROVIDES THAT DUPLICATIVE LITIGATION IN FEDERAL COURTS MUST BE AVOIDED.**

It is well-established in the Third Circuit and other federal jurisdictions that a plaintiff has "no right to maintain two separate actions involving the same subject matter at the same time ... against the same defendant." *Walton v. Eaton Corp.*, 563 F.2d 66, 70 (3d Cir. 1977). *See also*, *In re Porter*, 295 B.R. 529, 543 (Bkrtcy. E.D. Pa. 2003). This rule rests on "considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Colorado River Water Conserv. Dist. v. United States*, 424 U.S. 800, 817 (1976) (citations/quotations omitted). A subsequently-filed action is deemed duplicative if it involves "the same parties, or at least such as represent the same interest," "the same rights asserted and the same relief prayed for," "the same facts," and the same "essential

basis of the relief sought." *In re Porter*, 295 B.R. at 543. "When duplicative litigation is discovered, it is against the *second* of the two lawsuits that judicial power will typically be directed." *Id.* at 543-44 (emphasis added).

In *Missouri ex rel. Nixon v. Prudential Health Care Plan, Inc.*, 259 F.3d 949 (8th Cir. 2001), the Court of Appeals for the Eighth Circuit applied this "anti-duplicative-litigation doctrine" in an action involving two "substantially identical" complaints that were filed one after the other in federal court. *Id.* at 952. Recognizing the general policy against duplicative litigation, the *Nixon* Court observed that three Federal Circuits have amplified the rule by authorizing federal District Courts to "dismiss one of the two identical, pending actions ... for reasons of wise judicial administration." *Id.* at 953 (quotations omitted), *citing Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183-84 (1952); *Serlin v. Arthur Andersen & Co.*, 3 F.3d 221, 223 (7th Cir. 1993); and *Walton*, 563 F.2d at 70.

Drawing upon these and other decisions espousing the anti-duplicative-litigation principle, the court in *Nixon* ultimately held that "[p]laintiffs may not pursue multiple federal suits against the same party involving the same controversy at the same time." *Nixon*, 259 F.3d at 954, citing *Colorado River*, 424 U.S. at 817. The *Nixon* court noted that this policy is largely motivated by the economic need to avoid the "unnecessary expenditure of scarce federal judicial resources," as well as the jurisprudential concern of potentially unnecessary/contrary court decisions. *Id.* at 954 (citations omitted). *See also, In re Porter*, 295 B.R. at 543 ("The power of a federal court to prevent duplicative litigation is intended to foster judicial economy and the comprehensive disposition of litigation, and to protect parties from the vexation of concurrent litigation over the same subject matter.") (citations/quotations omitted).

B.   THE FEDERAL FIRST-FILED RULE HOLDS THAT A CAUSE OF ACTION MUST BE
     DECIDED BY THE COURT WHICH FIRST HAS POSSESSION.

To avoid needless litigation and forum shopping by plaintiffs, federal courts have also

created and enforced the first-filed rule.   This principle goes hand in hand with the anti-

duplicative-litigation doctrine, and provides that "in all cases of federal concurrent jurisdiction,

the court which *first* has possession of the subject must decide it." *EEOC v. University of*

*Pennsylvania,* 850 F.2d 969, 971 (3d Cir. 1988) (quotations omitted) (emphasis added), *aff'd,*

493 U.S. 182, *citing Smith v. M'Iver,* 22 U.S. 532, 535 (1824); and *Crosley Corp. v. Hazeltine*

*Corp.,* 122 F.2d 925, 929 (3d Cir. 1941). *See also, In re Porter,* 295 B.R. at 544 ("[I]n cases of

federal concurrent jurisdiction involving the same parties and issues, the court of first filing must

proceed to decide the matter."), *citing EEOC, supra.* "To have concurrent jurisdiction means

that there is jurisdiction exercised by different courts, at the same time, over the same subject

matter, and within the same territory, and wherein litigants may, in first instance, resort to either

court indifferently." *Robinson v. Pennsylvania, unreported,* 1991 U.S. Dist. LEXIS 15700, *2-3

(E.D. Pa. October 29, 1991) (quotations omitted) (Exhibit G), *citing* Black's Law Dictionary at

291 (6th ed. 1990).

The first-filed rule "encourages sound judicial administration and promotes comity

among federal courts of equal rank." *EEOC,* 850 F.2d at 970.   It also helps to ensure "that

litigants receive a single determination of their controversy," as opposed to multiple decisions

that could result in conflicting appeals to different federal circuit courts. *Advanta Corp. v. Visa*

*USA, unreported,* 1997 U.S. Dist. LEXIS 2007, *4 (E.D. Pa. February 19, 1997)

(citations/quotations omitted) (Exhibit H).   *See also, EEOC,* 850 F.2d at 971-72, 974-977,

*citing/quoting Kline v. Burke Constr. Co.,* 260 U.S. 226, 229 (1922) (comity must serve as a

guide to courts of equal jurisdiction to exercise forbearance to avert conflicts and to avoid

"interference with the process of each other"); and *Crosley*, 122 F.2d at 930 (emphasizing the need for all litigants to have a single determination of their controversy and the importance of preventing conflicting judgments, and stating that overburdened federal courts should "not be called upon to duplicate each other's work in cases involving the same issues and the same parties").[2] Furthermore, in *EEOC, supra*, the United States Court of Appeals for the Third Circuit held that where similar cases are being prosecuted in different federal courts, invocation of the first-filed rule to dismiss the *latter* action "will usually be the norm, not the exception." *EEOC*, 850 F.2d at 979. *See also, Advanta*, 1997 U.S. Dist. LEXIS 2007 at *4 (citing *EEOC* for the proposition that "courts must be presented with exceptional circumstances before exercising their discretion to depart from the [first-filed] rule"); and *In re Porter*, 295 B.R. at 544 (so stating).

C.   **THIS COURT SHOULD APPLY THE ANTI-DUPLICATIVE-LITIGATION AND FIRST-FILED DOCTRINES AND DISMISS CHI-CHI'S THIRD-PARTY COMPLAINT AGAINST CASTELLINI BECAUSE CHI-CHI'S ALREADY HAS THE SAME COMPLAINT/ACTION PENDING IN THE DELAWARE COURT.**

Chi-Chi's Third-Party Complaint against Castellini should be dismissed because it violates the anti-duplicative-litigation doctrine and the first-filed rule. Chi-Chi's has improperly initiated and allowed to remain pending two identical suits in two different federal courts of concurrent jurisdiction at the same time. Furthermore, there exist no extraordinary circumstances here that would permit Chi-Chi's to continue violating the federal anti-

---

[2] This need to have a single adjudication and to avoid conflicting judgments is consistent with the rationale underlying the doctrine of *res judicata* that there must "be an end to litigation and that an individual should not be vexed twice for the same cause." *Flood v. Besser*, 324 F.2d 590, 591 (3d Cir. 1963). *See also, Crosley*, 122 F.2d at 930 (stating that parties should "be free from the vexation of subsequent litigation over the same subject matter").

duplicative-litigation and first-filed rules by simultaneously pursuing the same allegations in different venues. *See, e.g., EEOC,* 850 F.2d at 979; and *In re Porter,* 295 B.R. at 544.[3]

In this case, both the Delaware Complaint and the Pennsylvania Complaint include claims for: (1) breach of express warranty; (2) breach of implied warranty of merchantability; (3) breach of implied warranty of fitness for a particular purpose; (4) contractual indemnity; (5) implied equitable indemnity/indemnification; and (6) contribution.    *See* Third-Party Complaint (Exhibit A) and Delaware Complaint (Exhibit B). Also, both suits seek the following alleged damages: (1) past and future general, incidental, and consequential damages in a sum yet to be determined; (2) attorney's fees and costs; (3) pre- and post-judgment interest; (4) indemnity; (5) contribution; (6) costs of suit; and (7) other and further relief. *See* Third-Party Complaint (Exhibit A) and Delaware Complaint (Exhibit B). Furthermore, the two Complaints are nearly verbatim in their respective language and share a common nucleus of operative facts — namely, the alleged distribution of contaminated green onions by Castellini. *See* Third-Party Complaint (Exhibit A) and Delaware Complaint (Exhibit B). Hence, the legal theories and damages are all the same. Accordingly, under the anti-duplicative-litigation and first-filed principles, two federal courts of concurrent jurisdiction should not hear these cases at the same time, and the latter Third-Party Complaint should be dismissed. *See, e.g., Specialty Ins. Agency, Inc. v. Walter Kaye Assoc., Inc., unreported,* 1989 U.S. Dist. LEXIS 6755, *6-18 (D.N.J. June 7, 1989) (Exhibit I) (stating that two suits seeking like relief and hinging on the outcome of the

---

[3] Nor can it be contested that this Court is a court of concurrent jurisdiction with the Delaware Court for purposes of Plaintiffs' duplicative Complaints. *See Robinson,* 1991 U.S. Dist. LEXIS 15700 at *2-3. *See also, The Cadle Co. v. Whataburger of Alice, Inc.,* 174 F.3d 599, 602-06 (5th Cir. 1999) (holding that pursuant to the first-filed rule's mandate to "avoid rulings which may trench upon the authority of sister courts," it was proper for a federal district court to defer to a federal bankruptcy court in which a similar complaint involving RICO and other allegations was previously filed). In the present case, the Delaware Court first took and this Court has now taken jurisdiction over the same case/subject matter at the same time within the territory of the United States. *See Robinson,* 1991 U.S. Dist. LEXIS 15700 at *2-3. That Chi-Chi's could have brought its claims in either court indifferently is demonstrated by the fact that it has actually asserted identical claims in both courts simultaneously. *See id.*

same legal/factual questions were identical for purposes of the first-filed rule) (citations/quotations omitted); *see also, Walton, In re Porter, Nixon*, and *EEOC, supra*.[4]

Finally, equitable principles underlying the anti-duplicative-litigation and first-filed doctrines likewise compel dismissal of Chi-Chi's Third-Party Complaint. In the words of the Third Circuit, "sound judicial administration" promotes the avoidance of both duplicative litigation that overburdens the federal judiciary, as well as the "judicial embarrassment of conflicting judgments." *EEOC*, 850 F.2d at 977. Conversely, allowing Chi-Chi's to proceed with its Third-Party Complaint would endorse the filing of vexatious litigation contrary to the spirit and letter of countless Supreme Court and other federal decisions in this context, and would unnecessarily expend the already scarce resources of the federal judiciary. *See, e.g., Colorado River*, 424 U.S. at 817; *Nixon*, 259 F.3d at 954; and *In re Porter, 295 B.R. at 543*. "Why, under the circumstances, should there be two litigations where one will suffice?" *Specialty*, 1989 U.S. Dist. LEXIS 6755 at *8. Simply put, there should not be, and, accordingly, the latter-filed Third-Party Complaint of Chi-Chi's should be dismissed.

---

[4] For purposes of the anti-duplicative-litigation and first-filed doctrines, it is irrelevant that Chi-Chi's Delaware Complaint and subsequent Third-Party Complaint were filed by different counsel. This is so because not even the parties (much less the attorneys) must be identical in order to establish duplicative litigation. *See, e.g., Landis v. North American Water Works & Elec. Co.*, 299 U.S. 248, 254 (1936). *See also, In re Porter*, 295 B.R. at 543 ("For an action to be deemed duplicative, there must be the same parties, or at least *such as represent the same interest*.") (emphasis added); and *Walton*, 563 F.2d at 69-71 (applying the anti-duplicative-litigation principle to separate complaints involving the same subject matter that were filed by different attorneys). Moreover, the first-filed rule mandates that "in all cases of federal concurrent jurisdiction, the court which first has possession of the *subject* must decide it." *EEOC*, 850 F.2d at 971, *citing Smith*, 22 U.S. at 535; and *Crosley Corp.*, 122 F.2d at 929. The policy basis for both doctrines--comity among federal courts and judicial economy--also counsels trial judges to "enjoin[] the subsequent prosecution of *similar cases* in different federal courts." *EEOC*, 850 F.2d at 971 (quotations omitted) (emphasis added). In short, neither principle distinguishes between cases filed by different counsel on behalf of parties representing the same interest.

## IV.    CONCLUSION

Castellini should not be forced to try simultaneously the same cases in two different jurisdictions, duplicating costs to Castellini, and creating the risk of possibly conflicting judgments and needless confusion among the federal courts.  Because an identical, previously-filed Complaint by Chi-Chi's is currently pending in the United States Bankruptcy Court for the District of Delaware, and pursuant to the federal anti-duplicative-litigation and first-filed  rules, Castellini respectfully requests that this Court dismiss Chi-Chi's Third-Party Complaint against Castellini.

Respectfully submitted,

/s/ Henry M. Sneath
Henry M. Sneath, Esq. (PA 40559)
Shannon M. Clougherty, Esq. (PA 88586)
PICADIO SNEATH MILLER & NORTON, PC
Suite 4710 US Steel Tower - 600 Grant St.
Pittsburgh, Pennsylvania 15219
Phone:  (412) 288-4000
Fax:      (412) 288-2405

/s/ Scott D. Goldman
Scott D. Goldman, Esq. (PA 88916)
DINSMORE & SHOHL LLP
Suite 2415 Grant Building
Pittsburgh, Pennsylvania 15219
Phone:  (412) 281-5000
Fax:      (412) 281-5055

**Co-Counsel for Third-Party Defendant,
Castellini Company LLC**

## CERTIFICATE OF SERVICE

I hereby certify that true and correct copies of the foregoing MEMORANDUM OF LAW

IN SUPPORT OF MOTION TO DISIMSS were served by regular U.S. mail, postage duly

prepaid, this 1st day of August, 2005 upon the following counsel of record:


Edward J. Balzarini, Jr., Esq.                James R. Miller, Esq.
BALZARINI & WATSON                            DICKIE, MCCAMEY & CHILCOTE, P.C.
3303 Grant Building                           Two PPG Place, Suite 400
Pittsburgh, PA 15219                          Pittsburgh, PA 15222-5402
**Counsel for Plaintiffs**                    **Counsel for Defendant/Third-Party Plaintiff**

Scott D. Goldman, Esq.
DINSMORE & SHOHL LLP
Suite 2415 Grant Building
Pittsburgh, Pennsylvania 15219
**Co-Counsel for Third-Party Defendant,**
**Castellini Company LLC**


                        /s/ Henry M. Sneath
                        _____
                        Henry M. Sneath, Esq. (PA I.D. 40559)
                        Shannon M. Clougherty, Esq. (PA I.D. 88586)
                        PICADIO SNEATH MILLER & NORTON, P.C.
                        Suite 4710 U.S. Steel Tower – 600 Grant Street
                        Pittsburgh, Pennsylvania 15219
                        Phone: (412) 288-4000
                        Fax: (412) 288-2405
                        **Co-Counsel for Third-Party Defendant,**
                        **Castellini Company LLC**

# EXHIBIT 15

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| Chi-Chi's Inc., et al., | ) | Case No. 03-13063(RB) |
| | ) | (Jointly Administered) |
| _____ Debtors. | ) | |
| CHI-CHI'S INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary No. 04-57064(RB) |
| | ) | |
| CASTELLINI COMPANY, LLC, | ) | |
| SYSCO CORPORATION, and | ) | |
| SYGMA NETWORK, INC., | ) | |
| | ) | |
| _____ Defendants. | ) | |

## MOTION AND INCORPORATED MEMORANDUM OF LAW OF
## DEFENDANT CASTELLINI COMPANY, LLC, TO WITHDRAW THE REFERENCE

Pursuant to 28 U.S.C. § 157(d) and (e) and Local Bankruptcy Rule 5011-1, defendant Castellini Company ("Castellini"), through its undersigned counsel, respectfully requests that reference of the above-captioned adversary proceeding (the "Adversary Proceeding") brought against it by an insurer of Chi-Chi's Inc. ("Debtors") be withdrawn pursuant to 28 U.S.C. § 157(d) and (e).

On November 16, 2004, Debtors' insurer, Empire Indemnity Insurance Company, as subrogee ("Subrogee"), filed its adversary complaint (the "Complaint") with the Bankruptcy Court. The Complaint seeks damages from Castellini and the other defendants, alleging that green onions Castellini shipped to a distribution center for Debtors' use were contaminated with Hepatitis A. Subrogee further alleges that the adulterated green onions caused Debtors' financial damage.

In its Answer, Castellini has denied liability and requested and is entitled to a jury trial, making withdrawal of the reference mandatory pursuant to 28 U.S.C. § 157(d) and (e). Additionally, because the Adversary Proceeding is a non-core proceeding[1] which raises purely state law issues and because withdrawal of the reference will conserve valuable judicial and litigant resources, the Court should exercise its discretion to withdraw the reference for cause pursuant to 28 U.S.C. § 157(d).

### THE COMPLAINT

Subrogee filed a Complaint which is virtually identical to a complaint which Debtors had previously filed and dismissed to pursue the claims in another jurisdiction (Adv. No. 04-54170).[2] In both the Debtors' and Subrogee's complaints, Castellini and others (who were voluntarily dismissed by Debtors and Subrogee) were alleged to have supplied Debtors' Mexican restaurants with green onions that were contaminated with Hepatitis A. As alleged in the Complaint:

Paragraph 3:    Subrogee is a commercial liability insurer which provided Debtors with a commercial liability umbrella policy with coverage of $10 million.

Paragraph 4:    Debtors owned and operated a chain of restaurants.

Paragraph 5:    Castellini is a Delaware limited liability company with its principal place of business in Kentucky. It is in the business of processing, supplying and shipping produce and other foods to restaurants, including Debtors' Chi-Chi's restaurants.

Paragraph 9:    In 2003, there was an outbreak of Hepatitis A which allegedly was

---

[1] Contemporaneously herewith, Castellini has filed its Motion and Incorporated Memorandum for a Determination That the Adversary Proceeding is a Non-Core Proceeding for consideration by the Bankruptcy Court.

[2] Debtors refiled the case in the United States District Court for the Central District of California, Western Division. The California District Court dismissed the action.

2

traced to a Chi-Chi's restaurant in Monaca, Pennsylvania.  The suspected source of the illness

was green onions used as a raw ingredient in salsa and as a garnish.

Paragraph 13: Injured customers filed more than 650 claims against Debtors seeking

money damages for injuries and deaths.

Counts I-VII:

Subrogee seeks money damages from Castellini.  Its claims consists of breaches of

warranties for contribution.

## ARGUMENT

The District Court has jurisdiction over this case pursuant to 28 U.S.C. § 1334(b).

However:

> Each district court may provide that any or all cases under title 11 and any and all
> proceedings arising under title 11 or arising in or related to a case under title 11
> shall be referred to the bankruptcy judges for the district.

28 U.S.C. § 157(a).  Effective October 6, 2001, the District Court for the District of Delaware

referred all cases commenced under the Bankruptcy Code to the Bankruptcy Court of this

District.  (Order in re Referral of Title 11 Proceedings to the United States Bankruptcy Judges of

this District (Sept. 6, 2001)).  Accordingly, Debtor's bankruptcy case is now pending before the

Bankruptcy Court pursuant to 28 U.S.C. §§ 157(a) and 1334(b), and the District Court's

September 6, 2001 Order of Reference.

The Bankruptcy Court is not empowered to hear all matters related to title 11.  Pursuant

to 28 U.S.C. § 157(d):

> The district court may withdraw, in whole or in part, any case or proceedings
> referred under this section, on its own motion or on timely motion of any party,
> for cause shown.  The district court *shall so withdraw* a proceeding if the court
> determines that resolution of the proceeding requires consideration of both title 11

3

and other laws of the United States regulating organizations or activities affecting interstate commerce. (Emphasis added.)

"[S]ection 157(d) envisions two types of withdrawal of reference to the bankruptcy court: (1) mandatory withdrawal, and (2) permissive withdrawal." *In re Homeland Stores, Inc.*, 204 B.R. 427, 430 (D.Del. 1997).

Here, because Castellini has requested and is entitled to a trial by jury, withdrawal of the reference is mandatory. In addition, withdrawal of the reference is permissive, and this Court should exercise its discretion to withdraw the reference for the Adversary Proceeding.

## I.     WITHDRAWAL OF THE REFERENCE IS MANDATORY

Withdrawal of the reference in the Adversary Proceeding is mandatory, pursuant to Sections 157(d) and (e) of the Bankruptcy Code, because Castellini has exercised its right under the Seventh Amendment to the Constitution and demanded a trial by jury. Castellini does not consent to a jury trial before the Bankruptcy Court. As such, the reference must be withdrawn.

The claims asserted by Subrogee in the Adversary Proceeding are with one very minor exception strictly actions at law. Subrogee seeks money damages for alleged breaches of express warranty, implied warranty of merchantability, warranty of fitness for a particular purpose, contractual indemnity, implied equitable indemnity and contribution - - all but one count are strictly claims at law, not equity. In addition, the claims also seek to adjudicate private rights, purely legal in nature and for which Castellini is entitled to a trial by jury. See Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 55 (1989).

The Seventh Amendment to the Constitution entitles Castellini to a jury trial on all claims that are legal, not equitable, in nature, and that will adjudicate private, not public, rights. *Id. At 40-65.* "Unless a legal cause of action involves 'public rights,' Congress may not deprive

4

parties litigating over such a right of the Seventh Amendment's guarantee to a jury trial." *Id.* at 53.

The Complaint here is grounded in contract and will require the determination of questions of fact, including whether Castellini shipped contaminated green onions. An action to enforce the terms of a contract is an action at law, hence the party seeking enforcement is entitled to a jury trial. *Beard v. Braunstein*, 914 F.2d 434, 441 (3d Cir. 1990). Because Debtors' claims asserted here by Subrogee are legal in nature, the trier of fact with respect to these claims must be a jury.

A bankruptcy court may not conduct a jury trial absent the express consent of the parties. *See* 28 U.S.C. § 157(e) ("If the right to a jury trial applies in a proceeding that may be heard under this section by a bankruptcy judge, the bankruptcy judge may conduct the jury trial if specifically designated to exercise said jurisdiction by the district court and with the express consent of all the parties." (emphasis added)). Castellini does not consent to the Bankruptcy Court conducting a jury trial in the Adversary Proceeding. As such, the Adversary Proceeding must be tried by a jury before this Court.

Based upon the foregoing, the issue of Castellini's right to a jury trial before this Court is not a matter of discretion, nor is it in any way based upon the Bankruptcy Court's familiarity with the case. Indeed, the case is now pending before the fourth judge assigned to it; and because Chief Judge Baxter is a visiting judge whose term is limited, there likely will be a fifth judge before this case is tried. Castellini is entitled to a jury trial, has not waived this right, and does not consent to a jury trial before the Bankruptcy Court. Therefore, the reference must be withdrawn.

5

II.   **EVEN IF WITHDRAWAL OF THE REFERENCE WERE NOT MANDATORY THIS COURT SHOULD EXERCISE ITS DISCRETION TO WITHDRAW THE REFERENCE OF THE ADVERSARY PROCEEDING FOR CAUSE.**

Moreover, even if withdrawal of the reference were not mandatory, the Court should exercise its discretion to "permissively" withdraw the reference.

This Court may withdraw the reference from the Bankruptcy Court "for cause shown." *See* 28 U.S.C. § 157(d). What constitutes "cause" is not defined by the Bankruptcy Code, but has been interpreted by the courts. Although cause "is not an empty requirement, "*In re Simmons*, 200 F.3d 738, 741 (11th Cir. 2000), the standards are "minimal." *In re Pruitt*, 910 F2d 1160, 1168 (3d Cir. 1990). *See also, In re Onyx Motor Car Corp.*, 116 B.R. 89, 91 (S.D. Ohio 1990) (listing three factors relevant to cause and explaining that cause can exist when one or more of such factors are satisfied).

In determining whether to withdraw the reference for cause, courts have identified a number of additional factors which should be considered when deciding the existence and validity of cause. Factors that justify permissive withdrawal for "cause" include: (1) whether the claim is core or non-core; (2) whether the cause of action is legal or equitable; (3) whether judicial economy is served; (4) whether the ruling would prevent forum shopping; (5) whether the ruling would promote uniformity in the administration of bankruptcy law; (6) whether withdrawal will foster economical use of the debtor's and creditors' resources; and (7) whether the parties are entitled to a jury trial.[3] *See Orion Pictures Corp. V. Showtime Networks, Inc.,* 4

---

[3] It has consistently been held that the right to a trial by jury constitutes automatic "cause" to withdraw the reference. *See e.g. Torcise v. Community Bank of Homestead* 131 B.R. 503, 508 (S.D.Fla., 1991); *In re Am. Expressways, Inc.*, 161 B.R. 707 (D. Utah 1993); *In re Am. Cmty. Servs., Inc.*, 86 B.R. 681 (D. Utah 1988) (cause to withdraw the reference automatically exists if party seeking withdrawal is entitled to jury trial under the Seventh Amendment).

F.3d 1095, 1102 (2d Cir. 1993), *cert. denied* 511 U.S. 1026, 114 S. Ct. 1418 (1994) (holding that a breach of contract action brought by the debtor against a third party to a pre-petition contract is non-core); *see also Hatzel & Buehler, Inc. v. Orange & Rockland Utils.*, 107 B.R. 34, 39 (D.Del. 1989) ("Permissive withdrawal for "cause" includes considerations of the nature of the proceeding (*i.e.* core or non-core proceeding) and judicial economy.").

The threshold question for purposes of determining "cause" is whether the proceeding is core or non-core. *In re NDEP Corp.*, 203 B.R. 905, 908 (D.Del. 1996) (citing *Orion Pictures Corp.*, 4 F.3d at 1101). In addition, "[t]he Second Circuit explained that it is upon the issue of coreness "that questions of efficiency and uniformity will turn." In non-core matters, the bankruptcy court's determination of the merits of the proceeding is subject to *de novo* review by the district court. Consequently, reasoned the Second Circuit, district courts might reasonably conclude "that in a given case, unnecessary costs could be avoided by a single proceeding in the district court." Indeed, the hypothetical advanced by the Second Circuit mirrors the reasoning of this Court in *Hatzell & Buehler, Inc. v. Orange & Rockland Utils.*, 107 B.R. 34, 39-40 (D.Del. 1989). In that case, this Court found that the adversary proceeding initiated by the debtor which alleged state contract and tort claims constituted a non-core proceeding. Then, this Court found that judicial economy favored permissive withdrawal because if it were denied, the district court would still need to review the merits of the dispute when considering the bankruptcy court's proposed findings of fact and conclusions of law. Consequently, this Court withdrew the reference. *Id.* Accordingly, efficiency and uniformity are promoted by the District Court's initial handling of non-core matters, in part because, pursuant to 28 U.S.C. § 157(c)(1), the bankruptcy court's determination of non-core matters is subject to *de novo* review by the district court. *Id.*

Contemporaneously with this Motion, Castellini filed with the Bankruptcy Court its Motion for a Determination That the Adversary Proceeding Is a Non-Core Proceeding. Castellini anticipates that the Bankruptcy Court will determine that this a non-core proceeding because the Complaint does not invoke a substantive right provided by Title 11. Rather, the Complaint raises "quintessential state law causes of action," including supposed breaches of contract and warranty, issues which will be interpreted under state law. Nor is the Adversary Proceeding a proceeding that by its nature could arise only in the context of bankruptcy case. Instead, it is a case which sounds in contract, a case which courts of law commonly hear. Because the Adversary Proceeding is a non-core proceeding, any determination made by the bankruptcy court would be subject to *de novo* review by the District Court. *See, e.g. Control Center, LLC v. Lauer*, 288 B.R. 269, 277 (M. D. Fla. 2002) (determining that actions for breach of contract, defamation, and trademark misappropriation were independent of both the bankruptcy code any other federal law and thus non-core). What also should be significant to the Court is that Debtors' insurer, not Debtors, brought this action, and that Debtors voluntarily dismissed their Bankruptcy Court case and refiled it in a district court.

Consideration of the above factors supports permissive withdrawal of the reference in this case. The proceedings here are clearly non-core, the claims asserted are legal rather than equitable in nature, interests of judicial economy and efficiency favor withdrawal of the reference, and Castellini has requested and is entitled to a trial by jury.

There is also an overriding and fundamental basis for a withdrawal here on the ground of judicial economy. The adversary proceeding was, when filed, assigned to Bankruptcy Judge Case, a visiting jurist from Phoenix, Arizona. But Judge Case's tour of service in Delaware ended and the case was reassigned twice, first to visiting Judge Peterson, and now to visiting

8

Chief Judge Randolph Baxter, N.D. Ohio. In other words, the parties are not before a bankruptcy judge who is familiar with the adversary proceeding, or even the bankruptcy case itself.

It is safe to assume that the case will survive Chief Judge Baxter's visiting term, in which case the parties are again in a revolving door. Since this case will undoubtedly require case management and is complex, the sensible course is to involve a District Court Judge who can handle the case from beginning to end.

In *Hazel v. Buehler, Inc.*, this Court exercised its discretion under the permissive withdrawal provision of section 157, and withdrew the reference of adversary proceedings which alleged state contract and tort claims, and as here, did not involve any interpretation of Bankruptcy Code and were not otherwise related to the underlying bankruptcy proceeding. There, the Debtor filed three separate adversary proceedings against the defendant seeking contract or *quantum meruit* damages from the Defendants for wrongfully terminating their contract and subcontracts. The Court found that the adversary proceedings were non-core, and that considerations of judicial economy also favored permissive withdrawal. The Court withdrew the reference the adversary proceedings. *Hazel & Buehler, Inc.* 107 B.R. at 35.

9

## III. CONCLUSION

For the foregoing reasons, Castellini respectfully requests that the reference be withdrawn with respect to this Adversary Proceeding.

Dated: August 1, 2005

ROSENTHAL, MONHAIT, GROSS
& GODDESS, P.A.

By _____

Kevin Gross (I.D. No. 209)
919 Market Street, Suite 1401
P.O. Box 1070
Wilmington, DE 19899-1070
(302) 656-4433
(302) 658-7567

-And-

Gary E. Becker, Esquire
DINSMORE & SHOHL, LLP
255 East Fifth Street
Suite 1900
Cincinnati, OH 45202
(513) 977-8200
(513) 977-8141 (FAX)

Attorneys for Castellini Company, LLC

10

# <u>EXHIBIT 16</u>

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CHI-CHI'S, INC., | ) | Case No. 03-13063(JLP) |
| | ) | (Jointly Administered) |
| Debtors | ) | |

| | | |
|---|---|---|
| | ) | |
| | ) | |
| CHI-CHI'S, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | Adv. No. 04-57064 (JLP) |
| | ) | |
| CASTELLINI COMPANY, LLC, | ) | Related DK Nos.: 11, 12 and 15 |
| SYSCO CORPORATION and | ) | |
| SYGMA NETWORK, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT CASTELLINI'S MOTION FOR A
DETERMINATION THAT THE ADVERSARY PROCEEDING IS A NON-CORE
PROCEEDING AND MOTION TO WITHDRAW THE REFERENCE**

Empire Indemnity Insurance Company, d/b/a Zurich (hereinafter "Zurich"),

subrogor of the Debtors, Chi-Chi's, Inc., and certain related debtors (collectively, the

"Debtors" and/or "Chi-Chi's"), by and through the undersigned counsel, take no

position on the substantive assertions or conclusions of law made in Defendant

Castellini Company, LLC's Motion for a Determination that the Adversary Proceeding

is a Non-Core Proceeding and Motion to Withdraw the Reference (collectively, the

"Motions" or "Motions to Withdraw the Reference") other than to note, to the extent

either Motion is granted, such action by the Court and taken upon the Defendant's

WMIA 62369v1 08/24/05

initiative, does not constitute a dismissal under FEDERAL RULE OF CIVIL PROCEDURE 41

made applicable through BANKRUPTCY RULE OF PROCEDURE 7041.

### FOX ROTHSCHILD LLP

By: */s/ Bernard George Conaway*
 Francis G. X. Pileggi, Esquire (Del. Bar No. 2624)
 Bernard George Conaway, Esquire (Del. Bar No. 2856)
 L. Jason Cornell, Esquire (Del. Bar No. 3821)
 919 N. Market Street, Suite 1300
 P.O. Box 2323
 Wilmington, DE 19899-2323
 (302) 654-7444 ·

 and

 Richard Dennis Abrams, Esquire
 Heckler & Frabizzio, PA
 800 Delaware Avenue, Suite 200
 Wilmington, DE 19801
 (302) 573-4800

 Attorneys for Empire Indemnity Insurance Company,[1]
 subrogee of the above-captioned Debtors

---

[1] The firm of Heckler & Frabizzio represents Subrogee as to all claims against the Defendants, whereas Fox Rothschild LLP represents Subrogee as to claims arising solely against Defendant Castellini.

WM1A 62369v1 08/24/05

# EXHIBIT 17

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARTHA J. FUNKHOUSER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 02: 05cv638 |
| | ) | |
| CHI-CHI'S, INC., | ) | |
| Defendant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CASTELLINI COMPANY, LLC, | ) | |
| | ) | |
| Third-Party Defendant. | ) | |

### MEMORANDUM ORDER

Presently before the Court are the following:

• MOTION TO DISMISS filed by Third Party Defendant Castellini Company, LLC, with brief in support (*Document Nos. 10 and 11*), the brief in opposition filed by Third-Party Plaintiff Chi-Chi's, Inc. (*Document No. 17*), and the Reply Memorandum filed by Third-Party Defendant Castellini Company (*Document No. 25*). For the reasons that follow, the Motion will be granted.

Since its adoption in *Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925 (3d Cir.1941), the first-filed rule has been employed by the courts in the Third Circuit to enjoin, where appropriate, "the subsequent prosecution of 'similar cases . . . in different federal district courts.'" *EEOC v. University of Pennsylvania*, 850 F.2d 969, 971 (3d Cir. 1988) (quoting *Compagnie Des Bauxites De Guinea v. Insurance Co. of North America*, 651 F.2d 877, 887 n. 10 (3d Cir. 1981)). The first-filed rule simply dictates that, in cases of federal concurrent jurisdiction involving the same parties and issues, the court of first-filing must proceed to

decide the matter. *EEOC,* 850 F.2d at 971. Although district courts do have discretion in

applying the first-filed rule, district courts have adopted a policy which requires the existence of

unusual or exceptional circumstances before a court may choose to depart from the rule. *See*

*Berkshire International Corp. v. Marquez,* 69 F.R.D. 583, 586 (E.D. Pa.1 976).

　　　　Circumstances which may justify a departure from the first-filed rule include: 1) bad

faith on the part of plaintiff in the first-filed action; 2) forum shopping being a motivation for

the filing of the first action; 3) the second filed action being further developed than the first at

the time the motion is made; and 4) the filing of the first suit in one forum to preempt the

opponent's imminent filing of a suit in a different, less favorable forum. *See EEOC,* 850 F.2d at

976 (declining to apply the first-filed rule after concluding that defendant had filed its prior

action in the District of Columbia in order to avoid unfavorable precedent in the Third Circuit).

　　　　In its response to the present motion, Third-Party Plaintiff Chi-Chi's, Inc. ("Chi-

Chi's") attempts to persuade the Court that, due to the existence of several special

circumstances, the first-filed rule should not be enforced to enjoin it from prosecuting its third

party action against Castellini Company, LLC in this district.

　　　　First, Chi-Chi's argues that although the Delaware bankruptcy action has been

brought in the name of "Chi-Chi's," that claim was brought by one of the Company's insurance

companies whereas the instant case was brought by the attorneys retained directly by Chi-Chi's.

Therefore, according to this argument, the parties in the two actions are not identical.

　　　　Second, Chi-Chi's argues that the balance of convenience "overwhelmingly favor the

exercise of jurisdiction by this Court." Br. at 12. Third, Chi-Chi's argues that this "Court's

familiarity with the subject matter of this action provides an additional basis for denial of

Castellini's motion." Last, Chi-Chi's argues that "this action is likely to proceed more rapidly than Empire's Delaware Action." *Id.* at. 15.

Chi-Chi's, however, has failed to persuade the Court that any circumstances exist in this matter which would justify a departure from the first-filed rule. *EEOC*, 850 F.2d at 976. In addition to both claims being brought solely in the name of Chi-Chi's, Inc., both assert the "same rights" through the same six contractually based theories of recovery, both assert the "same facts" and claim the same harm, and both demand the same "relief" from Castellini. The Court, therefore, concludes that pursuant to the first-filed rule, the Third-Party Complaint filed against Castellini in this Court should be dismissed.

**AND NOW**, this 7th day of October, 2005, it is hereby **ORDERED, ADJUDGED AND DECREED** that pursuant to the first-filed ruled the Third-Party Complaint of Defendant/Third-Party Plaintiff Chi-Chi's, Inc. against Castellini Company is hereby **DISMISSED** forthwith.

BY THE COURT:

s/Terrence F. McVerry
United States District Court Judge

3

cc: Edward J. Balzarini, Jr., Esquire
Balzarini, Carey & Watson
3303 Grant Building
Pittsburgh, PA 15219

Douglas J. Billings, Esquire
Gordon & Holmes
223 West Eighth Street
San Diego, CA 92101

Frederic L. Gordon, Esquire
Gordon & Holmes
223 West Eighth Street
San Diego, CA 92101

Rhonda J. Holmes, Esquire
Gordon & Holmes
223 West Eighth Street
San Diego, CA 92101

James R. Miller, Esquire
Dickie, McCamey & Chilcote
Email: jmiller@dmclaw.com

Christopher T. Lee, Esquire
Dickie, McCamey & Chilcote
Email: clee@dmclaw.com

Shannon E. Smith, Esquire
Dickie, McCamey & Chilcote
Email: ssmith@dmclaw.com

4

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CHI-CHI'S, INC., et al., | ) | Case No. 03-13063 (RB) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | Adv. Proc. No. 05-52726-RB |
| | ) | |
| SYSCO CORPORATION and | ) | |
| THE SYGMA NETWORK, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CHI-CHI'S, INC., | ) | |
| | ) | |
| Defendant | ) | |

## CERTIFICATE OF SERVICE

I, Rachel Lowy Werkheiser, hereby certify that on the 21st day of October,

2005, I caused a copy of the following document(s) to be served on the individuals on the

attached service list(s) in the manner indicated:

**Declaration Of Frederic L. Gordon In Support Of Defendant Chi-Chi's, Inc.'s**
**Opposition To Plaintiffs SYSCO Corporation And The SYGMA Network, Inc.'s**
**Motion To Enjoin Defendant Debtor Chi-Chi's, Inc. From Initiating, Continuing**
**And/Or Participating In Any Additional Actions, Including Arbitration, Against**
**Them In Connection With The Hepatitis Claims**

*Rachel L. Werkheiser*

Rachel Lowy Werkheiser (Bar No. 3753)

DOCS_DE:112471.3

Chi-Chi's Core Group Service List
Case No. 03-13063
October 20, 2005
Document No. 81488
003 – Hand Delivery
002 – First Class Mail

(Debtors)
Laura Davis Jones, Esquire
Pachulski, Stang, Ziehl, Young, Jones &
Weintraub P.C.
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, DE 19899-8705

**Hand Delivery**
(Parcels)
Vito I. DiMaio
Parcels, Inc.
4 East 7th Street
Wilmington, DE 19801

**Hand Delivery**
(United States Trustee)
David Klauder, Esquire
844 North King Street, Room 2207
Wilmington, DE 19801

**Hand Delivery**
(Counsel to the OCUC)
Frederick B. Rosner, Esquire
Jaspan Schlesinger Hoffman LLP
913 N. Market Street, 12th Floor
Wilmington, DE 19801

**First Class Mail**
(Co-Counsel to Debtors)
William N. Lobel, Esquire
Alan J. Friedman, Esquire
Michael D. Neue, Esquire
Evan Borges, Esquire
Irell & Manella LLP
840 Newport Center Drive, Ste 400
Newport Beach, CA 92660

**First Class**
(Counsel to the OCUC)
Charles R. Gibbs, Esquire
Akin Gump Strauss Hauer & Feld LLP
1700 Pacific Avenue Suite 4100
Dallas, TX 75201-4675

13894-001\DOCS_DE:81488.1

Chi Chi's Additional Service List for Sysco Adversary Proceeding
Document No.
01 – via Hand Delivery
01 – via First Class Mail


*Via Hand Delivery*
(Counsel for Sysco Corporation and the SYGMA Network, Inc.)
Mark E. Felger, Esquire
Jeffrey Waxman, Esquire
Cozen O'Connor
1201 North Market Street, Suite 1400
Wilmington, DE  19801

*Via First Class Mail*
(Counsel for Sysco Corporation and the SYGMA Network, Inc.)
Philip G. Kircher, Esquire
Aaron Krauss, Esquire
Cozen O'Connor
1900 Market Street
Philadelphia, PA  19103

# Tab B

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:                              . Case No. 03-13063(RB)
                                    . Chapter 11
                                    .
   CHI-CHI'S, INC., et al.,         .
                                    . 824 Market Street
                                    . Wilmington, Delaware  19801
                    Debtors.   .
. . . . . . . . . . . . . . . . 1:34 p.m.
                                    . November 16, 2005


TRANSCRIPT OF HEARING
BEFORE HONORABLE RANDOLPH BAXTER
UNITED STATES BANKRUPTCY COURT JUDGE


APPEARANCES:

For the Debtors:             Irell & Manella LLP
                             By:  WILLIAM N. LOBEL, ESQ.
                             840 Newport Center Drive
                             Suite 400
                             Newport Beach, CA   92660

For the Debtors:             Pachulski, Stang, Ziehl, Young,
                              Jones & Weintraub, P.C.
                             By:  RACHEL L. WERKHEISER, ESQ.
                             919 North Market Street
                             17th Floor
                             P.O. Box 8705
                             Wilmington, DE   19899

Audio Operator:              Brandon J. McCarthy

Proceedings recorded by electronic sound recording, transcript
          produced by transcription service.

J&J COURT TRANSCRIBERS, INC.
268 Evergreen Avenue
Hamilton, New Jersey 08619
E-mail:  jjcourt@optonline.net

(609) 586-2311  Fax No.  (609) 587-3599

DOCKET # 2113
DATE 11/22/05

2

APPEARANCES (Cont'd.):

For the Debtors:                    Gordon & Holmes
                                    By:  FREDERIC L. GORDON, ESQ.
                                         DOUGLAS J. BILLINGS, ESQ.
                                    223 West Date Street
                                    San Diego, CA  92101

For Sysco Corporation and          Cozen O'Connor
Sygma Network, Inc.:               By:  JEFFREY R. WAXMAN, ESQ.
                                    Chase Manhattan Centre
                                    1201 North Market Street
                                    Suite 1400
                                    Wilmington, DE  19801

For Sysco Corporation and          Cozen O'Connor
Sygma Network, Inc.:               By:  AARON KRAUSS, ESQ.
                                    1900 Market Street
                                    Philadelphia, PA  19103

For Zurich Indemnity:              Fox Rothschild LLP
                                    By:  BERNARD G. CONAWAY, ESQ.
                                         FRANCIS G. X. PILEGGI, ESQ.
                                    Citizens Bank Center
                                    919 North Market Street
                                    Suite 1400
                                    14th Floor
                                    Wilmington, DE  19801

For the Creditors' Committee:      Jaspan Schlesinger Hoffman LLP
                                    By:  FREDERICK B. ROSNER, ESQ.
                                    913 North Market Street
                                    12th Floor
                                    Wilmington, DE 19801

For the Creditors' Committee:      Akin Gump Strauss Hauer &
                                     Feld L.L.P.
                                    By:  SARAH A. SCHULTZ, ESQ.
                                    1700 Pacific Avenue
                                    Suite 4100
                                    Dallas, TX  75201

For O. S. Realty:                  Morris, Nichols, Arsht & Tunnell
                                    By:  DANIEL B. BUTZ, ESQ.
                                    1201 North Market Street
                                    P.O. Box 1347
                                    Wilmington, DE  19899

3

APPEARANCES (Cont'd.):

For Castellini:                    Rosenthal, Monhait, Gross &
                                    Goddess, PA.
                                   By:   NORMAN M. MONHAIT, ESQ.
                                   919 Market Street
                                   Suite 1401
                                   P.O. Box 1070
                                   Wilmington, DE 19899

For Castellini:                    Dinsmore & Shohl LLP
                                   By:   GARY E. BECKER, ESQ.
                                   255 E. 5th St.
                                   Suite 1900
                                   Cincinnati, OH 45202

4

1          THE CLERK:  Please rise.

2          THE COURT:  Be seated, please.  Good afternoon.

3          UNIDENTIFIED ATTORNEYS:  Good afternoon, Your Honor.

4          THE COURT:  Counsel, you may proceed with the agenda

5   when ready.

6          MR. LOBEL:  Good afternoon, Your Honor.  William

7   Lobel, Irell & Manella, on behalf of the debtors and

8   debtors-in-possession.

9          THE COURT:  Mr. Lobel.

10         MR. LOBEL:  I'm going to handle the first two

11  matters, which are uncontested.  First we have the joint motion

12  of the debtors and the committee for extensions of the two

13  exclusivity periods through the end of the year, December 31,

14  to file the plan, and March 1, 2006, to solicit votes.  As Your

15  Honor is aware, we have filed a plan and disclosure statement.

16  We have a pending confirmation hearing.  We are asking for

17  these extensions in the abundance of caution if perhaps

18  something would happen and the Court didn't confirm our plan on

19  the 15th of December.  We don't expect to have any issues, but

20  if we did we wanted to be covered.  And so there has been no

21  objection.  The committee and the debtors both feel this is

22  prudent.

23         THE COURT:  The joint motion is granted and you may

24  submit the entry.

25         MR. LOBEL:  Thank you, Your Honor.  The next matter

5

1   is an application of one of our ordinary course professionals,
2   Quick, Rios.  They have a right under the applicable order to
3   be paid $25,000 a month.  They had to apply to the Court if
4   they exceeded that.  They did exceed it by $15,925 for the
5   period June 1 through July 31 of this year.  They filed an
6   appropriate application.  There has been no objection.  The
7   debtors and the committee support the payment of those fees.
8          THE COURT:  Very well, the certificate of no
9   objection has been filed.  That application is approved in the
10  amount requested for the subject application period.  You may
11  submit the entry.
12         MR. LOBEL:  Thank you, Your Honor.  And for the next
13  matter, appearing on behalf of the debtors will be Fred Gordon.
14  He's accompanied by Doug Billings, and I will sit down for that
15  part of it.
16         THE COURT:  Thank you.  Mr. Gordon?
17         MR. LOBEL:  Well, Your Honor, I think it's the
18  defendant's motion, so perhaps it will be their -- they will
19  start.  Mr. Gordon will handle it for the debtors, but since
20  it's the --
21         THE COURT:  Very well.
22         MR. LOBEL:  -- other side's motion --
23         THE COURT:  Good afternoon.
24         MR. KRAUSS:  Good afternoon, Your Honor.  May it
25  please the Court, Aaron Krauss from Cozen O'Connor,

6

1  representing Sysco and Sygma.  There are --

2      THE COURT:  Let me have your name again, sir.

3      MR. KRAUSS:  Aaron, A-a-r-o-n, Krauss, Kr-a-u-s-s.

4      THE COURT:  Mr. Krauss?

5      MR. KRAUSS:  Thank you, Your Honor.  There are three

6  related matters pending before you now.  First off is a request

7  for a pretrial conference in the adversary proceeding filed by

8  Sysco and Sygma.  That I suggest to the Court is not necessary.

9  This adversary proceeding presents a pure legal issue, whether

10  Rule 41 bars Chi-Chi's from bringing a third proceeding.  The

11  Court can resolve that issue on the motion that is before the

12  Court.  There would be no need, in any event, for any discovery

13  or further proceedings in this matter.  I have consulted with

14  counsel for Chi-Chi's and they agree that further proceedings

15  after the Court rules on the motion will not be necessary.

16      THE COURT:  Very well.  To what extent have you met

17  since the filing of these papers relative to the motion to

18  enjoin the defendant, debtor Chi-Chi's, to see if you could

19  resolve it?

20      MR. KRAUSS:  Attempts have been made.  They were,

21  unfortunately, unsuccessful.

22      THE COURT:  All right.

23      MR. KRAUSS:  I also note for the record that although

24  it is not on the list for this morning, attorneys hired by

25  Empire have filed a response to the motion.  They have also

7

1 filed intervention papers.  While obviously we do not concede

2 that Empire and Chi-Chi's are different parties or have

3 different claims, to the extent another member of the bar

4 wishes to offer argument, we would have no objection to the

5 argument.

6          THE COURT:  You have no objection to the intervention

7 of Empire?

8          MR. KRAUSS:  Without -- I cannot and do not concede,

9 Your Honor, that "Empire" and "Chi-Chi's" are in this matter

10 different parties.  We're asserting different claims.  In fact,

11 that's the whole basis of the Rule 41 motion.

12          THE COURT:  There was no opposition to the motion of

13 Empire to intervene, as I recall, is that correct?

14          MR. KRAUSS:  I believe that is correct.

15          THE COURT:  Very well.  I'm going to take that one

16 first.  And who is counsel for Empire?  Good afternoon.

17          MR. CONAWAY:  Good afternoon, Your Honor.  May it

18 please the Court, Bernard Conaway on behalf of the proposed

19 intervenor.

20          THE COURT:  Mr. Conaway, I have reviewed the papers

21 submitted.  Other than what is set forth, do you have further

22 comment?

23          MR. CONAWAY:  Nothing further, Your Honor.  I think

24 as Your Honor has correctly pointed out, there is no objection.

25 None was raised or made by any other party.

**J&J COURT TRANSCRIBERS, INC.**

8

1       THE COURT:    That motion is granted.

2       MR. CONAWAY:    Thank you.

3       THE COURT:    You may submit the entry.

4       MR. CONAWAY:    Thank you, Your Honor.

5       THE COURT:    Next, Mr. Krauss, this is the motion of
6   the plaintiff Sysco and Sygma Network to enjoin defendants from
7   specified activities.  You've indicated that the parties have
8   unsuccessfully sought to resolve this matter, and we are at
9   this point for a presentment of arguments by counsel.  I have
10  reviewed the papers submitted, so the extent you wish to
11  highlight any aspects of your presentment, feel free to do so.
12  You may proceed.

13      MR. KRAUSS:    Thank you, Your Honor.  Rule 41 has
14  three requirements:  that there be two prior dismissals, both
15  of which be by notice, that the dismissals be by the same
16  plaintiff, and that the dismissals either involve or include
17  the same claim.

18          To take these requirements slightly out of order, I
19  don't believe there is any dispute that there were two prior
20  dismissals by notice.  The first dismissal by notice was filed
21  on November 12th in 1994.  Four days later a complaint was
22  re-filed in this very court.  That was dismissed again by
23  notice as to Sysco and Sygma on December 7th.  So I believe
24  that requirement is clearly met.

25          As to whether or not these two lawsuits are or

9

 1  involve the same claim, I note first that the allegations in

 2  the complaints are virtually identical.  Now, in their briefs

 3  --

 4          THE COURT:  On that point, Mr. Krauss, I saw that

 5  representation made.  Because the allegations are identical,

 6  I've seen that over the years in a lot of cases for the sake of

 7  economy or whatever, many parties choose to use the same

 8  language, but they were not necessarily the same parties.  And

 9  you're representing here that because the allegations mimic

10  each other and the two actions which were dismissed, that's

11  further indication that these are, to your understanding, the

12  same parties.  Is that correct?

13          MR. KRAUSS:  It is, Your Honor.  It also shows that

14  they are seeking the same damages.

15          THE COURT:  Is there any dispute that Empire or

16  Zurich is the insurer subrogated to the rights and interests of

17  the debtor Chi-Chi's in this matter?

18          MR. KRAUSS:  There is no dispute that they have a

19  subrogation interest.  I point out to the Court, as held in,

20  for example, the Caffellino (sic) case, that's the Delaware

21  Supreme Court at 188 A.2d 357, the -- and other cases cited in

22  our pleadings, the insured has the right to pursue the entire

23  claim and could, at the end of the case, if it proceeded, as it

24  were, make change to its insurers.  So, for example, when Mr.

25  Gordon filed the first complaint against Sysco, Sygma and

10

1  Castellini -- he, by the way, to my understanding, was and
2  certainly legally could have recovered every scrap of damages
3  he could seek --

4          THE COURT:  Is there any requirement?

5          MR. KRAUSS:  I beg your pardon?

6          THE COURT:  Is there any requirement that he should
7  have done so?

8          MR. KRAUSS:  There is -- there is a requirement only
9  insofar as the insured can't prejudice the rights of the
10 insurer.  Now that, by the way, dovetails to the second -- or
11 the final requirement, which is, are they the same parties?  If
12 -- now, by -- are they the same parties?  The complaint says
13 they're the same parties.  Both are captioned, Chi-Chi's
14 versus.  In the second complaint --

15         THE COURT:  But that's not uncommon is it, in a
16 subrogated action by an insurer?

17         MR. KRAUSS:  It is not uncommon but it demonstrates
18 --

19         THE COURT:  So, let's refer to that characterization
20 in the caption.  I think it's your representation in your
21 papers that that's an indication that these are the same
22 plaintiffs.

23         MR. KRAUSS:  Yes.

24         THE COURT:  But who's the real party in interest in
25 the subrogated action?  Is it the insurer or is it the debtor

11

1  corporation in this bankruptcy case?

2         MR. KRAUSS:  There is an overlap.  Either one could

3  recover and then, as it were, make change for the other.  And

4  may I point out that this is the argument accepted by Judge

5  McVerry in the Western District of Pennsylvania approximately a

6  month ago.  That is, and I apologize for jumping out of order,

7  Your Honor, after dismissing the first case filed here, then

8  there is a second case filed here, again dismissed.  Mr. Gordon

9  files a third case in California, this time against only

10  Castellini.  Now, why against Castellini only?

11         THE COURT:  I thought the California action included

12  Sysco and Castellini?

13         MR. KRAUSS:  No, Your Honor.

14         THE COURT:  That's not correct?

15         MR. KRAUSS:  That is not correct.  Only Castellini in

16  California --

17         THE COURT:  Are you suggesting that -- who are you

18  representing, your client --

19         MR. KRAUSS:  Sysco and Sygma.

20         THE COURT:  -- at the time?

21         MR. KRAUSS:  Sysco and Sygma.

22         THE COURT:  Were you representing Sysco and Sygma

23  throughout the pendency of these proceedings?

24         MR. KRAUSS:  Yes, Your Honor.

25         THE COURT:  So, Sysco is not a party to the action

J&J COURT TRANSCRIBERS, INC.

12

1 filed by the debtor in California?

2 MR. KRAUSS: That is correct. Nor was it a party to

3 the action filed by the debtor in the Western District of

4 Pennsylvania. I may --

5 THE COURT: I thought -- and please correct me if I'm

6 wrong. I thought the action in the Western District of

7 Pennsylvania, the debtor corporation completed, as the

8 third-party complainant -- excuse me. Please communicate in

9 writing if you need to do so. I thought the action in the

10 Western District of Pennsylvania was one that -- the debtor

11 Sysco filed a third-party complaint against Sysco, is that

12 correct?

13 MR. KRAUSS: No, Your Honor. The debtor --

14 THE COURT: Then I do have something out of whack

15 here. If you would, clarify that point for me, please.

16 MR. KRAUSS: Absolutely, Your Honor. The sequence of

17 filings, first there was a complaint filed by Mr. Fred Gordon,

18 and I'm trying not to put the rabbit in the hat because I would

19 be saying Chi-Chi's every time. There is a complaint filed in

20 this court as an adversary complaint captioned, Chi-Chi's v.

21 Sysco, Sygma and Castellini. That was filed on July 20, 1994,

22 dismissed November 12th. Four days later --

23 THE COURT: How was it dismissed?

24 MR. KRAUSS: By notice, by notice as to --

25 THE COURT: That was the voluntary dismissal?

13

1          MR. KRAUSS:  Notice as to Sysco and Sygma.
2  Significantly, by stipulation as to Castellini.  The
3  stipulation as to Castellini said that the debtor Chi-Chi's and
4  Castellini would proceed to litigate in California.  Now, I
5  submit that there were valid, tactical reasons why the debtor
6  might decide to litigate solely against Castellini in
7  California.
8          THE COURT:  Well, putting that aside, there was an
9  action filed in California.
10          MR. KRAUSS:  There was --
11          THE COURT:  That action was prosecuted by the debtor
12  against Castellini.
13          MR. KRAUSS:  Just Castellini.  That is correct.
14          THE COURT:  Right.
15          MR. KRAUSS:  There was, just to keep the timeline in
16  order, four days after the dismissal, the second action filed
17  in this court again captioned Chi-Chi's v. again Sysco, Sygma,
18  Castellini.  It is virtually the identical complaint.  It does
19  state in a footnote that it is fraught -- excuse me, it states
20  in a footnote that it was, let me be specific, filed by Empire
21  as subrogor, but the caption and the first line specifically
22  say plaintiff Chi-Chi's.  That second action was dismissed,
23  again by stipulation as to my clients Sysco and Sygma on
24  December 7.  That action is still pending in this court as to
25  Castellini.  That will become significant in a moment.  The

14

 1  California action Your Honor asked about, debtor Chi-Chi's v.
 2  only Castellini, the California judge abstained.  That
 3  abstention was on June 1, 2005.  On June 6, debtor Chi-Chi's
 4  filed a third-party complaint in the Western District of
 5  Pennsylvania, again just against Castellini.

 6            THE COURT:  Okay.

 7            MR. KRAUSS:  On October 7th, Judge McVerry of the
 8  Western District of Pennsylvania, dismissed that adversary
 9  complaint.  Now, he did that under the First Filed Doctrine.
10  Let me quote from his opinion.  The orders are attached to our
11  papers.  Judge McVerry said, "The First Filed Rule simply
12  dictates that in cases of federal concurrent jurisdiction
13  involving the same parties -- "

14            THE COURT:  I recall, Mr. Krauss.  You referred --
15  you cited that language in your papers, right?

16            MR. KRAUSS:  Yes, Your Honor.

17            THE COURT:  I did read it.

18            MR. KRAUSS:  Thank you.  Then you know that Judge
19  McVerry found that these were indeed filed by the same party,
20  because it is brought in the name of Chi-Chi's.  To go back to
21  Your Honor's original question, either the insurer or the
22  insured could have recovered the entire quantum of damages,
23  whatever that may be.  They would then have to, at the end,
24  settle up with the other.  May I suggest to the Court that this
25  identity of parties and interests is why insurers typically

15

1  have language protecting themselves and are very vigilant to
2  make sure that the insured does not prejudice their subrogation
3  rights.  I would suggest that if the insured and the insurer
4  were wholly separate and divorced the insured could not, for
5  example, grant a release that would prejudice the insurer.  I
6  suggest that that can happen because they are in this case the
7  same party.  There are simply different attorneys representing
8  them.  Now --

9          THE COURT:  Take three minutes to conclude, counsel.
10         MR. KRAUSS:  Thank you very much.  I appreciate it.
11         THE COURT:  Thank you.  Mr. Gordon?

12         MR. GORDON:  Thank you, Your Honor.  Your Honor, I am
13 mindful of the fact that you've read my papers and don't intend
14 to regurgitate what is in them.  But what I would suggest is
15 that what Sysco asks you to do here today is in direct
16 contravention of what Rule 41 mandates, is that you not accept
17 a literal reading of the statute if, if, that would work
18 against the interests of the purpose of the statute.  And the
19 purpose of the statute was to prevent the unreasonable use a
20 plaintiff's right to dismiss an action before a defendant
21 filed.

22         To follow Judge McVerry, ruling on an issue that
23 Judge McVerry knew quite well would not result in the loss of
24 any substantive right of any party, so when he says it's the
25 same parties, he identifies the word "Chi-Chi's" in both

16

1 complaints and does not do an in-depth analysis of who the real

2 parties in interest are, and that's the crux of the Rule 41

3 rule, is look at who the real parties in interest are.

4        And I think it's interesting that Mr. Krauss would

5 refer you back to the <u>Catalfano</u> case, because that's a Delaware

6 State Court case, instead of looking at the U.S. Supreme Court

7 case and the <u>Aetna Casualty</u> case which we cited to you, and

8 also I believe it's the <u>Virginia Electric Power</u> case, which we

9 cited to you.  There is also the <u>St. Paul</u> case, which we cited.

10 All which stand for the purpose that each -- that the insurer

11 and the insured are both separate real parties in interest

12 entitled to bring actions on their on behalf, and because the

13 insurer is subrogated to the insured, of course, when they

14 bring a claim it may appear to be the same, but to agree with

15 Sysco's position one would have to think that the insured, the

16 insurer, could bring a case without the insured and recover on,

17 for example, a lost profits claim held solely by the insured.

18 Clearly a subrogated insurer has no ability to prosecute a

19 claim and recover on behalf of an insured who owns their own

20 separate claims, and in this particular case the real parties

21 in interest are prosecuting their own separate claims.  The

22 insurer is prosecuting a claim that is solely related to the

23 money it paid to third-party victims who became sick and/or

24 died as a result of ingesting contaminated onions.

25        THE COURT:  Mr. Gordon, in the manner in which the

17

1  insurer captioned its adversary proceeding in the court, is

2  there some statutory or procedural rule requirement that

3  requires it to file the subrogated action in the name of the

4  insured party, as occurred here?

5           MR. GORDON:  I don't believe that there is a rule,

6  Your Honor.  I think it is common practice.

7           THE COURT:  I've seen it as a common practice, but I

8  wasn't certain if it was serving some particular rule or --

9           MR. GORDON:  I don't know of any particular rule

10 actually in any jurisdiction, but I see it all the time, and

11 it's interesting that you raised that because this Court

12 properly identified the real party in interest on the docket

13 sheet immediately after the filing.  So, it was always referred

14 to as "Empire," because it's acknowledged, if you sue in the

15 name of your subrogee, well, you're only able to sue on your on

16 rights.  It's contrary, and <u>Aetna</u> and the cases we cited are

17 contrary, to what I believe the <u>Catalfano</u> case stands for.  If

18 <u>Catalfano</u>, and I don't believe it actually says this, says that

19 the insurer is entitled to prosecute a claim absent the insured

20 and recover on the insured's separate losses, I don't believe

21 it's the law in the Federal District Courts, and it shouldn't

22 be followed.  And that's why it's cited in their papers.  It's

23 a State Court case, and it has no precedential value.

24          Finally, Your Honor, what I would suggest is,

25 contrary to what Sysco says in Page 3 of their argument, they

18

1   raise the specter of perhaps the secured or the unsecured
2   creditors filing multiple claims acting as if they could pursue
3   their own claims, if you follow, my logic, and that, of course,
4   is a fallacy.  Obviously, a real party in interest, the
5   insured, the insurer, as a real party in interest, can sue and
6   recover for their own claims.  Since an unsecured creditor or a
7   secured creditor only has rights as it relates to the claims of
8   the debtor, they could not perform this same act as the
9   subrogated insurer does.  And in this particular case, Your
10  Honor, and I  -- it's not in my papers, and I only bring it up
11  because we've only -- it's only come to our attention
12  subsequent to the filing of this.  In this particular case, the
13  same carrier is a carrier on both sides of this issue.  And
14  when you're talking about an --

15              THE COURT:  I'm sorry, could you be more explicit?
16              MR. GORDON:  Certainly.  Empire insures the debtor.
17  Empire's parent, Zurich, insures Sysco.  And when you're
18  talking about -- yes -- and when you're talking about an
19  equitable rule that's designed to prohibit the unreasonable use
20  of the dismissal and when you see that the purpose of this
21  dismissal -- and Mr. Krauss didn't dispute that we had
22  discussions regarding dismissing because of the specter of
23  arbitration, which is why they're not identified in any other
24  lawsuit after the dismissal here, because they wanted to
25  arbitrate.  So when we're talking about equity and we're

19

1 talking about who would be harmed, what Sysco wants you to do

2 is say we have an answer to substantive claim.  We demanded to

3 be in arbitration, and that's where we're going to be, but you

4 should dismiss them because two separate parties seeking two

5 different claims both dismissed their own actions.

6          THE COURT:  You indicated in part in your papers that

7 one of the reasons, if not the only reason, for dismissal of

8 these two previous actions was because of the indication given

9 by Sysco or Sygma that they were desirous of participating in

10 an arbitration proceeding.

11          MR. GORDON:  Yes.

12          THE COURT:  Could you elaborate on that, please?

13          MR. GORDON:  Sure.  There was -- and Mr. Krauss

14 correctly pointed out that once I filed the adversary

15 proceeding in this court we had various discussions regarding

16 where the court (sic) should be prosecuted because had this --

17 had either Sysco or Castellini either, one, not demanded a jury

18 trial or not demanded their arbitration rights, the court --

19 the case would have stayed here as an adversary proceeding.  In

20 fact, what happened was Castellini demanded its jury trial

21 rights, and Sysco demanded that if we proceed we are going to

22 go to arbitration.

23          THE COURT:  On that point, if I could move quickly to

24 Castellini's motion to withdraw the reference, is there any

25 opposition to that?

**J&J COURT TRANSCRIBERS, INC.**

20

1        MR. GORDON:  Not from the debtor, Your Honor.

2        THE COURT:  Is there -- also there's a motion for

3   determination of core proceeding.  Is that in this case, as

4   well?

5        MR. GORDON:  That is, Your Honor, and I don't think

6   there is any opposition to that either.

7        THE COURT:  I didn't recall seeing any, and I just

8   wanted to make certain that there was none.  But, counsel, I'll

9   give you an opportunity to be heard shortly.  Mr. Gordon, if

10  you will take three minutes to conclude?

11       MR. GORDON:  Sure, Your Honor.  Just in sum, Your

12  Honor, because Rule 41 is an equitable rule, and this court is

13  designed to do equity, and in this case to hold the way Sysco

14  asks you would be to turn equity on its head.  It would provide

15  a remedy for someone who we claim caused tremendous damage to

16  this debtor.  To avoid that liability without ever once having

17  answered the complaint or answered for any of those damages, to

18  me, Your Honor, that would be an inequitable result and

19  shouldn't be determined.

20       THE COURT:  And lastly, Mr. Gordon, at any point in

21  time has either of these matters proceeded to arbitration?

22       MR. GORDON:  No, what's happening is, the reason that

23  this motion is in front of you today is because when we

24  demanded arbitration, we discussed it with Mr. Krauss.  Mr.

25  Krauss said he wanted to have this heard.  Depending upon the

21

1    ruling -- obviously, if you deny their motion, we have a
2    hearing scheduled before the arbitrator within the next ten
3    days to schedule that arbitration.

4            THE COURT:  Very well.  Mr. Krauss, do you have a
5    brief surreply?

6            MR. KRAUSS:  Very briefly, Your Honor.  Thank you.
7    To first respond to Mr. Gordon's comments about the insurer's
8    inability to proceed on behalf of the insured, if I may
9    suggest, and I know this is a slightly different fact pattern
10   than this case, if instead of dealing with damages arising out
11   of a hepatitis A outbreak, if this was a building that fell
12   down or a substantial casualty loss, if Empire had a subrogated
13   interest as to the middle $10 million layer, but not below and
14   not above, the insurer could bring suit, would have to bring
15   suit on the entire claim.  It's one building that fell down.
16   Now, it may only have the right to retain a portion of any
17   verdict.  The excess, either below or above the insurer's
18   layer, would then be paid over to either the insured or
19   potentially other insurers.  My only point being, it's one
20   party, one claim, as in this case, as identified by the
21   parties.  Could Empire have sued in its own name?  I submit to
22   the Court it could have.  It didn't for reasons that made sense
23   to it.

24           With regard to discussions concerning arbitration, I
25   --

1          THE COURT:  Before you leave that point, in the

2    action prosecuted by Empire that's before the Court, who is the

3    real party in interest?  It lists the plaintiff as Chi-Chi's

4    and then Empire's name appears on it.  Who is the real party in

5    interest in that action?

6          MR. KRAUSS:  Both the insurer and the debtor.  Among

7    other things, the damages claimed are everything.  For example,

8    Empire did not say in that complaint its attorneys filed, we

9    claim $10 million.  They said we claim everything.  Now, to the

10   extent that they would recover either more than $10 million,

11   which is greater than their out-of-pocket, or they would

12   recover as to other matters, which are pled in --

13         THE COURT:  Did they ever specify what everything is?

14         MR. KRAUSS:  I beg your pardon, Your Honor?

15         THE COURT:  The everything, is that ever clarified?

16         MR. KRAUSS:  As I recall, it is, and in very

17   expansive terms.  In fact, the exact same terms, the precise

18   same terms that Mr. Gordon says allows him to claim for loss of

19   profits, that allow him, he says, to claim for self-insured

20   retention in other matters, respectfully I suggest that given

21   the breadth of those terms, you have two real parties in

22   interest in the second case.

23         THE COURT:  Another question, Mr. Krauss.  Why has

24   the matter never proceeded to arbitration?

25         MR. KRAUSS:  And that's what I was about to address.


J&J COURT TRANSCRIBERS, INC.

23

1 Thank you, Your Honor. I respectfully submit that Chi-Chi's,
2 when it dismissed the first time, and the second action when it
3 was dismissed, the intention was to pursue Castellini. In
4 fact, that is what they did. There is no arbitration filed for
5 ten months after the dismissals. Now, why is that and what's
6 the timing? The arbitration demand only happens after the
7 California judge abstains and dismisses, and --

8          THE COURT: Is there some document that mandates
9 arbitration in this matters?

10          MR. KRAUSS: I beg your pardon?

11          THE COURT: Is there a mandatory arbitration
12 provision --

13          MR. KRAUSS: Yes.

14          THE COURT: -- between these parties.

15          MR. KRAUSS: In the contract -- only in the contract
16 between Sysco and the debtor. Now, if I may suggest to the
17 Court, there are other provisions in that contract that would
18 give Sysco defenses that are not available to Castellini.
19 Further, Chi-Chi's has pled in all of its complaints that
20 Castellini contractually agreed to defend and indemnify Sysco.
21 Now, given the presence of other contractual defenses, given
22 the presence of an indemnification agreement signed by
23 Castellini, given the fact that the debtor admits the debtor
24 instructed Sysco to procure the green onions that the debtor
25 says caused the hepatitis A outbreak from Castellini, I submit

24

1  to the Court that there are good, valid, tactical reasons why
2  the debtor could have decided that they would prefer to simply
3  pursue Castellini.

4          THE COURT:  Thank you.  You may conclude your
5  comments, counsel.

6          MR. KRAUSS:  My conclusion would be that the debtor
7  suggests that granting our Rule 41 motion would be inequitable
8  because it would leave them without a remedy.  I respectfully
9  submit to the Court that the debtor still has a remedy against
10 Castellini.  That case is pending in this court and has been
11 filed in several other courts, and, in fact, that is who
12 Chi-Chi's has been pursuing.  As a result, the application of
13 Rule 41 in this case would not work an injustice.  On the
14 contrary, it would prevent multiple lawsuits from being filed
15 after they have already been dismissed.  Thank you, Your Honor.

16         THE COURT:  Thank you, Mr. Krauss.  Mr. Gordon, you
17 have the final response, if you have one.

18         MR. GORDON:  Just briefly, Your Honor.  I'm not here
19 to argue the merits of the underlying action.  What we have,
20 the debtor has a valid claim against Sysco for what we believe
21 was providing contaminated food which led to an outbreak, which
22 severely damaged the debtor and put it in the position that it
23 currently is.  The mere fact that there are other defendants
24 who are  similarly liable is irrelevant to this motion.  What
25 this motion is based upon is whether or not someone who created

25

1  a wrong should be able to avoid that wrong by imposition of a

2  rule that's designed to protect entities, protect them from

3  unreasonable harassment, unreasonable actions by a plaintiff.

4  And the issue becomes, in this particular case, are the actions

5  unreasonable?  And we would submit it's not, not when you file

6  an adversary proceeding and the attorney says we have an

7  arbitration provision, if you want to go get us, you've got to

8  go to arbitration.  That's what we're doing.  Thank you.

9         THE COURT:  Thank you, Mr. Gordon, Mr. Krauss.  This

10  matter -- I'm sorry, for what purpose to you rise?  I'll

11  recognize counsel to my left.

12         MR. MONHAIT:  Thank you, Your Honor.  Norman Monhait

13  of Rosenthal, Monhait, Gross & Goddess on behalf of Castellini.

14         THE COURT:  Okay.  Sir, I recognize counsel on the

15  other side of the aisle first, and then you may be heard.

16         MR. MONHAIT:  Thank you, Your Honor.

17         THE COURT:  For what purpose do you rise, sir?

18         MR. CONAWAY:  Your Honor, again on behalf of Empire,

19  we did file a response to the motion that was filed by Sysco in

20  this matter --

21         THE COURT:  Yes.

22         MR. CONAWAY:  -- albeit it did it as a proposed

23  intervenor at that point.  And I -- if the Court would indulge

24  me, I promise not to repeat the well crafted remarks of Mr.

25  Gordon.

26

1        THE COURT:  And at the outset I will state that I did
2   read your papers that were submitted.

3        MR. CONAWAY:  If the Court will permit a few moments?
4        THE COURT:  Sure.

5        MR. CONAWAY:  Thank you, Your Honor.  The premise of
6   this argument is that Empire and Chi-Chi's are one and the
7   same.  We are not.  I clearly and never will have their right
8   to pursue their claims arising out of the problems that
9   resulted in these bad onions.  There is no set of facts under
10  which I have them, and the only way they can get my claims is
11  if I assign them.  We have not done that.

12        We have a contractual right to recover the monies
13  that we have paid.  We have sought to do that through
14  litigation pending in this court.  Albeit they all rise out of
15  the same facts potentially, what we eventually seek here is not
16  the same, and what the plaintiff would have you believe here is
17  that by virtue of notice pleading we are now one and the same
18  because we seek from the same facts.  That clearly is not the
19  case.

20        And lastly, the plaintiff relies upon at least one
21  Delaware case for the proposition that the insured and the
22  insurer, again, stand in the same shoes of each other.  The
23  Catalfano case clearly is not on point here.  There was an
24  assignment of rights in that case.  There is no such thing
25  here.  He will -- Mr. Gordon will be happy to tell you six ways

J&J COURT TRANSCRIBERS, INC.

27

 1  to Sunday, as will I, that I cannot pursue his claims and he

 2  cannot pursue mine.  What I do in the disposition of the claims

 3  I might have has no bearing and should have no bearing legally

 4  on their claims as well.  Thank you, Your Honor.

 5          THE COURT:  Mr. Conaway?

 6          MR. CONAWAY:  Yes, Your Honor?

 7          THE COURT:  How does the earlier representation I

 8  believe by Mr. Gordon which indicated to some extent that your

 9  client is on both sides of the fence here, the subordinate

10  represents the debtor, the parent represents the -- Sysco and

11  Sygma?

12          MR. CONAWAY:  That's a fact that I am unfamiliar

13  with, Your Honor.  I -- it's news to me.  Mr. Gordon may know

14  better than I.  I apologize for not knowing that.

15          THE COURT:  That's all right.  Thank you very much.

16          MR. CONAWAY:  Thank you, Your Honor.

17          THE COURT:  And, counsel, I believe you wish to be

18  heard.  Would you come forward and state your name for the

19  record, please?

20          MR. MONHAIT:  Can I have one moment to confer with my

21  co-counsel, Your Honor --

22          THE COURT:  Sure.

23          MR. MONHAIT:  -- because part of what I was going to

24  say has -- was affected by what has been argued.

25          THE COURT:  Very well.


                    **J&J COURT TRANSCRIBERS, INC.**

28

1                        (Pause)

2          MR. MONHAIT:  Your Honor, I did not mean to rise to
3    address the issue that --

4          THE COURT:  I'm sorry, would you state your name for
5    the record, please?

6          MR. MONHAIT:  Norman Monhait of Rosenthal, Monhait,
7    Gross & Goddess.  It's M-o-n-h-a-i-t.  I'm here on behalf of
8    Castellini with my colleague Gary Becker of Dinsmore & Shohl in
9    Cincinnati.

10         THE COURT:  Thank you, Mr. Monhait.  You may proceed.

11         MR. MONHAIT:  I may have proceeded out of order, Your
12   Honor, and if I did I apologize.

13         THE COURT:  No problem.

14         MR. MONHAIT:  I rose to address Castellini's motions
15   to withdraw the reference and to determine this is a non-core
16   proceeding, and I did not mean to address the argument that has
17   been --

18         THE COURT:  Oh, I see.

19         MR. MONHAIT:  -- going on for the last couple
20   minutes.  It does have some bearing on a small aspect of our
21   matter, but I -- so if I've gone out of order, I apologize.

22         THE COURT:  It's no problem.

23         MR. MONHAIT:  I'll sit back down and wait for Your
24   Honor to call on me again.

25         THE COURT:  Thank you, Mr. Monhait.


                    **J&J COURT TRANSCRIBERS, INC.**

29

1         MR. MONHAIT:  Thank you.

2         THE COURT:  With regard to the motion filed by Sysco

3    and Sygma Network to enjoin the debtor defendant Chi-Chi's from

4    initiating, continuing, and/or participating in any additional

5    actions, including arbitration, against Sysco and Sygma, in

6    this proceeding, I've heard equally from both parties, and

7    given at this late juncture now that the parties have filed

8    their respective papers, you have fleshed out the arguments

9    orally, I have a question, Mr. Krauss, of you and Mr. Gordon,

10   and I'm assuming that you've fully explicated your respective

11   positions.  Is there any room for the parties to discuss a

12   possible resolution before the Court issues a ruling?  Would

13   you like a moment to benefit from any further discussions the

14   two of you may have?

15        MR. KRAUSS:  I'd be happy to talk to opposing

16   counsel.

17        THE COURT:  Mr. Gordon?

18        MR. GORDON:  I'm always willing to talk, Your Honor.

19        THE COURT:  I've heard that before.  I intend to take

20   the matter under advisement.  My ruling will issue very

21   shortly, but to the extent you are desirous of engaging in

22   further discussions, please let Ms. Hunt know by close of

23   business tomorrow.

24        UNIDENTIFIED ATTORNEY:  Thank you, Your Honor.

25        THE COURT:  If I don't hear from you, I will proceed

30

1  to issue a ruling.

2          UNIDENTIFIED ATTORNEY:  Thank you, Your Honor.

3          THE COURT:  Thank you very much.  And Mr. Lobel, the

4  next agenda item?

5          MR. LOBEL:  Your Honor, the next item is --

6          THE COURT:  I'm sorry, Mr. Lobel --

7          MR. LOBEL:  Oh, I'm sorry.

8          MR. WAXMAN:  I'm sorry, Your Honor.

9          THE COURT:  Yes.

10         MR. WAXMAN:  Jeff Waxman, Cozen O'Connor.  If we may

11 be excused?

12         THE COURT:  Sure.  That's no problem.  Thank you.

13         MR. WAXMAN:  Thank you, Your Honor.

14         THE COURT:  Mr. Lobel?

15         MR. LOBEL:  Your Honor, the next item is Number 4.

16 It's the pretrial conference in the Willow Grove matter.  We

17 would -- I know Your Honor issues your own scheduling order.

18 We'd like 90 days for discovery.

19         THE COURT:  To what extent are the parties engaged in

20 discovery at this juncture, Mr. Lobel?

21         MR. LOBEL:  I don't believe they've engaged in any

22 discovery at all to date.

23         THE COURT:  None?  Should the matter proceed to

24 trial, approximately how much time do you think your client's

25 case in chief will require?

1    MR. LOBEL:  Your Honor, if I could, I'd like to turn
2  this over to counsel for OSI, Outback.  They're really the
3  party in interest here, and they're going to be the ones
4  actually conducting the trial.
5          THE COURT:  So there is no dispute that they are the
6  real party in interest on this one?
7          MR. LOBEL:  It's -- and, Your Honor, I think that is
8  an important distinction in every case.
9          THE COURT:  Thank you.  Good afternoon.
10         MR. BUTZ:  Good afternoon, Your Honor.  Daniel Butz
11 from Morris, Nichols, Arsht & Tunnell on behalf of O. S.
12 Realty.  I suspect we need about half a day for our case in
13 chief.
14         THE COURT:  Very well.
15         MR. BUTZ:  Prior to the close of fact discovery I --
16 that's a good estimate, but I think that's all we have at this
17 point.
18         THE COURT:  Very well.  And I'll ask the same
19 question of opposing counsel.  Mr. Lobel?
20         MR. LOBEL:  I don't believe opposing counsel is
21 present, Your Honor.
22         THE COURT:  Very well.  I'll set the matter aside for
23 a full day for the adversary proceeding.
24         MR. LOBEL:  I do know the case, and I think that's
25 probably appropriate, Your Honor.  Thank you.

32

1           THE COURT:  And 90 days is no problem as far as a

2   discovery cutoff, and I'll issue subsequent to that cutoff

3   period a deadline for filing dispositive pleadings and set a

4   final pretrial hearing and trial date.  I would envision that

5   taking place -- well, I won't even guess without looking at a

6   calendar, but I'll give these to Ms. Hunt.  She'll issue the

7   trial schedule forthwith.

8           MR. LOBEL:  We appreciate it.  Thank you, Your Honor.

9           THE COURT:  Sure.  And you may proceed to the next

10  agenda item.  Good afternoon.

11          MS. WERKHEISER:  Good afternoon, Your Honor.  Rachel

12  Werkheiser from Pachulski, Stang, Ziehl, Young, Jones &

13  Weintraub on behalf of the debtors.  Your Honor, I think we

14  took the whole agenda a little out of order, and I believe

15  we're back to Number 3, which is the determination of whether

16  the adversary proceeding is core or non-core, so I will turn

17  the podium over to Mr. Monhait.

18          THE COURT:  Thank you.  Mr. Monhait?  We'll have to

19  blame Mr. Lobel on that one.

20          MR. LOBEL:  And I accept blame --

21          THE COURT:  Thank you.  Mr. Monhait, in the motion

22  for determination that the subject adversary proceeding is a

23  non-core proceeding, I have reviewed the papers.  Do you have

24  further comment in that regard?

25          MR. MONHAIT:  Two small matters if I may, Your Honor.


                    J&J COURT TRANSCRIBERS, INC.

33

1   The motions are unopposed.  Counsel for plaintiff would like

2   the order to state that the withdrawal of the reference should

3   not be deemed to be a dismissal of the action.  Castellini does

4   not object to having specific language of that type included in

5   the order.

6       THE COURT:  I think that was the full scope of their

7   limited objection, is that correct?

8       MR. MONHAIT:  Yes, sir.  There is another small

9   point, which is that the form of order that the plaintiff

10  submitted refers to Empire as the plaintiff.  We are of the

11  view that Chi-Chi's is the plaintiff.  If Your Honor concludes

12  that Chi-Chi's and Empire are the same, then we would have no

13  problem with the order containing a reference to Empire as the

14  plaintiff.

15      THE COURT:  I'm accustomed to issuing my own order,

16  and I will fashion it to the extent that you're seeking relief,

17  so I won't confuse myself with how I'll ultimately rule on the

18  other motion, with regard to the Rule 41 motion.  The only

19  issue here is whether or not -- for the Court's determination

20  is whether or not the subject proceeding is core or non-core.

21  There is no opposition of record.  I have reviewed the

22  submission and pertinent portions of the docket to reach a

23  finding that this action did not arise under Title 11, and

24  otherwise I believe that the motion is well premised, and I

25  will adopt its further findings which support the non-core

34

1  identity of this proceeding.  The motion is granted to that
2  extent.  You may submit an entry accordingly.
3          MR. MONHAIT:  Thank you, Your Honor.
4          THE COURT:  All right.  And I believe there's -- are
5  you here, Mr. Monhait, also on the motion to withdraw the
6  reference?
7          MR. MONHAIT:  Yes, sir.
8          THE COURT:  All right.  That motion, too, was not
9  opposed I believe.
10         MR. MONHAIT:  Yes, sir.
11         THE COURT:  Now, the motion to withdraw the reference
12 I understand is to be determined by the District Court, is that
13 correct?
14         MR. MONHAIT:  As I understand it, Your Honor, we're
15 asking Your Honor to act on it, and then we would take it to
16 the District Court to act on it as well.
17         THE COURT:  Is there a local rule requirement that
18 requires the bankruptcy judge to rule on a withdrawal of a
19 reference motion before that motion is taken to the District
20 Court?
21         MR. MONHAIT:  I have to confess I don't know the
22 answer to that --
23         THE COURT:  Well, procedurally --
24         MR. MONHAIT:  -- as to whether there is a local rule.
25 I was told that that was the procedure that was to be followed.

35

1        THE COURT:  Well, since you're unfamiliar with it,
2   and I'll stand corrected if there is a local rule to the
3   contrary, that such a determination has to be made by the
4   District Court -- even though the motion may have been filed in
5   the Bankruptcy Court, it's referred over to the District Court
6   for adjudication.  And you're saying you are not familiar if
7   there is a local rule that dictates otherwise?

8        MR. MONHAIT:  I am not, Your Honor.

9        THE COURT:  I'll ask others.  Thank you.  Mr. Lobel?

10       MR. LOBEL:  Your Honor, I was a delegate to the Ninth
11  Circuit Conference and was on a committee that dealt with the
12  relationship between the bankruptcy judges and the District
13  Court judges, and I do not believe anywhere in the country
14  District Court judges allow Bankruptcy Court judges to decide
15  what goes on their calendars, and I suggest that you should not
16  enter any kind of an order that dictates to the District Court
17  judge what he has.  So, I suggest you don't rule on this one.

18       THE COURT:  You're suggesting that it may be
19  reversible error if I did not listen to you?

20       MR. LOBEL:  I think you may not be happy.

21       THE COURT:  Thank you.  Mr. Conaway, did you wish to
22  be heard on this matter?

23       MR. CONAWAY:  Very briefly, Your Honor.  It's my
24  understanding that this Court is required to ascertain whether
25  the matter is core, but ultimately the removal of the order of

36

1  reference lies in -- within the jurisdiction of the District
2  Court.
3          THE COURT:  That's my understanding as well, Mr.
4  Gordon.  And I have ruled on the motion that -- as to whether
5  or not it's core or non-core, but, yes, a motion to withdraw
6  the reference appropriately should be before the District
7  Court, and it will be referred accordingly.  Mr. Gordon --
8          UNIDENTIFIED ATTORNEY:  Thank you, Your Honor.
9          THE COURT:  Thank you.  Mr. Monhait, did you have
10  further comment?
11          MR. MONHAIT:  I do not, Your Honor.
12          THE COURT:  Thank you.  The clerk of courts will be
13  instructed to refer the withdrawal of the reference motion to
14  the District Court.  Mr. Lobel, do you have further agenda
15  items?
16          MR. LOBEL:  And with that, the agenda is concluded.
17  Thank you very much, Your Honor.
18          THE COURT:  Thank you.  We stand adjourned.
19          MR. LOBEL:  And we will see you on the 15th of
20  December for confirmation, hopefully.
21          THE COURT:  Very well.  Thank you.
22          MR. LOBEL:  Thank you.
23          THE COURT:  We stand adjourned.
24                      * * * * *
25

J&J COURT TRANSCRIBERS, INC.

37

## C E R T I F I C A T I O N

I, DENISE M. O'DONNELL, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter, to the best of my ability.

/s/ Denise M. O'Donnell

DENISE M. O'DONNELL

J&J COURT TRANSCRIBERS, INC.          Date: November 21, 2005

# Tab C

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

In Re:

CHI-CHI'S, INC., *et al.*

Debtors.

In Proceedings Under Chapter 11

Case No.: 03-13063

SYSCO CORPORATION and
THE SYGMA NETWORK, INC.,

Plaintiffs,

v.

CHI-CHI'S, INC.,

Defendant.

Adv. Proc. No. 05-52726

JUDGE RANDOLPH BAXTER

## MEMORANDUM OF OPINION AND ORDER

Before the Court is the complaint of Sysco Corporation and the SYGMA Network

(collectively, "Sysco") seeking to enjoin the Debtor Chi-Chi's Inc. ("Chi-Chi's") from initiating,

continuing, and/or participating in any additional actions, including arbitration, against them in

connection with certain hepatitis claims.

The Court acquires core matter jurisdiction over this proceeding pursuant to 28 U.S.C. §§

157(a), (b) and 1334(b). Upon an examination of the parties' respective briefs and supporting

documentation, and after conducting a trial on the matter, the following findings of fact and

conclusions of law are hereby rendered:

\*

1.    **Factual History**

Date  1/19/06
Docket # 27

The present action arises out of a November 2003 outbreak of Hepatitis A illnesses attributed to the consumption of certain contaminated green onions at a Chi-Chi's restaurant in Monaca, Pennsylvania. The outbreak caused at least four deaths, and at least 650 illnesses. Chi-Chi's alleges that Sysco was the supplier of the contaminated onions. Sysco, in turn, allegedly obtained the onions from Castellini Company, LLC ("Castellini").

Bodily injury claimants have filed several hundred claims and/or complaints against Chi-Chi's (collectively, the "Hepatitis Claims"). To date, Chi-Chi's, through its own funds and those of its liability insurers, has paid approximately $31,000,000 in damages. Empire Indemnity Insurance Company ("Empire"), one of Chi-Chi's liability insurers, has paid, or will pay out, some $10,000,000 ("Empire costs").[1] Chi-Chi's also alleges that it has suffered its own damages of more than $30,000,000, including lost profits, property damage, self-insurance costs, indemnification, and other outbreak related costs (collectively, "lost profits damages").

## 2.    Procedural History

### a.    Chi-Chi's Action

In July 2004, Chi-Chi's filed an adversary proceeding in this Court against Sysco and Castellini (the "Chi-Chi's Action"). Castellini informed Chi-Chi's of its intention to demand a jury trial and to seek withdrawal of the District Court's reference. Chi-Chi's also asserts that Sysco indicated a desire to submit the matter to arbitration, pursuant to the Distribution Service Agreement executed by the parties. For these reasons, on November 12, 2004, Chi-Chi's filed 1) a stipulation of dismissal as to defendant Castellini, so that Chi-Chi's could initiate an action against Castellini in the United States District Court for the Central District of California

---

[1] Empire Response, at 2.

2

("California District Court"), and 2) a notice of dismissal as to defendants Sysco and SYGMA, allegedly upon Sysco's suggestion that they would pursue resolution of the dispute through arbitration.

On November 22, 2004, Chi-Chi's filed a complaint in the Central District of California against Castellini. On June 1, 2005, the California District Court abstained from hearing the matter pursuant to 28 U.S.C. § 1334(c)(1). On June 6, 2005, Chi-Chi's refiled its complaint against Castellini in the United States District Court for the Western District of Pennsylvania ("Pennsylvania District Court") as a third-party complaint in a bodily injury case filed against Chi-Chi's.[2] On October 7, 2005, the Pennsylvania District Court, citing the first filed rule, granted Castellini's motion to dismiss Chi-Chi's third party complaint in favor of the action currently pending in this Court prosecuted by Empire against Castellini (see below).

On September 8, 2005, Chi-Chi's filed an arbitration claim against Sysco with ADR Options in Philadelphia, Pennsylvania.

### b.    Empire Action

On November 16, 2004, Empire filed, as a real party in interest, its own adversary action in this Court (the "Empire Action"). Empire, naming Chi-Chi's as the plaintiff in the adversary action, noted that the complaint was filed by Empire, as subrogee of Chi-Chi's.[3] The complaint was brought by Empire's own litigation counsel. The complaint in the Empire Action is nearly word-for-word identical to the complaint in the Chi-Chi's Action.

Similar to the Chi-Chi's Action, Sysco also allegedly indicated to Empire that it would

---

[2] *Funkhouser v. Chi-Chi's*, 05-cv-00638, (W.D. Pa.) (McVerry, J.).

[3] Empire Complaint, at 1 n.1.

3

seek to invoke the mandatory arbitration provision contained in the Distribution Service Agreement. Accordingly, on December 7, 2004, Empire filed a notice of dismissal of its complaint, without prejudice, as to Sysco and SYGMA. Empire's complaint alleging claims against Castellini remains pending at this time.

\*\*

The Court must determine whether FED. R. CIV. P. 41(a)(1) bars Chi-Chi's from bringing an arbitration claim and/or other proceedings against Sysco. Under the two dismissal rule, "if the plaintiff invokes Rule 41(a)(1) a second time for an 'action based on or including the same claim,' the action must be dismissed with prejudice." *Radogna v. Ashland, Inc.*, 2005 WL 736599, \*1 n.2 (E.D. Pa. 2005) (citing *Cooter & Gell v. Hartmax Corp.*, 496 U.S. 384, 394 (1990)). The Court must determine whether Chi-Chi's is barred by Federal Rule of Civil Procedure 41(a)(1) from pursuing arbitration, as well as all other actions. Rule 41 states, in relevant part:

(a) Voluntary Dismissal: Effect Thereof.

(1) By Plaintiff; by Stipulation. . . . Unless otherwise stated in the notice of dismissal or stipulation, the dismissal is without prejudice, except that a notice of dismissal operates as an adjudication upon the merits when filed by a plaintiff who has once dismissed in any court of the United States or of any state an action based on or including the same claim.

FED. R. CIV. P. 41(a)(1).

Because it operates as an adjudication on the merits, the two dismissal rule has been strictly construed. *E.g., Manze v. State Farm Ins. Co.*, 817 F.2d 1062, 1066 (3d Cir. 1987) ("several other courts of appeals have strictly interpreted Rule 41(a)(1)"); *Janssen v. Harris*, 321 F.3d 998, 1001 (10th Cir. 2003); *Sutton Place Development Co. v. Abacus Mortg. Inv. Co.*, 826

4

F.2d 637, 640 (7th Cir. 1987) ("We should be especially careful not to extend the scope of such a narrow exception when the purpose for the exception would not be served."); *Seippel v. Jenkins & Gilchrist, P.C.*, 2004 WL 2809205, \*1 (S.D.N.Y. 2004); *Muzikowski v. Parmount Pictures Corp.*, 2003 WL 22872117, \*3 (N.D. Ill. 2003); *Kuhn v. Williamson*, 122 F.R.D. 192, 195 (E.D.N.C. 1988) ("Since the two dismissal rule is in derogation of previously existing right and thus is to be strictly construed . . .").

Sysco argues that arbitration, as well as all other actions against Sysco, should be enjoined because the two dismissal rule prohibits Chi-Chi's from bringing a third action in connection with the Hepatitis Claims. Sysco argues that two dismissals have already occurred: 1) the Chi-Chi's Action, which was dismissed by notice as to Sysco and SYGMA on November 12, 2004, and 2) the Empire Action, which was also dismissed by notice as to Sysco and SYGMA on December 7, 2004. Therefore, pursuant to Rule 41(a)(1), the Empire Action would serve as an adjudication on the merits, and Chi-Chi's should be enjoined from pursuing arbitration at this stage.

As the party seeking to invoke Rule 41(a)(1), Sysco bears the burden of proving the applicability of the two dismissal rule by a preponderance of the evidence. *Marques v. Federal Reserve Bank of Chicago*, 286 F.3d 1014, 1017 (7th Cir. 2002) (placing the burden under Rule 41(a)(1) on the defendant, "since it is the defendant that is asserting the right to prevent the plaintiff from dismissing the suit.").

\*\*\*

Initially, Sysco asserts that if applicable, this Court has the authority to enjoin arbitration proceedings in order to enforce Rule 41(a)(1). This assertion is not disputed by Chi-Chi's, since

5

Chi-Chi's believes that Rule 41(a)(1) is inapplicable. Sysco argues that pursuant to Rule 41(a)(1), the dismissal of the Empire Action in this Court would operate as an adjudication on the merits of Chi-Chi's complaint. In the event that this Court determines that Rule 41(a)(1) would apply in this manner, this Court would have the power to enjoin arbitration in order to protect its prior judgment. *See John Hancock Mut. Life Ins. Co. v. Olick*, 151 F.3d 132, 138 (3d Cir. 1998) ("[A] realistic concern for the finality and integrity of judgments would arise if parties were free to ignore federal court decisions that have conclusively settled claims or issues now sought to be arbitrated. . . . When a federal court is presented with the contention that a prior federal judgment determined issues now sought to be relitigated in an arbitral forum it must first determine the effect of the judgment." ); *In re American Honda Motor Co., Inc., Dealerships Relations Litigation*, 315 F.3d 417, 443 (4th Cir. 2003).

****

The express language of Rule 41(a)(1) requires that the second action be filed by a "plaintiff who has once dismissed." The Court must determine whether the Chi-Chi's Action and the Empire Action were filed by the same real party in interest.

The complaints in both actions are captioned with Chi-Chi's as the named plaintiff. The fact that the same plaintiff is named in the case caption, however, is not sufficient, alone, to invoke the two dismissal rule. The Empire complaint states that it was filed by Empire, as subrogee of the Debtor.[4] At oral argument the Court noted, and counsel for Sysco acknowledged, that it is not uncommon for a subrogated action by an insurer to be captioned in the name of the

---

[4] Empire Complaint, at 1 n.1.

6

insured.[5] *Michigan Alkali Co. v. Bankers Indemnity Ins. Co.*, 103 F.2d 345, 348 (2d Cir. 1939) ("Even when a suit is for the benefit of an insurer, it may be brought in the insured's name.); *see also Link Aviation, Inc. v. Downs*, 325 F.2d 613, 615 (D.C. Cir. 1963) ("We are of like opinion, that is to say that though brought in the name of the insureds, this suit was not a nullity, since, as we hold, it was brought for the use of the real parties in interest."); *In re Profile Systems, Inc.*, 1996 WL 26258, *6 n.2 (Bankr. D. Minn. 1996) ("[S]ubrogation claims are generally brought in the name of the insured rather than the insurer so that the controversy appears as a dispute between the insured and third parties. When, such as in this case, an insurer has paid only part of the loss and the insured continues to have a beneficial interest in the cause of action, such a practice can be further justified.").

Similarly, "the two-dismissal rule should not be defeated by a change in the nominal parties, without a change in the real party in interest." *Poloron Prods. Inc. v. Lybrand Ross Bros. & Montgomery*, 66 F.R.D. 610, 614 (S.D.N.Y. 1975) (hereinafter "*Poloron I*"), *rev'd on other grounds*, 534 F.2d 1012 (2d Cir. 1975)) (hereinafter "*Poloron II*"). In *Poloron I*, the district court found that three separate actions, although involving nominally different plaintiffs, were filed by the same real party in interest, and therefore the two dismissal rule could be applied.[6]

Therefore, the Court must determine whether the Chi-Chi's Action and the Empire Action were brought by the same real parties in interest. It is clear in this case, however, that

---

[5] Transcript of November 16, 2005 Hearing, at 10.

[6] *Poloron I* was reversed by the Second Circuit in *Poloron II* on the basis that a stipulated dismissal did not operate as a first "strike" under the two dismissal rule. *Poloron II*, 534 F.2d at 1017-18. In this case, both actions were dismissed by notice as to Sysco and SYGMA.

Empire and Chi-Chi's are separate real parties as required by the two dismissal rule. Empire seeks to assert its own rights, as subrogee. It is well settled that where there is partial subrogation, both the insured and the insurer are real parties in interest. *Virginia Elec. & Power Co. v. Westinghouse Elec. Corp.*, 485 F.2d 78, 84 (4th Cir. 1973) (citing *United States v. Aetna Casualty & Surety Co.*, 338 U.S. 366, 381-82 (1949)) ("Where there is partial subrogation, there are two real parties in interest under Rule 17."); *Gannett v. Pettegrow*, 224 F.R.D. 293, 294 (D. Me. 2004) (citing *State Farm Mut. Liab. Ins. Co. v. United States*, 172 F.2d 737, 739 (1st Cir.1949)); *Hancotte v. Sears, Roebuck & Co.*, 93 F.R.D. 845, 846 (E.D. Pa. 1982) ("It is settled law that an insurer, whether it has paid all of the loss or only part of the loss, is a real party in interest under Rule 17(a)."); *St. Paul Fire & Marine Ins. Co. v. Peoples Natural Gas Co.*, 166 F. Supp. 11, 12 (W.D. Pa. 1958) ("a partial subrogee may maintain an action in a federal court alone without joining other real parties in interest, i.e., the indemnitee and other subrogees."). Further, there has been no allegation that Empire is in privity with Chi-Chi's, or that Chi-Chi's assigned its rights to Empire.

At oral argument, Sysco argued that an insured may have the right to pursue the entire claim, citing *Catalfano v. Higgins*, 188 A.2d 357 (Del. 1962).[7] This proposition, while uncontroversial, is misguided. The fact that Chi-Chi's *may* have been able to pursue the entire claim, does not mean that Chi-Chi's *did*, in fact, pursue the entire claim. *E.g., Virginia Elec. & Power Co. v. Westinghouse Elec. Corp.*, 485 F.2d 78, 84 (4th Cir. 1973) ("Either party may bring suit-the insurer-subrogee to the extent it has reimbursed the subrogor, or the subrogor for either the entire loss or only its unreimbursed loss."). The two dismissal rule does not operate as an

---

[7] Transcript of November 16, 2005 Hearing, at 9.

8

adjudication on the merits for any claims that Chi-Chi's could have brought, but operates only on causes of action which were actually pursued by Chi-Chi's. Accordingly, it is hereby determined that the Chi-Chi's and Empire Actions were not filed by the same plaintiff. Thusly, the two dismissal rule is inapplicable.

*****

Because the two actions were not brought by the same plaintiffs, it is unnecessary to make a determination on whether the other requirements of the two dismissal rule have been met. As determined above, it is an unsupported contention that the Chi-Chi's Action and the Empire Action involve the same claims. It is true that the Chi-Chi's complaint and the Empire complaint arise from the same underlying facts, the hepatitis outbreak. Chi-Chi's, however, seeks recovery for lost profits, and other amounts paid in connection with the hepatitis claims. Empire seeks only to recover part or all of the $10,000,000 that it paid as Chi-Chi's insurer. Empire cannot, and does not, seek to recover for Chi-Chi's lost profits, and brings its own, distinct causes of action. *See Jackson Nat. Life Ins. Co. v. Greycliff Partners, Ltd.*, 226 B.R. 407, 417 (E.D. Wis. 1998) ("The argument is meritless because the two Delaware actions do not involve the same claims. . . . Thus, the actions were brought by legally-distinct plaintiffs asserting two completely different sets of legal rights."). The fact that Empire chose to use language in its complaint that is quite similar to Chi-Chi's complaint is insufficient, alone, to place the actions within the scope of the two dismissal rule.

Second, even though both dismissals were accomplished by notice as to Sysco, courts have declined to apply the two dismissal rule under similar circumstances. Chi-Chi's alleges that its complaint was allegedly dismissed due to Chi-Chi's belief that Sysco would seek arbitration.

9

As stated by the District of Puerto Rico in *Island Stevedoring*:

> Even were we to find that the second dismissal was voluntary or by notice as
> required by the language of Rule 41(a)(1), we would still find the two dismissal
> rule inapplicable. A second dismissal as contemplated by this provision preceded
> by a dismissal by stipulation knowingly consented to by all the parties does not
> trigger the two dismissal rule. The rationale for this exception stems from the
> underlying policy of the rule. The primary purpose of the "two dismissal" rule is
> to prevent an unreasonable use of the plaintiff's unilateral right to dismiss an
> action prior to the filing of defendant's responsive pleading. However, the danger
> of abuse of this right lessens when the original dismissal stems from mutual
> agreement.
>
> While the parties did not file a formal stipulation, the record in the case clearly
> indicates that the first dismissal resulted from negotiations and a consent
> agreement among the parties. BORDELON, however, by insisting on a formal
> stipulation, asks this court to swear allegiance to the language of Rule 41(a)(1) at
> the expense of its underlying policy. This we refuse to do.
>
> . . . Consequently, we find that the first dismissal was in essence, if not in form, by
> stipulation. The two dismissal rule, therefore, does not apply.

*Island Stevedoring, Inc. v. Barge CCBI*, 129 F.R.D. 430, 432 (D. P.R. 1990); *TCW Special*

*Credits v. FISHING VESSEL CHLOE Z*, 2000 WL 1277922, *2 (9th Cir. 2000) (holding that

although a prior dismissal "was not formally 'stipulated,' it was not unilateral as all parties tacitly

agreed to the dismissal in favor of litigating the action" elsewhere, and that there was "no

evidence that the filings and dismissals were part of a strategy to harass" the defendant);

*Ater ex rel. Ater v. Follrod*, 238 F. Supp. 2d 928, 953-54 (S.D. Ohio 2002) (finding that

application of the two dismissal rule was not warranted because the "dismissals were not

completely unilateral, and there is no evidence in the record that Plaintiffs acted with the intent of

harassing Defendants.").

******

Further, the purpose of the two dismissal rule would not be served if applied in this

10

instance. "The purpose of the 'two dismissal' rule, 'pointed out in numerous decisions, is to prevent unreasonable abuse and harassment,' 'by plaintiff securing numerous dismissals without prejudice.'" *E.g., Sutton Place Development Co. v. Abacus Mortg. Inv. Co.*, 826 F.2d 637, 640 (7th Cir. 1987) (citations omitted); *ASX Inv. Corp. v. Newton*, 183 F.3d 1265, 1268 (11th Cir. 1999) (citing *Poloron II*, 534 F.2d at 1017) ("[T]he primary purpose of the 'two dismissal' rule is to prevent an unreasonable use of the plaintiff's unilateral right to dismiss an action prior to the filing of the defendant's responsive pleading."); *American Cyanamid Co. v. McGhee*, 317 F.2d 295, 297-98 (5th Cir. 1963); *Western Group Nurseries, Inc. v. Ergas*, 211 F.Supp.2d 1362, 1370 (S.D. Fla. 2002) ("The purpose of the two dismissal rule is to prevent duplicative, wasteful and harassing litigation."). There has been no allegation or indication from the record that Chi-Chi's actions have been taken in bad faith to harass Sysco, or to otherwise abuse the judicial system. The record does not reflect whether Sysco filed a responsive pleading in any of the subject proceedings. While the two dismissal rule exists to protect Sysco from harassment, it would not be served by penalizing Chi-Chi's for the unilateral decisions of Empire to bring an action against Sysco and Castellini, inserting Chi-Chi's as the nominal plaintiff, and incorporating the language of the complaint in the Chi-Chi's Action. Empire is represented by separate counsel, which has acted to protect its own interests without the consultation or collaboration of Chi-Chi's. Instead, application of the two dismissal rule would serve to operate as an adjudication on the merits of Chi-Chi's claim, leaving Chi-Chi's without its first opportunity to litigate its claims. *See Poloron II*, 534 F.2d at 1017 ("Where the purpose behind the 'two dismissal' exception would not appear to be served by its literal application, and where that application's effect would be to close the courthouse doors to an otherwise proper litigant, a court should be most careful

11

not to construe or apply the exception too broadly.").

Sysco also notes that Chi-Chi's arguments would allow Sysco to be sued by Chi-Chi's, and then individually by each of Chi-Chi's insurers and creditors. Other protections, however, exist to protect Sysco against this hypothetical scenario. Sysco's arguments may have been more persuasive in a motion seeking to join Empire or Chi-Chi's as a necessary party. *Arkwright-Boston Mfrs. Mut. Ins. Co. v. City of New York*, 762 F.2d 205, 209 (2d Cir.1985) ("In a subrogation case the insurer and the insured are 'necessary' parties, but clearly they are not indispensable parties."); *St. Paul Fire & Marine Ins. Co. v. Peoples Natural Gas Co.*, 166 F. Supp. 11, 12 (W.D. Pa. 1958) (citing *Yorkshire Ins. Co. v. United States*, 171 F.2d 374 (3d Cir. 1948)) ("the defendant is protected from a multiplicity of suits by its opportunity under the rules to join the necessary parties."). Neither Sysco nor Castellini filed motions seeking to join Empire or Chi-Chi's as necessary parties in either action. Accordingly, Sysco cannot now attempt to utilize Rule 41(a)(1) to extinguish Chi-Chi's ability to litigate its claims.

\*\*\*\*\*\*\*

Sysco also cites language contained in the order of the Pennsylvania District Court, which states that

> In addition to both claims being brought solely in the name of Chi-Chi's, Inc., both assert the "same rights" through the same six contractually based theories of recovery, both assert the "same facts" and claim the same harm, and both demand the same "relief" from Castellini. The Court, therefore, concludes that pursuant to the first filed rule, the Third-Party Complaint filed against Castellini in this Court should be dismissed.

*Funkhouser v. Chi-Chi's Inc.*, 2005 WL 2545300, at \*2 (W.D. Pa. 2005) (citations omitted). Initially, it should be noted that the Pennsylvania District Court found only that under the first filed rule, the suits were both brought solely in the name of Chi-Chi's. It did not make a

12

determination as to the real party in interest in each action, as required by the two dismissal rule. The findings of the Pennsylvania District Court, moreover, were made under different procedural circumstances, and are not necessarily binding in this matter. Further, the preclusive effect of the Pennsylvania District Court's findings may be defeated where the difference in legal standards applied are significantly different. *E.g., Raytech Corp. v. White*, 54 F.3d 187, 191 (3d Cir. 1995) ("To defeat a finding of identity of the issues for preclusion purposes, the difference in the applicable legal standards must be 'substantial.'"); *Peterson v. Clark Leasing Corp.*, 451 F.2d 1291 (9th Cir. 1971) ("Issues not identical [for collateral estoppel purposes] if the second action involves application of a different legal standard, even though the factual setting of both suits be the same.").

"The first-filed rule is a judicial construct aimed at conserving judicial resources and safeguarding litigants by preventing concurrent duplicative litigation of the same issues between the same parties in more than one federal court." *APV North America, Inc. v. Sig Simonazzi North America, Inc.*, 295 F. Supp. 2d 393, 396 (D. Del. 2002). As stated by the Pennsylvania District Court, the "first-filed rule has been employed by the courts in the Third Circuit to enjoin, where appropriate, 'the subsequent prosecution of 'similar cases . . . in different federal district courts.'" *Funkhouser*, 2005 WL 2545300 at *1 (quoting *EEOC v. University of Pennsylvania*, 850 F.2d 969, 971 (3d Cir. 1988)); *Hay Acquisition Co., I, Inc. v. Schneider*, 2005 WL 1017804, *12 (E.D. Pa. 2005); *see also Ellenby Technologies, Inc. v. AT Systems Inc.*, 2002 WL 356686, *2 (D. Del. 2002) (the first filed rule applies "where two federal courts have concurrent jurisdiction over sufficiently similar issues and parties."). "The decision to invoke the first-filed rule is an equitable determination that is made on a case-by-case, discretionary basis." *Nutrition*

13

*& Fitness, Inc. v. Blue Stuff, Inc.*, 264 F.Supp.2d 357, 360 (W.D. N.C. 2003). The Pennsylvania District Court made a determination based on considerations of judicial economy and convenience that the plaintiffs in the actions were sufficiently similar to invoke the first-filed rule. Accordingly, Chi-Chi's third party complaint was dismissed in favor of the Empire Action being prosecuted in this Court against Castellini.

The legal standards applied under the first-filed rule are significantly different from the requirements under Rule 41(a)(1). As noted above, because it operates as an adjudication on the merits, the two dismissal rule is a statutory rule that has been strictly construed. Adherence to the statutory language of Rule 41(a)(1) overrides a doctrine judicially created for reasons of convenience and economy. *See Applied Concepts, Inc. v. Olympia Indus., Inc.*, 15 Fed. Appx. 793, 799 (Fed. Cir. 2001) ("Moreover, the judicially created doctrine of claim differentiation cannot override the statutory requirements of § 112 . . . ."); *Coohey v. U.S.*, 172 F.3d 1060, 1063 (8th Cir. 1999) ("These provisions override and displace judicially-created doctrines in cases where the statutory provisions apply."). The Pennsylvania District Court's findings should not be given preclusive effect in this proceeding, where the policy of the two dismissal rule would not be served, and the narrow requirements of Rule 41(a)(1) are not present. *See Bath Iron Works Corp. v. Director, Office of Workers' Compensation Programs, U.S. Department of Labor*, 125 F.3d 18, 22 (1st Cir. 1997) ("Certainly a difference in the legal standards pertaining to two proceedings may defeat the use of collateral estoppel. . . . But this is so only where the difference undermines the rationale of the doctrine."); *Copeland v. Merrill Lynch & Co., Inc.*, 47 F.3d 1415, 1422 (5th Cir. 1995) (citing *Brister v. A.W.I., Inc.*, 946 F.2d 350, 354 & n. 1 (5th Cir. 1991)) ("[E]ven when issues are stated in 'nearly identical language,' collateral estoppel is

14

unavailable when there are disparate policies underlying each inquiry which result in definite differences in application and result."); *City of Cleveland v. Cleveland Elec. Illuminating Co.*, 538 F. Supp. 1227, 1231 n.3 (N.D. Ohio 1980) ("Where, as here, the legal standards of two statutes are significantly different, the decision of issues under one statute does not give rise to collateral estoppel in the litigation of similar issues under a different statute.").

********

Sysco has not met its burden of showing that Rule 41(a)(1) should be applied to bar Chi-Chi's arbitration claim, since this case involves separate real parties in interest, represented by separate counsel, prosecuting distinct causes of action. Accordingly, judgment is hereby rendered in favor of Debtor-Defendant Chi-Chi's, and the complaint is hereby DISMISSED. Each party is to bear its respective costs.

**IT IS SO ORDERED.**

**JUDGE RANDOLPH BAXTER**
**UNITED STATES BANKRUPTCY COURT**

Dated, this _17th_ day of
January, 2006

# Tab D

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

In Re:                                    In Proceedings Under Chapter 11

**CHI-CHI'S, INC.**, *et al.*              Case No.: **03-13063**

Debtors.

---

**SYSCO CORPORATION and**                 Adv. Proc. No. 05-52726
**THE SYGMA NETWORK, INC.,**
                                          **JUDGE RANDOLPH BAXTER**
Plaintiffs,

v.

**CHI-CHI'S, INC.,**

Defendant.

## JUDGMENT

In Delaware, in said District, on this 18th day of January, 2006.

A Memorandum Of Opinion And Order having been rendered by this Court in this matter.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that judgment is hereby rendered in favor of Debtor-Defendant Chi-Chi's, and the complaint is hereby DISMISSED. Each party is to bear its respective costs.

IT IS SO ORDERED.

RANDOLPH BAXTER
JUDGE
UNITED STATES BANKRUPTCY COURT

Date 1/19/06
Docket # 28

# Tab E



238 F.3d 431
238 F.3d 431, 2000 WL 1277922 (C.A.9 (Guam))
**(Cite as: 238 F.3d 431)**

Page 1

# H

Briefs and Other Related Documents
NOTICE:    THIS IS AN UNPUBLISHED
OPINION.(The Court's decision is referenced in a
"Table of Decisions Without Reported Opinions"
appearing in the Federal Reporter. Use FI CTA9 Rule
36-3 for rules regarding the citation of unpublished
opinions.)

United States Court of Appeals, Ninth Circuit.
TCW SPECIAL CREDITS, Plaintiff,
v.
FISHING VESSEL CHLOE Z, Defendant-Appellant,
v.
Robert MATOS; Clipper Oil; Shell Guam, Inc.;
Frank Perez; Starkist Caribe, Inc.; Juan Barandiaran,
et al., Plaintiff-Intervenors,
andSLOBODAN PRANJIC, Plaintiff-Intervenor-
Appellee.
No. 99-15136.
D.C. No. CV-96-00055-JSU.

Argued and Submitted Aug. 1, 2000.
Decided Sept. 8, 2000.
As Amended Oct. 3, 2000.

Appeal from the United States District Court for the
District of Guam John S. Unpingco, District Judge,
Presiding.

Before PREGERSON, HAWKINS, and McKEOWN,
Circuit Judges.

MEMORANDUM FN1

> FN1. This disposition is not appropriate for
> publication and may not be cited to or by the
> courts of this circuit except as may be
> provided by Ninth Circuit Rule 36-3.

*1 The fishing vessel CHLOE Z appeals (1) the
district court's denial of its motion to dismiss seaman
Slobodan Pranjic's claims as res judicata pursuant to
Federal Rule of Civil Procedure 41(a)(1)(i)'s "two
dismissal" rule, (2) the court's decision to apply the
doctrine of equitable estoppel to preclude the
CHLOE Z from raising a statute of limitations
defense, (3) the court's decision not to reduce
Pranjic's future lost wages to account for applicable
Croatian income taxes, and (4) the court's award of

$43,951.92 in past medical expenses. We have
jurisdiction under 28 U.S.C. § 1292(a)(3), and we
affirm in part, reverse in part, and remand for further
proceedings.FN2

> FN2. This appeal and related appeals arise
> from many years of litigation involving the
> CHLOE Z. Judge Unpingco is to be
> complimented not only for the substantial
> time he committed to resolution of the
> numerous claims in this and the related
> actions, but also for his careful legal analysis
> and well-documented record. Likewise, we
> appreciate the quality briefing provided by
> all counsel on appeal.

Pranjic filed and voluntarily dismissed three prior
actions, the first in the district court for the Southern
District of California, the second in a California state
court, and the third in a Hawaii state court. To begin,
we reject the CHLOE Z's contention that the latter
two dismissals were adjudications upon the merits
under Rule 41(a)(1)(i) for the reason that Federal
Rule of Civil Procedure 41(a)(1)(i) does not govern
voluntary dismissals in state courts. We recognize,
however, that unlike California, Hawaii has adopted a
rule nearly identical to Federal Rule 41(a)(1)(i). See
Haw. R. Civ. P. 41(a)(1)(A).FN3 Therefore the
question is whether Pranjic's third dismissal was an
adjudication upon the merits under Hawaii Rule of
Civil Procedure 41(a)(1)(A). See Manning v. South
Carolina Dep't of Hwy. and Pub. Transp., 914 F.2d
44, 47 n. 5 (4th Cir.1990).

> FN3. Hawaii Rule 41(a)'s "two dismissal"
> rule was not modified by the recent
> amendments to Hawaii's civil rules, which
> were effective January 1, 2000.

In interpreting Hawaii's "two dismissal" rule, we look
to our own construction of the parallel Federal Rule
for guidance, Kawamata Farms, Inc. v. United Agri
Prods., 86 Hawai'i 214, 948 P.2d 1055, 1096
(Haw.1997), keeping in mind that we have no
definitive interpretation from Hawaii and that "[t]he
basic purpose of the Federal Rules is to administer
justice through fair trials, not through summary
dismissals as necessary as they may be on occasion."
Surowitz v. Hilton Hotels Corp., 383 U.S. 363, 373,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

86 S.Ct. 845, 15 L.Ed.2d 807 (1966).

Voluntary dismissals under Fed.R.Civ.P. 41(a)(1) are normally without prejudice except that a dismissal by notice under 41(a)(1)(i) "operates as an adjudication upon the merits when filed by a plaintiff who has once dismissed in any court of the United States or of any state an action based on or including the same claim." Fed.R.Civ.P. 41(a)(1)(i). In *Lake at Las Vegas Investors Group, Inc. v. Pacific Malibu Dev. Corp.*, 933 F.2d 724 (9th Cir.1991), however, we noted that some courts have declined to strictly apply the rule when the parties consented to one of the prior dismissals or where the dismissal was not unilateral. *Id.* at 727 (discussing *Poloron Prod., Inc. v. Lybrand Ross Bros. & Montgomery*, 534 F.2d 1012, 1017-18 (2d Cir.1976)). The Second Circuit in *Poloron*, for example, reasoned that in such situations where the purpose of the rule-to avoid harassing the defendant-would not be served, courts should be "most careful not to construe or apply the [rule] too broadly." *Poloron*, 534 F.2d at 1017.

*2 Based on the circumstances here, strict application of the two dismissal rule is not warranted. For example, the record indicates that the Hawaii dismissal was preceded by discussions between the parties about litigating the action in Guam. Counsel for the CHLOE Z stated in correspondence: "If you will agree to dismiss the currently pending actions [in California and Hawaii] and refile them in a court in Guam, we will consider arranging for depositions to be taken in Guam[.]" Counsel for Pranjic confirmed that the Hawaii case would be "withdraw[n]" and refiled in Guam. Although the Hawaii dismissal was not formally "stipulated," it was not unilateral as all parties tacitly agreed to the dismissal in favor of litigating the action in Guam. Also, there is no evidence that the filings and dismissals were part of a strategy to harass the CHLOE Z. Accordingly, we affirm the district court's decision not to dismiss Pranjic's action on res judicata grounds.

We reverse the district court's equitable estoppel ruling and remand for further proceedings as to that issue. On the CHLOE Z's motion to dismiss and vacate *in rem* process under Supplemental Admiralty Rule E(4)(f), the court ruled conclusively that the vessel was equitably estopped from arguing that Pranjic's *in rem* claims were barred by the applicable 3-year statute of limitations for maritime torts. In so doing, the court improperly resolved disputed issues of material fact, including whether the CHLOE Z in fact made any representations that the *in personam* judgment would be satisfied under the insurance

policy, to what extent Pranjic relied to his detriment upon the alleged representations, and whether such reliance caused the statute of limitations to lapse on Pranjic's *in rem* claims against the vessel. We remand on this issue for a fact-finding hearing to permit the court an opportunity to make the factual determinations necessary to decide whether the CHLOE Z should be equitably estopped from raising a statute of limitations defense. We leave to the district court's discretion any decisions regarding additional discovery on this issue.

As for the CHLOE Z's argument that the court erred in not reducing Pranjic's lost wages to account for applicable Croatian income taxes, we affirm for the reasons set forth in the Memorandum Disposition filed in *Vjeko Mazic v. F/V CHLOE Z*, No. 99-15169 (filed concurrently with this disposition).

Finally, Pranjic concedes that the court erred in awarding $43,951.92 for past medical expenses. Accordingly, we reverse on this issue and direct the district court to amend the judgment accordingly on remand.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS. Each party to pay its own costs on appeal.

C.A.9 (Guam),2000.
TCW Special Credits v. FISHING VESSEL CHLOE Z
238 F.3d 431, 2000 WL 1277922 (C.A.9 (Guam))

Briefs and Other Related Documents (Back to top)

• 1999 WL 33627543 (Appellate Brief) Appellant's Reply Brief (Dec. 06, 1999) Original Image of this Document (PDF)
• 1999 WL 33627546 (Appellate Brief) Appellee / Cross Appellant's Opening and Answering Brief (Oct. 14, 1999) Original Image of this Document with Appendix (PDF)
• 1999 WL 33627544 (Appellate Brief) Appellee's Answering Brief (Sep. 27, 1999) Original Image of this Document with Appendix (PDF)
• 1999 WL 33727180 (Appellate Brief) Appellee's Answering Brief (Sep. 27, 1999) Original Image of this Document with Appendix (PDF)
• 99-15136 (Docket) (Feb. 02, 1999)
• 1999 WL 33627545 (Appellate Brief) Appellants Opening Brief (Jan. 01, 1999) Original Image of this Document with Appendix (PDF)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

238 F.3d 431
238 F.3d 431, 2000 WL 1277922 (C.A.9 (Guam))
**(Cite as: 238 F.3d 431)**

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Case No. 03-13063 (KJC) |
| | ) |
| CHI-CHI'S INC., | ) Jointly Administered |
| a Delaware corporation, et al., [1] | ) |
| | ) Chapter 11 |
| Debtors. | ) |
| | ) |
| ————————————————— | ) |
| | ) |
| SYSCO CORPORATION and | ) |
| THE SYGMA NETWORK, INC., | ) |
| | ) |
| Appellant, | ) |
| | ) |
| vs. | ) Civil Action No. 06-169 (KAJ) |
| | ) Adversary Proc. No. 05-52726 |
| CHI-CHI'S, INC.,, | ) |
| | ) |
| Appellee. | ) |
| ————————————————— | ) |

### AFFIDAVIT OF SERVICE

| | |
|---|---|
| STATE OF DELAWARE | ) |
| | ) ss |
| COUNTY OF NEW CASTLE | ) |

Kathleen Forte Finlayson, being duly sworn according to law, deposes and says that she is employed by the law firm of Pachulski Stang Ziehl Young Jones & Weintraub LLP, counsel for the Debtors/Appellee, in the above-captioned action, and that on the 12th day of June 2006, she caused a copy of the following documents to be served upon the attached service lists in the manner indicated:

---

[1] The Debtors consist of the following entities: Chi-Chi's, Inc., CCMR of Cantonsville, Inc., CCMR of Cumberland, Inc., CCMR of Frederick, Inc., CCMR of Greenbelt, Inc., CCMR of Harford County, Inc., CCMR of Maryland, Inc., CCMR of Ritchie Highway, Inc., CCMR of Timonium, Inc., Chi-Chi's of West Virginia, Inc., CMM Dissolution, Inc., Koo Koo Roo, Inc., Maintenance Support Group, Inc., Koo Koo Roo Licensing Systems, Inc., the Hamlet Group, Inc., H.H. of Maryland, Inc. and H.H.K. of Virginia.

**(1)  APPELLEE CHI-CHI'S INC.'S ANSWERING BRIEF IN OPPOSITION TO SYSCO CORPORATION AND THE SYGMA NETWORK, INC.'S APPEAL OF THE BANKRUPTCY COURT'S JANUARY 18, 2006 ORDER FINDING THAT RULE 41 DOES NOT BAR FURTHER PROCEEDINGS AGAINST SYSCO CORPORATION AND THE SYGMA NETWORK, INC.**

**and**

**(2)  APPENDIX OF EXHIBITS AND UNREPORTED CASE TO APPELLEE CHI-CHI'S, INC.'S ANSWERING BRIEF**

Kathleen Forte Finlayson

Sworn to and subscribed before me this ____ day of June 2006

Notary Public _____
My Commission Expires _____ 11/4/07

**MARY E. CORCORAN**
Notary Public
State of Delaware
My Commission Expires Nov. 4, 2007

## SPECIAL SERVICE LIST
### JUNE 12, 2006

*Via Hand Delivery*
*(counsel for Sysco Corporation)*
Mark E. Felger, Esquire
Jeffrey R. Waxman, Esquire
Cozen O'Connor
1201 North Market Street, Ste 1400
Wilmington, DE 19801

*Via Hand Delivery*
*(counsel for Empire Indemnity Insurance*
 *Company, d/b/a Zurich)*
Bernard George Conaway, Esquire
L. Jason Cornell, Esquire
Fox Rothschild LLP
919 N. Market St., Ste 1300
Wilmington, DE 19801

*Via Hand Delivery*
*(counsel for Empire Indemnity Insurance*
 *Company, d/b/a Zurich)*
Richard Dennis Abrams, Esquire
Heckler & Frabizzio, PA
800 Delaware Avenue
Wilmington, DE 19801

*Via Overnight Delivery*
*(counsel for Sysco Corporation)*
Philip G. Kircher, Esquire
Aaron Krauss, Esquire
Cozen O'Connor
1900 Market Street
Philadelphia, PA 19103

*Via Overnight Delivery*
Gary Becker, Esquire
Dinsmore & Shol LLP
255 East Fifth Street
Cincinnati, OH 45202

13894-001\DOCS_DE:112382.1

Chi-Chi's Core Group Service List
Case No. 03-13063
June 12, 2006
Document No. 81488
003 – Hand Delivery
002 – First Class Mail


(Counsel to Liquidating Trustee)
Laura Davis Jones, Esquire
Bruce Grohsgal, Esquire
Rachel Lowy Werkheiser, Esquire
Sandra Selzer, Esquire
Pachulski Stang Ziehl Young Jones &
Weintraub LLP
919 Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE  19899-8705

**Hand Delivery**
(Parcels)
Vito I. DiMaio
Parcels, Inc.
4 East 7th Street
Wilmington, DE  19801

**Hand Delivery**
(United States Trustee)
David Klauder, Esquire
844 North King Street, Room 2207
Wilmington, DE  19801

**Hand Delivery**
(Counsel to the OCUC)
Frederick B. Rosner, Esquire
Jaspan Schlesinger Hoffman LLP
913 N. Market Street, 12th Floor
Wilmington, DE  19801

**First Class Mail**
(Former Counsel to Debtors)
William N. Lobel, Esquire
Alan J. Friedman, Esquire
Michael D. Neue, Esquire
Evan Borges, Esquire
Irell & Manella LLP
840 Newport Center Drive, Ste 400
Newport Beach, CA  92660

**First Class**
(Counsel to Liquidating Trustee)
Charles R. Gibbs, Esquire
Akin Gump Strauss Hauer & Feld LLP
1700 Pacific Avenue Suite 4100
Dallas, TX  75201-4675


13894-001\DOCS_DE:81488.1